**HABBA MADAIO & ASSOCIATES LLP**
Alina Habba, Esq.
Michael T. Madaio, Esq.
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
      -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| E. JEAN CARROLL,<br><br>　　　　　　　*Plaintiff,*<br><br>　　v.<br><br>DONALD J. TRUMP,<br><br>　　　　　　　*Defendant.* | Civil Action No.: 22-cv-10016 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Alina Habba, Esq.
Michael T. Madaio, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
        -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS .......................................................................................... 2

LEGAL STANDARD .................................................................................................. 5

ARGUMENT ............................................................................................................... 6

      I.      CPLR 214-J VIOLATES THE DUE PROCESS CLAUSE OF THE NEW
             YORK STATE CONSTITUTION ....................................................... 6

      II.     PLAINTIFF HAS FAILED TO PLEAD COGNIZABLE
             DEFAMATION DAMAGES ............................................................. 13

           i.   The October 12 Statement Does Not Constitute Defamation Per Se ......... 14

           ii.  Plaintiff Has Not Plead Any Special Damages ........................................ 17

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

*Cases*

*Ajdler v. Province of Mendoza,*
  33 NY3d 120 (2019) ........................................................................................7

*Andrick v. St.-Gobain Performance Plastics Corp.,*
  1-17-CV-1058-LEK-DJS, 2018 WL 3068056 (N.D.N.Y. June 21, 2018) .........................9, 10

*Aronson v. Wiersma,*
  65 N.Y.2d 592 (1985). ....................................................................................15

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937 (2009) ...................................................................5, 6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955 (2007) ...................................................................5, 6

*Cain v. Atelier Esthetique Inst. of Esthetics Inc.,*
  733 Fed.Appx. 8 (2d Cir. 2018) .........................................................................13

*Cambridge Assoc. v. Inland Vale Farm Co.,*
  116 A.D.2d 684 (2d Dep't 1986) ........................................................................17

*Celle v. Filipino Reporter Enters,*
  209 F.3d 163 (2d Cir. 2010) ..........................................................................17, 18

*Davydov v. Youseffi,*
  205 A.D.3d 881 (1st Dep't 2022) ........................................................................16

*Dillon v. City of N.Y.,*
  261 A.D.2d 34 (1st Dep't 1999) .........................................................................14

*Drug Research Corp. v Curtis Pub. Co.,*
  7 N.Y.2d 435 (1960) ......................................................................................18

*Gallewski v. H. Hentz & Co.,*

    301 N.Y. 164 (1950) ............................................................................................9

*Garland v. Vermilyea,*

    88 A.D.2d 1044 (3d Dep't 1982) .......................................................................19

*Giuffre v. Dershowitz,*

    19 CIV. 3377 (LAP), 2020 WL 2123214 (S.D.N.Y. Apr. 8, 2020) ...................10

*Gurtler v. Union Parts Mfg. Co., Inc.,*

    285 A.D. 643 (1st Dep't 1955) ..........................................................................15

*Elias v. Rolling Stone LLC,*

    872 F.3d 97 (2d Cir. 2017) ................................................................................13

*Farrell v. United States Olympic & Paralympic Comm.,*

    567 F.Supp.3d 378 (N.D.N.Y. 2021)..................................................................11

*Franklin v. Daily Holdings,*

    135 A.D.3d 87 (1st Dep't 2015) ...................................................................17, 18

*Hymowitz v. Eli Lilly & Co.,*

    73 N.Y.2d 487 (1989).....................................................................................7, 8, 9

*John J. Kassner & Co. v. City of New York,*

    46 N.Y.2d 544 (1979) ..........................................................................................7

*Jordan v. Tucker, Albin and Assoc., Inc.,*

    3-CV-6863-JMA-SIL, 2017 WL 2223918 (E.D.N.Y. May 19, 2017) ................19

*Liberman v. Gelstein,*

    80 N.Y.2d 429 (1992) ....................................................................................14, 17

*Lucey v. St.-Gobain Performance Plastics Corp.,*

    1-17-CV-1054-LEK-DJS, 2018 WL 2926289 (N.D.N.Y. June 11, 2018) ............10

*Lynch v. City of New York,*

    952 F.3d 67 (2d Cir. 2020) ............................................................................6

*Mable Assets, LLC v Rachmanov,*

    192 A.D.3d 998 (2d Dep't 2021).................................................................17

*Matter of In re World Trade Ctr. Lower Manhattan Disaster Site Litig.,*

    30 N.Y.3d 377 (2017)..............................................6, 7, 8, 9, 10, 11, 12

*Matter of McCann v. Walsh Constr. Co.,*

    282 App. Div. 444 (3d Dept. 1953) ..........................................................8, 9

*PB-36 Doe v. Niagara Falls City School Dist.,*

    72 Misc.3d 1052 (Sup. Ct. 2021)...............................................................11

*PC-41 Doe v. Poly Prep Country Day School,*

    590 F.Supp.3d 551 (E.D.N.Y. 2021) ...................................................10, 11

*Peters v. Baldwin Union Free Sch. Dist.,*

    320 F.3d 164 (2d Cir. 2003) .....................................................................14

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,*

    813 F. Supp. 2d 489 (S.D.N.Y. 2011) .................................................15, 16

*Ram v. Moritt,*

    205 A.D. 516 (2d Dep't 1994)) .................................................................17

*Robinson v. Robins Dry Dock & Repair Co.,*

    238 N.Y. 271 (1924).................................................................................8, 9

*Rufeh v. Schwartz,*

    50 A.D.3d 1002 (2d Dep't 2008)............................................................14, 16

*Salomone v. MacMillan Pub. Co., Inc.,*

    77 A.D.2d 501 (1st Dep't 1980) ................................................................17

*Sharratt v. Hickey,*

    20 A.D.3d 734 (3d Dep't 2005) ............................................................................. 18

*Stepanov v. Dow Jones & Co.,*

    987 N.Y.S. 2d 37 (1st Dep't 2014) .................................................................. 12, 13

*Stern v. Cosby,*

    645 F. Supp. 2d 258 (S.D.N.Y. 2009) ................................................................... 13

*Sweener v. St.-Gobain Performance Plastics Corp.,*

    117CV0532LEKDJS, 2018 WL 748742 (N.D.N.Y. Feb. 7, 2018) ......................... 9

*Tacopina v. Kerick,*

    14-CV-749-LTS-FM, 2016 WL 1268268 (S.D.N.Y. Mar. 31, 2016) ............. 14, 15

*Thai v. Cayre Group, Ltd.,*

    726 F.Supp.2d 323 (S.D.N.Y. 2010) ..................................................................... 17

*Torrey v. Portville Cent. School,*

    66 Misc.3d 1225(A) (Sup. Ct. 2020) ..................................................................... 10

*Van-Go Transp. Co. Inc. v. New York City Board of Education,*

    971 F. Supp. 90 (E.D.N.Y. 1997) .......................................................................... 14

*Van Lengen v. Parr,*

    136 A.D.2d 964 (4th Dep't 1988) .......................................................................... 16

## Rules and Statutes

Rule 12(b)(6).................................................................................................1, 5, 18

CPLR 214-j .............................................................1, 5, 6, 7, 8, 9, 11, 12

CPLR 214-g .....................................................................................................10

CPLR 214-f ......................................................................................................10

Fed. R. Civ. P. 9(g) .........................................................................................17

The defendant, Donald J. Trump ("Defendant"), by and through his undersigned attorneys, Habba Madaio & Associates LLP, respectfully submits this memorandum of law in support of his motion to dismiss (the "Motion") the Complaint filed by the plaintiff, E. Jean Carroll ("Plaintiff"), pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth herein, Defendant's motion must be granted in its entirety.

## PRELIMINARY STATEMENT

The Adult Survivors Act, well-intentioned as it may be, is a fundamentally flawed law that is unable to withstand constitutional scrutiny. Codified under CPLR 214-j, the recently passed statute is a quintessential 'claim revival' measure which seeks to temporarily abolish the statute of limitations for alleged victims of various sexual offenses. In doing so, however, the law inherently deprives countless individuals of their constitutional right to due process by forcing them to defend against these once-stale claims. Unlike its predecessor, the Child Victims Act—a narrowly-tailored remedy which aims to protect an especially vulnerable segment of the population—the Adult Survivors Act does not seek to rectify any unique or distinct injustice. Instead, it arbitrarily revives long-expired claims without any viable justification under the law. Thus, notwithstanding the sympathies at play, the Adult Survivors Act is a contravention of the New York State Constitution, an invasion of due process, and a clear abuse of legislative power.

Beyond that, Plaintiff's sole remaining claim—a rehash of the defamation claim she brought over three years ago—is baseless and legally defective due to failure to demonstrate cognizable damages. Therefore, for the reasons set forth herein, the Complaint must be dismissed in its entirety.

## STATEMENT OF FACTS

According to the Complaint, Plaintiff alleges that she encountered Defendant at the Bergdorf Goodman Store located at 754 5th Ave, New York, NY 10019. Compl. ¶ 18.

Plaintiff is unable to specify a date or time period when the events giving rise to this Complaint allegedly occurred, other than "between the fall of 1995 and the spring of 1996." *Id.* Plaintiff was approximately 52 years old at the time that the purported incident occurred. *Id.*

Nonetheless, Plaintiff has accused Defendant of various unlawful acts on that date, all of which are outlined in her Complaint. *See Id.* ¶ 18-41.

Thereafter, Plaintiff decided to reveal these allegations publicly against Defendant for the first time with the release of the book entitled, '*What Do You Need Men For?*' in or around May of 2019. *Id.* ¶ 80.

Following these public allegations set forth in Plaintiff's book, Defendant made several statements in June 2019, in direct response to Plaintiff's allegations:

(1) On June 21, 2019, a statement circulated by the Deputy White House Press Secretary to the press denied the accusation and Appellant stated:

> Regarding the 'story' by E. Jean Carroll, claiming she once encountered me at Bergdorf Goodman 23 years ago, I've never met this person in my life. She is trying to sell a new book – that should indicate her motivation. It should be sold in the fiction section.

> Shame on those people who make up false stories of assault to try to get publicly for themselves, or sell a book, or carry out a political agenda – like Julie Swetnick who falsely accused Justice Brett Kavanaugh. It's just as bad for people to believe it, particularly when there is zero evidence. Worse still for a dying publication to try to prop itself up by peddling fake news – it's an epidemic.

> Ms. Carroll & New York Magazine. No pictures? No surveillance? No video? No reports? No sales attendants around?? I would like to thank Bergdorf Goodman for confirming that they have no video footage of any such incident, because it never happened.

False accusations diminish the severity of real assault. All should condemn false accusations and any actual assault in the strongest possible terms.

If anyone has information that the Democratic Party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible. The world should know what's really going on. It is a disgrace and people should pay dearly for such false accusations.

*Id*. ¶ 83.

(2) On June 22, 2019, Appellant made the following statement to the White House press:

"[Reporter]: [Y]ou had said earlier that you never met E. Jean Carroll. There was a photograph of you and her in the late 1980's—

[Trump]: I have no idea who this woman is. This is a woman who has also accused other men of things, as you know. It is a totally false accusation. I think she was married—as I read; I have no idea who she is—but she was married to a, actually, nice guy, Johnson—a newscaster.

[Reporter]: You were in a photograph with her.

[Trump]: Standing with coat on in a line—give me a break—with my back to the camera. I have no idea who she is. What she did is—it's terrible, what's going on. So it's a total false accusation and I don't know anything about her. And she's made this charge against others.

And, you know, people have to be careful because they're playing with very dangerous territory. And when they do that—and it's happening more and more. When you look at what happened to Justice Kavanaugh and you look at what's happening to others, you can't do that for the sake of publicity.

New York Magazine is a failing magazine. It's ready to go out of business, from what I hear. They'll do anything they can. But this was about many men, and I was one of the many men that she wrote about. It's a totally false accusation. I have absolutely no idea who she is. There's some picture where we're shaking hands. It looks like at some kind of event. I have my coat on. I have my wife standing next to me. And I didn't know her husband, but he was a newscaster. But I have no idea who she is—none whatsoever.

It's a false accusation and it's a disgrace that a magazine like New York—which is one of the reasons it's failing. People don't read it anymore, so they're trying to get readership by using me. It's not good.

You know, there were cases that the mainstream media didn't pick up. And I don't know if you've seen them. And they were put on Fox. But there were numerous

cases where women were paid money to say bad things about me. You can't do that. You can't do that. And those women did wrong things—that women were actually paid money to say bad things about me.

But here's a case, it's an absolute disgrace that she's allowed to do that.

*Id*. ¶ 84.

(3) On June 24, 2019, Appellant made the following statement in response to Appellee's allegations against him:

I'll say with great respect: Number one, she's not my type. Number two, It never happened. It never happened, OK?

*Id*. ¶ 85.

Following Defendant's repudiation of Plaintiff's claims, Plaintiff filed a complaint captioned *E. Jean Carroll v. Donald J. Trump* in the Supreme Court of New York, New York County, index no. 160694/2019 ("*Carroll I*").

Upon certification by the Attorney General that Defendant was acting within the scope of his employment when he made the alleged defamatory statements, *Carroll I* was removed to the Unites States District Court, Southern District of New York, case no. 1:20-cv-7311, where it currently sits.[1]

Thereafter, on October 12, 2022, Defendant published the following statement with respect to the ongoing litigation between the parties (the "October 12 Statement"):

"This 'Ms. Bergdorf Goodman case' is a complete con job, and our legal system in this Country, but especially in New York State (just look at Peekaboo James), is a broken disgrace. You have to fight for years, and spend a fortune, in order to get your reputation back from liars, cheaters, and hacks. This decision is from the Judge who was just overturned on my same case. I don't know this woman, have no idea who she is, other than it seems she got a picture of me many years ago, with her husband, shaking my hand on a reception line at a celebrity charity event. She

---

[1] The dispositive issue of whether the Defendant was acting within the scope of his employment when he made the allegedly defamatory statements for the purposes of the Westfall Act remains pending and is currently under review by the D.C. Court of Appeals.

completely made up a story that I met her at the doors of this crowded New York City Department Store and, within minutes, 'swooned' her. It is a Hoax and a lie, just like all the other Hoaxes that have been played on me for the past seven years. And, while I am not supposed to say it, I will. This woman is not my type! She has no idea what day, what week, what month, what year, or what decade this so-called 'event' supposedly took place. The reason she doesn't know is because it never happened, and she doesn't want to get caught up with details or facts that can be proven wrong. If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper. Our Justice System is broken along with almost everything else in our Country."

"In the meantime, and for the record, E. Jean Carroll is not telling the truth, is a woman who I had nothing to do with, didn't know, and would have no interest in knowing her if I ever had the chance. Now all I have to do is go through years more of legal nonsense in order to clear my name of her and her lawyer's phony attacks on me. This can only happen to 'Trump'!"

*See Compl.* at ¶92.

On November 24, 2022, a few short weeks after the above statement was published, Plaintiff filed the instant action ("*Carroll II*"). The Complaint filed in *Carroll II* is virtually identical to the Complaint filed in *Carrol I*, except that it includes an additional count of battery under the newly passed Adult Survivor's Act (ASA), codified under CPLR 214-j, as well as an additional defamation claim based on the October 12 Statement.

For the reasons set forth below, Defendant moves to dismiss each and every count contained in the Complaint.

## **LEGAL STANDARD**

Pursuant to Rule 12(b)(6), a complaint is subject to dismissal unless it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)

(citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965) (emphasis added). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. If the plaintiff's pleadings "have not nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.

Although the Court must "accept all 'well-pleaded factual allegations' in the complaint as true . . . [and] 'construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff,'" conclusory statements and legal argument are not entitled to the same treatment. *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020) (citations omitted). Instead, at this procedural posture, the Court is "not to give effect to a complaint's assertions of law or legal conclusions couched as factual allegations." *Id.* at 75-76. A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557, 127 S. Ct. at 1966).

As set forth below, Plaintiff's claims must be dismissed because CPLR 214-j is unconstitutional and because the Complaint is otherwise devoid of any factual allegations giving rise to a plausible claim upon which relief can be granted.

## ARGUMENT

### I.    CPLR 214-J VIOLATES THE DUE PROCESS CLAUSE OF THE NEW YORK STATE CONSTITUTION

"Statutes of limitations serve important policies in New York, such as 'fairness to defendant and society's interest in adjudication of viable claims not subject to the vagaries of time and memory.'" *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 466, 473

(S.D.N.Y. 2014) (quoting *Ackerman v. Price Waterhouse*, 84 N.Y.2d 535, 542 (1994)), *vacated on other grounds*, 892 F.3d 108 (2d Cir. 2018). For this reason, it is widely recognized that claim revival statutes—laws that operate to "reviv[e] extinguished rights"—are "'an extreme exercise of legislative power.'" *Denkensohn v Ridgway Apartments, Inc.*, 13 Misc.2d 389, 392 (App. Term. 1958) (citing *Hopkins v. Lincoln Trust Co.*, 233 N.Y. 213, 215, 135 N.E. 267 (1922)); *McCarthy v. Volkswagen of Am., Inc.*, 55 N.Y.2d 543, 548, (1982) (Statutes of limitation "reflect the legislative judgment that individuals should be protected from stale claims.")

Unlike the Due Process Clause of the United States Constitution, which federal courts have held is generally not offended by claim revival statutes, *see Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 394 (2017) ("Claim-revival statutes generally pose no issue under the Fourteenth Amendment to the United States Constitution[.]"), the parallel provision of the New York Constitution has been interpreted to impose more "stringent" standards on legislative efforts to revive previously time-barred claims. *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 514 (1989). In this way, the New York Due Process Clause protects the ability of potential defendants to rely on statutes of limitation in recognition of the important public policy "objectives of finality, certainty and predictability." *Ajdler v. Province of Mendoza*, 33 N.Y.3d 120, 130 n.6 (2019) (it "also expresses a societal interest or public policy of giving repose to human affairs.") (quoting *John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 550 (1979)) (internal quotation marks omitted). Analysis of whether such laws are constitutional requires reviewing the injustice and the response to "weigh[] the defendant's interests in the availability of a statute of limitations defense with the need to correct an injustice." *World Trade Ctr.*, 30 N.Y.3d at 394.

The New York Court of Appeals recently reaffirmed that "a claim-revival statute will satisfy the Due Process Clause of the [New York] State Constitution if it was enacted as a reasonable response in order to remedy an injustice." *Id.* at 400. In explaining what constitutes a sufficient 'injustice,' the Court analyzed the facts of five cases in *World Trade Center* (the facts before it and those of four previous holdings). Those cases showed a clear pattern of similar injustices and subsequent claim-revival statutes that have been upheld follow the same pattern. It is only CPLR 214-j that would be a departure.

Each claim-revival statute analyzed by the Court in *World Trade Center* involved the legislature's attempt to cure a specific instance of an "identifiable injustice" against a particular plaintiff or class of plaintiffs due to unintended consequences of the initial statute of limitations, caused in each case by unexpected circumstances that made it unjust to hold plaintiffs to the time limit. *See World Trade Ctr.*, 30 N.Y.3d at 400. Three of those cases involved toxic torts where the timeline to discover either the latent injuries or the causal relationship between those injuries and the toxic exposure were utterly incompatible with the statute of limitations,[2] and the other two involved flukes of circumstance the initial statutes of limitation clearly failed to account for—one

---

[2] *Matter of McCann* upheld revival of workers' compensation claims arising from exposure to toxic substances where the delay between exposure and discovery of the injury was longer than the statute of limitations; *Hymowitz* upheld revival of claims brought by victims against a pharmaceutical manufacturer arising from medication taken by their mothers during pregnancy; and *World Trade Center* ultimately upheld revival of claims arising from first responders' exposure to harmful toxins "in the wake of an unprecedented terrorist attack." *See World Trade Ctr.*, 30 N.Y.3d at 397, 398, and 400 (discussing *Matter of McCann v. Walsh Constr. Co.,* 282 App. Div. 444 (3d Dept. 1953), *affd without op* 306 N.Y. 904 (1954); *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487 (1989)); and the facts before that court, respectively). *See also In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58, 62 (2d Cir. 2017) (the Second Circuit opinion in that same case, quoting the N.Y. State Assembly Memorandum Supporting Legislation, *reprinted in* Bill Jacket for 2009 A.B. 7122, Ch. 440, at 6 (July 17, 2009) as to the reasons for those plaintiffs' delayed knowledge about their claims and the unique circumstances of the 9/11 terrorist attack toxic exposures justifying claim-revival).

where a plaintiff was required to rely on an exclusive legal remedy that was then struck down as unconstitutional after her time to file legal suit expired,[3] and one involving financial crimes committed by a brokerage firm against a Dutch client while he was being held (and ultimately murdered) in a World War II Nazi concentration camp and which were not discovered until after the Netherlands were liberated from the Nazis and a curator was appointed to the client's estate.[4]

Importantly, *World Trade Center* did not substantively change or replace the applicable standard, but simply reconciled the Court's various holdings into a single articulated rule. *See World Trade Ctr.*, 30 N.Y.3d at 394 ("We do not read these cases to be in substantial disagreement; however, this case presents an opportunity for this Court to reconcile them and articulate a uniform standard of review."). Indeed, the Court of Appeals explicitly noted that "[t]he salient facts in each of *Robinson*, *Gallewski*, *McCann* and *Hymowitz* fall into the same pattern," and where courts have upheld subsequent claim-revival statutes (including in *World Trade Center*) they did so because the new statutes fit into that same pattern.

The legislature has accepted this pattern as well by identifying the injustice such statutes are meant to rectify in the legislative memorandums submitted with the bills to be enacted. For example, when the state legislature enacted CPLR 214-f to revive certain toxic torts following a particular discovery of contaminated drinking water, the legislative memorandum "Justification" section specifically noted that such potential plaintiffs do not discover their injuries—or the defendants' tortious conduct—until long after such claims are time-barred. *See Sweener v. St.-Gobain Performance Plastics Corp.*, 1-17-CV-0532-LEK-DJS, 2018 WL 748742, at *8 (N.D.N.Y.

---

[3] *See World Trade Ctr.*, 30 N.Y.3d at 395 (discussing *Robinson v. Robins Dry Dock & Repair Co.*, 238 N.Y. 271 (1924)).
[4] *See World Trade Ctr.*, 30 N.Y.3d at 396 (discussing *Gallewski v. H. Hentz & Co.*, 301 N.Y. 164 (1950)).

Feb. 7, 2018) (citing to the "Justification" section of that bill's sponsoring memorandum). Multiple courts explicitly relied on that legislative intent to find CPLR 214-f met the *World Trade Center* standard for remedying an injustice. *See Ibid*; *Andrick v. St.-Gobain Performance Plastics Corp.*, 1-17-CV-1058-LEK-DJS, 2018 WL 3068056, at *6 (N.D.N.Y. June 21, 2018); *Lucey v. St.-Gobain Performance Plastics Corp.*, 1-17-CV-1054-LEK-DJS, 2018 WL 2926289, at *5 (N.D.N.Y. June 11, 2018).

Similarly, when the New York legislature enacted CPLR 214-g as part of the Child Victims Act ("CVA") to revive claims stemming from childhood sexual abuse, the "Justification" section of the legislative memorandum submitted in support specifically noted that "New York is one of the worst states in the nation for survivors of child sexual abuse"; that current understanding of childhood trauma suggests that many such victims were unable to "come to terms with their abuse" sufficient to file suit until decades after expiration of the previous statute of limitations; and that this resulted in disenfranchising "thousands of survivors of child sexual abuse in New York State" **and** allowing their child abusers to "remain hidden from law enforcement and pose a persistent threat to public safety"—all of which CPLR 214-g was meant to rectify. *See* 2019 New York Senate Bill No. 2440, New York Two Hundred Forty-Second Legislative Session, Justification section.

Like the cases upholding CPLR 214-f, those finding CPLR 214-g constitutional did so specifically in reliance on this legislative justification. *See Torrey v. Portville Cent. School*, 66 Misc.3d 1225(A) (Sup. Ct. 2020) (quoting the legislative memorandum to find "[b]ased on that justification, the Court finds the Child Victims Act a reasonable response to remedy an injustice."); *Giuffre v. Dershowitz*, 19 CIV. 3377 (LAP), 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020) (finding the *World Trade Center* standard was satisfied specifically because "the CVA's claim-

revival provision obviously reflects the New York State Legislature's desire to correct a perceived injustice, i.e., that the statute of limitations for certain claims expired before child victims of sexual abuse recovered from past traumas to a degree sufficient to assert their rights.") (internal citations to the record before that court omitted); *PC-41 Doe v. Poly Prep Country Day School*, 590 F.Supp.3d 551, 562 (E.D.N.Y. 2021], *appeal dismissed sub nom. Doe v. Poly Prep Country Day School*, 21-2669, 2022 WL 14807756 (2d Cir. 2022) (quoting the first paragraph of the legislative memorandum Justification section in finding remedies an injustice under the *World Trade Center* standard); *PB-36 Doe v. Niagara Falls City School Dist.*, 72 Misc.3d 1052, 1059 (Sup. Ct. 2021) (quoting the legislative memorandum to find the CVA is constitutional); *Farrell v. United States Olympic & Paralympic Comm.*, 567 F.Supp.3d 378, 392 (N.D.N.Y. 2021) (relying on the logic of *PC-41 Doe* and *Giuffre* to uphold the CVA, and specifically citing to each of those cases' reliance on the legislative memorandum—particularly the legislature's intent to remedy "the statute of limitations for certain claims expired before child victims of sexual abuse recovered from past traumas to a degree sufficient to assert their rights.").

There is no similar specific injustice underpinning CPLR 214-j. The injuries at issue are not latent and the defendants' conduct is not hidden from the plaintiffs. Unlike with child victims, CPLR 214-j does not involve tolling based on victims' lack of competence and there are no legislative findings similar to the particularly insidious and long-term mental blocks caused by trauma against vulnerable minors.

Rather, the entirety of the Justification section of the legislative memorandum submitted in support of the bill ultimately enacted as CPLR 214-j consists of a few sentences summarizing

recently passed laws in New York and New Jersey,[5] followed by "[t]hose who have had justice denied them as a result of New York's formerly insufficient statutes of limitations should be given the opportunity to seek civil redress against their abuser or their abuser's enablers in a court of law." *See* 2021 New York Senate Bill No. 66, New York Two Hundred Forty-Fourth Legislative Session. There is no analysis, or even mention, of why the previous statutes of limitation were so insufficient as to cause an injustice under the *World Trade Center* standard.

Further analysis of the context in which the two statutes were passed further illustrates the dichotomy between the ASA and the CVA. The CVA's amendment to the relevant statute of limitations, CPLR 214-g, was thoughtfully constructed, inasmuch as it conjointly: (1) extended the statute of limitations on criminal cases involving certain sex offenses against children under 18, (CPL 30.10(3)(f)); (2) extended the time within which civil actions based upon such criminal conduct may be brought until the child victim reaches 55 years old (CPLR 208(b)); and (3) opened a one-year window reviving civil actions for which the statute of limitations has already run (even in cases that were litigated and dismissed on limitations grounds), commencing August 14, 2019 (CPLR 214-g). This serves as a stark contrast to ASA's statutory provision, CPLR 214-j, which applies broadly to *any* plaintiff and revives *any* qualifying claim. As opposed to the one-year look-back window of CPLR 214-g—which was passed in conjunction with, and as a supplement to, the extension of the CVA's statute of limitations to age 55—CPLR 214-j's look-back window was not passed in connection with any other durational provisions under the ASA. Thus, the lookback window serves no discernible purpose other than to temporarily eradicate the statute of limitations. Even if we were to accept that CPLR 214-j was passed as an extension of CPLR 213-c, the law

---

[5] Noting that New York extended the statute of limitations claims arising from certain sexual assault to twenty years in 2019, and that New Jersey revived stale claims for both childhood and adult sexual assault.

implemented in 2019 which extended the statute of limitations for sexual offenses to twenty years, there is no plausible justification as to why the lookback window of CPLR 214-j should *exceed* the twenty-years otherwise afforded under the 2019 amendment.

Plaintiff was approximately 52 years old when she claims the alleged incident occurred. She was unquestionably capable of asserting her claims within the then-five-year statute of limitations. The legislature has provided no reason—nor is any readily apparent—why Plaintiff's own neglect or refusal to bring an action within the applicable time period should be construed as an injustice against her. Even if that premise were to be accepted, the scope of CPLR 214-j would not be a reasonable response because the lookback window does not align with—and vastly exceeds—the extended twenty-year statute of limitations of period under the revised 2019 amendment. Under the original statute of limitations, defendant, and others similarly situated, could have investigated the circumstances and accumulated proof disputing the veracity of plaintiff's claims before the evidence went stale. That could have even been attempted under the newer, twenty-year statute of limitations. However, CPLR 214-j allows plaintiffs to bring suits like the one at bar—almost thirty years old and which would have been long expired even under the newer time limit—or even those arising fifty, sixty, or seventy years ago.

For the foregoing reasons, CPLR 214-j does not remedy any specific, identifiable injustice, but merely provides a second bite at the apple for claims that have been long since waived. However, this rationale is true of all claim-revival statutes and is plainly insufficient to outweigh such a serious infringement of due process. As a result, CPLR 214-j invariably violates the New York State Constitutional and is unsustainable as a matter of law.

## II.   PLAINTIFF HAS FAILED TO PLEAD COGNIZABLE DEFAMATION DAMAGES

To state a claim for defamation under New York law, the plaintiff must allege "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Cain v. Atelier Esthetique Inst. of Esthetics Inc.*, 733 Fed.Appx. 8, 11 (2d Cir. 2018) (citing *Elias v. Rolling Stone LLC,* 872 F.3d 97, 104 (2d Cir. 2017); *Stepanov v. Dow Jones & Co.,* 987 N.Y.S. 2d 37, 41-42 (1st Dep't 2014)). With respect to damages, the plaintiff must adequately allege that the defamation "either cause[d] special harm or constitute[s] defamation per se." *Peters v. Baldwin Union Free Sch. Dist*, 320 F.3d 164, 169 (2d Cir. 2003) (*quoting Dillon v. City of N.Y.*, 261 A.D.2d 34 (1st Dep't 1999)). Here, Plaintiff is unable to establish either. Therefore, her defamation claim must be dismissed.

### i.   *The October 12 Statement Does Not Constitute Defamation Per Se*

The New York Court of Appeals has recognized four narrowly defined categories of statements which are considered to be defamatory *per se*, including statements: "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992). In the Complaint, Plaintiff alleges that the October 12 statement fits within the second category, claiming that it is defamatory *per se* because it "tended to (and did) damage Carroll in her trade, occupation, and/or business[.]" Compl. ¶ 116. For the reasons outlined herein, Plaintiff's contention is misplaced.

"Determining whether a statement is defamatory per se is a question of law for the Court." *Stern v. Cosby*, 645 F. Supp. 2d 258, 288 (S.D.N.Y. 2009). "To find that a statement qualifies as one that tends to injure another in his or her 'trade, business, or profession,' the statement must be

made with reference to a matter of significance and importance for [the operation of the business], rather than a more general reflection upon the plaintiffs character or qualities." *Rufeh v. Schwartz*, 50 A.D.3d 1002, 1004-05 (2d Dep't 2008) (citations omitted). "[W]ords [such] as 'cheat,' 'dishonest,' 'immoral' and many others, if *generally* applied are not slanderous per se, but become such if applied to the plaintiff's trade, business or profession" because "[i]t is not sufficient that [such words] tend to injure plaintiff in his business, they must have been spoken of him *in his business*.'" *Gurtler v. Union Parts Mfg. Co., Inc.*, 285 A.D. 643, 646 (1st Dep't 1955) (emphasis added). In other words, to qualify as defamation *per se*, the allegedly defamatory statement "must be targeted at specific standards of performance that are *directly relevant* to the plaintiff's business and must impute conduct that is 'of a kind incompatible with the proper conduct of the business, trade, profession or office itself.'" *Tacopina v. Kerick*, 14-CV-749-LTS-FM, 2016 WL 1268268, at *4 (S.D.N.Y. Mar. 31, 2016) (citing *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011); *Van-Go Transp. Co. Inc. v. New York City Board of Education*, 971 F. Supp. 90, 98 (E.D.N.Y. 1997)).

In the instant matter, the October 12 Statement does not qualify as defamation *per se* because "it does not, on its face, defame [P]laintiff in her trade, business or profession." *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985). As noted in the Complaint, the October 12 Statement reads, in pertinent part, as follows:

> This 'Ms. Bergdorf Goodman case' is a complete con job, and our legal system in this Country, but especially in New York State (just look at Peekaboo James), is a broken disgrace. You have to fight for years, and spend a fortune, in order to get your reputation back from liars, cheaters, and hacks. This decision is from the Judge who was just overturned on my same case. I don't know this woman, have no idea who she is, other than it seems she got a picture of me many years ago, with her husband, shaking my hand on a reception line at a celebrity charity event. She completely made up a story that I met her at the doors of this crowded New York City Department Store and, within minutes, 'swooned' her. It is a Hoax and a lie, just like all the other Hoaxes that have been played on me for the past seven years.

> And, while I am not supposed to say it, I will. This woman is not my type! She has no idea what day, what week, what month, what year, or what decade this so-called 'event' supposedly took place. The reason she doesn't know is because it never happened, and she doesn't want to get caught up with details or facts that can be proven wrong. If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper. Our Justice System is broken along with almost everything else in our Country.
>
> […]
>
> In the meantime, and for the record, E. Jean Carroll is not telling the truth, is a woman who I had nothing to do with, didn't know, and would have no interest in knowing her if I ever had the chance. Now all I have to do is go through years more of legal nonsense in order to clear my name of her and her lawyer's phony attacks on me. This can only happen to 'Trump'!

Compl. ¶ 92.

Notably absent from the October 12 Statement is any language aimed at a particular skill or trait that reflects upon Plaintiff's competency as a ""writer, advice columnist, and journalist," Compl. ¶ 120, much less one of "significance and importance," *Rufeh,* 50 A.D.3d at 1005. Even read in a light most favorable to Plaintiff, the October 12 Statement is, at most, a general reflection upon Plaintiff's character or qualities, as it portrays her as a dishonest individual who "made up" a story about Defendant. Compl ¶ 92. Yet, it is well established that a "statement imputing . . . dishonesty to the plaintiff" may be construed as defamatory *per se* only if there is "some reference, direct or indirect, in the words or in the circumstances attending their utterance, which connects the charge of incompetence or dishonesty to the particular profession or trade engaged in by plaintiff." *Van Lengen v. Parr,* 136 A.D.2d 964 (4th Dep't 1988). Since the October 12 Statement does not peculiarly relate to Plaintiff's occupation as a "writer, advice columnist, and journalist," Compl. ¶ 120, it cannot be said that it imputes "conduct that is 'of a kind incompatible with the proper conduct" of her profession, *Tacopina,* 2016 WL 1268268 at *4.

Indeed, New York courts consistently find that these types of statements—which broadly refer to a person's dishonest nature—are insufficient to support a claim of defamation *per se*. *See, e.g., Davydov v. Youseffi*, 205 A.D.3d 881, 882 (1st Dep't 2022) ("While the plaintiff asserted in his affidavit that the defendant had called him a 'fraud' and that he 'operate[d] as a fake,' there are no allegations that these statements were specifically directed at the plaintiff in his professional capacity as a dentist."); *Pure Power Boot Camp*, LLC, 813 F. Supp. 2d at 551 (statements characterizing plaintiff as a "loose cannon" and a "liar" not defamatory *per se* because the statements reflected personal characteristics rather than reflections of professional competence); *Ram v. Moritt*, 205 A.D. 516 (2d Dep't 1994) (finding that statements referring to the plaintiff, a doctor, as a "a 'liar,' a 'cheat,' and a 'debtor'" did not constitute defamation *per se* because they "did not address the plaintiff's professional status as a doctor[.]").

Accordingly, Defendant is entitled to dismissal as a matter of law because the October 12 Statement lacks the defamatory construction that Plaintiff seeks to attribute to it. Plaintiff has failed to establish defamation *per se* because her allegation that Defendant made a statement calling into question her general character and morality does not in any way reflect on her ability to perform in a professional capacity, or otherwise "injure [her] in [] her trade, business or profession." *Liberman*, 80 N.Y.2d at 435.

### ii.    *Plaintiff Has Not Plead Any Special Damages*

Where, as here, the defamation alleged does not fall into one of the *per se* categories, the plaintiff must plead special damages. *Mable Assets, LLC v. Rachmanov*, 192 A.D.3d 998, 1001 (2d Dep't 2021) (citing *Liberman v. Gelstein,* 80 N.Y.2d 429, 434-435 (1992)).

To adequately plead special damages, a plaintiff must claim "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the

defamation." *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 179 (2d Cir. 2010) (citation and internal quotation marks omitted). The special harm must be "alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts." *Cambridge Assoc. v. Inland Vale Farm Co.*, 116 A.D.2d 684, 686 (2d Dep't 1986); *see also Franklin v. Daily Holdings*, 135 A.D.3d 87, 93 (1st Dep't 2015) ("Special damages consist of the loss of something having economic or pecuniary value, which must flow directly from the injury to reputation caused by the defamation and not from the effects of the defamation."). "The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." *Thai v. Cayre Group, Ltd.*, 726 F.Supp.2d 323, 330 (S.D.N.Y. 2010). Further, the requirement that special damages be pleaded with particularity flows not only from state law, but from the Federal Rules as well, which require that special damages be "specifically stated." Fed. R. Civ. P. 9(g). Accordingly, a plaintiff's failure to plead special damages with sufficient precision, in and of itself, warrants dismissal of a cause of action. *See Franklin*, 135 A.D.3d at 92.

In the instant matter, Plaintiff has not plead special damages at all. Her vague and conclusory claim that she "suffer[ed] reputational, emotional, and professional harm," Compl. ¶ 135, clearly does not suffice; this bare allegation of harm falls remarkably short of the stringent standard applied by New York courts to establish special damages. *See*, *e.g.*, *Celle,* 209 F.3d at 179 (special damages do not include damages for "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.") (citation omitted); *Salomone v. MacMillan Pub. Co., Inc.*, 77 A.D.2d 501, 502 (1st Dep't 1980) (noting that plaintiff "pleads no special damage" where he "claims damages for loss of reputation and for mental anguish."); *Sharratt v. Hickey*, 20 A.D.3d 734, 736 (3d Dep't 2005) ("General testimony regarding

humiliation and loss of reputation in the community is insufficient to prove special damages."); *Franklin*, 135 A.D.3d at 93 ("[A]lthough plaintiff states the ways in which he believes his career was damaged as a result of the article, he fails to state more than a round figure of $3,000,000 when alleging his damages, which is insufficient to state special damages."); *Drug Research Corp. v Curtis Pub. Co.*, 7 N.Y.2d 435 (1960) ("[S]pecial damage must be fully and accurately stated. If the special damage was a loss of customers the persons who ceased to be customers, or who refused to purchase, must be named. [I]f they are not named, no cause of action is stated."); *Garland v. Vermilyea*, 88 A.D.2d 1044 (3d Dep't 1982) ("The allegation that plaintiff 'was required to expend large sums of money' does not allege special damages for it is of insufficient particularity . . . as is the claim that plaintiff has been damaged in the round figure of $1,000,000.") (citations omitted); *Jordan v. Tucker, Albin and Assoc., Inc.*, 3-CV-6863-JMA-SIL, 2017 WL 2223918, at *10 (E.D.N.Y. May 19, 2017) ("'Emotional distress, 'hurt feelings,' 'embarrassment,' or 'chagrin' do not constitute 'special damages.'") (citations omitted).

Thus, due to Plaintiff's failure to identify the "loss of something having economic or pecuniary value" with the requisite degree of particularity, she is unable to establish a claim for special damages. Since Plaintiff is also unable to cannot maintain a claim for defamation *per se*, her defamation claim fails as a matter of law based on the absence of cognizable damages.

## **CONCLUSION**

For the foregoing reasons, Defendant, Donald J. Trump, respectfully requests this Court

grant his motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).


Dated: December 21, 2022                          Respectfully submitted,

Alina Habba, Esq.
Michael T. Madaio, Esq.
Habba Madaio & Associates LLP
1430 US Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com

*Attorneys for Defendant, Donald J. Trump*