# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| E. JEAN CARROLL, | |
| Plaintiff, | |
| v. | No. 22 Civ. 10016 (LAK) |
| DONALD J. TRUMP, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Roberta A. Kaplan
Shawn G. Crowley
Trevor W. Morrison
   (*pro hac vice* application
   forthcoming)
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, D.C. 20001
Telephone: (212) 742-2661
Facsimile: (212) 564-0883
jmatz@kaplanhecker.com

*Attorneys for Plaintiff E. Jean Carroll*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STANDARD OF REVIEW ................................................................................................ 2

ARGUMENT ...................................................................................................................... 2

    I.    THE ADULT SURVIVORS ACT IS CONSTITUTIONAL ................................. 2

    II.   TRUMP'S STATEMENTS CONSTITUTE DEFAMATION *PER SE* ............................. 13

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*ARK3 Doe v. Diocese of Rockville Ctr.*,
   No. 900010/2019, 2020 N.Y. Misc. LEXIS 1964
   (N.Y. Sup. Ct. Nassau Cty. May 11, 2020) ............................................................... 5

*Armstrong v. Simon & Schuster, Inc.*,
   85 N.Y.2d 373 (1995) .................................................................................................. 16

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937 (2009) ......................................................................... 2

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955 (2007) ......................................................................... 2

*Celle v. Filipino Reporter Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000) ........................................................................... 14, 15, 16

*Davydov v. Youssefi*,
   169 N.Y.S.3d 322 (1st Dep't 2022) ............................................................................ 16

*Edwards v. Nat'l Audubon Soc., Inc.*,
   556 F.2d 113 (2d Cir. 1977) ........................................................................................ 16

*Farrell v. U.S. Olympic & Paralympic Comm.*,
   567 F. Supp. 3d 378 (N.D.N.Y. 2021) ........................................................................ 5

*Giuffre v. Andrew*,
   579 F. Supp. 3d 429 (S.D.N.Y. 2022) ............................................................... *passim*

*Giuffre v. Dershowitz*,
   No. 19 Civ. 3377, 2020 WL 2123214 (S.D.N.Y. Apr. 8, 2020) ........................... 3, 4, 5

*Gong v. Savage*,
   169 N.Y.S.3d 511 (Table) (N.Y. Sup. Ct. N.Y. Cty. 2022) ......................................... 16

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
   30 N.Y.3d 377 (2017) ....................................................................................... *passim*

*Levy v. Nissani*,
   115 N.Y.S.3d 418 (2d Dep't 2020) .............................................................................. 16

*Lindberg v. Dow Jones & Co., Inc.*,
   No. 20 Civ. 8231, 2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021) ............................... 2

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
   753 F.3d 395 (2d Cir. 2014) ................................................................................. 2

*Pardovani v. Crown Bldg. Maint. Co.*,
   No. 15 Civ. 9065, 2020 WL 2555280 (S.D.N.Y. May 20, 2020)............................................ 13

*PB-36 Doe v. Niagara Falls City Sch. Dist.*,
   152 N.Y.S.3d 242 (N.Y. Sup. Ct. Niagra Cty. 2021) ...................................................... 5

*PC-41 Doe v. Poly Prep Country Day Sch.*,
   590 F. Supp. 3d 551 (E.D.N.Y. 2021) ................................................. 4, 5, 11, 12

*Plaut v. Spendthrift Farm, Inc.*,
   514 U.S. 211, 115 S. Ct. 1447 (1995).................................................................... 2

*Pure Power Boot Camp, v. Warrior Fitness Boot Camp, LLC*,
   813 F. Supp. 2d 489 (S.D.N.Y. 2011) ................................................................ 16

*Ram v. Moritt*,
   612 N.Y.S.2d 671 (2d Dep't 1994)..................................................................... 16

*Stern v. Cosby*,
   645 F. Supp. 2d 258 (S.D.N.Y. 2009) ................................................................ 14

*Sweener v. Saint-Gobain Performance Plastics Corp.*,
   No. 17 Civ. 532, 2018 WL 748742 (N.D.N.Y. Feb. 7, 2018) ................................... 3

*Sweener v. Saint-Gobain Performance Plastics Corp.*,
   No. 17 Civ. 532, 2018 WL 2229133 (N.D.N.Y. May 16, 2018)........................... 11, 13

*Torrey v. Portville Cent. Sch.*,
   No. 88476, 125 N.Y.S.3d 531 (Table) (N.Y. Sup. Ct. Cattaraugus Cty. Feb. 21, 2020) .......... 5

*Yukos Cap. S.A.R.L. v. Feldman*,
   No. 15 Civ. 4964, 2016 WL 4940200 (S.D.N.Y. Sept. 14, 2016)............................... 2

**Statutes**

N.Y. Crim. Pro. Law § 30.10 ...................................................................... 7

N.Y. C.P.L.R. § 213-c.......................................................................... 6, 7, 13

N.Y. C.P.L.R. § 214-g .............................................................................. 4

N.Y. C.P.L.R. § 214-j ............................................................................. 7, 8

**Rules**

F.R.C.P. 12(b)(6) .................................................................................. 2

**Other Authorities**

2022 Reg. Sess. N.Y. Senate Bill S.66A (April 26, 2022) .......................................................... 4, 8

2022 Reg. Sess. N.Y. Assembly Bill A.66A (May 23, 2022) ........................................... 4, 7, 8, 9

2022 Sess. Law News of N.Y. Legis. Memo Ch. 203 .................................................................. 10

## PRELIMINARY STATEMENT

Plaintiff E. Jean Carroll is a journalist and advice columnist who was sexually assaulted by Defendant Donald J. Trump in the mid-1990s. Carroll immediately told two friends about the rape. But she then remained silent for over two decades, convinced that Trump would destroy her if she spoke up, that society and the legal system would side with Trump (who was already famous and powerful), that she was somehow to blame for being raped, and that being labeled a victim would jeopardize her hard won professional achievements. It was not until 2019—after #MeToo and the death of her mother—that Carroll decided to come forward. She ended her silence precisely the way one might expect from a professional writer: by sharing her account on her own terms, in her own voice, in an autobiographical book. Trump responded with a series of defamatory statements. Most recently (and at issue here), Trump stated on October 12, 2022, that Carroll "completely made up a story," that her accusations were "a Hoax and a lie," and that she was perpetuating a "complete Scam" while "promoting a really crummy book." Carroll seeks redress in this lawsuit, which alleges a claim of battery for the sexual assault and defamation for Trump's statements.

Trump's first and principal argument is that Carroll's battery claim is time-barred. Conceding that the claim has recently been revived by New York's Adult Survivors Act (ASA), Trump insists that the ASA violates the Due Process Clause of the New York State Constitution. He is mistaken: the ASA is a reasonable measure passed by the New York legislature to remedy an identifiable injustice. Trump's assertion that the ASA is unconstitutional because adult victims of sexual assault have only themselves to blame for not coming forward sooner is offensive and wrong. Indeed, Trump does not even cite this Court's on-point opinion in *Giuffre v. Andrew*, 579 F. Supp. 3d 429 (S.D.N.Y. 2022)—which the Court raised with his counsel at the status conference on December 21, 2022, and which fatally undercuts his attack on the ASA.

Trump's challenge to Carroll's defamation claim is equally meritless: his statements were defamatory *per se* under New York law, so Carroll had no obligation to plead special damages.

Trump's motion to dismiss should therefore be denied in its entirety.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint need only plead "'enough facts to state a claim to relief that is plausible on its face.'" *Lindberg v. Dow Jones & Co., Inc.*, No. 20 Civ. 8231, 2021 WL 3605621, at *3 (S.D.N.Y. Aug. 11, 2021) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)). A claim is facially plausible when the factual content pleaded allows a federal court "'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Yukos Cap. S.A.R.L. v. Feldman*, No. 15 Civ. 4964, 2016 WL 4940200, at *2 (S.D.N.Y. Sept. 14, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009)). A district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted).

## ARGUMENT

## I.   THE ADULT SURVIVORS ACT IS CONSTITUTIONAL

Trump contends that the ASA is unconstitutional because it does not address an "injustice" and, even if it did, it would not be a "reasonable response." Br. at 11-13. His position is baseless.

### A.   The Applicable Standard

"Claim-revival statutes generally pose no issue under the Fourteenth Amendment to the United States Constitution." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 394 (2017) ("*WTC*") (citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 229, 115

S. Ct. 1447, 1458 (1995)). Although New York state courts once viewed such statutes with doubt, that has not been true for quite some time. *See Giuffre v. Dershowitz*, No. 19 Civ. 3377, 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020) ("[T]he New York Courts' historical skepticism of claim-revival provisions appears to be just that: historical."). Indeed, "every time [the New York Court of Appeals] has considered the issue in the past it has upheld the legislature's claim-revival statute as a proper response to the problem the legislature sought to address." *WTC*, 30 N.Y.3d at 405 (Rivera, J., concurring); *accord Sweener v. Saint-Gobain Performance Plastics Corp.*, No. 17 Civ. 532, 2018 WL 748742, at *8 (N.D.N.Y. Feb. 7, 2018) ("The Court is unaware of any New York court ever striking down a claim-revival statute under the Due Process Clause.").[1]

As this Court recently explained—in a decision not mentioned at all in Trump's brief—"the test for whether a claim-revival statute runs afoul of the New York Due Process Clause is simply whether the revival statute is 'a reasonable measure to address an injustice.'" *Giuffre v. Andrew*, 579 F. Supp. 3d 429, 453 (S.D.N.Y. 2022) (quoting *WTC*, 30 N.Y.3d at 400). In other words, if "there exist[s] an identifiable injustice that move[s] the legislature to act," the only remaining constitutional question is whether the legislature's "revival of the plaintiff's claims for a limited period of time [is] reasonable in light of that injustice." *WTC*, 30 N.Y.3d at 399-400.

In describing how to apply this standard, the New York Court of Appeals has adopted a highly deferential posture consistent with the legislature's constitutional role. Under that approach, courts are not meant to probe "whether a particular injustice is 'serious' or whether a particular class of plaintiffs is blameless; such moral determinations are left to the elected branches of government." *Id.* at 400. Instead, the judicial inquiry is limited to asking whether the legislature

---

[1] Trump admits that the ASA does not violate the Due Process Clause of the United States Constitution. Therefore, any such federal constitutional claim is waived and forfeited. *See* Br. at 7.

sought to "address an injustice." *Id.* If so, the only remaining question is "merely" whether the legislature's enactment "was a reasonable measure to address [that] injustice." *Dershowitz*, 2020 WL 2123214, at *2. "[A] more heightened standard"—such as a requirement that the covered plaintiffs were previously unable to bring a timely claim—"'would be too strict' because '[i]n the context of a claim-revival statute, there is no principled way for a court to test whether a particular injustice is "serious" or whether a particular class of plaintiffs is blameless.'" *PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 561 (E.D.N.Y. 2021) (citations omitted).

The proper application of this test is exemplified by recent cases upholding New York's Child Victims Act (CVA), a law that is not only highly analogous to the ASA, but that New York legislators used as their model when enacting it. *See* 2022 Reg. Sess. N.Y. Assembly Bill A.66A (May 23, 2022) at 35, 46; 2022 Reg. Sess. N.Y. Senate Bill S.66A (April 26, 2022) at 2708. Under the CVA, the New York legislature established a two-year claim-revival window for individuals who had suffered sexual assault or similar abuse as a minor. *See* N.Y. C.P.L.R. § 214-g. In upholding the CVA, this Court rejected the argument that there was no cognizable injustice for certain plaintiffs because they "became adults at a time when they could have brought suit before the statute of limitations period expired." *Giuffre*, 579 F. Supp. 3d at 453-54. The Court reasoned that "such moral determinations" about how "serious" the injustice was and whether "a particular class of plaintiffs is blameless" were properly left to the New York legislature. *Id.* (quoting *WTC*, 30 N.Y.3d at 400); *see also PC-41 Doe*, 590 F. Supp. 3d at 561 (rejecting the view that a claim-revival statute is constitutional "only if the covered plaintiffs had a 'total and practical inability to bring a timely claim'"). This Court then found "a range of legislative judgments [that] undergird the provision's patent constitutionality." *Giuffre*, 579 F. Supp. 3d at 454. These judgments—each of which was "capable of insulating [the law] from a New York Due Process Clause challenge"—

included a recognition of injustices resulting from "New York's comparatively restrictive limitations period for sexual abuse claims, improved understanding of victims' barriers to coming forward with those claims, and the imminent threat that abusers pose to public safety." *Id.*[2]

Having identified injustices that the CVA aimed to remedy, the Court then considered the reasonableness of the CVA and easily found that it passed muster. *See id.* at 455 ("[O]ur attention has not been called to any state or territory that ever has adopted a sexual abuse claim-revival window shorter than one year."); *see also PC-41 Doe*, 590 F. Supp. 3d at 564 (rejecting the argument that "the CVA should have been limited in some respect to cut off claims from long ago," since "the Legislature is entitled to make determinations about 'fair[ness]' across plaintiffs").

As these cases make clear, the ASA passes constitutional muster so long as the New York legislature passed it to address an injustice and the law reflects a reasonable effort to do so.

### B.    The ASA Addresses a Legislatively Identified Injustice

The legislative record demonstrates that New York enacted the ASA to address many of the same injustices that motivated enactment of the CVA: namely, an unduly restrictive limitations period for sexual abuse claims, a historical failure to recognize the trauma and structural barriers that prevented victims from coming forward with sexual assault claims, and a regime that failed to ensure perpetrators of sexual assault were held accountable. *See Giuffre*, 579 F. Supp. 3d at 454.

The ASA did not emerge out of nowhere. It reflected a series of legislative reforms sparked by the #MeToo movement that began in 2017 with allegations of sexual misconduct against the

---

[2] *See also Farrell v. U.S. Olympic & Paralympic Comm.*, 567 F. Supp. 3d 378, 391-93 (N.D.N.Y. 2021); *Dershowitz*, 2020 WL 2123214, at *2; *PB-36 Doe v. Niagara Falls City Sch. Dist.*, 152 N.Y.S.3d 242, 247-48 (N.Y. Sup. Ct. Niagra Cty. 2021); *ARK3 Doe v. Diocese of Rockville Ctr.*, No. 900010/2019, 2020 N.Y. Misc. LEXIS 1964, at *5-*15 (N.Y. Sup. Ct. Nassau Cty. May 11, 2020); *Torrey v. Portville Cent. Sch.*, No. 88476, 125 N.Y.S.3d 531 (Table), at *4-*5 (N.Y. Sup. Ct. Cattaraugus Cty. 2020).

well-known movie producer Harvey Weinstein.[3] The #MeToo movement helped society begin to grasp an important truth already known to survivors of sexual assault: revealing such abuse can be an extraordinarily arduous, traumatic, and ultimately damaging process. Of course, that was particularly true when the abusers were rich and powerful, the legal system was inadequate to the task, and the public was inclined to blame and victimize women who dared to speak up.[4] The #MeToo movement involved a fundamental reexamination of these issues that prompted a wide range of law reform efforts—including calls to address the barriers posed by unduly short and rigid limitations periods for civil and criminal claims related to sexual assault.[5]

New York's early legislative response to these developments included a 2019 statute that extended the limitations period from five to 20 years for civil claims that involve conduct constituting certain sexual offenses. *See* N.Y. C.P.L.R. § 213-c. This measure reflected the New York legislature's judgment that the existing limitations period risked grave injustice: "Statutes of limitations on sexual offense cases impose a ticking clock on how long victims are able to come

---

[3] *See* Jodi Kantor & Megan Twohey, *Harvey Weinstein Paid Off Sexual Harassment Accusers for Decades*, N.Y. Times (Oct. 5, 2017); Ronan Farrow, *From Aggressive Overtures to Sexual Assault: Harvey Weinstein's Accusers Tell Their Stories*, New Yorker (Oct. 10, 2017); Jamillah Bowman Williams, et. al., *#MeToo as Catalyst: A Glimpse into 21st Century Activism*, 2019 U. Chi. Legal F. 371, 374 (2019) (tracing the inception of #MeToo to the New York Times' reporting that detailed Weinstein's sexual assaults and harassment of numerous women).

[4] *See* Kantor, *supra* n.3 ("Some [victims of sexual assault and harassment] said they did not report the behavior because there were no witnesses and they feared retaliation by Mr. Weinstein. Others said they felt embarrassed."); Farrow, *supra* n.3 ("[One survivor] experienced 'horror, disbelief, and shame,' and considered going to the police. 'I thought it would be a "he said, she said," and I thought about how impressive his legal team is, and I thought about how much I would lose, and I decided to just move forward.'"); Anna North, *How Harvey Weinstein's First Accusers Paved the Way for More*, Vox (Oct. 12, 2017) ("Once enough women have spoken publicly, they set off a domino effect, in which many more women feel safe enough to come forward. Unfortunately, this often happens years or even decades after the first alleged incidents took place."); Jeannie Suk Gersen, *Bill Cosby's Crimes and the Impact of #MeToo on the American Legal System*, New Yorker (Apr. 27, 2018) ("[A] basic concept of #MeToo is the power of numbers across time: the difference between a single victim, whose lone account might not be believed, and the choruses of 'me too' that make each individual's account that much more believable."); *see also, e.g.*, Chanel Miller, Know My Name: A Memoir (2019); Bowman Williams, *supra* n.3 at 392.

[5] *See, e.g.*, Joseph A. Seiner, *Time, Equity, and Sexual Harassment*, 12 UC Irvine L. Rev. 573, 603-612 (2022); Lesley Wexler, *#MeToo and Law Talk*, 2019 U. Chi. Legal F. 343, 356-57 (2019); Ramit Mizrahi, *Sexual Harassment Law After #MeToo: Looking to California as a Model*, 128 Yale L.J. Forum 121, 143 (2018); Patrice Apodaca, Opinion, *Statutes of Limitations Warrant Reexamination in the #MeToo Era*, L.A. Times (Sept. 17, 2018); Deborah Tuerkheimer, Opinion, *Let's Ease Statutes of Limitations in Rape Cases,* Wash. Post. (May 25, 2018).

forward if they want to seek charges," and "[f]or crimes of sexual violence in particular, the clock ticks against the trauma and culture of silence that prevents victims from speaking out." 2019 New York Senate Bill No. 6574. Section 213-c's legislative statement noted that as a result of #MeToo, "victims who have suffered in silence for decades have bravely spoken about their abuse, and have also laid bare the state's limited ability to prosecute their abusers due to the passage of time." *Id.* Indeed, "[i]n recognition of this fact, states across the country are lengthening or eliminating the statutes of limitations on crimes of sexual violence." *Id.*[6] This same package of legislation also extended New York's criminal statute of limitations for sexual assault, which had previously been among the shortest in the nation; these changes included lengthening the period for second-degree rape from five to 20 years and for third-degree rape from five to 10 years. *See* N.Y. Crim. Pro. Law § 30.10.[7]

The passage of § 213-c, while clearly important, was not enough to address the persistent, fundamental injustices that New York legislators sought to remedy. As Assemblymember Linda Rosenthal explained while co-introducing the ASA with Senator Brad Hoylman, although § 213-c afforded enhanced prospective protection for survivors of sexual assault in New York, it "left so many survivors who had already missed their chance out in the cold with no opportunity for justice." 2022 Reg. Sess. N.Y. Assembly Bill A.66A (May 23, 2022) at 35.

Moved to remedy this injustice, the legislature enacted the ASA in May 2022 as N.Y. C.P.L.R. § 214-j. The ASA provides that "notwithstanding" any limitations period or condition precedent to filing suit, "every civil claim or cause of action brought against any party" alleging

---

[6] *See* Rebecca Beitsch, *#MeToo Has Changed Our Culture. Now It's Changing Our Laws*, Pew Charitable Trusts (July 31, 2018) ("Legislators also have cited the #MeToo movement in passing legislation to . . . extend the statute of limitations for victims who want to file civil lawsuits against their abusers.").

[7] *See also* Rob Frehse & Lauren del Valle, *New State Law Extends the Statute of Limitations for Rape in New York*, CNN (Sept. 18, 2019).

specified sexual offenses "is hereby revived" and may be filed "not earlier than six months after, and not later than one year and six months after[,] the effective date of this section." In any such action, "dismissal of a previous action . . . on grounds that such previous action was time barred, and/or for failure of a party to file a notice of claim or a notice of intention to file a claim, shall not be grounds for dismissal of a revival action pursuant to this section." Simply put, the ASA allows otherwise time-barred civil claims arising from sexual assault to be filed within a one-year period.

As the legislative record demonstrates, the ASA exists to remedy a serious injustice that was long ignored and misunderstood: specifically, the injustice of imposing an unduly short statute of limitations on survivors of sexual assault, many of whom were traumatized by the experience and its aftermath and were thus unable to obtain redress or accountability within the limitations period. *See* 2022 Reg. Sess. N.Y. Assembly Bill A.66A (May 23, 2022) at 24-25 (Assemblymember Linda Rosenthal) ("Sexual assault [] has its own special kind of trauma that takes survivors a lengthy period of time to grapple with."); *id.* at 39 (Assemblymember David Weprin) ("It takes years sometimes to come to terms with this type of abuse."); *id.* at 40-41 (Assemblymember Catalina Cruz) (explaining that the former statutes of limitations "fail[ed] to account for human nature, for the trauma that impacts survivors and their ability to come forward and seek justice," and that the ASA "recognize[s] that the mind responds different to sexual trauma, that it can prevent someone from coming forward"); *id.* at 44 (Assemblymember Anna Kelles) (stating that the ASA "honor[s] all the time that [survivors of sexual assault] need so that [they] can heal and still have [their] experience brought to justice"); 2022 Reg. Sess. N.Y. Senate Bill S.66A (April 26, 2022) at 2707-08 (Senator Brad Hoylman) (the ASA recognizes "that trauma takes time—sometimes years, sometimes decades—to process," and so the legislature had a "solemn responsibility" through the ASA to "correct" the "narrow window" previously afforded

to "adult survivors of sexual abuse"); *id.* at 2705 (Senator Robert Jackson) ("[B]y the time that adult survivors get the help that they need and finally can take action against their abusers, it's too late to do anything about it legally.").

Legislators identified other injustices that the ASA was intended to address. Some noted that it would finally allow survivors of sexual assault to hold their abusers accountable—a worthy goal in its own right. *See, e.g.*, 2022 Reg. Sess. N.Y. Assembly Bill A.66A (May 23, 2022) at 42 (Assemblymember Emily Gallagher) (observing that "for so long, survivors have had to keep their experiences in the shadows and to feel shame, and to live forever in the shadow of the power and abuse of those who perpetrated it," and the ASA will allow those victims to "come out and speak out, and . . . forever hold people accountable for their intimate violence and their actions"); *id.* at 46 (Assemblymember Judy Griffin) (the ASA will "empower those who have been harmed by others, no matter their age, so they may hold their perpetrators accountable if they choose"). Others stated that the ASA would ensure that predators did not benefit from New York's comparatively short limitations period. *See Governor Hochul Signs Adult Survivors Act*, N.Y. ST. (May 24, 2022) (Statement of Senator Brad Hoylman) (stating that the law addresses "predators who for decades have benefitted from New York's prohibitively short statutes of limitations"); *id.* (Statement of Assembly Speaker Carl Heastie) ("The Adult Survivors Act is critical to ensuring that every survivor of sexual abuse is able to have their day in court and experience a sense of justice. This legislation builds on our previous work to deliver justice to survivors of childhood sexual abuse and sends a clear message that perpetrators will be held accountable.").

These purposes are reflected in the ASA's legislative memorandum. This memo stated that the ASA's purpose is to provide a remedy for survivors who "had justice denied them as a result of New York's formerly insufficient statutes of limitations," which failed to give "survivors of []

9

heinous crimes enough time to pursue" their civil claims. 2022 Sess. Law News of N.Y. Legis. Memo Ch. 203. The memo explained that the ASA would provide adult survivors with previously time-barred claims—individuals who did *not* benefit from the 2019 amendment—"the opportunity to seek civil redress against their abuser or their abuser's enablers in a court of law." *Id.*

Under this Court's decision in *Giuffre*—and under a direct application of New York Court of Appeals precedent—these legislative determinations are sufficient to identify an injustice that the ASA seeks to remedy. In fact, as noted at the outset of this discussion, the ASA seeks to remedy numerous independently sufficient injustices, as it aims to address an unduly restrictive limitations period for sexual abuse claims, an improved understanding of the trauma and structural barriers that have long prevented victims from coming forward with sexual assault claims, and a desire to ensure that perpetrators of sexual assault are held accountable. *See Giuffre*, 579 F. Supp. 3d at 454.

Trump, however, asserts (without support) that "the legislature has provided no reason— nor is any readily apparent—why Plaintiff's own neglect or refusal to bring an action within the applicable time period should be construed as an injustice against her." Br. at 13. More broadly, Trump contends that there is no imaginable injustice in holding adult survivors of sexual assault to the original limitations period. In support of this position, he implies that the CVA was upheld for only a single reason (which in his view does not apply here): namely, that it applied to juvenile victims who "lack[ed] competence" to sue and suffered from a "particularly insidious and long-term mental block" justifying the revival of otherwise-barred civil claims. Br. at 11.

Every premise and every conclusion of Trump's argument is wrong. The CVA was enacted to address a range of injustices, each of which this Court found to be independently sufficient. *See Giuffre*, 579 F. Supp. 3d at 454. The ASA addresses the very same injustices, yet Trump ignores all of them but one. And with specific respect to the one injustice that Trump discusses—namely,

the injustice of imposing a short limitations bar on people traumatized by a sexual assault—the legislature concluded that this concern applies to adults as well as juveniles. While Trump would have the Court blame adult survivors of sexual assault for not speaking up and filing claims sooner, there is no basis in law or fact for that position, and in all events that moral judgment is not his to make. While Trump may not grasp (or care about) the profound barriers that impede many survivors of adult sexual assault from filing suit, his opinion "was not shared by the Legislature." *Sweener v. Saint-Gobain Performance Plastics Corp.*, No. 17 Civ. 532, 2018 WL 2229133, at *5 (N.D.N.Y. May 16, 2018). To the extent Trump believes that legislators painted with too broad a brush in reviving claims for all adult survivors, precedent rejects his effort to tailor the statute as he sees fit. *See Giuffre*, 579 F. Supp. 3d at 454; *PC-41 Doe*, 590 F. Supp. 3d at 561; *WTC*, 30 N.Y.3d at 400. And as for Carroll herself, the Complaint—which Trump ignores—makes clear with highly particularized factual allegations that her experience exemplifies the very same injustices that the ASA exists to remedy in the first place. *See* Compl. ¶ 4 ("Carroll knew then that sexual assault was pervasive. She also knew that men have been assaulting women and getting away with it since before she was born. And she knew that while a woman who accused *any* man of rape was rarely believed, a woman who accused a rich, famous, violent man of rape would probably lose everything. She therefore reasonably concluded that if she accused Donald Trump of rape he would bury her in threats and lawsuits, and she would probably lose her reputation, not to mention everything she had worked for and achieved."); *see also id.* at ¶¶ 5-10, 47-55, 61-100.

## C.    The ASA is a Reasonable Measure to Remedy its Targeted Injustice

This leaves only Trump's assertion that the ASA is not a reasonable measure to remedy the injustices described above. Here, he essentially raises a narrow-tailoring argument: he says that the ASA is too broad because its lookback window exceeds the revised 20-year limitations period

under § 213-c, but he also insists that the ASA is too narrow because it does not concurrently enact a series of other potential changes to New York law governing claims by adult survivors of sexual assault. *See* Br. at 12-13. While such arguments might theoretically be relevant if the standard of review to be applied here were some form of strict or intermediate scrutiny, the standard applicable under New York's Due Process Clause is instead mere reasonableness. *See, e.g.*, *WTC*, 30 N.Y.3d at 400 (adopting the reasonableness standard and explaining that "[a] more heightened standard would be too strict"); *Giuffre*, 579 F. Supp 3d. at 453 (applicable standard asks "simply whether the revival statute is 'a reasonable measure to address an injustice'"); *PC-41 Doe*, 590 F. Supp.3d at 563 (determining that the CVA is a reasonable measure because it is not "arbitrary").

The ASA easily meets that highly deferential standard. *See Giuffre*, 579 F. Supp. 3d at 455 (upholding the CVA's two-year claim-revival window and stating that "[i]t is difficult to imagine substantially narrower measures capable of addressing the injustices animating the CVA"). Given the nature of the injustices that the ASA exists to remedy, there is no obvious reason why it should be limited to survivors who were sexually assaulted 20 (or 10, or 15, or 25) years ago, and it was within the legislature's discretion to decline to adopt any such arbitrary limitation. *See PC-41 Doe*, 590 F. Supp. 3d at 561 ("[T]o the extent Defendants' argument implies that the CVA should have been limited in some respect to cut off claims from long ago . . . such an argument ignores that the Legislature is entitled to make determinations about 'fair[ness]' across plaintiffs."). Indeed, many of the injustices that the ASA seeks to address were even *more* pronounced in our society decades ago, and it therefore makes good sense for the legislature to revive claims from that period. *Cf. id.* at 564 ("[T]he very harm the CVA seeks to address is one that the Legislature evidently believed can take many years to be recognized and acted upon."). To the extent Trump's objection is that it

may be difficult to prove or defend claims revived from longer ago, that same position was raised and rightly rejected in the CVA context. *See id.*; *see also Giuffre*, 579 F. Supp. 3d at 455.

Trump separately complains that the New York legislature did not undertake still more expansive reforms, as it did in the CVA. *See* Br. at 12-13. But "[t]he Legislature is surely permitted to respond to society's numerous injustices in a piecemeal fashion." *Sweener*, 2018 WL 2229133, at *5. That is particularly true in light of the fact that New York had *already* extended the statute of limitations for sexual assault claims that adults might file in the future. *See* N.Y. C.P.L.R. § 213-c. Trump offers no authority for the proposition that claim revival statutes must be paired with other legislative reforms to comply with the New York Due Process Clause, and there is no reason to fashion such a requirement. *See Sweener*, 2018 WL 2229133, at *5 ("[D]ue process cannot require that a claim revival statute should fail for underinclusively addressing injustice, because this requirement would result in the failure of nearly every conceivable revival statute.").

For these reasons, Trump's contention that the ASA is unconstitutional should be rejected, and his motion to dismiss Carroll's claim for battery should be denied.

## II.    TRUMP'S STATEMENTS CONSTITUTE DEFAMATION *PER SE*

Trump's argument for dismissal of Carroll's new defamation claim fares no better because the statements at issue in this case clearly qualify as defamatory *per se* under New York law.

To state a claim for defamation, a plaintiff must allege that (1) the defendant published a statement of fact to a third party, (2) the statement was false, (3) the false statement was made with the applicable level of fault, and (4) either the false statement was defamatory *per se* or it caused the plaintiff special harm. *Pardovani v. Crown Bldg. Maint. Co.*, No. 15 Civ. 9065, 2020 WL 2555280, at *8 (S.D.N.Y. May 20, 2020). With respect to the fourth element—the only one that Trump disputes in his motion—a statement qualifies as defamatory *per se* if it "affect[s] a person

in [her] profession, trade, or business by imputing to [her] any kind of fraud, dishonesty, misconduct, incapacity, unfitness or want of any necessary qualification in the exercise thereof." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 180 (2d Cir. 2000) (citation omitted). With respect to such statements, "the law dispenses with the special damages requirement … because [they] are considered so inflammatory and offensive that the law presumes the statements to have caused damage." *Stern v. Cosby*, 645 F. Supp. 2d 258, 289 (S.D.N.Y. 2009). Thus, when a statement "impugns the basic integrity or creditworthiness of [a person's] business," "an action for defamation lies and injury is conclusively presumed." *Celle*, 209 F.3d at 179 (citation omitted).

That standard is plainly met in this case. Carroll is a journalist and advice columnist for whom integrity and trustworthiness are integral to her professional undertakings. Compl. ¶¶ 13, 56, 77, 120. She made a successful career offering honest and heartfelt guidance to women, especially women facing challenges related to sex, men, and relationships. *Id.* ¶¶ 56-60. In the course of that work, she offered advice to women confronting sexual abuse. *See id.* When Carroll published a book in 2019 about other women's past experiences with the men in their lives, she understood that she would not be meeting her own standards of candor if she failed to discuss her own experiences as a survivor of sexual assault. *Id.* ¶¶ 74, 77. She knew that being honest about those experiences was crucial to maintaining trust with her readers and, therefore, to the success of her ongoing and future professional endeavors. *See id.* ¶¶ 72-74.

In his Truth Social post, Trump attacked Carroll in her profession and business. He not only blasted her for spreading a "Hoax and a lie"—insisting that she was "not telling the truth," the rape "never happened," he "ha[d] no idea who she is," and she had "completely made up a story"—but he also expressly tied those attacks to a claim that she had engaged in this fraud and dishonesty while appearing on TV to "promot[e] a really crummy book." *See id.* at ¶ 92.

If this does not qualify as defamation *per se*, it is hard to imagine what would meet the standard. Trump directly attacked an author—who specializes in honest advice to women about sex, men, and relationships—with false claims that she lied about an experience of being raped (which she had revealed in her book) and claims that she spread those lies while appearing on TV to discuss her book (conduct that obviously involved her trade and profession). By making these statements about Carroll, Trump "impugn[ed] the basic integrity or creditworthiness of [Carroll's] business," and attributed to her an "unfitness" in her profession as a writer and advice columnist. *Celle*, 209 F.3d at 180. He took direct aim not only at the veracity of her non-fiction book, but also at her reliability as an honest broker who could be trusted by her readers.

This conclusion is supported by *Celle v. Filipino Reporter Enterprises Inc*. There, a news commentator alleged that two statements were defamatory: one that suggested a judge had found him to be negligent, and one that suggested he had made false accusations about another person's financial obligations. *See* 209 F.3d at 185-86. The Second Circuit found the challenged statements to be defamatory *per se* under settled New York law because they "impugn[ed]" the plaintiff's "trustworthiness." *Id.* at 185. As to the first statement, the court noted that as a reporter in a tightly knit community, his "professional reputation would turn in large measure on the community's faith in the accuracy and fairness of his reporting," and "[t]he statement that a United States judge has found plaintiff negligent for spreading false information would leave readers with the conclusion that he abused his position as a news commentator." *Id.* As to the second claim, the court found it defamatory because it impugned his "trustworthiness," could lead "an average reader to believe [the plaintiff had] made 'false' accusations" about someone else, and could "cause listeners and advertisers … who read the article to question [his] professional integrity." *Id.* at 185-86.

So too here. Carroll has spent decades building an audience of women who trust her to provide accurate facts and reliable advice. *See* Compl. ¶¶ 56-60.[8] A statement by the former President accusing her of lying, fraud, and dishonesty about a sexual assault (not to mention her own) would "leave readers with the conclusion that [she] abused [her] position as a [writer]." *See Celle,* 209 F.3d at 185. Simply put, Carroll's professional and business ventures depend "in large measure on the community's faith" in her "accuracy and fairness," which Trump repeatedly and viciously attacked in his defamatory statements. *See id.* The conclusion that Trump thereby committed defamation *per se* follows directly from the facts alleged and reasonable inferences that may be drawn from them. *See also Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121 n.5 (2d Cir. 1977) (statements accusing scholars of being "paid liars" were defamatory *per se* because they "implie[d] corruption" and were "calculated to ruin [the scholars'] academic reputation[s]"); *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 379 n.5 (1995) (statement that attorney suborned perjury was defamatory *per se* because it implied unethical character); *Levy v. Nissani*, 115 N.Y.S.3d 418, 421 (2d Dep't 2020); *Gong v. Savage*, 169 N.Y.S.3d 511 (Table), at *2 (N.Y. Sup. Ct. N.Y. Cty. 2022) (statement accusing researcher of stealing research was defamatory *per se* because it is "a charge of unfair business practice, deceit, and lack of professional ability").[9]

Because Trump's statement qualified as defamatory *per se*, Carroll was not required to plead special damages. Trump's motion to dismiss her defamation claim is therefore meritless.

---

[8] As Carroll's boss and the CEO of *Elle* magazine for 17 years explained, "[W]omen really trusted E. Jean and [*Elle*] got lots of feedback from readers that she helped them." Oct. 12, 2022, Deposition of Robbie Myers 23:23-25.

[9] Trump misses the mark in citing *Pure Power Boot Camp, v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489 (S.D.N.Y. 2011), *Davydov v. Youssefi*, 169 N.Y.S.3d 322 (1st Dep't 2022), and *Ram v. Moritt*, 612 N.Y.S.2d 671 (2d Dep't 1994). *See* Br. at 17. *Davydov* and *Ram* concerned cases where the plaintiffs (a doctor and dentist) had not been targeted in their professional capacity by statements calling them cheats and frauds. And the statements at issue in *Pure Power Boot Camp* were about the plaintiff's personal characteristics—alleging she treated her employees poorly or fired an employee for being gay—which the court found were not defamatory *per se* because they did "not impute fraud or misconduct to [her], nor do they suggest a general unfitness, incapacity, or inability to perform her duties." 813 F. Supp. 2d at 551. Trump's statements here go well beyond simple commentary on Plaintiff's character. They directly impute fraud to her and specifically suggest her unfitness as a writer, advice columnist, and journalist.

## CONCLUSION

For the foregoing reasons, Trump's motion to dismiss should be denied.

Dated:  New York, New York
       January 4, 2023

Respectfully submitted,

Roberta A. Kaplan
Shawn G. Crowley
Trevor W. Morrison
  (*pro hac vice* application
  forthcoming)
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, D.C. 20001
Telephone: (212) 742-2661
Facsimile: (212) 564-0883
jmatz@kaplanhecker.com

*Attorneys for Plaintiff E. Jean Carroll*