**HABBA MADAIO & ASSOCIATES LLP**
Alina Habba, Esq.
Michael T. Madaio, Esq.
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
        -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| E. JEAN CARROLL,<br><br>                    *Plaintiff,*<br><br>        v.<br><br>DONALD J. TRUMP,<br><br>                    *Defendant.* | Civil Action No.: 22-cv-10016 |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

Alina Habba, Esq.
Michael T. Madaio, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
        -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

ARGUMENT ................................................................................................................1

    I.      PLAINTIFF    GROSSLY    OVERSTATES    THE    APPLICABLE CONSTITUTIONALITY STANDARD ...............................................1

    II.     THE LEGISLATIVE RECORD FAILS TO INDICATE A SUFFICIENT INJUSTICE UNDER THE WORLD TRADE CENTER ANALYSIS...................1

    III.    THE ASA IS NOT A REASONABLE RESPONSE.................................................5

    IV.    PLAINTIFF DOES NOT PLAUSIBLY ALLEGE DEFAMATION PER SE........5

CONCLUSION.............................................................................................................10

## **TABLE OF AUTHORITIES**

*Cases*

*Aronson v Wiersma,*

    65 NY2d 592, 594-595 (1985)..........................................................................5, 6

*Beanland v Beanland,*

    54 Misc. 2d 1010, 1012 (Sup. Ct. 1967)..................................................................4

*Celle v. Filipino Reporter Enters.,*

    209 F.3d 163 (2d Cir. 2000) ....................................................................................8, 9

*Doe v. Doe,*

    2017 U.S. Dist. LEXIS 109692, at *30 (S.D.N.Y. July 14, 2017) ...........................5

*Doe v. Poly Prep Country Day School,*

    21-2669, 2022 WL 14807756 (2d Cir. 2022) ...........................................................2

*Farrell v. United States Olympic & Paralympic Comm.,*

    567 F.Supp.3d 378, 392 (N.D.N.Y. 2021)................................................................2

*Franklin v. Daily Holdings, Inc.,*

    135 A.D.3d 87, 92 (1st Dept. 2010) .........................................................................9

*Giuffre v Andrew,*

    579 F Supp 3d 429, 453 (S.D.N.Y. 2022) ...............................................................2

*Giuffre v. Dershowitz,*

    1-19-CIV-3377-LAP, 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020)..............2

*Hopkins v. Lincoln Trust Co.,*

    233 N.Y. 213, 215 (1922)........................................................................................1

*Hutton v Heitzmann,*

    171 Misc. 1023, 1025 (Sup. Ct. 1939).....................................................................4

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.,*

    30 NY3d 377, 400 (2017) ...................................................................................1,3

*Kalimantano GmbH v. Motion in Time, Inc.,*

    939 F. Supp. 2d 392, 420 (S.D.N.Y. 2013) ...............................................6

*Kerik v. Tacopina,*

    64 F. Supp. 3d 542, 569–70 (S.D.N.Y. 2014) ...........................................6

*Kesner v. Dow Jones & Co.,*

    515 F. Supp. 3d 149, 170 (S.D.N.Y. 2021) ...............................................8

*Lucey v. St.-Gobain Performance Plastics Corp.,*

    1-17-CV-1054-LEK-DJS, 2018 WL 2926289, at *5 (N.D.N.Y. June 11, 2018) ....................2

*Medcalf v. Walsh,*

    938 F. Supp. 2d 478, 487 (S.D.N.Y. 2013) ...............................................6

*November v. Time, Inc.,*

    13 N.Y.2d 175, 178, (1963) ................................................................7

*PB-36 Doe v. Niagara Falls City School Dist.,*

    72 Misc.3d 1052, 1059 (Sup. Ct. 2021) ...................................................2

*PC-41 Doe v. Poly Prep Country Day School,*

    590 F.Supp.3d 551, 562 (E.D.N.Y. 2021) ...............................................2

*Pecile v. Titan Capital Grp., LLC,*

    947 N.Y.S.2d 66, 67 (App. Div. 2012) ...................................................7

*People v Korkala,*

    99 AD2d 161, 166 (1st Dept. 1984) .......................................................4

*People ex rel. Smith v Gilon,*

    66 AD 25, 29 (2d Dept. 1901) ..............................................................4

*Sega v. State,*

    60 N.Y. 2d 183 (1983) ................................................................................................4

*Sweener v. St.-Gobain Performance Plastics Corp.*,

    1-17-CV-0532-LEK-DJS, 2018 WL 748742, at *8 (N.D.N.Y. Feb. 7, 2018). ...................2, 3

*Torrey v. Portville Cent. School*,

    66 Misc.3d 1225(A) (Sup. Ct. 2020) ........................................................................2

**<u>Rules and Statutes</u>**

FRCP 12(b)(1) ...........................................................................................................1

FRCP 12(b)(6) ...........................................................................................................1

CPLR 213-j ...............................................................................................................3

Rules of the Senate of the State of New York, Rule IV ...............................................5

The defendant, Donald J. Trump ("Defendant"), by and through his undersigned attorneys, Habba Madaio & Associates LLP, respectfully submits this memorandum of law in further support of his motion to dismiss (the "Motion") the Complaint filed by the plaintiff, E. Jean Carroll ("Plaintiff").

## ARGUMENT

### I.  *Plaintiff Grossly Overstates the Applicable Constitutionality Standard*

In the words of then Court of Appeals Judge (and later United States Supreme Court Judge) Benjamin Cardozo, claim "[r]evival is an extreme exercise of legislative power." *Hopkins v. Lincoln Trust Co.*, 233 N.Y. 213, 215 (1922) (emphasis added).  And while the rigid import of the former bedrock principle embodied in Judge Cardozo's words has since been properly described by a fellow Southern District jurist as "historical," the Court of Appeals of New York recently confirmed that "[n]onetheless, there must first be a judicial determination that the revival statute was a reasonable measure to address an injustice." *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 NY3d 377, 400 (2017) ("WTC"). Thus, while Defendant recognizes that the bar for claim revival statutes to pass constitutionality muster has been lowered since Judge Cardozo was sitting on the bench, it is indisputable that a bar still exists, and contrary to Plaintiff's assertion, *WTC* certainly cannot be read to have moved the bar to a subterranean "highly deferential" depth in favor of the Legislature.

### II.  *The Legislative Record Fails To Indicate A Sufficient Injustice Under The World Trade Center Analysis*

Defendant's moving brief sets forth an analysis of the stated legislative justification in passing the ASA as compared to similar claim-revival statutes to highlight just how deficient its supposed justification is. Notably, the ASA is the ***only*** claim-revival statute in recent history introduced with a legislative memorandum whose Justification section fails to set forth a clear

explanation of the injustice it is intended to remedy.  Not only did the Legislature put forth such clear explanations for every similar law, but that is the language cited to **by virtually every court opinion** upholding the constitutionality of such laws. *See, e.g.*, *Sweener v. St.-Gobain Performance Plastics Corp.*, 1-17-CV-0532-LEK-DJS, 2018 WL 748742, at *8 (N.D.N.Y. Feb. 7, 2018); *Lucey v. St.-Gobain Performance Plastics Corp.*, 1-17-CV-1054-LEK-DJS, 2018 WL 2926289, at *5 (N.D.N.Y. June 11, 2018); *Giuffre v. Dershowitz*, 1-19-CIV-3377-LAP, 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020); *Torrey v. Portville Cent. School*, 66 Misc.3d 1225(A) (Sup. Ct. 2020); *PC-41 Doe v. Poly Prep Country Day School*, 590 F.Supp.3d 551, 562 (E.D.N.Y. 2021), *appeal dismissed sub nom. Doe v. Poly Prep Country Day School*, 21-2669, 2022 WL 14807756 (2d Cir. 2022); *PB-36 Doe v. Niagara Falls City School Dist.*, 72 Misc.3d 1052, 1059 (Sup. Ct. 2021); *Giuffre v Andrew*, 579 F Supp.3d 429, 453 (S.D.N.Y. 2022) (citing to language in the plaintiff's brief which, in turn, quoted directly to the legislative memorandum Justification section).

Conversely, the introductory memorandum Justification section for the ASA simply purports to serve survivors "who have had justice denied them as a result of New York's formerly insufficient statutes of limitations" and that previous, related laws did not revive claims for adult survivors. While claiming an injustice exists was certainly a start, the Legislature then failed to actually identify any finding or other reason to distinguish ASA plaintiffs from those barred by any other statute of limitations. However, the simple fact that some claims are time-barred—a fact that is true for every single claim-revival statute—cannot be sufficient to satisfy the test for determining which claim-revival statutes are constitutional and which are not. To suggest otherwise is to claim that the *World Trade Center* "test" is in fact no test at all.

Similarly, the test is not whether the New York Legislature mentions the word "justice" in its legislative memorandum—it must actually identify an injustice distinct from other claim-

revival statutes. The simple fact at issue is that the New York Legislature identified no injustice to be remedied by the ASA other than the fact that currently time-barred plaintiffs would remain time-barred without enactment of CPLR 213-j.  Notably, Plaintiff's Opposition ignores this issue almost entirely, instead citing almost exclusively to magazine articles (Opposition at nn. 3-5) and judicial analysis of different laws that are at most *related to* the ASA (although Plaintiff's Opposition often glosses over this fact and implies otherwise).[1] Even Plaintiff's sole citation to the ASA's legislative memorandum mostly quotes from comments in that memorandum discussing the legislative purpose behind *different, previous* laws rather than the ASA itself. While reviewing different, previous laws regarding sexual assault statutes of limitations may be helpful, it is not the issue in question. *See Sega v. State*, 60 N.Y. 2d 183 (1983) ("legislative intent . . . should not be confused with legislative history, as the two are not coextensive").

As for the legislative intent of the ASA in particular, Plaintiff relies almost entirely on

---

[1] *See, e.g.*, Opposition at p. 5 (supporting a statement about the ASA's "legislative record" by citing to an opinion dated four months before the passage of the ASA, that is about a different law, and that does not reference the ASA) and at pp. 5-6 (supporting the contention that the ASA "reflected a series of legislative reforms sparked by the #MeToo movement that began in 2017 . . ." by citing to a list of magazine articles and books about that social movement rather to legislative reforms or judicial commentary).

Perhaps the most egregious example of Plaintiff's disingenuousness is the Opposition's statement that Defendant's opinion on the barriers impeding sexual assault survivors from bringing suit " 'was not shared by the Legislature.' *Sweener v. Saint-Gobain Performance Plastics Corp.*, No. 17 Civ. 532, 2018 WL 2229133, at \*5 (N.D.N.Y. May 16, 2018)." The quoted language in *Sweener* was regarding the legislature's opinion on the appropriate statute of limitations for latent toxic torts. Defendant has not propounded any opinion on the subject of trauma following sexual abuse ***or*** the appropriate statute of limitations, but simply challenged whether the legislature identified an injustice sufficient under the Due Process clause. A quotation implying that a court has already found Defendant's opinion to be without merit is simply dishonest—especially when glossing over the fact that the quoted case has absolutely nothing to do with the 'opinion' in question. Notably, Plaintiff cuts off the quoted language in *Sweener* immediately before that case supports its holding by quoting the Justification section of the relevant legislative memorandum section.

cherry-picked quotes made by a small percentage of individual legislators rather than any formal statement made by either legislative body.[2] As previously noted by the courts, the Legislature is made up of hundreds of individuals, many of whom have diametrically opposed views on any given issue, and the intent of no particular legislator stands for the entire body. *See, e.g.*, *People ex rel. Smith v. Gilon*, 66 A.D. 25, 29 (2d Dept. 1901) ("Any attempted construction of an act purporting to be based upon the intention of the Legislature . . . must necessarily vary as much as the opinion of different minds as to what the law should have been"); *Hutton v. Heitzmann*, 171 Misc. 1023, 1025 (Sup. Ct. 1939) ("The blazes on the trail of such pursuit [for legislative intent] are numerous and frequently conflicting"); *Beanland v. Beanland*, 54 Misc. 2d 1010, 1012 (Sup. Ct. 1967) (noting that a single piece of legislation was the consequence of markedly different intents between at least two different legislators, neither of which could be assumed to be the actual intent of the legislature as a whole); *People v. Korkala*, 99 A.D.2d 161, 166 (1st Dept. 1984) (noting the apparent legislative intent differed from the stated intent of one particular legislator).

Indeed, the Legislature's failure to identify an appropriate injustice contrasts sharply against the holding reached in *Giuffre v, Andrews*, which dealt with a distinct and separate class of victim – minors who were extremely vulnerable and particularly ill-equipped to pursue sexual assault claims on their own. 579 F. Supp. 3d 429 (S.D.N.Y. 2022) There, this Court aptly noted that, in discussing the legislative intent underlying the CVA, that "the measures here selected by the New York Legislature were among the most tailored and most mindful of the due process concerns defendant emphasizes in his motion. **It is difficult to imagine substantially narrower measures capable of addressing the injustices animating the CVA**. *Id*. at 455. (emphasis

---

[2] Specifically, Plaintiff cites to individual statements made by nine particular legislatures—out of the over two hundred individuals making up the New York Legislature.

added). As discussed at length in Defendant's initial motion to dismiss and herein, the legislature failed to identify a similar injustice as it relates to the ASA.

Moreover, reviewing and collating the relevant quotes from over two hundred politically and ideologically opposed politicians to determine legislative intent should not be necessary because the introduction of every New York bill must be accompanied by an introductory memorandum setting forth the bill's purpose and intent. *See, e.g.,* Rules of the Senate of the State of New York, Rule IV.

### III.   *The ASA Is Not A Reasonable Response*

Defendant reiterates that the lack of any age limit whatsoever on the revived claims is not reasonable. The Legislature already changed the statute of limitations to twenty years, which is one of—if not the single—longest statutes of limitations in the State, and it is not reasonable to extend the age limit to bring cases *indefinitely* as the ASA does. While plaintiffs must bring a previously time-barred claim within a one-year window, there is no limit to how old those claims may be. There may be no amount of time after which it is unreasonable for a victim to still wish for their day in court, however there *is* a certain point where it becomes unreasonable to expect the judicial system to capably handle litigation and for defendants to competently defend themselves. It is simply not reasonable to revive claims that are 30, 50, or even 70 years old, and the resulting litigation could bear no semblance to anything approaching justice when memories and the ability to find other fact evidence are that far out of date.

### IV.   **Plaintiff Does Not Plausibly Allege Defamation Per Se**

Similarly, Plaintiff's defamation *per se* claim should be dismissed because the October 12 Statement is not so obviously injurious as to relieve the Plaintiff of pleading or proving her actual damages, something that the Plaintiff does not even attempt to do in her opposition brief. *See Doe*

5

*v. Doe*, 2017 U.S. Dist. LEXIS 109692, at *30 (S.D.N.Y. July 14, 2017) ("Defamation per se exists only when the party alleging defamation can prove that the defamatory statement was so harmful to his or her reputation that damages are assumed simply from the utterance of the statement."); *Aronson v. Wiersma*, 65 N.Y.2d 592, 594-595 (1985) (noting that a statement fails to qualify as defamatory *per se* where "reference to extrinsic facts is necessary to give them a defamatory import.").

Contrary to Plaintiff's contention, the Complaint does not plausibly allege *per se* actionability because the October 12 Statement makes no direct reference to Plaintiff's trade, business, or profession. Indeed, "courts have consistently held that any allegedly defamatory statements that do not affect a plaintiff's actual business profession, rather than simply qualities that are important for business, are not defamatory per se." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 420 (S.D.N.Y. 2013). Importantly, a statement that tends to injure another in his or her trade, business, or profession is one that "must be made with reference to a matter of *significance and importance* for [the proper conduct of the business, trade, profession, or office itself], rather than a more general reflection upon the plaintiff's character or qualities." *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 487 (S.D.N.Y. 2013).

In attempting to salvage her claim, Plaintiff cites to out-of-context excerpts of the October 12 Statement and argue that those cherry-picked portions of the Statement amount to an attack on Plaintiff's fitness "in her profession as a writer and advice columnist." Opposition at 15. The lengths to which Plaintiff continues to embellish the contents of the October 12 Statement underscores Plaintiff's failure to adequately plead defamation *per se* in the Complaint. *See Kerik v. Tacopina*, 64 F. Supp. 3d 542, 569–70 (S.D.N.Y. 2014) ("Both New York and New Jersey courts have criticized slander per se and the resulting presumption of damages, and consequently have

interpreted the categories restrictively."). There can be no serious dispute that Plaintiff has failed to allege defamation *per se* because the Statement makes absolutely no reference to a "matter of significance and importance" which relates to Plaintiff's skills or competency as a columnist or writer. *Medcalf*, 938 F. Supp. 2d at 487; *see also Aronson*, 483 N.E.2d at 1140 (holding, under New York law, that "statements cannot be slanderous per se if reference to extrinsic facts is necessary to give them a defamatory import.").

      Plaintiff attempts to support her defamation *per se* theory by arguing that Defendant "blasted [Plaintiff for spreading a "Hoax and a lie"—insisting that she was "not telling the truth," the rape "never happened", he "had no idea who she is," and she had "completely made up a story." *See* Opposition at 14. These portions of the October 12 Statement, however, have no bearing upon Plaintiff's fitness or competence as a writer, journalist, or opinion columnist. Rather, Defendant was simply disputing the merits of Plaintiff's prior lawsuit—which he referred to as a "con job"— and rebutted the heinous allegations that Plaintiff has continued to perpetuate against him. *See Pecile v. Titan Capital Grp., LLC*, 947 N.Y.S.2d 66, 67 (App. Div. 2012) (holding that statements "made to the media, that plaintiffs' suit was without merit constituted mere opinion, and was therefore nonactionable."). Defendant's criticism of Plaintiff is not aimed at her competency as a writer or columnist, but in her decision to file a frivolous lawsuit against him, which is further emphasized in the penultimate line of the October 12 Statement, wherein Defendant laments that he will be forced to "go through years more of legal nonsense in order to clear my name of her and her lawyer's phony attacks on me." Compl. at ¶ 92.

      Plaintiff then cites an additional portion of the statement out of context—that Defendant "expressly tied those attacks to a claim that she engaged in this fraud and dishonesty while appearing on TV to "promot[e] a really crummy book." —to support her defamation per se claim.

The following sentence of the statement, which Plaintiff conspicuously fails to highlight, conclusively establishes that Defendant was attacking the veracity of her *sexual assault claims* rather than her fitness as an author. Under New York law, a court must look at the statement as a whole to determine whether it is defamatory. *See November v. Time, Inc.*, 13 N.Y.2d 175, 178, (1963) ("If every paragraph had to be read separately and off by itself plaintiff would fare pretty well. But such utterances are not so closely parsed by their readers ... and their meaning depends not on isolated or detached statements but on the whole apparent scope and intent.") The full context of that excerpt is as follows: "If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, *to suit the purposes of CNN and Andy Cooper.*" *See* Compl. at ¶ 92.   Read in full, Defendant was depicting inconsistencies in Plaintiff's account of the alleged assault, not Plaintiff's competency as a writer. Indeed, Defendant's characterization of the quality of Plaintiff's book is non-actionable opinion which cannot, as a matter of law, substantiate her defamation *per se* claim. *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 170 (S.D.N.Y. 2021) (Under New York law, statements of opinion are not actionable as defamation, "however unreasonable the opinion or vituperous the expression of it may be.") (internal citations omitted).

Further, Plaintiff misstates the holding of *Celle v. Filipino Reporter Enters.*, 209 F.3d 163 (2d Cir. 2000) in attempting to persuade this Court that its holding applies here. The facts there, however, are inapposite and do not govern the matter *sub judice*. In *Celle*, a radio commentator alleged that seven statements, contained in three separate articles, were defamatory per se. Of the seven statements, the Second Circuit ultimately found that certain statements were indeed defamatory *per se*. The first challenged statement clearly identified the plaintiff as a "Radio Pinoy

announcer" and alleged that plaintiff was found "negligent in "making defamatory statements against a Filipino businesswoman *in his radio show" Id*. at 172-173. (emphasis added). The second article that was ultimately found to be defamatory alleged that plaintiff was losing a major sponsor because plaintiff failed to honor certain financial obligations. *Id*. at 173. The Second Circuit undertook a meticulous analysis of each of the three articles and found that two of them were defamatory per se because they would "leave readers with the conclusion that he abused his position as a news commentator." *Id*. at 185. The Second Circuit's ruling, however, was not based solely upon the fact that plaintiff was employed as a news commentator but, rather, because the defamatory statements made *direct reference* to the plaintiff's fitness to serve as a news commentator and charged him with abusing his discretion in that role. Indeed, the Second Circuit also found that certain statements were not defamatory precisely because they failed to target plaintiff's profession, namely, defendant's accusation that plaintiff was spreading "black propaganda." *Id.* at 188. In reaching that conclusion, the Second Circuit aptly noted that the articles do not "suggest that Celle spread false information" to the local sellers of the <u>Filipino Reporter</u>." *Id*. This separate finding demonstrates that the Second Circuit could only attach a defamatory meaning to the statements that maligned the plaintiff's competency as a news commentator.

Unlike in *Celle*, Defendant here made no such attacks on Plaintiff that reflect directly upon her fitness in her profession as an opinion columnist nor as an author. A plain reading of the October 12 Statement demonstrates that Defendant never identified Plaintiff's profession, nor did he make reference to Plaintiff's Ask E. Jean Column that formed the core of Plaintiff's professional endeavors. This draws in sharp contrast to *Celle* where the challenged statements directly targeted plaintiff in his capacity as a news commentator, his ability to report on the news in an honest manner, and his ability to honor his financial obligations. *See Celle* 209 F. 3d at 185. The mere

9

proposition that the October 12, Statement attack's Plaintiff's honesty does not pass muster. If that were the case, every statement attacking another's honesty as most professions are predicated on dealing with others honestly. The clear and unavoidable absence of any similar accusations centered on Plaintiff's profession are fatal to her defamation claim. *Rufeh v. Schwartz*, 50 A.D.3d 1002, 1004-05 (2d Dep't 2008) ("To find that a statement qualifies as one that tends to injure another in his or her 'trade, business, or profession,' the statement must be made with reference to a matter of significance and importance for [the operation of the business], rather than a more general reflection upon the plaintiffs character or qualities.")

Accordingly, Plaintiff's defamation per se claim fails as a matter of law. Plaintiff has also candidly admitted that she has failed to plead special damages – an element necessary to sustain a defamation claim in the absence of defamation per se. *See Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 92 (1st Dept. 2010) (a plaintiff's failure to plead special damages warrants dismissal of a cause of action).

## CONCLUSION

For the foregoing reasons, Defendant, Donald J. Trump, respectfully requests this Court grant his motion to dismiss the Complaint pursuant to FRCP 12(b)(1) and 12(b)(6).

Dated: January 11, 2023                              Respectfully submitted,

Anna Habba, Esq.
Michael T. Madaio, Esq.
Habba Madaio & Associates LLP
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump*