


# tacopina seigel trial lawyers
TACOPINA SEIGEL & DEOREO

JOSEPH TACOPINA
EMAIL: jtacopina@tacopinalaw.com
www.tacopinalaw.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 2-7-23

275 Madison Avenue, 35th Floor
New York, NY 10016
Telephone (212) 227-8877
Facsimile (212) 619-1028

February 6, 2023

**BY MESSENGER**
Hon. Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   **Carroll v. Trump**, 22 Civ. 10016 (LAK) ("Carroll II")

Dear Judge Kaplan:

We represent Defendant and write in response to today's letter submitted this morning by counsel for Plaintiff concerning tomorrow's status conference with Your Honor. At the outset, despite Plaintiff's accusations that we are seeking an adjournment due to a "lack of diligence" or "likely .... dilatory conduct," nothing could be further from the truth. Rather, as detailed below, an adjournment is sought solely to redress the inability of our psychiatric expert to meet the current deadline.

Notably, with respect to these circumstances, Plaintiff, seeking to gain an unfair tactical advantage in this litigation, blatantly distorts the facts in an effort to preclude Defendant from challenging her expert with his own. First, despite Plaintiff's effort to minimize our expert, Dr. Edgar Nace, simply as "an addiction and substance abuse specialist," as we informed Plaintiff's counsel during our meet and confer last Friday, February 3rd, in addition to having a speciality in addiction psychiatry, Dr. Nace is a clinical professor of psychiatry at the University of Texas, Southwestern Medical School with over 38 years of psychiatric practice, including that relating to trauma and, more specifically, *sexual trauma*. He is also board certified in forensic psychiatry. Thus, Dr. Nace is plainly qualified in this matter, and Plaintiff's objection to the contrary is misplaced.

Moreover, despite accusing us of engaging in delay or being neglectful with respect to our retention of an expert, the fact of the matter is Dr. Nace was prepared to meet the current deadline for the completion of expert discovery. Yet, Plaintiff's counsel fails to advise this Court that they deliberately delayed Dr. Nace's IME of Plaintiff by asserting baseless written objections on January 11th, namely that: (1) Defendant's counsel was not entitled to an independent medical examination

TACOPINA SEIGEL & DEOREO

Hon. Lewis A. Kaplan
February 6, 2023
Page 2

("IME") without first filing a written motion seeking such an examination under Fed.R.Civ.P. Rule 35, (2) an IME was unnecessary because Plaintiff was not diagnosed with a "mental disorder or condition," and (3) Dr. Nace was not qualified to conduct an IME because he has a speciality in addiction and substance abuse.

First, as referenced above, Dr. Nace was clearly qualified to conduct the contemplated IME. Second, no motion was necessary to secure an IME, as this Court already directed that such an examination be conducted upon "request" within its December 21, 2022 scheduling order. And third, a diagnoses is not needed as a prerequisite to an IME. All that is needed is a claim of emotional damages. Indeed, Plaintiff's expert, Dr. Leslie Lebowitz, diagnosed Plaintiff with emotional suffering due to ongoing trauma from the alleged rape which was of such severity that it significantly diminished her quality of life and caused her profound losses for more than twenty years. Dr. Lebowitz further opined that Plaintiff's emotional damages are so substantial that they "cost her the opportunity of intimate relationships." Additionally, Plaintiff, herself, testified that because of the emotional trauma caused by the alleged assault, she is unable to engage in sexual relations. Accordingly, Plaintiff's effort to challenge an IME because her trauma is, according to her counsel, deminimus, is disingenuous.

Following Plaintiff's objections, counsel for Defendant submitted a written response clarifying why Defendant needed and was entitled to conduct an IME of Plaintiff, as well as requesting a meet and confer, which resulted in a discussion between the parties on the morning of January 24th. During that January 24th meet and confer, Plaintiff's counsel relented, but stated that they would only agree to an IME if Defendant's counsel provided certain information in advance of the examination, including its duration, the history and scope of Dr. Nace's prior IME's in other cases, and the intended scope of his IME in this case.

Within hours of the January 24th meet and confer, Defendant's counsel learned from Dr. Nace that his wife, while previously ill, had taken an unexpected turn for the worse, needed immediate surgery, and faced a real risk of death. As a result, Dr. Nace advised that it would be impossible for him to perform his expert services under the current scheduling order.[1] Further, Dr. Nace stated that the earliest he could examine Plaintiff and provide an expert report would be February 28th. Based on that circumstance, on January 24th, Defendant's existing counsel began searching for another

---

[1] Although Plaintiff's counsel claims that Defendant's counsel had known about Dr. Nace's "potential unavailability" before this time, that is simply untrue. For the sake of accuracy, although Dr. Nace had advised Defendant's counsel this his wife was ill, he nonetheless provided an assurance that his wife's illness would not prevent him from conducting Plaintiff's IME and issuing an expert report in accordance with the Court's scheduling order. For the sake of emphasis, his wife's sudden turn for the worse was *unexpected*.

TACOPINA SEIGEL & DEOREO

Hon. Lewis A. Kaplan
February 6, 2023
Page 3

expert, as did my office once we were retained on January 31st. In fact, collectively, we have conferred with *more than a dozen potential experts* who, based on the uniqueness of this case and the scheduling order's time constraints, have been unwilling to participate.

Although Plaintiff states that Defendant's counsel knew Plaintiff would be calling an expert in connection with the instant lawsuit ever since they threatened to file it in August 2022, three points need to be raised. First, our co-counsel's firm was not retained in connection with *Carroll II* until December 2022. Second, it is not reasonable to require a party to actually retain an expert before a complaint is filed based on the threat of potential litigation. And third, in any event, Defendant's counsel had a qualified expert (Dr. Nace) who would have met the current deadline but for Plaintiff's unwarranted objection and his wife's subsequent unexpected worsening health condition. In short, what is unreasonable is Plaintiff's effort to capitalize on the deteriorating health condition of our expert's wife by seeking to prevent us from utilizing our own expert. Indeed, while Plaintiff's counsel attempts to portray themselves as fair by touting the fact they have been willing to give a "slight extension" to accommodate these circumstances, that position fails to recognize the real difficulty in securing a defense expert in this case.

For that matter, Plaintiff hypocritically claims on one hand that Defendant's inability to secure an expert is the result of Defendant's likely delay, while on the other hand acknowledging that such an inability is real, albeit falsely attributing it to some notion that "[a]ny qualified expert would be hard-pressed to dispute Plaintiff's lived experience since the mid 1990's." To be clear, neither argumentative conjecture is grounded in reality. Instead, as explained above, the uniqueness of this case and extraordinarily tight deadlines have frustrated our diligent efforts to secure an expert to date.

Notably, the "slight extension" offered by Plaintiff's counsel will not redress such difficulty. Nor will Plaintiff's self-serving suggestion, expressed in a January 25th email, that Defendant should abandon an IME and instead merely rely on her three hour deposition that covered not only emotional damages but also financial damages. The problem with abandoning an IME and merely relying on Plaintiff's deposition is obvious – (1) it would give Plaintiff an unfair advantage in the eyes of a jury because her expert would have examined her for 22 hours; and (2) as lawyers, and not psychiatric experts, Defendant's counsel is not in a position to devise all the pertinent questions needed as a prerequisite to preparing an expert report.

While Plaintiff's counsel alludes to another meet and confer that was contemplated for January 27th, that was cancelled not for dilatory reasons but because Defendant's counsel had not yet secured a psychiatric expert. We can assure the Court that we are still working arduously on doing

**TACOPINA SEIGEL & DEOREO**

Hon. Lewis A. Kaplan
February 6, 2023
Page 4

so, as we wish to bring this matter to trial as expeditiously as possible.

In fact, with respect to the overall timing of this litigation, although *Carroll I* has been ongoing since 2019, *Carroll II* was only filed on November 24th, right before the holidays, and importantly, was the first action in which Plaintiff claims damages specifically from an alleged sexual assault. Furthermore, those damages are separate and distinct from any damages Plaintiff claims resulted to her reputation from being allegedly defamed. As a result, there was no need until *Carroll II* was filed to conduct an IME on the issue of alleged psychological damages specifically resulting from the claimed sexual assault.

In fact, an IME is even more crucial here, because Plaintiff has not provided us with a single medical record in this case. And thus, Defendant's counsel need their own expert to evaluate her. Further, an IME is needed not just to equip Defendant's counsel with the tools necessary to cross-examine Plaintiff at trial but also to proceed with the deposition of Dr. Leslie Lebowitz, Plaintiff's expert who examined her for 22 hours. Specifically, we need our own expert to examine and evaluate Plaintiff first, so that such expert can arm us with the information necessary to meaningfully question Dr. Lebowitz. Importantly, Plaintiff here is alleging that she has suffered more than 25 years worth of trauma. This goes well beyond any claim of damages Plaintiff alleges she sustained from being called a liar over the last few years (*i.e.*, the subject of *Carroll I*).

Further, the issue of trauma does not just relate to damages but to Plaintiff's underlying claim of being sexually assaulted. Importantly, the jury could reasonably conclude if Plaintiff does not have trauma, that is because she was not sexually assaulted in the first instance. Hence, this is a critical issue we need a sufficient opportunity to explore.

Additionally, while Plaintiff contends otherwise, expert discovery clearly affects the entire scheduling order. After all, such discovery, for instance, will conceivably impact what exhibits counsel will need to identify, what arguments will be raised in summary judgment and *in limine* motions, and what content to include in the last pretrial filing, namely proposed *voir dire* examinations. Accordingly, we respectfully request an extension of all deadlines by 6 weeks, including the commencement of trial. Such an extension would appropriately reflect the difficulties relating to our retention of an expert.

As referenced above, the instant case alleging rape was filed just over two months ago immediately before the holidays. Defendant's counsel is not seeking to delay this case for it own sake. Indeed, we were retained as trial counsel with the specific intent of trying this matter swiftly. However, in order to be sufficiently prepared, and be in a position to meaningfully respond to the

TACOPINA SEIGEL & DEOREO

Hon. Lewis A. Kaplan
February 6, 2023
Page 5

claims of Plaintiff and her psychiatric expert, additional time with respect to discovery is needed.

With the foregoing in mind, we can assure the Court, that if granted the requested time, we will be ready to start trial in June.

Your consideration is greatly appreciated.

Very truly yours,

Joseph Tacopina

cc:   All counsel by e-mail