UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

                                 Plaintiff,

                  -against-                                 22-cv-10016 (LAK)

DONALD J. TRUMP,

                               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

Roberta Kaplan
Joshua Matz
Shawn Crowley
Matthew Craig
Trevor Morrison
KAPLAN HECKER & FINK LLP

*Attorneys for Plaintiff*

Joseph Tacopina
Matthew G. DeOreo
Chad Derek Seigel
TACOPINA SEIGEL & DEOREO, P.C.

Alina Habba
Michael T. Madaio
HABBA MADAIO & ASSOCIATES LLP

*Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

Donald J. Trump is accused in this and a second very closely related civil case of having raped E. Jean Carroll in the mid 1990s.  Ms. Carroll claims that the dress she wore on that occasion (and allegedly has preserved) bears stains that have tested positive for male DNA, albeit male DNA from an unidentified source.  She provided Mr. Trump with the DNA test report, absent an appendix, over three years ago.  At the same time, she demanded a DNA sample from Mr. Trump for the obvious purpose of seeing whether it is possible to tell whether Mr. Trump's DNA is on the dress.

Until February 10, 2023, about ten weeks before this case is set to be tried, Mr. Trump has refused to provide his DNA.  Moreover, he has employed litigation tactics the effect and probable purpose of which have been to delay Ms. Carroll's actions against him – an object that is significant in view of the fact that Ms. Carroll now is 79 years old.  Now –

- after the time for pretrial discovery of evidence in both cases has expired,

- three days after Mr. Trump's latest request for a multi-week trial postponement was substantially denied,

- one day after the parties filed a joint pretrial order in the first of these cases that makes clear that neither Ms. Carroll nor Mr. Trump intends to call any DNA experts as witnesses in the trial of that case, and

- on the eve of trial of at least the second-filed of these cases –

Mr. Trump suddenly has proposed a deal.  He has offered to provide a DNA sample *but only on the condition* that I require Ms. Carroll first to turn over to him a previously undisclosed appendix to the DNA report – the report that Ms. Carroll obtained and provided to Mr. Trump years ago.

There is no justification for any such deal.  Either Ms. Carroll is obliged to supply the omitted appendix or she is not.  Either Mr. Trump is obliged to provide a DNA sample or he is not. Neither is a *quid pro quo* for the other.  And the short answer to Mr. Trump's request is clear.

Mr. Trump is not entitled to the undisclosed appendix.  The time for pretrial discovery in both cases is over, and Mr. Trump never previously asked for it.

To be sure, that is not to say that Mr. Trump could not have obtained it had he acted differently.  He and his numerous counsel have had Ms. Carroll's DNA report and its conclusions, albeit without the appendix he now seeks, since January 2020.  The copy of the report they have had since then shows on its face that there was an appendix and that the appendix was not attached to it.  That is clear (1) because the body of the report refers to the appendix that was not included with the copy turned over and (2) from the pagination.  Despite this obvious omission, Mr. Trump never in three years asked a court to require its production.  Indeed, the record discloses no request for the appendix even to Ms. Carroll's counsel until February 9, 2023.  Moreover, at the outset of this case in late 2022, the Court directed both parties to submit "[a] detailed statement of what specific discovery that was not conducted in *Carroll I* [(the first of the two  related cases)] is needed for the prosecution or defense of this case [(*Carroll II*)] and the basis for the contention that it is needed."[1] But Mr. Trump's written statement made no reference to the appendix he now seeks.  Nor did his counsel mention it at the scheduling conference in open court.

The patently untimely request for the appendix thus reflects either a tactical shift or just an afterthought.  One possible explanation is that it is an attempt to reverse a deliberate tactical

---

[1]  Dkt 10.  Unless otherwise indicated, Dkt references are to the docket in *Carroll II*, 22-cv-10016 (LAK).

4

decision by Mr. Trump's counsel not to raise the question of the appendix over the past three years, a decision perhaps the product of a belief that asking for the appendix might well have resulted in renewed demands for Mr. Trump's DNA. Another possible explanation is a negligent failure to read the report with any care over the entire three-year period and thus the failure to notice the lack of the appendix. But whatever the explanation, the effort comes too late.

Nor would Ms. Carroll now be entitled to a DNA sample from Mr. Trump. Her counsel have had plenty of opportunities in both of the two related cases to move to compel Mr. Trump to submit a DNA sample. Had they done so, they almost certainly would have gotten it. But Ms. Carroll's counsel never moved to compel Mr. Trump to submit a DNA sample. They obviously decided to go to trial without it. And there is no justification for imposing Mr. Trump's new proposal on Ms. Carroll now that she has prepared for trial on the entirely justified basis that there will be no DNA evidence.

Both sides have had years in which to make DNA an issue in this case. For their own reasons, each did not do so. Starting down the DNA road at this point almost inevitably would lead to further delay for sampling, testing, expert report writing, and depositions of experts. It almost surely would delay the trial again. And Mr. Trump has given the Court no reason to believe that pursuing that course would be likely to yield any admissible evidence, let alone a guarantee that anything important would come of it. Indeed, as is discussed in greater detail below, further proceedings with respect to the DNA on the dress cannot prove or disprove Ms. Carroll's claim that Mr. Trump raped her and could well prove entirely inconclusive in all respects.

In these circumstances, there is no case for relieving the parties of their obligations to have completed their pretrial discovery by the dates fixed by the Court.

*Facts*

Carroll I, the first of Ms. Carroll's two cases against Mr. Trump, originally began in November 2019 in a state court in New York and later was removed to this court. It alleges that Mr. Trump defamed Ms. Carroll in a series of statements he issued in June 2019 in relation to her rape accusation against him. This, the second action ("*Carroll II*"), was brought three years later, in November 2022, to recover damages and other relief for the alleged rape pursuant to a newly-enacted New York law, the Adult Survivors Act, which created a "window" within which adult survivors of sexual assaults could sue their assaulters without regard to the otherwise applicable statute of limitations. *Carroll II* includes also a claim against Mr. Trump for defamation in a statement he issued in October 2022.[2]

*Carroll I* and *Carroll II*, at least for the moment, are two distinct lawsuits involving the same parties. But make no mistake, although only *Carroll II* includes a claim for damages for the alleged rape itself, as distinct from the alleged defamation, the question whether Mr. Trump in fact raped Ms. Carroll is central to both cases.

*The DNA Report About the Dress*

Unsurprisingly, Ms. Carroll requested a DNA sample from Mr. Trump shortly after *Carroll I* was commenced and her lawyers learned that there was unidentified male DNA on the

---

[2]     The Court assumes familiarity with its prior opinions, which describe the facts and procedural histories of the two actions involving these parties. *See* Dkt 38, *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023); *Carroll I*, 20-cv-7311 (LAK) (hereinafter "*Carroll I*"), Dkt 32, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir. 2022); *Carroll I*, Dkt 73, *Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022); *Carroll I*, Dkt 96, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2022 WL 6897075 (S.D.N.Y. Oct. 12, 2022).

6

dress.

In a notice that Ms. Carroll served on January 30, 2020 and filed a few weeks later in state court in *Carroll I*, Ms. Carroll sought Mr. Trump's DNA pursuant to Section 3121 of the New York Civil Practice Law and Rules.[3]   The Section 3121 notice stated that Mr. Trump was required to submit to a physical examination to "obtain a buccal, blood or skin cell sample . . . sufficient for DNA analysis and comparison against unidentified male DNA present on the dress that [Ms. Carroll] wore during the sexual assault at issue."[4]

Ms. Carroll's 3121 notice attached a laboratory report concerning an examination of the dress and shoes Ms. Carroll allegedly wore at the time of the alleged assault by Mr. Trump which, she claimed, she had kept in her closet until 2019, when she wore them for a photoshoot for *New York* magazine.[5]   The purpose of the examination was "to determine if male biology, specifically semen, is present" on the dress Ms. Carroll allegedly wore at the time of the alleged assault and whether any of the five individuals who might have come into contact with the dress at a photo shoot, allegedly the only subsequent occasion on which she wore that dress, "can be eliminated as contributors to any biology foreign to [Ms.] Carroll."[6]

---

[3]

    *Carroll v. Trump*, Index No. 160694/2019 (N.Y. Sup. Ct.), Dkt 56.  The notice is dated January 30, 2020, but it was docketed in the state court's electronic case filing system on February 18, 2020.

[4]

    *Id.*

[5]

    That issue included an excerpt from Ms. Carroll's then-forthcoming book that described Mr. Trump's alleged assault of Ms. Carroll.

[6]

    *Carroll v. Trump*, Index No. 160694/2019 (N.Y. Sup. Ct.), Dkt 56, Ex. A at 1-2.

    Examination of the shoes did not detect any "acid phosphatase activity," the presence of

Examination of the dress did not detect any "acid phosphate activity" which, had it been detected, would have been "a presumptive indication of the presence of semen."[7]  But the examination included also swabbing of different surface areas of the dress for DNA.

The report stated that the swabs taken from the dress that were processed for DNA analysis and examined microscopically consisted of skin cells and, for some areas that were swabbed, nucleated epithelial cells.[8]  There was no evidence of any sperm cells.  Nevertheless, the DNA recovered from the outside right sleeve of the dress "was determined to be a mixture of at least four contributors: three significant contributors, of whom at least one is male, and at least one minor/trace-level contributor."[9]  The DNA recovered from the outside left sleeve of the dress "was determined to be a mixture of at least four contributors: two significant contributors and at least two minor/trace-level contributors, of whom at least one is male."[10]  For both, there was "very strong support that [an individual present at the photo shoot] is a significant contributor," and four other individuals present at the photo shoot were "all eliminated as potential contributors to the mixture of DNA from the dress outside right sleeve swabs."[11]  The "male DNA recovered from the combined

---

which, the report stated, would be "a presumptive indication of the presence of semen."  The shoes accordingly were not pursued further.  *Id.*, Ex. A at 16.

[7]

*Id.*, Ex. A at 9.

[8]

*Id.*, Ex. A at 14.

[9]

*Id.*, Ex. A at 22.

[10]

*Id.*, Ex. A at 23.

[11]

*Id.*, Ex. A at 22-23.

DNA extracts from the dress shoulder/neck area swabs and front skirt swabs revealed a low-level mixture of at least three contributors," but further individualized analyses were not feasible.[12]  The report further stated that "[a]dditional reference specimens may be submitted for comparison" to the DNA results from the swabs of the dress shoulder/neck area, outside left sleeve, and outside right sleeve.[13]

The DNA report attached to Ms. Carroll's served and filed notice specifically referred to an "Appendix I" said to contain certain "electropherograms."[14]  The last page of the report attached to the notice was numbered page 24 of 37.  Pages 25 to 37 of the report were not included.  Thus, the absence of Appendix I and its general nature were obvious to a reader.

*Proceedings in Carroll I After the DNA Report Was Filed*

On February 4, 2020, five days after Ms. Carroll served her request for Mr. Trump's DNA sample, Mr. Trump moved in the state court to stay the proceedings in *Carroll I* pending a decision by the New York Court of Appeals in a different lawsuit against Mr. Trump.[15]  The state

---

It is unclear whether it is the same individual in the analyses of the swabs of the outside right and left sleeves for whom there was "very strong support" that he or she was a significant contributor.

[12] *Id.*, Ex. A at 24.

[13] *Id.*

[14] *Id.*

An electropherogram is a chart used to plot the results of electrophoresis, a laboratory procedure commonly used to analyze DNA, as it was here.  *Id.*, Ex. A at 21.

[15] *Carroll v. Trump*, Index No. 160694/2019 (N.Y. Sup. Ct.), Dkt 43.

court denied that motion on August 3, 2020.[16]  Ms. Carroll states, and Mr. Trump does not dispute, that "[a]s soon as that stay motion was denied, [she] renewed her DNA request."[17]

On September 8, 2020, the U.S. Department of Justice intervened, reportedly on Mr. Trump's instruction, and filed a notice to remove *Carroll I* from the state court to this Court.  The government then moved to substitute the United States in place of Mr. Trump on the theory that Mr. Trump was an "employee" of the United States within the meaning of the Westfall Act[18] who acted within the scope of his employment in making the allegedly defamatory statements in June 2019.[19]

I denied the government's motion to substitute.[20]  Mr. Trump and the government appealed and Mr. Trump moved to stay all proceedings in *Carroll I* pending appeal.  But the motion to stay was denied, and *Carroll I* never was stayed pending appeal.[21]  The parties thus were free to

---

[16]

    *Id.*, Dkt 110.

    In a letter jointly submitted by the parties on February 24, 2022 in response to a question raised by this Court during an oral argument, the parties explained that Mr. Trump's February 4, 2020 letter "effectively stayed the proceedings" in state court pursuant to New York's procedural rules, "but did not operate as the entry of a formal stay." *Carroll I*, Dkt 70.

[17]

    Dkt 52, Plaintiff's letter response to Defendant's letter motion requesting full DNA report, at 2; *see also Carroll I*, Dkt 70 ("Immediately following the denial of that motion, the parties engaged in negotiations concerning the scope of discovery, although no discovery was actually produced.").

[18]

    28 U.S.C. § 2670(d)(2).

[19]

    *Carroll I*, Dkt 3.

[20]

    *Id.*, Dkt 32 at 59; *Carroll*, 498 F. Supp. 3d at 457.

[21]

    *Id.*, Dkt 56.

10

pursue discovery while the appeal was pending.

A year later, the Second Circuit determined that Mr. Trump was an "employee" within the meaning of the Westfall Act when he allegedly defamed Ms. Carroll but certified the question whether he was acting within the scope of his employment to the District of Columbia Court of Appeals.[22]  The appeal to the Second Circuit thus remains unresolved.

On January 11, 2022, Mr. Trump moved for leave to amend his answer to assert an affirmative defense and counterclaim New York's "anti-SLAPP" law to the effect that Ms. Carroll's claim is baseless and intended for harassment.[23]  I denied that motion in an opinion dated March 10, 2022 on two grounds. The first was that the proposed amendment would be futile.[24]   In the alternative, I denied it on the additional grounds that Mr. Trump's motion was delayed unduly and made at least in part for a dilatory purpose and that granting the motion would prejudice Ms. Carroll unfairly.[25]

On May 5, 2022, the parties jointly submitted a proposed discovery schedule.[26]  I approved their proposed schedule in an order that directed the parties to substantially complete their

---

[22]

*Carroll v. Trump*, 49 F.4th 759 (2d Cir. 2022).

The District of Columbia Court of Appeals heard argument on January 10, 2023, and as of this date, it has not issued its decision yet.

[23]

*Carroll I*, Dkt 63.

[24]

*Id.*, Dkt 73 at 23; *Carroll*, 590 F. Supp. 3d at 589.

[25]

*Id.*

[26]

*Carroll I*, Dkt 75.

written discovery and requests for inspection or examination by August 3, 2022, and to substantially complete all fact discovery by October 19, 2022.[27]  In a supplemental scheduling order, I set a deadline of November 16, 2022 to complete all discovery and set a trial date of February 6, 2023, later adjourned until April 10, 2023.[28]

Undaunted, Mr. Trump again moved to substitute the United States in his place and to stay all proceedings in *Carroll I*.  I denied both requests.[29]  In doing so, I noted that "discovery in this case has virtually concluded" and that "discovery and evidence relating to whether or not the alleged rape occurred is relevant to both" *Carroll I* and *Carroll II*.[30]

*Mr. Trump's Refusals to Provide a DNA Sample in Discovery in Carroll I*

During oral argument on February 22, 2022 on Mr. Trump's motion for leave to add the anti-SLAPP counterclaim, Mr. Trump's counsel admitted that discovery had not yet been

---

[27]

    *Id.*, Dkt 76.

[28]

    *Id.*, Dkt 77, 102.

    The Court has reserved decision on whether to consolidate or jointly try *Carroll I* with *Carroll II* against the possibility that the District of Columbia Court of Appeals will decide the scope of employment issue certified to it by the Second Circuit in order to permit a fully informed judgment by this Court.

[29]

    *Carroll I*, Dkt 96 at 16; *Carroll*, 2022 WL 6897075, at *7.

[30]

    *Carroll I*, Dkt 96 at 12, 15; *Carroll*, 2022 WL 6897075, at *6-7.

    Of course, *Carroll II* had not yet been filed because the window for filing such an action pursuant to the Adult Survivors Act did not become effective until November 2022.  But Ms. Carroll alerted Mr. Trump and the Court in August 2022 that she would file *Carroll II* once she could.  It therefore was obvious that Ms. Carroll would file her second case against Mr. Trump in November 2022.

exchanged.[31]  Ms. Carroll's attorney renewed the request for Mr. Trump's DNA sample:

> "[W]e'd like to get on with discovery. So, and we think discovery in this case is very, very fast. We do not seek to depose President Trump. He can depose our client. He can depose the other two women who she told contemporaneously when it happened. And we'd like his DNA. That's it."[32]

Ms. Carroll's counsel  implicitly renewed that request on August 8, 2022, writing that Mr. Trump "has barely participated in the discovery process at all."[33]  One week later, on August 15, 2022, Mr. Trump's counsel continued the refusal of the requested DNA sample. She stated that Mr. Trump "wholly object[ed] to [the] request for a DNA sample."[34]  She went on:

> "Plaintiff has not demonstrated a reasonable basis for such an intrusive request, nor does it reasonably relate to her claims and defences [sic] in this matter. Further, the request is highly prejudicial given chain of custody concerns and violates Defendant's privacy rights, which are especially sensitive given that he is a former President. In the event that Plaintiff files a Motion to Compel, we will adamantly oppose it and seek a protective order to prevent its enforcement."[35]

---

[31]  *Carroll I*, Dkt 71 at 4.

[32]  *Id.* at 28.

[33]  *Id.*, Dkt 89 at 2.

[34]  Dkt 52 at 3.

[35]  *Id.*

The August 15, 2022 letter by Mr. Trump's counsel has not been filed, but is quoted in Ms.

*Limited Additional Discovery Authorized in Carroll II*

  Ms. Carroll filed this case, *Carroll II*, in November 2022, minutes after the Adult Survivors Act became effective. On December 2, 2022, I directed the parties to submit a discovery plan that would contain, *inter alia*:

>   "a. Any contention that any of the discovery taken in [*Carroll I*], is not admissible in this action and the basis, item-by-item, for that contention.
>
>   "b. A detailed statement of what specific discovery that was not conducted in *Carroll I* is needed for the prosecution or defense of this case and the basis for the contention that it is needed."[36]

  Neither the parties' written submissions nor their oral arguments referred either to the appendix to the years-old DNA report nor to the still unfulfilled request for Mr. Trump's DNA.  In an order dated December 21, 2022, I concluded that "[t]he discovery taken in *Carroll I*, which ha[d] been completed, fully explored the question whether the defendant sexually assaulted [Ms. Carroll] as she alleges."[37]  The only issues for which additional discovery was authorized in *Carroll II* were "damages, including emotional or psychological damages, allegedly suffered by [Ms. Carroll] as a result of the alleged sexual assault . . . and [Mr. Trump's] October 12, 2022 statement."[38]  The order

---

Carroll's response letter to Mr. Trump's February 10, 2023 application for the remainder of the DNA report. Mr. Trump has not disputed the accuracy of the quoted portions of the letter.

[36]  Dkt 10.

[37]  Dkt 19 at 1.

[38]  *Id.* at 2.

enumerated the permissible discovery, the last of which was required to be completed by February 6, 2023.[39]  Neither Mr. Trump nor Ms. Carroll objected to that order.

This trial initially was scheduled to start on April 17, 2023.  As a personal accommodation for Mr. Trump's new trial counsel, I moved the trial date to April 25, 2023.[40]

*Mr. Trump's February 10, 2023 Request for the Appendix*

On February 9, 2023, Mr. Trump's counsel "emailed [Ms. Carroll's] counsel requesting [(for the first time)] a copy for the missing pages of the [DNA] report."[41]  Ms. Carroll's counsel declined to produce the appendix. So, on February 10, 2023, Mr. Trump for the first time requested the Court to direct Ms. Carroll to provide Mr. Trump the appendix to the DNA report she already had provided.

Mr. Trump's letter stated that he "is indeed willing to provide a DNA sample for the sole purpose of comparing it to the DNA found on the dress at issue, *so long as the missing pages of the DNA [r]eport [(i.e., the appendix)] are promptly produced prior to [Mr. Trump] producing*

---

[39]

*Id.* at 3.

The February 6, 2023 deadline was adjourned to a later date for one of Mr. Trump's experts only.  During a scheduling conference held on February 7, 2023, Mr. Trump's new counsel – attorneys from Tacopina Seigel & DeOreo P.C. – requested more time for service of the report of Mr. Trump's proposed psychiatric expert, Dr. Edgar Nace, due to certain personal circumstances of Dr. Nace. I granted that request, and adjusted the expert discovery deadlines and motions *in limine* deadlines with respect to Dr. Nace, or any substitute expert in place of Dr. Nace, only.  All other deadlines in the original scheduling order remained unaffected. Dkt 49.

[40]

*See* Dkt 54, Tr., Feb. 7, 2023, at 19.

[41]

Dkt 51 at 1.

*his DNA.*"[42]

Ms. Carroll opposes Mr. Trump's request.  She argues that the request is made in bad faith, pointing to the history of Mr. Trump's continuous refusal to provide a DNA sample.[43]  She opposes Mr. Trump's request also on the grounds that it is "untimely" and that granting it would be "prejudicial" given that fact discovery in *Carroll I* and *Carroll II* has closed and because Mr. Trump's request, if accepted, "would inevitably delay the trial."[44]  In support of the latter, Ms. Carroll outlined a number of further steps that she contends would be required.  Importantly, these steps include "a report by [Ms.] Carroll's expert," "a report by [Mr. Trump's] rebuttal expert," "depositions of both experts," and "motion practice regarding any requested *in limine* rulings" related to the DNA evidence.[45]

Mr. Trump, for his part, has made clear that he expects expert discovery on this issue, not merely a copy of the appendix to the old DNA report.  Indeed, his counsel claimed that they "already [had] conferred with a DNA expert" and asserted that they will have "a relevant report generated."[46]

Thus, it is entirely clear that granting Mr. Trump's request would be only the first step

---

[42]   *Id.* at 2 (emphasis added).

[43]   Dkt 52 at 2-3.

[44]   *Id.* at 3-4.

[45]   *Id.* at 4.

[46]   Dkt 53 at 1.

in introducing a complicated new subject into this case that both sides elected not to pursue over a period of years.

## *Discussion*

*Legal Standard*

"A district court has broad discretion in deciding whether to re-open discovery."[47] Federal Rule of Civil Procedure 16 provides that "[a] schedule may be modified only for good cause and with the judge's consent."[48]   District courts in this Circuit generally consider six factors in deciding whether good cause to re-open discovery exists:

> "(1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence."[49]

"A significant consideration is whether there has already been adequate opportunity

---

[47] *Iacovacci v. Brevet Holdings, LLC*, No. 1:18-cv-08048 (MKV), 2022 WL 540658, at *1 (S.D.N.Y. Feb. 23, 2022); *see also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) ("Recognizing the district court's broad discretion to direct and manage the pre-trial discovery process, we . . . review a district court's discovery rulings for abuse of discretion.").

[48] Fed. R. Civ. P. 16(b)(4).

[49] *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011).

for discovery."[50]  Courts have also placed importance on the moving party's diligence in obtaining the discovery within the deadlines set by the court's scheduling order.[51]

### Trial is Imminent and the Request is Opposed

Trial of this case is imminent.  Ms. Carroll objects to any postponement.  And, as noted above, she opposes Mr. Trump's request for the appendix to the DNA report.  Accordingly, both of these factors weigh against granting Mr. Trump's application.

### The Discovery Now Belatedly Sought Was Foreseeable and Mr. Trump Was Not Diligent in Seeking It

The procedural histories of *Carroll I* and *Carroll II* described above demonstrate that Mr. Trump was anything but diligent in seeking the appendix to the DNA report.  His counsel of course either (1) knew of the omission of the appendix and decided not to ask for it or (2) were grossly negligent in failing to read the report.  If the former, he is not now entitled to change his mind.  If the latter, he was not diligent by any stretch of the imagination.  He has not provided any satisfactory justification for the current request.

---

[50]     *Id.*

[51]     *Iacovacci*, 2022 WL 540658, at *1 ("As a general rule, discovery should only be re-opened if the movant can show that 'despite its having exercised diligence, the applicable deadline set in the court's scheduling order could not reasonably have been met.'") (quoting *Forte v. City of New York*, No. 16-cv-560 (VSB), 2021 WL 878559, at *2 (S.D.N.Y. Mar. 8, 2021)); *see also Tatintsian v. Vorotyntsev*, No. 1:16-cv-7203 (GHW), 2021 WL 780139, at *5 (S.D.N.Y. Jan. 27, 2021) ("Because they were not diligent in seeking the discovery at issue, Defendants failed to demonstrate the good cause necessary to modify the [scheduling order] to re-open discovery.").

*Granting Mr. Trump's Request Would Prejudice Plaintiff Unduly*

This Court previously observed that "Mr. Trump has litigated this case [(*Carroll I*)] since it began in 2019 with the effect and probably the purpose of delaying it."[52]  As the Court noted in a previous opinion:

> "As plaintiff contends, defendant's actions have been dilatory throughout the litigation. As she aptly puts it, he 'has slow-rolled his defenses, asserting or inventing a new one each time his prior effort to delay the case fails.' . . .

> "Taken together, these actions [(the history of defendant's motions to stay and conduct, described above)] demonstrate that defendant's litigation tactics have had a dilatory effect and, indeed, strongly suggest that he is acting out of a strong desire to delay any opportunity plaintiff may have to present her case against him. That conclusion draws further support from the facts that (1) the plaintiff is the only percipient witness (other than the defendant) to the alleged rape, and (2) she is 78 [(now, 79)] years of age. The relevance of these facts is obvious."[53]

I assume that producing the appendix to the DNA report would not be at all burdensome for Ms. Carroll.  But Mr. Trump has made clear that he wants far more than that document alone.  He not only has expressed a willingness to provide a DNA sample "so long  as" he first is provided the appendix to the report, but also an interest in conducting his own DNA analysis to be followed by a report by his expert.  That likely would lead to additional expert analysis

---

[52]

  *Carroll I*, Dkt 96 at 2*; Carroll*, 2022 WL 6897075, at *1.

[53]

  *Carroll I*, Dkt 73 at 19, 21; *Carroll*, 590 F. Supp. 3d at 587-88.

by an expert for Ms. Carroll and expert discovery including depositions of the DNA experts for each side.  All this would occur as a result of Mr. Trump's refusal to produce a DNA sample in response to any of the prior requests made by Ms. Carroll coupled with his failure either to read the DNA report and note the absence of the appendix or of a deliberate decision not to ask for it.

Mr. Trump's offer to provide a DNA sample as a *quid pro quo* for production of the appendix and then to begin a process of new expert analyses inevitably leading to further reports and discovery almost certainly would delay the trial.  More than that, his conditional invitation to open a door that he kept closed for years threatens to change the nature of a trial for which both parties now have been preparing for years.  Whether Mr. Trump's application is intended for a dilatory purpose or not, the potential prejudice to Ms. Carroll is apparent.

### *The Discovery May Not Lead to Relevant Evidence*

It is important to bear in mind also that Mr. Trump has had the body of the DNA report and its conclusions for over three years. The appendix he now seeks simply contains the electropherograms that were generated in reaching the report's conclusions.  And Mr. Trump has not explained the specific relevance, if any, of the electropherograms.[54]  Moreover, I have considered Mr. Trump's surmise that Ms. Carroll has not produced the appendix to the report because "she knows [that Mr. Trump's] . . . DNA is not on the dress because the alleged sexual assault never

---

[54]   Nor has Mr. Trump explained how there could be any possible "due process" concern related to his receipt of the appendix to the DNA report.  Dkt 51 at 3.  He had every opportunity to seek it during the discovery period he allowed to expire without even asking for it.

occurred."[55]  That of course is factually impossible for a simple reason: Mr. Trump never provided a DNA sample for the purpose of comparing it to the DNA on her dress.  No one knows whether his DNA is on the dress.

Nor is it clear that injecting a DNA issue into the case at this late date would be likely to produce any important evidence for several reasons:

*First*, even if there were a "match" between Mr. Trump's DNA sample and the mixture of DNA recovered on Ms. Carroll's dress, that would tend only to show that there was some encounter between Mr. Trump and Ms. Carroll on at least one occasion when she wore that dress. But it would not prove or disprove Ms. Carroll's rape allegation.

*Second*, even if a DNA analysis were to determine that Mr. Trump could be eliminated as a potential contributor to the mixture of DNA found on Ms. Carroll's dress, the probative value of such a determination would be very far from conclusive.  It would not disprove Ms. Carroll's accusation.  The alleged rape could have occurred without a sufficient quantity or quality of Mr. Trump's DNA to have remained on the dress since the mid 1990s.

*Third*, it is possible that the results of further DNA analysis using Mr. Trump's DNA sample would be entirely inconclusive.[56]

---

[55]

Dkt 51 at 3.

[56]

*See* National Institute of Justice, *DNA Evidence Basics: Possible Results from Testing*, Aug. 8, 2012, https://nij.ojp.gov/topics/articles/dna-evidence-basics-possible-results-testing ("Results may be interpreted as inconclusive for several reasons. These include situations where no results or only partial results are obtained from the sample due to the limited amount of suitable human DNA or where results are obtained from an unknown crime scene sample but there are no samples from known individuals available for comparison. In the latter case, the results would be suitable for comparison once an appropriate sample for comparison is tested.").

### *Conclusion*

Mr. Trump has offered "no persuasive reason to relieve [him] of the consequences of [his] own failure to seek [the appendix] in a timely fashion."[57] He has failed to demonstrate good cause to reopen discovery for the purpose of obtaining these pages of the DNA report. Nor is there any legitimate basis for this Court to accept Mr. Trump's offer to provide his DNA sample made contingent on the Court granting his application, which it does not. Accordingly, Mr. Trump's letter application (Dkt 51) is denied.

SO ORDERED.

Dated:        February 15, 2023

_____
Lewis A. Kaplan
United States District Judge

---

[57] *Kelly v. Wright Med. Tech., Inc.*, No. 00-cv-8808 (LAK), 2003 WL 40473, at *1 (S.D.N.Y. Jan. 3, 2003).