**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL      212.763.0883
DIRECT EMAIL     rkaplan@kaplanhecker.com

February 15, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

           Re:    *Carroll v. Trump*, 22 Civ. 10016 (LAK) ("*Carroll II*")

Dear Judge Kaplan:

       We write on behalf of Plaintiff E. Jean Carroll regarding certain issues that have arisen in connection with the Rule 35 examination that Defendant Donald J. Trump has proposed in this action. For the reasons explained below, we respectfully request that the Court enter an order that (1) any examination is limited to the question of emotional and psychological damages *and* must serve to rebut the opinion of Carroll's expert, Dr. Leslie Lebowitz; (2) Trump's expert may not use standardized tests; (3) there may be only one expert; (4) the examination may not be recorded; and (5) Trump may not force Carroll to sign a confusing and prejudicial consent form.

* * *

       Ever since Trump disclosed that he intended to have an addiction specialist, Dr. Edgar Nace, perform a mental examination of Carroll, we have sought to understand the scope, methods, and conditions of the proposed examination. ECF 47 at 3 n.2; *see* Fed. R. Civ. P. 35(a)(2)(B). Trump's original counsel ultimately agreed that we were entitled to know that information and promised to obtain it from Dr. Nace before he announced that he would have to withdraw. At the February 7 conference, Trump's counsel revealed that Dr. Nace did not, in fact, need to withdraw and could complete his rebuttal report by February 28. Tr. of Feb. 7, 2023 Conf. at 9, 11. We expected to pick up the conversation about Dr. Nace's examination where it had left off weeks before.

       But on the evening of February 13, Trump's counsel notified us that they would use two experts (Dr. Ian Lamoureux and Dr. Jill Hayes) to examine Carroll. They followed up with a series of additional emails on February 14. In one, they said that the proposed 16-hour examination would take place at a court reporter's office. A couple of hours later, they informed us that they would "record" the examination. And a couple of hours after that, they sent a "consent form" that Carroll would be required to sign before the examination commenced. *See* Exs. A, B, C (emails between counsel); Ex. D (consent form).

**KAPLAN HECKER & FINK LLP**                                                                                                                2

Amidst these seriatim emails, we sent an email raising certain threshold issues about the proposed examination. Ex. A at 10–11. We expressed concern that the two experts' qualifications seemed to suggest that the examination would focus on Carroll's credibility—a concern that was especially serious given Trump's recent filings requesting an adjournment to identify an expert to "explore" Carroll's "underlying claim of being sexually assaulted," ECF 48 at 4, and arguing that expert discovery was relevant to "the question as to whether the alleged sexual assault even occurred," ECF 51 at 2. Indeed, Dr. Lamoureux claims on his website expertise in "false allegations" and "false heroism,"[1] and the only experience seemingly relevant to sexual trauma on his CV is a 2016 presentation entitled "Crying Wolf: Understanding False Sexual Assault Allegations." Ex. E at 4 (Dr. Lamoureoux CV). In that same correspondence, we asked for an explanation of the methods that the examination would involve and expressed our confusion on why two experts were needed.

Trump's response was unilluminating. On scope, his counsel insisted that the "examination and testimony will be limited to the topics authorized by Judge Kaplan's pretrial and scheduling order." Ex. A at 9. But, then, they claimed the right to evaluate "the intentional production of false or grossly exaggerated physical or psychological symptoms"—a backdoor to whether Carroll should be believed that the assault even occurred. *Id.* On methods, they confirmed that Trump's expert would perform standardized testing and attached a list of **40** potential tests that the expert might choose from. But the tests go well beyond the discovery limitations the Court has set, ECF 19 at 2–3, and would serve no apparent rebuttal purpose. For example, Trump's list includes tests frequently used to evaluate daily functioning such as someone's ability to live independently (Adaptive Behavior Assessment Scale); cognitive ability, including dementia (St. Louis Mental Status Exam, Montreal Cognitive Assessment Test, and Mini-Mental State Examination); basic reading and math skills (Wide Range Achievement Test); workplace bullying (Negative Acts Questionnaire); daytime sleepiness (Epworth Sleepiness Scale); depression in elderly people (Geriatric Depression Scale); and obsessive-compulsive disorder (Yale–Brown Obsessive Compulsive Scale). Others are clearly geared toward questions of credibility, such as the Gudjonsson Suggestibility Scale and the Multi-Dimensional Iowa Suggestibility Scale. Still others are repetitive and redundant in that they test subjects for the exact same issues (*e.g.*, Millon Clinical Multiaxial Inventory, Minnesota Multiphasic Personality Inventory, and Personality Assessment Inventory). *See* Ex. A at 2–7.

We immediately responded, noted the apparent irrelevant nature of many of the tests, and asked for identification of the tests that might actually be applied. Ex. A at 8. Today, Trump's counsel insisted that each and every one of the tests might be used and that it was "impossible to meaningfully narrow the list" prior to the examination. Ex. A at 1. While we regret having to involve the Court in this discovery dispute, given the parties' impasse and impeding case deadlines, we respectfully request the Court's intervention.

* * *

*Scope*. The Court should affirm that any mental examination in this action must be limited to the question of emotional harm and be a response to the particular subject matter addressed in Dr. Lebowitz's report. *See* ECF 19 at 1 ("the question whether the defendant sexually assaulted

---

[1] http://www.lamoureuxforensics.com/areas-of-expertise.

**KAPLAN HECKER & FINK LLP**

the plaintiff" has been "fully explored"). Dr. Lebowitz's report did not diagnose Carroll with any condition or disorder (like PTSD), but rather accounted for how Carroll's experiences of the past few decades fit within the literature on and professional understanding of trauma. Ex. F. She specifically addressed harm in the form of guilt, shame, and denigration, and the avoidance of men and loss of intimate relationships. Dr. Lebowitz also discussed why those harms were not linked to other traumatic experiences that Carroll has reported.

That means that Trump's rebuttal expert cannot opine that Carroll fabricated the sexual assault or its effects, or fish for diagnoses that would bolster Trump's argument that Carroll fabricated the sexual assault because she "is sick"; "[t]here's something wrong with her"; she "said other things" that "were frankly crazy"; she is a "wack job"; she is a "very deranged, sick person, to make it up"; she is a "wacky person that made up a story"; and "[t]hat's a sick woman that would say that." Trump Dep. at 103:16–17, 121:12–13, 137:15, 216:7–8, 216:23–24, 217:2–4, *Carroll v. Trump*, No. 20 Civ. 7311 (S.D.N.Y. Jan. 12, 2023), ECF 117-06. It also means that Trump's rebuttal expert cannot spend time disproving a form of harm that Dr. Lebowitz did not diagnose and Carroll has not claimed (*e.g.*, PTSD).

***Procedure***. The Court should also prohibit Trump's expert from using any standardized tests. In the context of Rule 35 examinations, courts have explained that "requiring [a plaintiff] to undergo unidentified testing would deprive him of the opportunity to seek an order precluding those tests that may be irrelevant to this litigation." *Hirschheimer v. Associated Metals & Mins. Corp.*, No. 94 Civ. 6155, 1995 WL 736901, at *4 (S.D.N.Y. Dec. 12, 1995); *see also Robinson v. De Niro*, 600 F. Supp. 3d 286, 291 (S.D.N.Y. 2022) ("[P]laintiff was entitled as a matter of process to understand the tests that would be conducted and have an opportunity to seek an order precluding tests that may be irrelevant."). This rule accounts for the significant invasion of privacy that such an examination entails and the fact that attorneys are typically not present to prevent an examination from becoming a "fishing expedition." *See, e.g.*, *Bowen v. Parking Auth. of Camden*, 214 F.R.D. 188, 195 (D.N.J. 2003).

Defendant's overbroad list of 40 tests is hardly the type of notice that would facilitate pre-evaluation challenge. Most or all have no obvious relevance; one entry even refers to "Structured Clinical Interview for DSM-5," which encompasses a series of questions that would be used to test upwards of 298 distinct DMS-5 diagnoses. Ex. A at 6; Suris, Holliday, & North, *The Evolution of the Classification of Psychiatric Disorders*, Behav. Sci. (Jan. 18, 2016).[2] And Trump's suggestion that "[s]election of specific tests will depend on the content of the evaluation" is no answer. Ex. A at 9. Trump's expert is limited to rebutting Dr. Lebowitz's report. If he cannot articulate a reason why a particular test serves that purpose, then that test should not be used.

***Multiple Experts.*** The Court should also limit Trump to a single rebuttal expert. Until this week, Trump had never suggested to either Carroll or the Court that he would present two such experts. And Trump's counsel has since confirmed that Dr. Lamoureux and Dr. Hayes have different qualifications, would perform different roles in the examination, would offer their own separate opinions, and may both testify at trial. *Id.* at 9; Ex. D at 1–2. At the same time, Trump's counsel has indicated that only "Dr. Lamoureux will prepare a written report." Ex. D at 2. This not-the-same-but-not-distinct approach is certain to complicate proceedings and disregards the

---

[2] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4810039/.

KAPLAN HECKER & FINK LLP

4

Court's order, which limited Trump's *Carroll II* discovery to furnishing a report of "defendant's *expert* who will offer testimony with respect to plaintiff's alleged emotional or psychological damages," ECF 19 at 2 (emphasis added), as well as Federal Rule 26(a)(2)(B), which requires a report by each expert who might testify.[3]

***Recording.*** The Court should deny Trump's request to record Carroll's examination as well. It is a general rule that recording of mental examinations is not permitted, *see Robinson*, 600 F. Supp. 3d at 292, as doing so "would only serve to discourage full and free discussion between the [examinee] and the expert," *Iannazzo v. Pitney Hardin LLP*, No. 04 Civ. 7413, 2005 WL 77093, at *2 (S.D.N.Y. Jan. 13, 2005). There are no "special circumstances" here that would justify deviation from this general rule, and using a recording device would only inhibit the examination. *Robinson*, 600 F. Supp. 3d at 292.

***"Consent Form."*** Finally, the Court should not allow Trump to condition any examination on the consent form that he has proposed. That form is laden with inappropriate and confusing requests. For example, although Dr. Lamoureux and Dr. Hayes are retained by Trump, the consent form includes the following line: "I understand that Dr. Lamoureux's opinions may help, harm, or have no bearing on my case." Ex. D at 2. For an examinee with no background in expert testimony or psychological evaluations, this sends confusing signals about the neutrality of Trump's experts. Further, the consent form inappropriately asks Carroll to agree to the scope of the examination, the identity of the expert report's author, and the use of recording devices. *See id.* at 1–2.

At bottom, the consent form presents Carroll with an impossible choice: she can agree to the unilateral conditions set by Trump—conditions that might prejudice her in her litigation—or be the reason the examination does not move forward. Carroll should not be put in such a lose-lose position.

* * *

Carroll is ready and willing to sit for an appropriate examination. To ensure that an examination can take place as soon as the parties' disputes are resolved, we are confirming Carroll's availability for an examination starting the morning of February 21. We are available for a telephone conference to discuss this application at any time and appreciate the Court's attention to this matter.

Respectfully submitted,

Roberta A. Kaplan

cc: Counsel of Record

---

[3] To the extent that Dr. Lamoureux's report incorporates any aspect of Dr. Hayes' opinion, that would be improper, as Dr. Lamoureux must be qualified to give all of his opinions, and we must be able to examine him regarding the basis for them.