# tacopina seigel trial lawyers
TACOPINA SEIGEL & DEOREO

**JOSEPH TACOPINA**
EMAIL: jtacopina@tacopinalaw.com
www.tacopinalaw.com

275 Madison Avenue, 35th Floor
New York, NY 10016
Telephone (212) 227-8877
Facsimile (212) 619-1028

February 16, 2023

**FILED BY ECF**
Hon. Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   **Carroll v. Trump, 22 Civ. 10016 (LAK) ("Carroll II")**

Dear Judge Kaplan:

We represent Defendant, Donald J. Trump, and write in response to Plaintiff's recent letter motion seeking to have the Court micro-manage Plaintiff's independent medical examination ("IME"), which boiled to its essentials, is merely a ploy to delay these proceedings and to interfere with Defendant's ability to comply with the tight expert discovery schedule set by the Court. As the Court remembers, we asked for additional time to complete expert discovery due to the problems with finding an expert. Thereafter, the Court granted a limited extension of time, and we have been endeavoring to meet that schedule. Accordingly, each and every delay prejudices the defense.

Specifically, Plaintiff asks that the Court to enter an order that (1) limits the scope of the IME to Plaintiff's emotional and psychological damages and rebutting Plaintiff's own expert report (to which we have never objected); (2) prohibits the use of **any** standardized tests; (3) prohibits Defendant's expert (a psychiatrist) from consulting with a psychologist; (4) prohibits the audio recording of the IME; and (5) prohibits the use of a consent form. We respond to each in the above-referenced order and respectfully submit that Plaintiff's assertions are made for the sole purpose of gamesmanship to improperly interfere with and delay the IME.

**Scope of the IME**

Plaintiff argues that the scope of Plaintiff's IME should be limited to "any examination [as] to the question of emotional and psychological damages and must serve to rebut the opinion of Carroll's expert, Dr. Leslie Lebowitz." (ECF No. 57 at p. 1). We wholeheartedly agree with that scope and we have never argued otherwise to Plaintiff's counsel. Plaintiff also expressed concerns

TACOPINA SEIGEL & DEOREO

Hon. Lewis A. Kaplan
February 16, 2023
Page 2

that the scope of the IME should not include an analysis of whether the alleged sexual assault occurred in the first place. We wholeheartedly agree with that as well. In fact, we emailed Plaintiff's counsel on February 14, 2023: "we confirm that the scope of our rebuttal expert examination and testimony will be limited to the topics authorized by Judge Kaplan's pretrial and scheduling order as well as Dr. Lebowitz's report. Accordingly, such examination and testimony will not opine on the ultimate question as to whether plaintiff's claimed sexual assault occurred." (ECF No. 57-1 at p. 10 of 13).

However, even after we agreed to the obvious (*i.e.* that the expert cannot opine on whether the sexual assault occurred), Plaintiff was not satisfied. Her counsel now argues that our expert is not even permitted to "opine that Carroll fabricated the sexual assault or **its effects** ...." (ECF No. 57 at p. 3)(emphasis added). Thus, these objections are just becoming absurd and clearly show what this instant motion is all about, namely to delay and improperly interfere. There is no credible basis to argue that our expert cannot opine as to the "effects" of the alleged sexual assault. That is the whole purpose of the IME. This objection makes no sense and is frivolous.

Additionally, our expert is clearly entitled to opine as to whether Plaintiff is malingering as to her alleged emotional harm. Malingering is defined as "to pretend or exaggerate illness in order to escape duty or work; to feign or produce physical or psychological symptoms to obtain financial compensation or other reward." *Castro v. U.S. Postal Serv.*, No. CV 11-5071 GRB, 2015 WL 1412660, at *3 n. 2 (E.D.N.Y. Mar. 23, 2015)(internal quotation and citation omitted).

The issue of whether a plaintiff is pretending or exaggerating his/her injuries caused by the underlying incident is clearly within the proper scope of a personal injury IME, and to argue otherwise is absurd. *See id.* at * 3 ("[T]here is significant evidence that the plaintiff has exaggerated and misrepresented the pain resulting from his injuries and the limitations imposed upon his activities. Although one of the defendant's experts reported that he did not believe that the plaintiff had engaged in malingering during the independent medical examination,... a review of the record as a whole suggests otherwise."); *Tritt v. Automatic Data Processing, Inc. Long Term Disability Plan*, No. 3:06-CV-2065 RNC, 2012 WL 3309380, at *2 (D. Conn. Aug. 13, 2012)("Pursuant to the Plan, Prudential referred her to psychologist Michael D'Anton, Ph.D., for an independent medical examination ('IME'). Dr. D'Anton met with plaintiff and concluded that she was not disabled but was instead malingering, or feigning symptoms."), aff'd, 531 F. App'x 177 (2d Cir. 2013); *Sanchez v. State*, 22 Misc. 3d 1125(A), 880 N.Y.S.2d 876, * 4 (Ct. Cl. 2008)("The report of neuropsychologist Maria Lifrak, PhD (Claimant's Exhibit 34) concluded that while claimant has made a good recovery from her accident and has no significant impairment in overall memory function, she has mild difficulty recognizing people's faces as well as with multi-tasking and

TACOPINA SEIGEL & DEOREO

Hon. Lewis A. Kaplan
February 16, 2023
Page 3

complex divided-attention tasks. Claimant's verbal fluency was noted as mildly impaired. Notably, the evaluation report concluded that claimant was giving her best effort in performing the tests and was not malingering.").

We also explained this point to Plaintiff's counsel: "please be advised that the tests listed serve the purpose of evaluating plaintiff's emotional and psychological condition and identifying whether she is malingering her claim of trauma and emotional injuries" and "malingering has nothing to do with the specific allegation the plaintiff makes vis-a-vis the legal action itself and is instead solely focused on illness/symptoms. It is well-established that it is best practice to assess for malingering in all forensic evaluations, as the DSM-5 itself states that malingering should be suspected in medicolegal contexts. Practice guidelines put forth by the American Academy of Psychiatry and the Law specifically discuss assessing malingering. In light of the foregoing, the intended psychological testing is well within the parameters of topics authorized by Judge Kaplan's pretrial and scheduling order as well as Dr. Lebowitz's report." (ECF No. 57-1 at pp. 3 of 13 and 10 of 13).

Therefore, the scope of Plaintiff's IME will be, as it always has been (and we have never argued otherwise), confined to the issues of whether Plaintiff was emotionally harmed by the alleged sexual assault, and if so, to what degree and whether she is pretending or exaggerating her injuries. The scope of the IME will not include an analysis as to whether the alleged sexual assault occurred in the first place.

**Use of Standardized Tests**

The very case that Plaintiff cites clearly holds that we are only obligated to disclose the standardized tests that our expert will use. *See Hirschheimer v. Associated Metals & Mins. Corp.,* No. 94 CIV. 6155(JKF), 1995 WL 736901, at *4 (S.D.N.Y. Dec. 12, 1995)("Some courts have allowed psychological testing that the physician deems appropriate without requiring that those tests be previously identified. However, requiring Mr. Hirschheimer to undergo unidentified testing would deprive him of the opportunity to seek an order precluding those tests that may be irrelevant to this litigation. For this reason, ASOMA shall be limited to administering the one test that it has specifically identified.").

We not only identified the tests, but provided Plaintiff's counsel with an explanation of each test. (ECF No. 57 p. 3-8, 10) Plaintiff's counsel now argues that **none** of these tests should be administered without any explanation as to why, other than conclusory assertions that they are an "invasion of privacy" and constitute a "fishing expedition." (ECF No. 57 at p. 3). Plaintiff's

TACOPINA SEIGEL & DEOREO

Hon. Lewis A. Kaplan
February 16, 2023
Page 4

attorneys are not psychiatrists or psychologists and they provide no analysis from their own expert as to why these tests are an "invasion of privacy" and constitute a "fishing expedition."

Due to the fact that counsel and judges are not psychiatrists or psychologists, courts refuse to micro-manage IMEs and pick and choose what standardized tests should be administered. *See Rance v. Jefferson Vill. Condo. No. 5*, No. 18 CIV. 6923 (JCM), 2019 WL 12373336, at *5 (S.D.N.Y. Sept. 23, 2019)("Plaintiffs' request essentially asks the Court to determine what is necessary for an independent expert to analyze their claims. Such a request subverts the truth finding function inherent in a Rule 35 examination. Accordingly, Plaintiffs' request to limit the scope of Dr. Siegert's questioning is denied."); *Reeder v. Butler Transp., Inc.*, No. 21-CV-202-SMY, 2022 WL 1453367, at *2 (S.D. Ill. May 9, 2022)("[T]he Court will not micro-manage how Dr. Kaplan performs his testing. The Court obviously expects Dr. Kaplan to act professionally and not submit Ms. Reeder to any unnecessary testing."); *Doe v. D.C.*, 229 F.R.D. 24, 28 (D.D.C. 2005)("Although the parties have clearly not come to an agreement as to how the examination will be administered, the court leaves the matter to the expertise and judgment of the professional charged with conducting the examination. Dr. Alford has the court's trust that she will perform only those tests necessary to ascertain what defendant has explained in its motion, namely, the extent of plaintiff's mental and emotional injury stemming from the incidents that are the basis for this lawsuit."); *Schlunt v. Verizon Directories Sales-W., Inc.*, No. 3:05-CV-666-J-25, 2006 WL 1643727, at *4 (M.D. Fla. June 12, 2006)("The Court is hesitant to limit the types of tests which should be administered, as it believes Dr. Kaplan is more informed to make such a judgment."); *Tillman v. Masse Contracting Co.*, No. CV 06-2480, 2006 WL 8456492, at *2 (E.D. La. Dec. 20, 2006)("This Court finds no reason to specify the tests that examinee should undergo, that decision is best left to the examiner.").

Accordingly, the Court should deny Plaintiff's request for an order prohibiting any standardized tests.

**Use of More Than One Expert**

It is black-letter law that an expert issuing an expert report may rely upon and consult with other experts:

> [I]t is not necessary that Professor Hubbard perform his own empirical studies. *See Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 385 (S.D.N.Y. Sept. 15, 2014) ("[A]n expert may rely on assistants or the opinions of other experts in formulating their own expert opinions."); *Malletier [v. Dooney & Bourke, Inc.]*, 525 F. Supp. 2d [558, 664 (S.D.N.Y. 2007)("It is true that experts are permitted to rely on opinions

TACOPINA SEIGEL & DEOREO

Hon. Lewis A. Kaplan
February 16, 2023
Page 5

of other experts to the extent that they are of the type that would be reasonably relied upon by other experts in the field.") The Direct Action Plaintiffs argue that Professor Hubbard also did not "conduct any empirical study or analysis to assess ... whether the 'studies done by others' he relies on are even reliable." (Hubbard Excl. Mem. 7–8.) While an expert may not uncritically rely on data supplied by a party, *see Forte v. Liquidnet Holdings*, 675 F. App'x 21, 24 (2d Cir. 2017), requiring experts to empirically analyze the studies they rely on would essentially obviate the rule that an expert may rely on the opinions of other experts.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB), 2022 WL 14814183, at *20 (E.D.N.Y. Oct. 26, 2022); *see also Water Pollution Control Auth. of City of Norwalk v. Flowserve US Inc.*, No. 3:14-CV-00549 (VLB), 2018 WL 1525709, at *11 (D. Conn. Mar. 28, 2018)("Peer consultation and review is a customary and appropriate means of conducting and validating the delicacy of scientific research. Rules 702 and 703 do not prohibit experts from consulting with other experts in their field. See Fed. R. Evid. 703 (allowing experts to rely on any facts or data upon which other experts in that field would reasonably rely). Flowserve's argument that Hodgson is unqualified on this basis is unavailing. The Court finds Hodgson qualified to render an expert opinion in this case."), aff'd 782 F. App'x 9 (2d Cir. 2019).

Here, as we explained to Plaintiff's counsel (ECF No. 57 at p. 10), it is common practice for psychologists to provide consultation to psychiatrists to perform an independent forensic evaluation. Forensic psychologists generally assist forensic psychiatrists by administering the testing itself and testifying about such testing. In contrast, forensic psychiatrists opine about the results of such testing. In accord with such common practice, here, Dr. Ian Lamoureux and Dr. Jill Hayes will each have their own qualifications, such that neither will be duplicative of the other and each will offer their own opinions. We also provided the curriculum vitae of both Dr. Ian Lamoureux and Dr. Jill Hayes to Plaintiff's counsel, and Plaintiff is free to depose both of them.

Consequently, Dr. Lamoureux should be entitled to rely upon and consult with Dr. Hayes in issuing his expert report.

**Audio Recording of the IME**

Dr. Lamoureux intends to audio record the IME so that he may rely upon it for his report. We are perfectly willing to produce a copy of this recording. There will be no videographer or third person in the conference room to do such a recording. Dr. Lamoureux will do it himself and it will not interfere with the IME. This is perfectly acceptable under the case law. *See Sidari v. Orleans*

TACOPINA SEIGEL & DEOREO

Hon. Lewis A. Kaplan
February 16, 2023
Page 6

*Cnty.*, 174 F.R.D. 275, 291 (W.D.N.Y. 1996)("[T]he Court is not persuaded by defendants' argument that the presence of a tape recorder would 'destroy any candor' by the plaintiff and subvert the entire purpose of the examination. Being an interpersonal exchange between two persons, there is by definition, a subjective component to a psychiatric examination. Thus, although it may not be required as a matter of law, the Court will direct that the mental examination be recorded by a mechanical audio tape recorder."); *Gade v. State Farm Mut. Auto. Ins. Co.*, No. 5:14-CV-00048-CR, 2015 WL 12964613, at *4 (D. Vt. Jan. 2, 2015)("[The presence of an unobtrusive tape recording during a medical exam should not inhibit the expert's ability to question the Plaintiff. In this case, an unobtrusive audio recording device may be helpful in ensuring that the IME proceeds in accordance with the court's Order.")(quotations and brackets omitted).

Therefore, an unobtrusive audio recording should be permitted.

**Consent Form**

Dr. Lamoureux requests that Plaintiff sign a harmless consent form prior to the IME. Plaintiff's first objection to this form is that it states that Dr. Lamoureux's expert report "may help, harm, or have no bearing on my case." That is simply stating the obvious and is not confusing in the least bit. Plaintiff then objects to the consent form because it "identit[ies] ... the expert report's author." This objection clearly is not confusing and is, again, stating the obvious. Lastly, Plaintiff objects that the consent form states that Plaintiff consents to the audio recording, which as demonstrated above, is wholly appropriate.

Accordingly, this harmless consent form should be permitted.

**Plaintiff's Counsel's Email Sent at 10:05 PM Last Night**

Shortly after filing the instant motion, Plaintiff's counsel sent the following email to the Defense last night at 10:05 pm:

Counsel:

We disagree with much of your email, and it seems like we will need Judge Kaplan to resolve certain disputes regarding the content of the examination, recording, whether Ms. Carroll can be required to sign your proposed consent form which speaks to scope and methods, and whether your client is permitted two experts. We have filed a letter raising these disputes with the Court. A copy is attached here.

TACOPINA SEIGEL & DEOREO

Hon. Lewis A. Kaplan
February 16, 2023
Page 7

All that said, we understand that some form of examination is likely to occur, and it makes sense to set a schedule. Given that Monday is a holiday, and the Court should be available in case there are any issues that arise mid-examination, we believe it makes sense for the first day of the examination to be Tuesday, February 21. As for location, we do have concerns about COVID protocols and the comfort of our client during a long day. As you know, Ms. Carroll is 79 years old and recently recovered form a serious bout with pneumonia. We think it makes more sense to use space at our office. Our conference rooms are located in an area away from attorney offices, both the expert and Ms. Carroll can be provided individual rooms for breaks, and the only person that the expert and Ms. Carroll will interact with is the firm's receptionist.

Therefore, Plaintiff is objecting to using a neutral location for the IME and states that it should not occur next Monday, because that day is a holiday. By e-mail on the morning of February 14, 2023, we offered to conduct the examination at a court reporter's office on February 20 and 21, 2023 (ECF No. 57-3 at p. 3). It was not until late last night that Plaintiff stated that she prefers not to do it on Monday and objects to a neutral location. Moreover, Plaintiff does not explain why she is not available on Monday, which is especially problematic because we have such little time to complete the IME and the expert report.

As to Plaintiff's "concerns about COVID protocols and the comfort of [their] client during a long day," litigants routinely give depositions at court reporter's offices, so it is unclear why using a court reporter's conference room is problematic. This is especially so when Monday will be a holiday and there will likely be less traffic at such office. Plaintiff also has not claimed that she is not using public transportation, attending crowded events or eating in restaurants, or that she is restricting her human interactions in anyway.

It also should be noted that Plaintiff attended examination sessions with her expert for approximately twenty-two hours, sixteen hours of which were in person in New York City. Hence, we are not asking Plaintiff to do anything more than her own expert required.

Additionally, Dr. Lamoureux requests a neutral location so that there will be no interference from counsel, which is completely appropriate. *See Miller as Next Friends of I.M.M. v. United States*, No. CV 17-00587 HG-WRP, 2020 WL 13546422, at *2 (D. Haw. Jan. 3, 2020)("the IME shall take place at an appropriate neutral location").

TACOPINA SEIGEL & DEOREO

Hon. Lewis A. Kaplan
February 16, 2023
Page 8

\* \* \*

Based upon the foregoing, Defendant respectfully requests that the Court deny Plaintiff's motion and order her to submit to the IME on February 20 and 21, 2023.

Your consideration is greatly appreciated.

Very truly yours,

Joseph Tacopina

cc: All counsel by ECF