# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL        212.763.0883
DIRECT EMAIL       rkaplan@kaplanhecker.com

February 20, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

                Re:     *Carroll v. Trump*, 22 Civ. 10016 (LAK)

Dear Judge Kaplan:

       We write on behalf of Plaintiff E. Jean Carroll in opposition to Defendant Donald J. Trump's letter motion of today's date seeking yet another extension of time to complete an IME and serve a rebuttal expert report regarding the damages Carroll suffered as a result of Trump's sexual assault. *See* ECF 61.

* * *

       Trump has already had ample time to complete this discovery. Although he has known since last August that Carroll would use a psychological expert, he still requested a six-week adjournment of all deadlines in this action after his original expert, Dr. Edgar Nace, apparently said he would have to withdraw. ECF 47. Days later, Trump's counsel assured the Court that Dr. Nace could, in fact, continue as an expert and complete his work by February 28. Conf. Tr. (Feb. 7, 2023) at 11:15–22. In light of that assurance, the Court granted a four-week extension of the original rebuttal report deadline and an eight-day adjournment of trial. ECF 49. But a week later, Trump changed his mind once again and retained two new experts, Dr. Ian Lamoureux and Dr. Jill Hayes, instead of Dr. Nace.

       Although the parties had certain disputes regarding the examination that those experts proposed, the Court resolved those disputes overwhelmingly in Trump's favor. The IME would involve the two in-person examination days requested by Trump's experts and would begin on February 21, just one day later than the originally proposed start date; the total time designated for the examination was exactly what Trump had requested; and the exam would be conducted by two experts who were free to administer any of the 40 standardized tests they had identified for potential use. ECF 59 at 2; *see also* ECF 57-1 at 9. In other words, the Court's order allowed Trump's experts to conduct their examination as they wanted, with the only substantive limitation

being that the IME could "not include an analysis as to whether the alleged sexual assault occurred." ECF 59 at 2.

Following the Court's order, Carroll made arrangements to travel to New York City for the IME, including booking a hotel for Tuesday night, and we began a conversation with Trump's counsel relating to COVID protocols and other examination logistics. It was not until the afternoon of February 20—the day before the IME was scheduled to begin—that Trump's counsel notified us that they would be requesting a two-week adjournment of the expert discovery deadline because Dr. Lamoureux and Dr. Hayes could not "ethically proceed with the evaluation as ordered by the Court." ECF 61-1 at 3–4. We were understandably surprised by this development, especially given the extensive prior communications about the IME between the parties and with the Court. We also expressed concern that the very examination that Trump had proposed—and that the Court had authorized—turned out to be one that Trump's latest experts now apparently believe cannot be conducted ethically. *Id.* at 2. We informed Trump that Carroll could not consent to a two-week adjournment since that would prejudice our trial preparation, but indicated that we would be willing (as a last-resort accommodation) to extend the rebuttal expert report deadline from February 28 to March 3.

Our email response to Trump's counsel explained why we do not believe that their request is appropriate, and we would direct the Court to that correspondence, which is attached as an exhibit to Trump's motion and which we incorporate by reference. *See* ECF 61-1 at 2–3.

* * *

Since we sent that email, however, Trump's position seems to have shifted once again. Trump now seems to suggest that the sole reason for his latest adjournment request is his experts' "unavailability to conduct the IME this Wednesday, February 22nd." ECF 61 at 2. But for some reason, Trump's counsel left that point out of their almost identically worded email to us earlier today.[1] And at no point before today did Trump's counsel ever suggest that their experts had a conflict on February 22. There was no mention of a conflict in counsel's prior email proposing a Zoom session for today.[2] Nor was there any mention of a conflict in any other prior correspondence

---

[1] *Compare* ECF 61 at 2 ("Dr. Lamoureux's letter was an utter shock to us because he had assured us numerous times that he could complete the IME and expert report under the current deadline. In fact, as late as Saturday afternoon, he confirmed he could complete these tasks without delay. **Notably, because our experts expressed their unavailability to conduct the IME this Wednesday, February 22nd, we inquired whether Plaintiff's counsel would produce her for such an examination on Monday, February 20th, by Zoom.**"), *with* ECF 61-1 at 4 ("Dr. Lamoureux's letter was an utter shock to us because he had assured us numerous times that he could complete the IME and expert report under the current deadline. In fact, as late as Saturday afternoon, he confirmed he could complete these tasks without delay. **Notably, we sought such confirmation after you expressed that you would not produce plaintiff for an IME by Zoom on Monday.**").

[2] On Friday, February 17, we sent an email to opposing counsel about COVID protocols and deposition scheduling, and further proposed "to have the exams start at noon on Tuesday and 10:30 on Wednesday" and asked that "[i]f there is a particular period you would like Ms. Carroll to reserve for any necessary Zoom follow-up, please let us know." The parties exchanged a series of emails relating to COVID protocols. On Saturday, February 18, Trump's counsel sent a further email, which stated, in its entirety: "I know the court ordered this to start on Tuesday. But can Doctor Hayes do an evaluation by Zoom on Monday? Please let me know." At no point did opposing counsel elaborate on their request, explain that a Monday Zoom session would be in lieu of a Wednesday in-person examination, or indicate that they otherwise had a conflict for Wednesday, February 22.

**KAPLAN HECKER & FINK LLP**

3

about Carroll's IME. And there was no mention of a conflict in Trump's prior letter to the Court specifically addressing the dates of the IME. *See* ECF 58 at 7–8.

Nor would such a minor scheduling issue explain why both Dr. Lamoureux and Dr. Hayes would have to completely withdraw from this action on ethics grounds, prompting Trump to seek yet another adjournment so that he can try to find yet another replacement expert. Parties work through scheduling issues all the time, and we have done so repeatedly in this case. And after Carroll said that she would consent to an extension to March 3, *see* ECF 61-1 at 3, Trump's counsel could have conferred with us so that the current experts could complete their IME on a mutually agreeable date and finish their report within that extended schedule. Notably, Trump's counsel chose not to do so.

In all events, a workaday scheduling conflict obviously does not explain the highly unusual formal letter that Trump's experts sent Trump's counsel after "hours of reflection and consultation with senior colleagues and three attorneys." ECF 61-2 at 1. In that letter, Dr. Lamoureux and Dr. Hayes write: "We do not now believe that it would be ethically permissible for us to proceed with the evaluation as limited by the current court order." *Id.* at 2. These concerns do not suggest a mere scheduling issue, especially since the Court's order did not limit the evaluation to a single day, and the total time available for the examination was not in dispute. ECF 59 at 2; ECF 57-1 at 9. But the experts' letter does suggest a very different concern. As noted above, the Court's order afforded Trump's experts nearly everything they wanted for the IME, subject to an important limitation: the IME "will not include an analysis as to whether the alleged sexual assault occurred." ECF 59 at 2. Given that the time allotted for the IME is exactly what Trump had proposed, that specific limitation on substance is the only aspect of the Court's order that could possibly explain the experts' "sudden and unexpected change of heart." ECF 61 at 2. We respectfully submit that only this limitation could have prompted Trump's experts to consult with senior colleagues and outside counsel about their ethical obligations and withdraw entirely from this action, without determining whether their single-day conflict could be accommodated. Trump's lawyers, of course, knew the nature of the testimony that they had requested that their experts give. The quandary in which Trump now finds himself is thus very much one of his own making.

* * *

At bottom, it is not Carroll's fault that Trump's three psychological experts so far have withdrawn from this case—and the burden of a further adjournment should not be Carroll's to bear. But an additional burden on Carroll is *exactly* what Trump's motion would impose. Any further extension on Trump's rebuttal expert report would take away from our time to depose Trump's expert, file any related motion in limine, and prepare to examine that expert at trial. At this point, so close to trial, enough is enough. Trump's motion should be denied.

Respectfully submitted,

*[signature]*

Roberta A. Kaplan

cc:     Counsel of Record