# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

        *Plaintiff*,

v.

DONALD J. TRUMP,

        *Defendant*.

No. 22 Civ. 10016 (LAK) (JLC)

## PLAINTIFF E. JEAN CARROLL'S MEMORANDUM OF LAW IN SUPPPORT OF OMNIBUS MOTION IN LIMINE

Roberta A. Kaplan
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

STANDARD OF REVIEW ........................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

   I.   THE COURT SHOULD MAKE THE SAME EVIDENTIARY RULINGS IN
       *CARROLL I* AND *CARROLL II* ..................................................................................... 2

   II.   THE COURT SHOULD EXCLUDE ROBERT J. FISHER AS AN EXPERT ................. 4

       A.   The Court Should Exclude Fisher Because He Is Not a Rebuttal Expert ................... 4

       B.   The Court Should Preclude Fisher's Testimony in its Entirety Because His
            Analysis Is Not Reliable ............................................................................................ 7

       C.   Each Portion of Fisher's Testimony Should Be Precluded for Further Reasons ....... 10

            1.   Fisher Should Not Be Permitted to Draw Legal or Factual Conclusions ........... 10

            2.   Fisher Should Not Be Permitted to Testify Regarding Carroll's Reputational
               Harm ................................................................................................................... 12

CONCLUSION ............................................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002) ................................................................................ 17

*Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*,
No. 11 Civ. 505, 2017 WL 715909 (S.D.N.Y. Feb. 10, 2017) ................................ 12

*Capri Sun GmbH v. Am. Beverage Corp.*,
595 F. Supp. 3d 83 (S.D.N.Y. 2022) ..................................................................... 11

*Capstone Logistics Holdings, Inc. v. Navarrete*,
No. 17 Civ. 4819, 2019 WL 12239656 (S.D.N.Y. Mar. 19, 2019) ........................... 5

*Carroll v. Trump*,
No. 20 Civ. 7311, 2022 WL 6897075 (S.D.N.Y. Oct. 12, 2022) ............................. 2

*Carroll v. Trump*,
No. 22 Civ. 10016, 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023) ....................... 2, 7

*Complaint of Kreta Shipping, S.A.*,
181 F.R.D. 273 (S.D.N.Y. 1998) ............................................................................. 6

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579, 113 S. Ct. 2786 (1993) ............................................................... 7, 16

*Davis v. Carroll*,
937 F. Supp. 2d 390 (S.D.N.Y. 2013) .............................................................. 12, 16

*Ebbert v. Nassau Cty.*,
No. 05 Civ. 5445, 2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) ........................... 6

*Engler v. MTD Prod., Inc.*,
304 F.R.D. 349 (N.D.N.Y. 2015) ............................................................................ 5

*Faulkner v. Arista Recs. LLC*,
46 F. Supp. 3d 365 (S.D.N.Y. 2014) ................................................................. 9, 17

*Highland Capital Mgmt., L.P. v. Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008) ..................................................................... 1

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
No. 00 Civ. 1898, 2008 WL 1971538 (S.D.N.Y. May 7, 2008) ............................. 12

*In re Mirena IUD Prod. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016) ............................................................... 9, 15

*In re Puda Coal Sec. Inc., Litig.*,
   30 F. Supp. 3d 230 (S.D.N.Y. 2014)..........................................................................5

*In re United States*,
   945 F.3d 616 (2d Cir. 2019)......................................................................................2

*Koppell v. N.Y. State Bd. of Elections*,
   97 F. Supp. 2d 477 (S.D.N.Y. 2000)......................................................................14

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137, 119 S. Ct. 1167 (1999)......................................................................9

*LinkCo, Inc. v. Fujitsu Ltd.*,
   No. 00 Civ. 7242, 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ...........................13

*Lippe v. Bairnco Corp.*,
   288 B.R. 678 (S.D.N.Y. 2003)..................................................................................7

*Lippe v. Bairnco Corp.*,
   99 F. App'x 274 (2d Cir. 2004) .................................................................................7

*Luce v. United States*,
   469 U.S. 38, 105 S. Ct. 460 (1984)...........................................................................2

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
   209 F. Supp. 3d 612 (S.D.N.Y. 2016)....................................................................15

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
   720 F. App'x 24 (2d Cir. 2017) ...............................................................................15

*Mango v. BuzzFeed, Inc.*,
   316 F. Supp. 3d 811 (S.D.N.Y. 2018)......................................................................1

*Nimely v. City of N.Y.*,
   414 F.3d 381 (2d Cir. 2005)............................................................................10, 12

*Palmieri v. Defaria*,
   88 F.3d 136 (2d Cir. 1996).........................................................................................1

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ................................................................................4

*United States v. Kaufman*,
   No. 19 Cr. 504, 2021 WL 4084523 (S.D.N.Y. Sept. 8, 2021)..................................7

*United States v. Ray*,
   583 F. Supp. 3d 518 (S.D.N.Y. 2022)..............................................................10, 14

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................ 4, 5, 6

Fed. R. Evid. 702 ................................................................................................................ 8, 10

## PRELIMINARY STATEMENT

The central question in this case is whether Defendant Donald J. Trump sexually assaulted Plaintiff E. Jean Carroll in a Bergdorf Goodman dressing room. That is the same central question in the related action, *Carroll I*, where the parties submitted their respective motions in limine last week. Since liability in each action turns on the same question, and the evidence concerning that question is identical, the evidentiary rulings governing that evidence should be consistent as well. Accordingly, the Court should enter the same order in this action that Carroll has requested in *Carroll I*.

In addition, the Court should again preclude Trump's defamation damages expert (Robert J. Fisher) from testifying at trial. Trump retained the same rebuttal expert in both cases, and that expert applied the same unreliable methodology here as he did in *Carroll I*. Fisher offers only *ipse dixit* opinions regarding Carroll's damages, dedicates much of his report to impermissibly drawing legal and factual conclusions, and engages in data-less, conclusion-driven speculation. In fact, Fisher admitted at his deposition that he did not actually respond or rebut Carroll's expert in any way and failed to read Carroll's expert's report. For all of these reasons, his testimony should be excluded.

## STANDARD OF REVIEW

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mango v. BuzzFeed, Inc.*, 316 F. Supp. 3d 811, 812 (S.D.N.Y. 2018) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d

173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 n.4 (1984)). In ruling on evidentiary issues, trial courts have significant discretion "within the bounds of the Federal Rules of Evidence." *In re United States*, 945 F.3d 616, 630 (2d Cir. 2019).

## ARGUMENT

## I.   THE COURT SHOULD MAKE THE SAME EVIDENTIARY RULINGS IN *CARROLL I* AND *CARROLL II*

Trump raped Carroll in a Bergdorf Goodman dressing room in the mid-1990s. When Carroll told her story publicly for the first time in June 2019, Trump responded with a series of vicious and defamatory statements, in which he denied having sexually assaulted Carroll and accused her of fabricating her accusation to sell books and advance a political agenda. Trump's June 2019 statements gave rise to an action for defamation. *See Carroll v. Trump*, No. 20 Civ. 7311 (S.D.N.Y.) ("*Carroll I*"). Three years later, in October 2022, Trump issued another highly personal statement about Carroll, repeating many of his earlier defamatory claims. Carroll then filed the present action, bringing a new claim for defamation as well as a claim for battery pursuant to New York's Adult Survivors Act, which gives survivors of sexual assault an opportunity to sue without regard to the otherwise applicable statute of limitations. *See Carroll v. Trump*, No. 22 Civ. 10016 (S.D.N.Y.) ("*Carroll II*").[1]

As this Court has repeatedly recognized, the "central" question in both cases is exactly the same: "whether Mr. Trump in fact raped Ms. Carroll." *Carroll v. Trump*, No. 20 Civ. 7311, 2022 WL 6897075, at *7 (S.D.N.Y. Oct. 12, 2022); *accord Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 2006312, at *2 (S.D.N.Y. Feb. 15, 2023). The two cases have been designated related; discovery in *Carroll II* proceeded based on the understanding that discovery regarding that central

---

[1] This motion incorporates by reference the factual presentation included in Carroll's opposition to Trump's summary judgment motion and her Rule 56.1 response in *Carroll I*. *See Carroll I*, ECF 113, 115.

2

question was completed during *Carroll I*; and, with the exception of certain evidence relating to damages, all of the witnesses and exhibits identified in the parties' joint pretrial order in *Carroll I* appear in their joint pretrial order in *Carroll II*. ECF 19, 65; *Carroll I*, ECF 129.

In *Carroll I*, on February 16, 2023, Carroll moved in limine to: (1) admit Carroll's prior consistent statements to Lisa Birnbach and Carol Martin about Trump's attack; (2) admit the testimony of Natasha Stoynoff and Jessica Leeds regarding their similar experiences involving Trump; (3) exclude testimony from witnesses whom Trump has not disclosed, preclude Trump from testifying to undisclosed information, and preclude any testimony or commentary concerning DNA evidence; (4) preclude cross-examination or evidence regarding Stephanie Grisham's prior misdemeanor convictions, her unrelated pending lawsuit, and her use of a prescription medication; and (5) preclude comments and cross-examination regarding Carroll's choice of counsel. *See Carroll I*, ECF 134 ("*Carroll I* MIL").

For the reasons set forth in her briefing in that action, the Court should do the same here. There is no reason for divergent evidentiary rulings. With respect to (1) and (2) above, Carroll's prior consistent statements and the accounts of Stoynoff and Leeds all go to the shared central question of whether Trump sexual assaulted Carroll. *Id.* at 2–10.[2] With respect to (3), Trump's failure to disclose witnesses and other relevant evidence is no less problematic here than it was in *Carroll I*—and arguably is more concerning given Trump's additional opportunities for disclosure in this action as well as the Court's specific directive that Trump identify any discovery needed in this action that was not covered in *Carroll I*. ECF 10; *see* ECF 16 at 4 ("Defendant agrees with Plaintiff's position that discovery in *Carroll II* should be largely focused on the new issues raised

---

[2] In fact, in this action, Trump's primary argument for why Rule 415 does not apply goes away completely since there is no doubt that Carroll's battery claim pursuant to the Adult Survivors Act is "based on" a sexual assault for purposes of that Rule. *Compare Carroll I*, ECF 131 at 5–6.

in this action."); *id.* at 10 ("Defendant accepts Plaintiff's proposal that the existing disclosures served in *Carroll I* be deemed disclosures in *Carroll II* …."). Finally, with respect to (4) and (5), any extraneous cross-examination, evidence, or commentary regarding Grisham's personal history or Carroll's choice of counsel is no more relevant, and no less prejudicial, in this action than it would be in *Carroll I*.

## II.   THE COURT SHOULD EXCLUDE ROBERT J. FISHER AS AN EXPERT

That leaves the purported expert rebuttal testimony of Robert J. Fisher in *Carroll II*. In *Carroll I*, Carroll retained Professor Ashley Humphreys to assess the harm to Carroll's reputation caused by Trump's June 2019 statements. Trump hired Robert J. Fisher as a rebuttal expert. The issue of defamation damages is again in dispute in *Carroll II*, this time relating to Trump's October 2022 statement. As before, Carroll retained Professor Humphreys to serve in her prior role, and Trump represented that he had purportedly hired Fisher to do the same.

However, because Fisher, by his own admission, does not rebut or respond to Professor Humphreys' report, he should be excluded. Fisher should also be precluded from testifying because, as in *Carroll I*, his methods are patently unreliable, and his report reflects an overall lack of preparation and carelessness. That conclusion is even more apparent when breaking Fisher's report down piece by piece. In the end, there is no reliable expert testimony that Fisher can offer in this action.

### A.   The Court Should Exclude Fisher Because He Is Not a Rebuttal Expert

The role of a rebuttal expert is "*solely* to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added). Accordingly, the scope of the rebuttal expert's testimony "is limited to the same subject matter encompassed in the opposing party's expert report," *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016), and is "properly admissible when it will explain, repel, counteract or disprove

the evidence of the adverse party," *Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17 Civ. 4819, 2019 WL 12239656, at *4 (S.D.N.Y. Mar. 19, 2019).

Fisher, by his own admission, does none of these things. Although Trump's counsel represented that Trump would again use Fisher as a "rebuttal expert to Ashlee Humphreys," Conf. Tr. at 4 (Dec. 21, 2022), and Trump served Fisher's report on the deadline for "new or supplemental rebuttal expert reports," ECF 19 at 3, Fisher admitted moments into his deposition in *Carroll II* that he was not acting as a rebuttal expert at all: "In *Carroll II*, … I was asked to do just an expert report, and it had nothing to do with rebuttal reports." Ex. 1 ("Fisher *Carroll II* Dep.") at 10:1–5; *see id.* at 11:5–7 ("The first one was a rebuttal report. The second one was a plain expert report."). He insisted that rebutting Professor Humphreys was not his assignment: "I was not asked to do a rebuttal report on [Professor Humphreys'] second report and, as a matter of fact, I didn't even read it." *Id.* at 12:5–9; *see id.* at 51:23–24 ("I wasn't directed to do anything with her second report.").

For these reasons, Fisher "spent two minutes looking at" Professor Humphreys' *Carroll II* report and "didn't look at the appendices." *Id.* at 51:5, 55:6–7. When asked whether there were "any parts of Professor Humphreys' *Carroll II* report that [he] sought to rebut in connection with [his] *Carroll II* report," his answer was plain: "No, not at all." *Id.* at 52:9–13. In his own words: "I'm not here to talk about her second report." *Id.* at 12:8–9.

If Fisher, accordingly to his own explicit statements discussed above, did not rebut Professor Humphreys in his report and did not rebut Professor Humphreys at his deposition, then the rules do not permit him to rebut Professor Humphreys at trial. *See* Fed. R. Civ. P. 26(a)(2)(B)(i); *Engler v. MTD Prod., Inc.*, 304 F.R.D. 349, 355–56 (N.D.N.Y. 2015). Because testifying as a rebuttal expert was his only permissible role, Fisher should be excluded. *Cf. In re*

*Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 252 (S.D.N.Y. 2014) (collecting cases where expert opinion exceeded assigned role).

It is no answer for Trump to simply recharacterize Fisher as an affirmative expert. The schedule for expert disclosures in this action called for expert reports on one date and rebuttal reports three weeks later. ECF 19 at 3. That two-step disclosure process tracked Trump's own proposal for discovery in this action. ECF 16 at 9. And it follows the structure of Federal Rule of Civil Procedure 26(a)(2)(D), which gives more time to disclose rebuttal expert testimony while imposing limits on the substance of such testimony. *See Complaint of Kreta Shipping, S.A.*, 181 F.R.D. 273, 275 (S.D.N.Y. 1998).

Trump cannot take advantage of the later deadline for disclosure of a rebuttal report, but then offer an entirely different form of expert testimony to which there was no opportunity or time for Carroll to respond. *See Ebbert v. Nassau Cty.*, No. 05 Civ. 5445, 2008 WL 4443238, at *14 (E.D.N.Y. Sept. 26, 2008) (testimony in rebuttal report that should have been in de novo report excluded because plaintiff "did not have an opportunity to respond to the new material contained in [] Rebuttal Report and Defendants took no steps to cure this prejudice," "prejudice cannot be cured by further discovery" on the eve of trial, and Defendants' submission of report was "not inadvertent").

Exclusion is all the more warranted here because this situation did not result from oversight or misunderstanding. Fisher confirmed at his deposition that Trump's counsel did not ask him to play a rebuttal role. Fisher *Carroll II* Dep. at 10:2–9, 10:24–11:2. But Trump's counsel told the Court something entirely different after Fisher had already been retained. Conf. Tr. at 4 (Dec. 21, 2022). And this representation followed a clear directive from the Court to identify the "specific discovery" that was needed in this action. ECF 10. Trump could have proceeded differently.

Because he didn't, he should be held to the consequences of the choices that he made. *Cf. Carroll*, 2023 WL 2006312, at *1–*2, *8.

**B.      The Court Should Preclude Fisher's Testimony in its Entirety Because His Analysis is Not Reliable**

Fisher should also be excluded as an expert for the same reasons Carroll outlined in her *Carroll I* motion in limine: his analysis fails to meet the necessary reliability standards of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), and Rule 702. *See Carroll I* MIL at 12–15.

As explained in that prior briefing, the district court is the gatekeeper of expert testimony and is charged with "ensur[ing] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *United States v. Kaufman*, No. 19 Cr. 504, 2021 WL 4084523, at *18 (S.D.N.Y. Sept. 8, 2021) (quoting *Daubert*, 509 U.S. at 597, 113 S. Ct. at 2788). In *Carroll I*, Fisher "explicitly disclaim[ed] the use of any data, methods, sciences, or any literature to inform his opinions," relying instead "solely on his person knowledge informed by his experience in public relations." *Carroll I* MIL at 12. In such circumstances, an expert must "do more than aver conclusorily that his experience led to his opinion" or offer testimony that is "speculative or conjectural," "based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith,'" or "connected to existing data only by the *ipse dixit* of the expert." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) (citation omitted). Fisher did not and could not meet these standards. Not only did his work demonstrate an utter lack of care or preparation, but the methodology that he applied—his so-called "common sense"—was nothing more than his *ipse dixit* opinions regarding Carroll's damages as derived from conclusion-driven speculation. *Carroll I* MIL at 13–15, 19–22.

Those same flaws are present here. For one, Fisher continues to exhibit an overall lack of preparation and sheer carelessness. The entirety of his "research" to assess Carroll's reputational harm consisted of six news articles and some unspecified "googling." Ex. 2 ("Fisher *Carroll II* Rep.") at 12; Fisher *Carroll II* Dep. at 149:13. Only three of those articles postdated the October 2022 defamatory statement at issue, while the other three were from June 2019. Fisher *Carroll II* Rep. at 12. Fisher completed his research in "at most an hour." Fisher *Carroll II* Dep. at 46:23–47:1; *see also id.* at 37:1–40:8, 44:15–19, 48:7–17. The other resources that he lists in his report, such as various "legal documents," were materials Fisher skimmed in preparation for the *Carroll I* report. Fisher *Carroll II* Rep. at 11; Fisher *Carroll II* Dep. at 48:7–11. Fisher did not go back and "re-review" those documents as he prepared his *Carroll II* report, even though the time crunch from his earlier work was no longer an issue. Nor did he take any steps to ensure the information he reviewed the first time around was representative. Fisher *Carroll II* Dep. at 48:7–22. As a result, Fisher's familiarity with the case remains dramatically and demonstrably insufficient. *E.g.*, *id.* at 48:7–22, 120:3–6 ("I didn't know there were any other [depositions].").

In addition, despite suggesting that he was drawing on his "prior experience," Fisher did not review any files from his prior cases in connection with his *Carroll II* report. *Id.* at 49:12–15. Fisher also copied and pasted parts of his *Carroll I* report into his *Carroll II* report without updating the text to capture how the circumstances in *Carroll II* may bear on his analysis. *Id.* at 206:23–207:2.[3] And, as mentioned, he failed to read Professor Humphreys' report at all. *See id.* at 12:3–9, 55:6–7, 55:22–56:6. Taken together, this preparation does not reflect, nor result in, the "same level of 'intellectual rigor that characterizes the practice' of his field." *Carroll I* MIL at 13 (citing Fed.

---

[3] Fisher even copied and pasted parts of his prior reports without updating the proper usage of "plaintiff" and "defendant" in this case to reflect the correct parties and who retained him as an expert. *E.g.*, Fisher *Carroll II* Dep. at 66:24–69:8.

R. Evid. 702, advisory committee note and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176 (1999)), and "may alone be grounds for exclusion." *Carroll I* MIL at 14 (citing *Faulkner v. Arista Recs. LLC*, 46 F. Supp. 3d 365, 381 (S.D.N.Y. 2014)).

Moreover, Fisher's methodology has the exact same flaws as before. At his deposition, Fisher doubled down on the unredeemable approach he applied in *Carroll I. See* Fisher *Carroll II* Dep. at 27:18–21 ("Q. And has your approach to your work as an expert changed since your *Carroll I* deposition in any way?" A. No, no."); *id.* at 28:3–6 ("Q. Have you developed any new methods or methodologies or techniques as a part of your work since your *Carroll I* deposition? A. No."); *id.* at 28:11–14 ("Q. And would you say your methodology in *Carroll II* is similar to your methodology in *Carroll I*? A. I would say so yes."). In fact, his *Carroll II* report explicitly states that his opinions are not based on any "surveys, studies, tests, research or other forms of qualitative, qualitative [sic] types of analyses or fact gathering procedures." Fisher *Carroll II* Rep. at 13; *see also* Fisher *Carroll II* Dep*.* at 49:17–50:23. And while he gestures toward his "background" and "experience" as the basis for his testimony, Fisher *Carroll II* Rep. at 13, Fisher does not provide any analysis or adequately explain how the experience he purports to rely on actually informs his opinions.

At bottom, Fisher grounds his conclusions in unfettered and undefined "common sense" and "feel." *E.g.*, Fisher *Carroll II* Dep. at 38:9–23, 130:15–18. But the law requires more. It is well established that for an expert to properly testify, "vague references to 'common sense' [are not] enough: 'If [an] opinion is based on simple common sense, it is not helpful; the jury does not need expert opinion because its common sense will suffice. And if the jury needs expert opinion because common sense will not suffice, it must come from an expert who is applying her expertise.'" *Carroll I* MIL at 15 (quoting *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d

396, 484 (S.D.N.Y. 2016)). Here, as before, Fisher "offers nothing more than a 'because I said so explanation,' which 'cannot satisfy the reliability prong of Rule 702 and *Daubert*.'" *Carroll I* MIL at 15 (quoting *United States v. Ray*, 583 F. Supp. 3d 518, 542 (S.D.N.Y. 2022)).

### C. Each Portion of Fisher's Testimony Should Be Precluded for Further Reasons

As in *Carroll I*, assessing Fisher's report piece by piece reveals additional grounds for preclusion. *See Carroll I* MIL at 17–22. Here, Fisher purports to offer his opinion on two distinct topics: (1) whether Trump's statement meets the legal standard for defamation under New York law, and (2) whether Carroll suffered reputational harm. Fisher *Carroll II* Rep. at 24. Testimony on both should be precluded, leaving nothing on which Fisher could possibly testify.[4]

#### 1. Fisher Should Not Be Permitted to Draw Legal or Factual Conclusions

Although Fisher saw it as his role to assess whether Trump defamed Carroll, that kind of testimony obviously falls far outside the bounds of permissible expert opinion. That impermissibility should be uncontroversial, as it is well established that an expert may not usurp (1) "the role of the trial judge in instructing the jury as to the applicable law" or (2) "the role of the jury in applying that law to the facts before it." *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005). Fisher does both. As a result, the parts of his report dedicated to impermissible legal conclusions and factual determinations should be precluded. *See* Fisher *Carroll II* Rep. at 14–18, 21–24.[5]

---

[4] The remainder of Fisher's report does not reflect opinions he might offer in this case. The first five or so pages are dedicated to a recitation of Fisher's experience and qualifications. Fisher *Carroll II* Rep. at 1–6. The next six pages contain Fisher's description of the case and a list of the information Fisher reviewed to inform his opinions. *Id.* at 6–12. The next two pages contain a high-level description of Fisher's purported methodology. *Id.* at 12–13. Finally, the section of the reported titled "PLAINTIFF'S EXPERT" and the subsection entitled "Reputation Repair Program," *see id.* at 21–24, were copied and pasted from Fisher's *Carroll I* report. Fisher *Carroll II* Dep. at 206:8–207:2. Fisher did not update this section to address Professor Humphreys' *Carroll II* report. *Id.* at 207:19–208:11. Thus, the arguments in the *Carroll I* motion in limine that address this aspect of his report apply equally here. *See Carroll I* MIL at 17–22.

[5] While Fisher also tries to diminish Professor Humphreys' qualifications, arguing that she does not have the necessary experience to opine on the harm to Carroll's reputation, *see* Fisher *Carroll II* Rep. at 21–22, it is solely the prerogative

*First*, in a subsection called "Analysis of Statements," Fisher went through the exact same exercise he did in *Carroll I*: he addressed each allegedly defamatory claim and offered his opinion on whether it meets the legal criteria for defamation. Fisher *Carroll II* Rep. at 14–16; Fisher *Carroll II* Dep. at 84:6–12 (acknowledging this analysis was the same as in *Carroll I*). After giving his opinion as to each statement individually,[6] he concludes: "it is my opinion that none of the statements she identified can be determined as being false and the negative implications are expressions of his opinions which constitute his right to free speech." Fisher *Carroll II* Rep. at 16; *see also id.* at 17–18 (same for defamation per se).[7] It is hard to imagine anything less appropriate for admissible expert testimony.

*Second*, Fisher provides his opinions on the facts of the case and the credibility of the witnesses throughout his report. *E.g.*, Fisher *Carroll II* Rep. at 14–18.[8] Fisher then doubled down on these assertions at his deposition. He opined, for example, that Carroll's testimony is not sufficient to prove that the rape occurred, and even claimed that if a jury believed Carroll's account, they would simply be engaging in "speculation, conjecture, supposition, assumption, presumption and hypothesiz[ation]." Fisher *Carroll II* Dep. at 112:16–21. *See also id.* at 91:3–6, 92:7–10,

---

of the court to assess the reliability of expert testimony, including whether an expert is qualified to testify in the first place. *See Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 138–39 (S.D.N.Y. 2022) (precluding an expert from testifying as to another expert's qualifications).

[6] Fisher's impermissible opinions include claims such as: "it is more of a defamatory statement for the Plaintiff to have made a statement that it did occur"; "Trump's comment was clearly an opinion and constitutes speculation and supposition"; "There is no reckless regard for the truth if there is no 'truth' to base it on." Fisher *Carroll II* Rep. at 14–16.

[7] Fisher admitted he was not aware that this Court had, in denying Trump's motion to dismiss, rejected the argument that Trump's statement did not meet the definition of defamation per se. *See* Fisher *Carroll II* Dep. at 125:9–126:24 ("I wasn't aware of that.").

[8] For example, Fisher writes that "[t]here is no evidence that the rape occurred other than her allegation. …. Unless there is proof it happened, his denial is not a false statement." Fisher *Carroll II* Rep. at 16. He later rejects the suggestion that Carroll suffered "emotional pain and suffering at the hands of the man who raped her," because the "allegation that he raped her is unproven." *Id.* at 18.

92:19–93:3, 100:18–104:3, 113:23–114:14, 116:16–20, 119:10.[9] During his deposition, Fisher insisted that it was somehow proper for him to do so because "people are not sophisticated. People on juries are not sophisticated in communications. I mean, they can be housewives, they can be plumbers, they can be architects, they can be engineers, whatever. They're experts in their areas or whatever, but they're not sophisticated." *Id.* at 77:5–11; *see also id.* at 58:11–14, 70:11–14, 75:6–13, 75:19–25, 79:22–23, 83:10–14, 88:1–12, 90:18–22, 124:21–125:4. Applicable, basic law says otherwise. Courts regularly preclude expert testimony that "usurps the province of the jury to make factual determinations" like these, *Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, No. 11 Civ. 505, 2017 WL 715909, at *2 (S.D.N.Y. Feb. 10, 2017), or "instruct[s] the jury as to an ultimate determination that was exclusively within its province, namely, the credibility of [witnesses]," *Nimely*, 414 F.3d at 398.

### 2. Fisher Should Not Be Permitted to Testify Regarding Carroll's Reputational Harm

The Court should also preclude as patently unreliable the portions of Fisher's report that purport to assess the reputational harm that Carroll suffered. *See* Fisher *Carroll II* Rep. at 17–21. Fisher's report does not reflect "grounded, well-reasoned, and not speculative" analysis, *see In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, No. 00 Civ. 1898, 2008 WL 1971538, at *6 (S.D.N.Y. May 7, 2008), or show an expert applying assumptions with "adequate factual bas[es]," *Davis v. Carroll*, 937 F. Supp. 2d 390, 418 (S.D.N.Y. 2013). *See supra* at 8–10.

Fisher begins this section of his report entitled "ANALYSIS OF REPUTATION IMPACT" by offering several reasons for discounting the reputational harm that Carroll incurred.

---

[9] Fisher's report is even more offensive in this regard, opining that "[*Carroll's* own] allegations of false statements appear to be based on speculation, conjecture, supposition, assumption, presumption, and hypothesizing." Fisher *Carroll II* Rep. at 16. He backtracked when pressed at his deposition. *See* Fisher *Carroll II* Dep. at 108:1–15 ("Well, that's probably misworded a little bit. … It's probably not worded properly. I'm not talking about her.").

For instance, Fisher dismisses any significance to the notion that Carroll "coming forward put her in the crosshairs of one of the most powerful men on the planet," insisting that "[s]he was aware of that when she went public with her accusations." *Id.* at 18. But Fisher makes no effort to explain, from his knowledge and experience, why someone's reputational harms should be discounted because she knew speaking publicly about her experiences might result in backlash. *E.g.*, *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242, 2002 WL 1585551, at *4 (S.D.N.Y. July 16, 2002) (expert testimony unreliable when he "neglects to explain how his experience supports his conclusion[s]"). And when pressed on this issue at his deposition, Fisher backtracked entirely. *See* Fisher *Carroll II* Dep. at 177:17–21 ("Q. Do you think Ms. Carroll bears some of the responsibility for the harm that resulted from her accusations against Mr. Trump? A. Absolutely not.").

Then, in a subsection called "Reputation Damage Perspective," Fisher continues this pattern of speculation and guesswork. He starts by stating his conclusion: "there is a case to be made that this dispute and resulting litigation may actually have proven to be a net benefit to [Carroll] in terms of her reputation and public standing." Fisher *Carroll II* Rep. at 18. He then grounds that "case" in the following assumptions, none of which reflect him applying his experience in any reliable way.

*First*, Fisher addresses "Plaintiff's Positive Reputation." *Id.* at 18. Here, he says Carroll's "positive public profile affords her a virtual 'shield' to a large extent to offset the negative portrait that Trump may have tried to paint of her with his negative remarks about her as opposed to if she was a person no one had ever heard of or who had not have had [sic] a pre-existing positive reputation." *Id.* at 19; *see* Fisher *Carroll II* Dep. at 129:20–130:7. But Fisher gleaned his entire perception of Carroll's positive image by going online and seeing "information about her," all of which he completely failed to cite anywhere in his report. *See* Fisher *Carroll II* Dep. at 148:9–10,

149:13, 197:1–3. He disclaims the use of a formal study, and instead asks a reader to simply take his word for it that the three articles he does cite are a "representative sample" of his "googling." *Id.* at 198:21–22, 200:1–6. *See Ray*, 583 F. Supp. 3d at 542 ("'because I said so' explanation" does not "satisfy the reliability prong of Rule 702 and *Daubert*").

*Second*, Fisher discusses "Defendant's Own Reputation." Fisher describes Trump as a "highly controversial" person who is a "highly unpopular with a vast majority of the public." Fisher *Carroll II* Rep. at 19. Although Fisher then references a Quinnipiac University poll from December 2022, at his deposition he could not even recall where he got the polling information from and testified that the reason he used it was "[j]ust mainly because it was the most recent one [he] saw." Fisher *Carroll II* Dep. at 167:4–18, 168:10–11.

Fisher then adds two additional assumptions related to the excessive number of women who have accused Trump of sexual assault—and Trump's correspondingly "excessive and relentless attacks" in response—and why, as a result, "the most likely conclusion is that [a] significant amount of people might believe [Carroll's] allegations against him." Fisher *Carroll II* Rep. at 19. But Fisher admitted that he grounded these opinions and assumptions in conversations with "friends, relatives, family, business colleagues, people on the street," not on his own professional expertise or any data. Fisher *Carroll II* Dep. at 179:2–4, 181:8–13. ("I haven't talked to people specifically [as] an expert … just talking to people in general, kind of water cooler conversations."); *see Koppell v. N.Y. State Bd. of Elections*, 97 F. Supp. 2d 477, 481 (S.D.N.Y. 2000) (expert reports must offer more than "a compendium of [their personal] opinions").

*Third*, Fisher turns his sights on what he calls the "Weinstein/Me Too Phenomenon." He writes that following the #MeToo movement, women who come forward to publicly report "sexual assaults, harassment or rapes" are viewed as "heroes." Fisher *Carroll II* Rep. at 19. And at his

deposition, he further explained his view that victims of sexual assault only benefit from coming forward. Fisher *Carroll II* Dep. at 138:6–11 ("Q. And it's your position that the women who come forward and then are defamed by [] the person they've accused experience a net benefit, positive change to their reputation? A. Yes, I do."). Fisher does not cite a single source, data point, study, or anything else to support this position. Indeed, Fisher admitted that he has not read specific reports relating to the environment and dynamics concerning accounts of sexual assault since the #MeToo movement, *id.* at 189:23–190:3, and plainly admitted he has no basis beyond "human nature" to inform his opinions in this regard. *See id.* at 140:1–13 ("I don't have any data."). *E.g.*, *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d at 484 (excluding expert testimony who "attribut[es] [his] opinion to simple logic rather than any application of [his experience or expertise]"). Again, it is hard to imagine anything that would be less admissible as expert testimony under the Federal Rules than this. *E.g.*, *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 648 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017) (excluding expert testimony that was the product of "subjective believe or unsupported speculation" because it would have been a "dereliction of this Court's role as a 'gatekeeper' to find such [ ] opinion[s] admissible" (citations omitted)).

*Fourth*, Fisher tackles "Visibility and Prominence." In this regard, Fisher states that "it is without question that coming forward to accuse [Trump] has raised [Carroll's] profile exponentially nationwide." Fisher *Carroll II* Rep. at 19–20. But Fisher perception of Carroll's positive image following Trump's defamation is primarily based on the same unreliable "googling" methodology mentioned above. *See* Fisher *Carroll II* Dep. at 148:9–11, 149:13–14, 197:1–3. And it also appears to be based on impermissible anecdotal evidence. Fisher *Carroll II* Rep. at 20 ("Note: I had never heard of the Plaintiff prior to her lawsuit."); Fisher *Carroll II* Dep.

at 195:19–22 ("I just used myself as an example because I had never heard of her before I started reading articles about Trump being accused of rape…."). *E.g.*, *Daubert*, 509 U.S. at 590, 113 S. Ct. at 2795 ("subjective belief or unsupported speculation" are not themselves reliable methods).

*Finally*, Fisher addresses "Positive Media Exposure." Fisher *Carroll II* Rep. at 20–21. Here, Fisher cherry picks comments included in three articles to support the idea that the media coverage of Carroll has been "complimentary and highly positive to her in terms of creating awareness of her professional credentials and competence." *Id*. at 20. Fisher does not offer any reason why these articles are reflective of the whole, or why, after thirty to sixty minutes of research, *see* Fisher *Carroll II* Dep. at 47:1–13, he had enough evidence to form such an opinion. And Fisher made these claims without reconciling any of the evidence Professor Humphreys included in her report, such as the widespread media coverage of Trump's defamatory statements and the countless examples of negative messages that repeated Trump's insults and denials. Ex. 3 at 42–45, Appx. E; *see Davis*, 937 F. Supp. 2d at 418 (excluding expert opinion that failed to grapple with the record evidence).

After discussing each of the subtopics mentioned, Fisher's concludes: "[b]ased on all these factors as outlined in this section, it is my opinion—as a communication expert with 50 years of working in the field of reputation management and repair—that while the Plaintiff may have suffered some reputation harm (mainly with the small segment of the population that is enamored with the Defendant), there have been significant benefits to her in terms of increased visibility and prominence as well as positive enhancement of public perception of her character and reputation."

16

Fisher *Carroll II* Rep. at 21.[10] By its own terms, Fisher's conclusion was based on all the unreliable inputs discussed above, so it too must be excluded as improper expert testimony.

In fact, Fisher admitted at his deposition that his ultimate conclusion—that Carroll benefitted reputationally by being defamed—goes against *every single* case in which Fisher has offered expert testimony in the past. Fisher *Carroll II* Dep. at 133:5–13; *see also id.* at 144:5–8 ("I don't think I've ever felt that the person that was a victim of defamation was better off than they were before it."). As to why this case is a supposed unicorn, Fisher's intentions are quite clear:

> Q. You've written before that it can take a lifetime to build a reputation and only seconds to destroy it?
>
> A. Oh, that's true.
>
> Q. And you've actually included that principle in almost every other expert report you've offered?
>
> A. When I'm representing the plaintiff, yeah, and not when I'm representing the defendant.
>
> Q. Why wouldn't you include that principle when you're representing the defendant?
>
> A. *Because I'm not trying to make the plaintiff's case for them. Why would I put something in the report that is basically making the other side's case? That would be kind of idiotic, I think.*

*Id.* at 156:4–12 (emphasis added). Expert testimony should be excluded where the expert "failed to apply his own methodology reliably," *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 268–69 (2d Cir. 2002), and where the "methodology [is] aimed at achieving one result," *Faulkner*, 46 F. Supp. 3d at 381. That is precisely what happened here.

---

[10] Fisher cannot revive his conclusion by reference to his "50 years of working in the field of reputation management and repair." *Id.* Nowhere in his report did Fisher actually rely on that experience. Rather, as discussed, he used "common sense and logic" to ground his assumptions. *E.g.*, Fisher *Carroll II* Dep. at 130:12–18 ("I guess there's no way you can make a declarative judgment but I think that factoring in common sense and logic, a lot of positive things would have come out from his, for lack of a better word, tirade against her based on her comments that he raped her."); *see also id.* at 130:19–21 (did not rely on data); *id.* at 133:5–13 & 151:16–20 (same for peer-review literature); *id.* at 178:17–18 (same for studies).

**CONCLUSION**

For the foregoing reasons, the Court should enter an order containing the same evidentiary rulings as in *Carroll I*: (1) admitting Carroll's prior consistent statements about Trump's attack to Birnbach and Martin; (2) admitting the testimony of Stoynoff and Leeds regarding their own experiences with Trump: (3) excluding testimony from witnesses whom Trump has not disclosed; precluding Trump from testifying to undisclosed information, including the testimony that undisclosed witnesses could theoretically offer in support of his defense; and precluding any testimony or commentary at trial concerning DNA evidence; (4) precluding cross-examination or evidence regarding Grisham's prior misdemeanor convictions, her unrelated pending lawsuit, and her use of a prescription medication; and (5) precluding comments and cross-examination regarding Carroll's choice of counsel.

The Court should also preclude Fisher from testifying as an expert witness.


Dated: New York, New York
       February 23, 2023

Respectfully submitted,

Roberta A. Kaplan
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*