Joseph Tacopina, Esq.
Chad D. Seigel, Esq.
Matthew G. DeOreo, Esq.
Tacopina Seigel & DeOreo
275 Madison Avenue, 35th Floor
New York, New York 10016
Tel: 212-227-8877
Fax: 212-619-1028

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| E. JEAN CARROLL, | : |
| *Plaintiff* | : |
| v. | : Civil Action No.: 1:22-cv-10016-LAK |
| DONALD J. TRUMP, | : |
| *Defendant.* | : |

**DEFENDANT DONALD J. TRUMP'S
MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S OMNIBUS MOTION *IN LIMINE***

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................1

ARGUMENT........................................................................................................................2

    POINT I    THE COURT SHOULD NOT EXCLUDE FISHER'S
                TESTIMONY..................................................................................2

        A.    FISHER IS A PROPER REBUTTAL EXPERT............................................2

        B.    FISHER'S OPINIONS ARE RELIABLE.......................................................4

            1.  RULE 702 STANDARDS........................................................................4

            2.  THE *DAUBERT* ANALYSIS..................................................................8

CONCLUSION..................................................................................................................11

# TABLE OF AUTHORITIES

**CASES:**

*Clerveaux v. E. Ramapo Cent. Sch. Dist.,* 984 F.3d 213, 233 (2d Cir. 2021)..................8

*Daubert v. Merrill v. Dow Pharmaceuticals,* 509 U.S. 579 (1993)...................................4, 8, 9, 10

*Deere v. Goodyear Tire & Rubber Co.,* 175 F.R.D. 157, 164 (N.D.N.Y. 1997)............................9

*Felix v. City of New York,* No. 16-CV-5845 (AJN), 2020
WL 6048153(S.D.N.Y. Oct. 13, 2020)........................................................................9

*Johnston v. Borders,* No. 615CV936ORL40TBS, 2018
WL 8244335 (M.D. Fla. May 2, 2018)........................................................................9

*Matzkow v. United New York Sandy Hook Pilots Ass'n,* No. 18-CV-2200(RER), 2022
WL 79725 (E.D.N.Y. Jan. 7, 2022)..............................................................................8

*Owen v. Elastos Found,* No. 19CV5462HWBCM, 2023
WL 194607 (S.D.N.Y. Jan. 11, 2023)..........................................................................3

*Pac. Life Ins. Co. v. Bank of New York Mellon,* No. 17CV1388KPFRWL, 2021
WL 673479 (S.D.N.Y. Feb. 22, 2021)..........................................................................3

*Royal Ins. Co. of Am. v. Joseph Daniel Const., Inc.,* 208 F. Supp.2d 423, 425
(S.D.N.Y. 2002)............................................................................................................9

*S.W. v. City of New York,* No. CV 2009-1777 ENV MDG, 2011
WL 3038776 (E.D.N.Y. July 25, 2011)........................................................................2

*Travelers [Prop. & Cas. Corp. V. Gen. Elec. Co.],* 150 F. Supp.2d 360
(D. Conn. 2001)............................................................................................................9

*United States v. Raniere,* No. 18-CR-204-1 (NGG) (VMS), 2019
WL 2212639 (E.D.N.Y. May 21, 2019).......................................................................8

**STATUTES/RULES**

Fed. R. Evid. 702..............................................................................................4, 6, 8, 10

# INTRODUCTION

Defendant Donald J. Trump ("Trump" or "Defendant"), by and through his undersigned counsel, respectfully submits this Memorandum of Law in opposition to Plaintiff's Omnibus Motion *in Limine*.

The legal issues raised in Plaintiff's motion are identical in many respects to the issues briefed in the Motions *in Limine* filed by Defendant and Plaintiff in the related action pending before your Honor, *Carroll v. Trump*, No. 1:20-cv-7311-LAK-JLC ("*Carroll I*"). Such overlapping issues include whether the Court should: (a) allow the testimony of Natasha Stoynoff and Jessica Leeds regarding their alleged experiences involving Defendant, (b) exclude testimony from witnesses whom Trump purportedly has not disclosed, (c) preclude Trump from testifying to undisclosed information, and (d) preclude any testimony or commentary concerning DNA evidence.

For this reason, as to the above-referenced legal issues, and in the interest of brevity and judicial economy, Trump incorporates the following *Carroll I* filings by reference herein:

1.      Trump's motion papers in support of his Motion *in Limine* in *Carroll I*: (a) Defendant's Memorandum of Law in support (ECF No. 131)(**Exhibit 1**[1]); (b) the February 16, 2023 Declaration of Alina Habba (ECF No. 132)(**Exhibit 2**); (c) Exhibit A to such Declaration (ECF No. 132-1)(**Exhibit 3**); and (d) Exhibit B to such Declaration (ECF No. 132-2)(**Exhibit 4**);

2.      Trump's motion papers filed in opposition to Plaintiff's Motion *in Limine* in *Carroll I*: (a) Defendant's Memorandum of Law in opposition (ECF No. 136)(**Exhibit 5**); (b) the February 23, 2023 Declaration of Alina Habba (ECF No. 137)(**Exhibit 6**); (c) Exhibit A to such Declaration (ECF No. 137-1)(**Exhibit 7**); Exhibit B to such Declaration (ECF No. 137-2)(**Exhibit 8**); Exhibit D to such Declaration (ECF No. 137-4)(**Exhibit 9**); and Exhibit E to such Declaration (ECF No. 137-5)(**Exhibit**

---

[1] All bolded exhibit references herein refer to those attached to the accompanying Declaration of Matthew G. DeOreo.

**10**); and

3. Trump's Reply Memorandum of Law in further support of his Motion *in Limine* in *Carroll I* (ECF No. 140)(**Exhibit 11**).

As to Plaintiff's arguments concerning the exclusion of the expert testimony of Defendant's expert, Robert J. Fisher ("Fisher"), Defendant's arguments as to those issues are set forth below.

## ARGUMENT

## POINT I

## THE COURT SHOULD NOT EXCLUDE FISHER'S TESTIMONY

**A.   Fisher is a Proper Rebuttal Expert**

The "exclusion of expert testimony is a drastic remedy." *S.W. v. City of New York*, No. CV 2009-1777 ENV MDG, 2011 WL 3038776, at *4 (E.D.N.Y. July 25, 2011)(quotations omitted). An expert report is properly considered a rebuttal report if "it will explain, repel, counteract or disprove the evidence of the adverse party." *Id.* at *2.

Here, Fisher's Expert Report (Plaintiff Ex. 2; ECF No. 74-2) clearly falls within this standard and clearly establishes that Fisher will serve as a proper rebuttal expert. Plaintiff's expert, Ashlee Humphreys, PhD ("Humphreys"), submitted a report (Plaintiff Ex. 3; ECF No. 74-3), wherein she opines that "Mr. Trump's [October 12, 2022] Statement about Ms. Carroll has significantly harmed her person brand." (*Id.* at p. 57). Fisher clearly repels and counteracts such an opinion of Humphreys in two clear ways.

**First**, Fisher opines that Humphreys is not even qualified to assert such an opinion:

> From my review of Humphreys['s] credentials she has a very impressive background of accomplishments, (including awards), however, she does not indicate nor has she demonstrated that she has any professional background, experience or expertise in reputation management damage or repair– which are at the center of this lawsuit. I have also studied her 14-page CV and see no indication of anything in her professional career

2

> in this area. [H]er expertise is in fields that are promotion-oriented, including marketing, advertising, digital and social media campaigns. This case requires a background, experience and expertise in assessing, coping with and overcoming negative communications which cause harm to and damage a reputation. *** [H]er work and expertise in her past professional career ... is not suitable expertise for the issues in this lawsuit. *** Unfortunately, nowhere in her reports is it more evident that she doesn't have the background, experience, knowledge, or insight into matters relating to reputation damage or repair than in the presentation of her reputation damage repair program.

(Plaintiff Ex. 2; ECF No. 74-2 at pp. 21-22).

Fisher's opinion that Humphreys is not qualified to assert an opinion about Plaintiff's alleged reputational harm alone is sufficient to establish that Fisher's report is a rebuttal report, because such an opinion repels and counteracts Humphrey's opinion. *See Owen v. Elastos Found.*, No. 19CV5462GHWBCM, 2023 WL 194607, at *7 (S.D.N.Y. Jan. 11, 2023)("Fang begins by opining that Young is not qualified to opine on PIPL because she has no Chinese legal degree and is not licensed to practice in the PRC."); *Pac. Life Ins. Co. v. Bank of New York Mellon*, No. 17CV1388KPFRWL, 2021 WL 673479, at *5 (S.D.N.Y. Feb. 22, 2021)("The Court agrees ... that Spencer is not qualified to opine about industry definitions of Alt-A, subprime, etc.").

**Second**, Humphreys opines that "[a] holistic, integrated campaign is needed to effectively create attitudinal change and in turn repair reputational damage." (Plaintiff Ex. 3; ECF No. 74-3 at p. 5). In response, Fisher opines that such a "campaign," according to Humphreys, is actually just a social media campaign. (Plaintiff Ex. 2; ECF No. 74-2 at p. 22-23). Fisher then opines that such a social media campaign is improper in this case because:

> The initial damage was from widespread news coverage as traditional media had a field day with the news of the alleged rape. That was the genesis of the negative exposure, not social media. *** there are a great amount of people (e.g., senior citizens, technologically-challenged people) that are not on the internet (except maybe for e-mails). Having highest concentration of the program and budget geared to online exposure is equivalent to "putting all your eggs in one basket." *** It also important to note that internet exposure (and even media exposure) is a form of "indirect"

3

> communications meaning that the receiver is not getting the message directly from the sender. The most effective form of communications is "direct" contact. There are many ways to do this (e.g., direct verbal conversations, letters, emails, speaking engagements, appearance at events) and it does not appear that any form of direct communications is in Humphreys' program.

(*Id.* at pp. 23-24).

Therefore, Fisher repels and counteracts Humphrey's opinion set forth in her expert report submitted in this case.

Accordingly, Fisher's expert report is properly considered a rebuttal report, and Fisher is a rebuttal expert.

**B.     Fisher's Opinions are Reliable**

Plaintiff also seeks to preclude Fisher from testifying as an expert at trial due to his purported failure to comply with the standards set by *Daubert v. Merrell v. Dow Pharmaceuticals*, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence. Plaintiff's contentions in this regard are similarly unpersuasive and should be summarily dismissed by this Court.

1.     Rule 702 Standards

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Here, Fisher qualifies as an expert under the Rule 702 standards. **First**, Fisher has specialized knowledge (Rule 702 factor "(a)") that will help the trier of fact to understand the evidence or to

determine a fact in issue. This is so because he has been acknowledged nationally by the legal profession and news media as an expert in the field of crisis communications and image/reputation management and damage repair, which are core factual issues concerning Plaintiff's alleged financial harm:

> I am a veteran communications professional, executive and counselor-acquired from my background as both a journalist (reporter for the New York Times) and a half-century career in the communications fields of public relations, advertising and marketing. I have also been acknowledged nationally by the legal profession and news media as an expert in the field of crisis communications and image/reputation management and damage repair. Additionally, I am an experienced expert witness who has been involved in over approximately 80 cases, 70 of which were defamation or reputational harm-related cases during the past 17 years.
>
> ***
>
> I am a veteran public relations, advertising, marketing and communications executive and counselor and journalist with 54 years of experience, including 42 years operating my own communications firm, Fisher & Associates, Inc., located in the Los Angeles, California. During my professional career, I have provided counsel and services to clients in a broad range of businesses, professions, and industries as well as to nonprofit organizations and government entities on a local, national and international basis as required.
>
> While I am a communications generalist through the breadth of my professional background and experience (e.g., journalism, public relations, marketing, advertising), I am also a nationally recognized expert in crisis communications, reputation management and image repair and counseling. My firm was a (and possibly the) national pioneer in creating and developing public relations and marketing/communications programs for the legal profession. My firm has provided litigation support in over 100 civil and criminal cases (including trials) throughout the United States. Additionally, for the past 17 years I have served as an expert witness, representing both Plaintiffs and Defendants in approximately 80 cases in 30 states and the District of Columbia. For decades I have functioned as an expert information source and analyst for the mass media on issues relating to crisis communications, damaged image and reputation.

(Plaintiff Ex. 2; ECF No. 74-2 at p. 1).

Fisher testified during his deposition in *Carroll I* that he received several awards and honors throughout his career. Specifically, he received awards from the Public Advisors Society of America

and the Public Communicators of Los Angeles. (**Exhibit 9** at tr. 41:5-42:4).  In particular, Fisher testified that one of the multiple awards he received in the reputational damage field was for repairing the damaged reputation of the brothel industry in Nevada and rehabilitated its perception overall in the community. (*Id.* at tr. 42:5 – 43:22).

Additionally, Fisher testified that he "managed to short-circuit the eviction of" tenants of an upscale condo complex, Marina Del Verde, by creating a reputational damage program to repair the tenants' reputation and allow them to remain as tenants in this condo complex. (*Id.* at tr. 43:23-44:9).

Fisher further testified to his extensive experience in public relations, which is essential when analyzing situations involving reputational harm and reputational damage repair. (*Id.* at tr. 49:12-50:15). Fisher also testified to the following in *Carroll I*:

> Q: And – and what data do you rely upon to determine what the best media is for your target audience in terms of credibility and the other things you mentioned?
>
> A: Knowledge. I've been in this business 50 years. A reporter for "The New York Times", I was in journalism – I know the media, I know which media – who the media are, I know what they do, I know who they reach out to, I know who reads them or listens to them, I know what – for instance, if I had something from Mr. Trump back in the day, I wouldn't go to MSNBC for it, I would go to FOX, you know or now Newsmax or America One [sic] or whatever.
>
> But the bottom line is I – I have knowledge; that's why I'm an expert. I have 50 years of knowledge of working with the media. Most of them were around 50 years ago. "New York Times" was around 50 years ago, so was the Washington Post, so was ABC, so was AP, so was Wall Street Journal. I don't need to consult textbooks or media guides – again, we're just talking about news media at this point. I don't need to consult them to know who – who the movers and shakers are or where I need to be.

(*Id.* at tr. 313:4-314:3).

**Second**, Fisher's opinions are based on sufficient facts, data and methods (Rule 702 factors "(b)" and "(c)"):

> To reach these conclusions and opinions, the methodology I used in this case is consistent with that which is standard operating procedure that public relations and

6

communications professionals as well as expert witnesses use when addressing issues and situations for clients like those in this case in making their determinations and offering their findings, conclusions and opinions.

- Carefully reviewed all documentation and information on the background to this dispute as well as that related to the litigation as well [as] any other unrelated information that is germane to ... the issues in contention in this case.

- Carefully analyzed the information provided regarding the dispute and their positions on it as espoused by both parties in this litigation (as reflected in the Case Background section of this report).

- Queried Defendant's legal counsel to get additional information and clarification as needed.

- Researched information as needed on the internet.

- Applied the principles of negative communications to this case as appropriate.

- Followed peer accepted procedures in both the public relations and expert witness professions as to how to analyze and assess situations which negatively impact reputations as well as devise strategies, plans and actions to restore them.

- Reviewed and analyzed previous applicable experiences I have had in my professional communications and expert witness background that may be applicable to this situation and would provide me with insight to assist me in forming my conclusions and opinions.

Relative to the last point above, it is important to note that any conclusions and opinions I offer are based on the professional background and the experience and expertise I have amassed during my 54-year background in communications (outlined in earlier sections of this report) and not emanating from surveys, studies, tests, research or other forms of qualitative, qualitative types of analyses or fact gathering procedures. They are based on direct experience and observations working with people, businesses and/or entities in similar situations and what transpired from them.

* * *

My five-decade background in all major professional areas of communications along with my 42 years of experience in litigation support, my specialization in reputation management and repair counseling and programs as well as my 17 years as an expert

> witness clearly gives credence to the validity of the following comments, conclusions and opinions I offer relating to this case.

(Plaintiff Ex. 2; ECF No. 74-2 at pp. 12-13).

**Third**, Fisher reliably applied the principles and methods to the facts of the case (Rule 702 factor "(d)"):

> While the views, comments and opinions of the Defendant may have caused some minimal reputation harm to the Plaintiff (which would not be actionable if not determined to be Defamation at trial), it is my professional assessment and opinion that the Plaintiff benefitted from this public dispute in terms of increased positive exposure for her as a professional and positive enhancement of her personal character and reputation.

(*Id.* at p. 24).

Accordingly, Fisher's opinions satisfy the Rule 702 standards.

2.   The *Daubert* Analysis

"In addition to [the Rule 702] factors, the district court may consider those enumerated in *Daubert*, some or all of which might prove helpful in determining the reliability of a particular scientific theory or technique. These factors are: (1) whether the methodology or theory has been or can be tested; (2) whether the methodology or theory has been subjected to peer review and publication; (3) the methodology's error rate; and (4) whether the methodology or technique has gained general acceptance in the relevant scientific community." *Clerveaux v. E. Ramapo Cent. Sch. Dist.*, 984 F.3d 213, 233 (2d Cir. 2021) (quotations omitted).

"The district court's [Daubert] inquiry is 'flexible' and 'the *Daubert* factors are neither exclusive nor dispositive.'" *Matzkow v. United New York Sandy Hook Pilots Ass'n*, No. 18-CV-2200 (RER), 2022 WL 79725, at *6 (E.D.N.Y. Jan. 7, 2022)(citing *United States v. Raniere*, No. 18-CR-204-1 (NGG) (VMS), 2019 WL 2212639, at *5 (E.D.N.Y. May 21, 2019)).

Fisher's opinions satisfy the *Daubert* standards.

**First**, as to whether Fisher's methodology can be tested and whether it has an "error rate," Defendant submits that these factors should not apply in this case because Fisher's opinion is based upon his professional experience and training, not scientific or technical tests with rates of error.

**Second**, in applying the *Daubert* standards to an expert testifying as to reputational harm, a court may admit such testimony based upon the expert's "expertise [that] is the result of his education, training, and experience in the relevant field." *Johnston v. Borders*, No. 615CV936ORL40TBS, 2018 WL 8244335, at *3 (M.D. Fla. May 2, 2018)(admitted the testimony of expert on reputational harm); *see also Felix v. City of New York*, No. 16-CV-5845 (AJN), 2020 WL 6048153, at *6 (S.D.N.Y. Oct. 13, 2020)(admitted the testimony of expert "based solely on the expert's professional experience, where it is offered to aid the jury's understanding of an area not within the experience of the average juror."); *see also Royal Ins. Co. of Am. v. Joseph Daniel Const., Inc.*, 208 F. Supp. 2d 423, 425 (S.D.N.Y. 2002)("The Court may also consider the expert's background and professional experience. *See Travelers* [*Prop. & Cas. Corp. v. Gen. Elec. Co.*], 150 F.Supp.2d 360 [(D. Conn. 2001)] (finding that the expert's 'experience, knowledge and training, taken together with the process he described ... analyzing the burn patterns in each dryer and then ruling out potential alternative explanations, is sufficient to meet the *Daubert* threshold of admissibility')."); *Deere v. Goodyear Tire & Rubber Co.*, 175 F.R.D. 157, 164 (N.D.N.Y. 1997)("Baumgardner is an appropriate expert witness because his practical experience qualifies as specialized knowledge gained through training and experience in the tire industry. *** [Baumgardner's] opinion is based upon Baumgardner's experience and training in the tire industry. In fact, Baumgardner specifically stated that since 1955, he has had the opportunity to personally observe hundreds of tire mounters in the process of replacing tires. As a matter of law, Baumgardner is qualified to offer his opinion regarding these issues.").

**Third**, Fisher's methods have been subjected to peer review and have gained general acceptance in the relevant scientific community, because he states in his report that "the methodology [he] used in this case is consistent with that which is standard operating procedure that public relations and communications professionals as well as expert witnesses use when addressing issues and situations for clients like those in this case ...." (Plaintiff Ex. 2; ECF No. 74-2 at p. 12).

Therefore, Fisher's opinions satisfy the *Daubert* standards.

* * *

Accordingly, as set forth herein and as evidenced by the contents of Fisher's expert report and deposition testimony, Fisher should be admitted as an expert rebuttal witness for this litigation, as his opinions clearly comply with Rule 702 and the *Daubert* standards. Consequently, Plaintiff's Motion *in Limine* should be denied.

## CONCLUSION

For the foregoing reasons, Defendant Donald J. Trump respectfully requests that the Court deny Plaintiff's Motion *in Limine* with prejudice, and grant such further and other relief as the Court deems just and equitable.

Dated: New York, New York
March 9, 2023

| | |
|---|---|
| TACOPINA, SEIGEL & DeOREO | |
| By: _____ | _____ |
| Joseph Tacopina, Esq. | Alina Habba, Esq. |
| Chad Seigel, Esq. | HABBA MADAIO & ASSOCIATES LLP |
| Matthew G. DeOreo, Esq. | 1430 US Highway 206, Suite 240 |
| 275 Madison Ave., Fl. 35 | Bedminster, New Jersey 07921 |
| New York, New York 10016 | -and- |
| Tel: (212) 227-8877 | 112 West 34th Street, 17th & 18th Floors |
| Fax: (212) 619-1028 | New York, New York 10120 |
| jtacopina@tacopinalaw.com | Telephone: (908) 869-1188 |
| cseigel@tacopinalaw.com | Facsimile: (908) 450-1881 |
| mdeoreo@tacopinalaw.com | E-mail: ahabba@habbalaw.com |
| | |
| Counsel for Defendant, Donald J. Trump | Counsel for Defendant, Donald J. Trump |