# EXHIBIT 5

**HABBA MADAIO & ASSOCIATES LLP**
Alina Habba, Esq.
Michael T. Madaio, Esq.
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
     -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| E. JEAN CARROLL, <br><br>       *Plaintiff,* <br><br> v. <br><br> DONALD J. TRUMP, in his personal capacity, <br><br>       *Defendant.* | Civil Action No.: 1:20-cv-7311-LAK-JLC |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S OMNIBUS MOTION IN LIMINE**

Alina Habba, Esq.
Michael T. Madaio, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
     -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................... ii

LEGAL STANDARD ............................................................1

ARGUMENT ..................................................................1

I.    The Court Should Preclude Natasha Stoynoff and Jessica Leeds From Testifying At Trial ........................................................1

    A.  The Witnesses' Testimony Does Not Qualify Under The Rule 415 Exception 3

    B.  The Proposed Testimony Is Not *Modus Operandi* Evidence .........................11

    C.  Even If Otherwise Admissible, The Testimony of Ms. Stoynoff and Ms. Leeds as *modus operandi* evidence must be denied .................................13

II.    Plaintiff's Motion *in Limine* to Exclude the Expert Report and the Testimony of Robert Fisher as Defendant's Rebuttal Expert Witness Should be Denied ..........14

    A.  The Defendant's Expert Report of Robert Fisher Sufficiently Rebuts the Plaintiff's Expert Report of Professor Ashlee Humphreys ...........................14

    B.  Defendant's Expert Report from Robert Fisher Should Not be Excluded as It Complies with Rule 702 and the *Dauber*t Case ...............................16

III.    There Is No Basis To Preclude Any Additional Information, Including Witnesses Identified In Defendant's Pre-Trial Order and References to DNA Evidence ......19

    A.  Reference to Plaintiff's Public Representations concerning DNA Evidence Must Be Permitted .......................................................19

    B.  All of Defendant's Trial Witnesses Should Be Permitted To Testify ............21

CONCLUSION...............................................................27

## <u>TABLE OF AUTHORITIES</u>

*Cases*

*Badolato v. Long Island R.R*,
  2016 WL 6236311 (E.D.N.Y. Oct. 25, 2016)........................................................25

*Beech Aircraft Corp. v. Rainey*,
  488 U.S. 153 (1988)................................................................................................17

*Carroll v. Trump*,
  Lm, 00 Ag, / . . / 4 * 0. 01  UJ  0. . 41/ 0 &Q,B,L,W, Dc`, / 3 * 0. 01' ......................20

*Daubert v. Merrell v. Down Pharmaceuticals*,
  509 U.S. 579(1993).................................................................................14, 16, 17, 18

*Ebert v. Nassau County*,
  No. CV 05-5445, 2008 WL 4443238,(E.D.N.Y. Sept. 26, 2008). ...........................15

*Ebewo v. Martinez*,
  309 F. Supp. 2d 600 (S.D.N.Y. 2004) ..........................................................23, 24, 26

*Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A.*,
  2002 WL 31108380 (S.D.N.Y. Sept. 23, 2002) ......................................................24

*Harris v. Donohue*,
  2017 WL 3638452 (N.D.N.Y. Aug. 23, 2017) ........................................24, 25, 26

*Hewitt v. Metro-North Commuter Railroad*,
  14-CV-8052 (AJN), 2017 WL 1155068 (S.D.N.Y. Mar. 24, 2017)................24, 25

*Highland Capitol Management LP v. Schneider*,
  370 F.Supp.2d 461 (S.D.N.Y. 2005) ........................................................................1

*Hinton v. Patnaude*,
  162 F.R.D. 435 (N.D.N.Y. 1995) ...........................................................................23

*Howard University v. Borders*,
  20-CV-04716 (LJL), 2022 WL 3568477 (S.D.N.Y. Aug. 17, 2022) ...............23, 24

*Hynes v. Coughlin*,
  79 F.3d 285 (2d Cir.1996) .........................................................................................3

*In re Resuling Prod. Liab. Litig.*,
  309 F. Supp.2d 531 (S.D.N.Y. 2004) .....................................................................15

*Johnson v. Elk Lake School Dist.*,
 283 F. 3d 138 (3d Cir. 2002) ...........................................................................10

*Kunstler v. City of New York*,
 242 F.R.D. 261 (S.D.N.Y. 2007) .................................................................23, 24

*Laspata DeCaro Studio Coporation v. Rimowa GmbH*,
 16-cv-934 (LGS), 2018 WL 3059650 (S.D.N.Y. June 20, 2018)..........................23

*Marvel Worldwide, Inc. v. Kirby*,
 777 F. Supp. 2d 720 (S.D.N.Y. 2011) ...........................................................22, 23

*Mugavero v. Arms Acres, Inc.*,
 03-CV-5724, 2009 WL 1904548 (S.D.N.Y. July 1, 2009)....................................25

*Palmieri v. Defaria*,
 88 F.3d 136 (2d Cir. 1996) ................................................................................1

*Rapp v. Fowler*,
 20-CV-9586 (LAK), 2022 WL 5243030 (S.D.N.Y. Oct. 6, 2022).............3, 5, 7, 8, 10, 13, 14

*United States v. Barnason*,
 825 F.Supp.2d 367 (S.D.N.Y. 2012) ...............................................................3, 4

*United States v. Benedetto*,
 571 F.2d 1246 (2d Cir. 1978) .......................................................................11, 12

*United States v. Brand*,
 467 F.3d 179 (2d Cir. 2006) ..............................................................................9

*United States v. Campbell*,
 300 F.3d 202 (2d Cir. 2002) .............................................................................11

*United States v. Crowley*,
 318 F.3d 401 (2d Cir. 2003). .............................................................................9

*United States v. Curley*,
 639 F.3d 50 (2d Cir. 2011) ................................................................................3

*United States v. Danzey*,
 594 F.2d 905 (2d Cir.). .....................................................................................12

*United States v. Downing*,
 297 F.3d 52 (2d Cir. 2001) ................................................................................2

*United States v. Dupree,*
   706 F.3d 131 (2d Cir. 2013). ..................................................................1

*United States v. Dukagjini,*
   326 D.3d 45 (2d Cir. 2003)..................................................................14

*United States v. Duncan,*
   42 F.2d 359 (2d Cir. 1992) ..................................................................14

*United States v. Flam*,
   369 F.3d 154 (2d Cir. 2004) ..................................................................2

*U.S. v. Frederick*,
   702 F. Supp. 2d 32 (E.D.N.Y. 2009) ..................................................20

*United States v. Garcia,*
   291 F.3d 127 (2d Cir. 2002) ................................................................11

*United States v. Hourihan,*
   66 F.3d 458 (2d Cir. 1995) ....................................................................9

*United States v. Livoti,*
   196 F.3d 322 (2d Cir.1999). ..................................................................2

*United States v. Manley,*
   632 F.2d 978 (2d Cir.1980) ..............................................................9, 10

*United States v. McCallum,*
   584 F.3d 471 (2d. Cir. 2009) ..............................................................11

*United States v. Mills,*
   895 F.2d 897 (2d Cir. 1990) ................................................................12

*United States v. Neary,*
   733 F.2d 210 (2d Cir. 1984) ................................................................12

*United States v. Porterfield,*
   20-CR-42-A, 2022 WL 17091256 (W.D.N.Y. Nov. 21, 2022)................8

*United States v. Pugh,*
   937 F.3d 108 (2d. Cir. 2019) ..............................................................10

*United States v. Reese,*
   933 F.Supp.2d 579 (S.D.N.Y.2013) ..................................................12

*United States v. Rosa,*
11 F.3d 315 (2d Cir. 1993) ............................................................................9

*United States v. Schaffer,*
851 F.3d 166 (2d Cir. 2017) ..........................................................................4

*United States v. Spoor,*
904 F.3d 141 (2d Cir. 2018) ..........................................................................3

*United States v. Williams,*
205 F.3d 23 (2d Cir.2000) .............................................................................2

*Universe Antiques, Inc. v. Vareika,*
10-cv-3629, 2011 WL 5117057 (S.D.N.Y. Oct. 21, 2011) ........................25

*Ventra v. United States,*
121 F. Supp. 2d 326 (S.D.N.Y. 2000) .........................................................23

## **Rules and Statutes**

Fed. R. Evid. 402 .................................................................................................1, 13, 14

Fed. R. Evid. 403 ..........................................................................................1, 2, 13, 14, 20

Fed. R. Evid. 404(b)..................................................................................2, 3, 11, 12, 13, 14,

Fed. R. Evid. 415(a) ...................................................................................3, 4, 9, 10, 11, 14,

Fed. R. Evid. 413(d)....................................................................................4, 5, 7, 8, 9, 10

Rule 26(a)(2)(D)(ii) ..........................................................15, 16, 21, 22, 24, 25, 26

Fed. R. Evid. 702 ..............................................................15, 16, 17, 18, 19, 20

18 U.S.C. chapter 109A ...............................................................................4, 5, 7

18 U.S.C. §§ 2241, 2242, 2243, and 2244 ............................................................5

18 U.S.C.A. § 7 ...................................................................................................7

Federal Practice and Procedure § 2049.1 (3d ed. 2010) ...................................22

Fed. R. Civ. P. 37(c) .........................................................................................24

Federal Practice and Procedure § 26.27[2][d] at 26-93 ....................................24

Defendant, Donald J. Trump ("Defendant"), by and through his undersigned attorneys, Habba Madaio & Associates LLP, respectfully submits this memorandum of law in opposition to the omnibus motion *in limine* filed by the plaintiff, E. Jean Carroll ("Plaintiff"), on February 2016, 2023 (the "Motion"). For the reasons set forth herein, the Motion should be denied.

## LEGAL STANDARD

It is well-established that a district court may determine evidentiary issues in motions *in limine* prior to the commencement of trial. *See*, *e.g.*, *United States v. Dupree*, 706 F.3d 131, 135 (2d Cir. 2013). "The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). In deciding a motion *in limine*, the Court should exclude evidence that is clearly inadmissible on all potential grounds. *Highland Capitol Management LP v. Schneider*, 370 F.Supp.2d 461 (S.D.N.Y. 2005); *see also* Fed. R. Evid. 402. Further, under Rule 403, even otherwise relevant evidence should be found inadmissible where it "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Accordingly, for the reasons set forth herein, Plaintiff's omnibus motion *in limine* must be denied in its entirety.

## ARGUMENT

### I.  The Court Should Preclude Natasha Stoynoff and Jessica Leeds From Testifying At Trial.

In her Motion, Plaintiff attempts to argue that the Court should admit the testimony of two proposed witnesses, Natasha Stoynoff and Jessica Leeds, each of whom intend to offer testimony concerning alleged prior encounters they claim to have had with Defendant. Plaintiff's position,

however, is unavailing since the introduction of this type of propensity evidence is clearly foreclosed by the Rules of Evidence and governing case law.[1]

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Pursuant to this Rule, "[e]vidence of prior criminal conduct is admissible under Federal Rules of Evidence 404(b) and 403 if it is relevant to an issue at trial *other than the defendant's character*, and if its probative value is not substantially outweighed by the risk of unfair prejudice." *United States v. Williams,* 205 F.3d 23, 33 (2d Cir.2000) (citing *United States v. Livoti,* 196 F.3d 322, 326 (2d Cir.1999)) (emphasis added). The Second Circuit has clarified that, for 'other act' evidence to be properly admitted under Rule 404, the following requirements must be satisfied: "(1) it [is] offered for a proper purpose; (2) it [is] relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court [gives] an appropriate limiting instruction to the jury if so requested by the defendant." *United States v. Flam*, 369 F.3d 154, 156 (2d Cir. 2004) (citing *United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2001).

Here, Plaintiff readily admits that the proposed testimony of Ms. Stoynoff and Ms. Leeds qualifies as 'other act' evidence prohibited by Rule 404(b)(1). Indeed, there is no reasonable dispute that the testimony of these two witnesses, Ms. Stoynoff and Ms. Leeds, constitutes anything other than propensity evidence, since Plaintiff admittedly seeks to introduce their testimony to as a means of showing that it is "*more likely* that [Defendant] sexually assaulted [Plaintiff][.]" *See* Pl. Mem. at 10 (ECF No. 134). Therefore, absent an exception to Rule 404(b)(1),

---

[1] Additional argument explaining why the testimony of these two witnesses is improper—and must be deemed inadmissible—is set forth in Defendant's Memorandum of Law in support of Motions *in Limine* (ECF No. 131), which Defendant incorporates by reference herein.

this evidence is barred as a matter of law. *See*, *e.g.*, *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (citing Fed. R. Evid. 404(b)) ("Other act' evidence serves a proper purpose so long as it is not offered to show the defendant's propensity to commit the offense." *Curley*, 639 F.3d at 57 (citing Fed. R. Evid. 404(b)); *see also Hynes v. Coughlin,* 79 F.3d 285, 290 (2d Cir.1996) (character evidence inadmissible to show "propensity"); *United States v. Barnason*, 825 F.Supp.2d 367, 371 (S.D.N.Y. 2012) ("In general, 'propensity' evidence is inadmissible.") (citing Fed. R. Evid. 404(b)); *Rapp v. Fowler*, 20-CV-9586 (LAK), 2022 WL 5243030, at *1 (S.D.N.Y. Oct. 6, 2022) ("Evidence to show propensity in most circumstances is precluded by the Federal Rules of Evidence.").

Plaintiff, unsurprisingly, ventures to claim that two exceptions apply in the instant scenario. First, she contends that the testimony of Ms. Stoynoff and Ms. Leeds qualify as evidence of "other sexual assault," which is admissible pursuant to Rule 415. Second, Plaintiff argues that said testimony is admissible under Rule 404(b)(2) as evidence of an apparent *modus operandi*. Both arguments miss the mark and are predicated upon misapplied principles of law.

### A. The Witnesses' Testimony Does Not Qualify Under The Rule 415 Exception

Plaintiff contends that the testimony of both Ms. Stoynoff and Ms. Leeds should be deemed admissible pursuant to Rule 415, which sets forth a narrow exception to the prohibition on propensity evidence. In straining to arrive at this conclusion, Plaintiff raises disingenuous arguments, distorts the applicable standard of law, and mischaracterizes operative case law – including prior decisions rendered by this Court.

Rule 415 "reflects an exception in prosecutions for sex crimes to the common law practice of excluding propensity evidence." *United States v. Spoor*, 904 F.3d 141, 154 (2d Cir. 2018) (citing *United States v. Schaffer*, 851 F.3d 166, 178-79 (2d Cir. 2017)).

Rule 415(a) provides, in relevant part:

> In a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation. The evidence may be considered as provided in Rules 413 and 414.

Fed. R. Evid. 415(a).

As Plaintiff correctly acknowledges, for evidence to qualify under Rule 415, two requirements must be satisfied: (1) the subject action must be "based on" a "sexual assault"; and (2) the conduct alleged by the nonparty accuser must qualify as a "sexual assault" under Rule 413(d). *See* Pl. Mem. at 6 (ECF No. 134) (citing *Barnason*, 825 F. Supp. 2d at 372). Here, contrary to Plaintiff's contention, neither condition is satisfied.

*First*, as detailed at length in Defendant's Memorandum of Law in support of Motions *in Limine*, which is incorporated by reference herein, this Court should adopt the 'categorical approach' endorsed by the Wright & Miller treatise. Under this approach, the instant action is not "based on" a sexual assault since Plaintiff's sole claim sounds in defamation. *See* ECF No. 131 at 5-6.

*Second*, none of the conduct alleged by either proposed witness, Ms. Stoynoff or Ms. Leeds, meets the statutory definition of a "sexual assault" under Rule 415. The term "sexual assault" is derived from Rule 413(d), which defines it as conduct that is "a crime under federal law or under state law" and which also involves:

> (1) any conduct prohibited by 18 U.S.C. chapter 109A;

> (2) contact, without consent, between any part of the defendant's body — or an object — and another person's genitals or anus;

> (3) contact, without consent, between the defendant's genitals or anus and any part of another person's body;

(4) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or

(5) an attempt or conspiracy to engage in conduct described in subparagraphs (1)–(4).

Fed. R. Evid. 413(d).

Contrary to Plaintiff's claim that "[o]f the five proscribed categories, the most directly applicable ones to this case are Rule 413(d)(1) and (d)(2)," Pl. Mem. at 6 (ECF No. 134), neither provision is applicable here.

With respect to Rule 413(d)(1)—which encompasses "any conduct prohibited by 18 U.S.C. chapter 109A"—Plaintiff points to this Court's holding in *Rapp v. Fowler*, No. 20-cv-9586 (LAK), 2022 WL 5243030 (S.D.N.Y. Oct. 6, 2022) to claim that the proposed testimony need only meet the statutory definition of "sexual contact" contained in 18 U.S.C. chapter 109A. However, this position is based upon an incorrect reading of this Court's decision in *Rapp* because Plaintiff overlooks the jurisdictional requirement of 18 U.S.C. chapter 109A.

18 U.S.C. chapter 109A is comprised of eight sections, four of which are relevant to Rule 413(d)(1) since they criminalize various type of sexual conduct – 18 U.S.C. §§ 2241, 2242, 2243, and 2244.[2] Each of these sections contain a uniform limiting principle, namely that they only apply to conduct that occurs "*in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency*." *See* 18 U.S.C. §§ 2241(a)-(b), 2242, 2243(a)-(b)[3], and 2244(a)-(b) (emphasis added).

---

[2] Section 2245 also criminalizes certain conduct, but it is plainly inapplicable here since it requires an allegation of murder. *See* 18 U.S.C. § 2245.

[3] Section 2243(c) is the only provision which does not contain the identical territorial jurisdiction language, but it requires the actor to have been "acting in their capacity as a Federal law enforcement office" so it clearly has no application here.

5

The "special maritime and territorial jurisdiction of the United States," in turn, is confined to the following areas:

(1) The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.

(2) Any vessel registered, licensed, or enrolled under the laws of the United States, and being on a voyage upon the waters of any of the Great Lakes, or any of the waters connecting them, or upon the Saint Lawrence River where the same constitutes the International Boundary Line.

(3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

(4) Any island, rock, or key containing deposits of guano, which may, at the discretion of the President, be considered as appertaining to the United States.

(5) Any aircraft belonging in whole or in part to the United States, or any citizen thereof, or to any corporation created by or under the laws of the United States, or any State, Territory, district, or possession thereof, while such aircraft is in flight over the high seas, or over any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.

(6) Any vehicle used or designed for flight or navigation in space and on the registry of the United States pursuant to the Treaty on Principles Governing the Activities of States in the Exploration and Use of Outer Space, Including the Moon and Other Celestial Bodies and the Convention on Registration of Objects Launched into Outer Space, while that vehicle is in flight, which is from the moment when all external doors are closed on Earth following embarkation until the moment when one such door is opened on Earth for disembarkation or in the case of a forced landing, until the competent authorities take over the responsibility for the vehicle and for persons and property aboard.

(7) Any place outside the jurisdiction of any nation with respect to an offense by or against a national of the United States.

(8) To the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States.

(9) With respect to offenses committed by or against a national of the United States as that term is used in section 101 of the Immigration and Nationality Act . . . the premises of United States diplomatic, consular, military or other United States Government missions or entities in foreign States, including the buildings, parts of buildings, and land appurtenant or ancillary thereto or used for purposes of those missions or entities, irrespective of ownership; and residences in foreign States and the land appurtenant or ancillary thereto, irrespective of ownership, used for purposes of those missions or entities or used by United States personnel assigned to those missions or entities.

18 U.S.C.A. § 7.

Notably, neither Ms. Stoynoff nor Ms. Leeds testified that their alleged encounters with Defendant took place in any of the above-enumerated locations considered to be within the "special maritime and territorial jurisdiction of the United States." Ms. Stoynoff claimed that her purported interaction with Defendant occurred at his Mar-a-Lago residence in Palm Beach, Florida, *see* Habba Decl., Ex. A , which is plainly not covered by 18 U.S.C.A. § 7. As for Ms. Leeds, although she claimed that her alleged experience with Defendant occurred on an aircraft, she stated that it was a *domestic* flight that was traveling from Dallas to New York. *See* Habba Decl., Ex. B. Thus, subsection (4) of 18 U.S.C.A. § 7 is not applicable to her claim, nor is any other subsection of the statute. As a result, since neither Ms. Stoynoff nor Ms. Leeds will testify about an event that occurred in the "special maritime and territorial jurisdiction of the United States," the subject matter of their testimony cannot possibly be concerning "conduct prohibited by 18 U.S.C. chapter 109A." Fed. R. Evid. 413(d)(1). Therefore, 413(d)(1) has no application here.

Further, contrary to Plaintiff's contention, this Court's decision in *Rapp* only solidifies this point. In *Rapp*, this Court noted that the definition of "sexual contact"—which Plaintiff so heavily relies upon—is only relevant "*if all of the other elements of Section 2244's predicates are*

7

*satisfied.*" *Rapp*, 2022 WL 5243030, at *2 (emphasis added). One of those elements is the requirement that the conduct occur "in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency." 18 U.S.C. 2244; *see also United States v. Porterfield*, 20-CR-42-A, 2022 WL 17091256, at *8 (W.D.N.Y. Nov. 21, 2022) (noting that the "federal jurisdiction element [must] be met" to establish a violation of 18 U.S.C. § 2244(a)). Since that is clearly not the case in the instant matter, Rule 413(d)(1) does not apply.

As for Rule 413(d)(2)—as discussed at length in Defendant's Memorandum of Law in Support of his Motions *in Limine*—there is simply no testimony from either Ms. Stoynoff or Ms. Leeds which alleges that Defendant engaged in any conduct purportedly involving contact between any party of Defendant's body and the genitals or anus of either woman. Therefore, Rule 413(d)(2) has no relevance to the proposed testimony of either witness.

Plaintiff also makes a half-hearted attempt to argue that Rule 413(d)(5) applies because, according to Plaintiff, "both women indicate in their testimony that [Defendant] would have continued his assault had he not been stopped." *See* Pl. Mem. at 7-8 (ECF No. 134). This argument is unavailing because there is simply no support for Plaintiff's bald assertion; indeed, despite claiming that their position is supported by the witnesses' testimony, Plaintiff fails to cite to either deposition transcript in support of her claim that both women alleged that Defendant "would have continued his assault had he not been stopped." *Id.* This omission speaks volumes – neither transcript contains any such testimony.

Plaintiff's misleading assertion aside, Rule 413(d)(5) is irrelevant because neither of the witnesses' testimony are sufficient to show that Defendant attempted to commit any of the acts

enumerated in Rule 415(d)(1) through (d)(4). *See* Fed. R. Evid. 413(d)(5) (requiring a showing of "an attempt or conspiracy to engage in conduct described in subparagraphs (1)–(4).")). To establish that an individual attempted to commit a crime, it must be shown that said individual "intend[ed] to commit the crime and t[ook] a 'substantial step' towards its completion." *United States v. Hourihan*, 66 F.3d 458, 462 (2d Cir. 1995) (citing *United States v. Rosa,* 11 F.3d 315, 337 (2d Cir. 1993). Here, Plaintiff is unable to satisfy either element.

To establish intent, it is necessary to "prove that the defendant intended to engage in conduct constituting a crime." *United States v. Crowley*, 318 F.3d 401, 408 (2d Cir. 2003). Neither woman has offered any testimony to this effect. They both testified that there was no verbal communication between themselves and Defendant during the alleged encounters, and neither alleged any facts which tend to show that Defendant had intended to initiate non-consensual contact with their genitals or anus. *See* Habba Decl., Ex. A at tr. 21:9-13 (Q: And did he say anything when he started kissing you? A: No. Q: Did he say anything before? A: Not that I recall."); Habba Decl., Ex. B at tr. 19:19-25 ("Q: And did [Defendant] say anything while this was happening? A: Not a word. There was never any sound that I can recall. Q: Did you say anything while this was happening? A: Nope."). Therefore, the intent element fails cannot be satisfied with respect to either witness.

As for second element, "[a] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." *United States v. Manley,* 632 F.2d 978, 987 (2d Cir.1980). The step "must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." *United States v. Brand*, 467 F.3d 179, 202 (2d Cir. 2006) (citing

9

*Manley*, 632 F.2d at 987-988. "In determining whether conduct constitutes the requisite 'substantial step,' 'the finder of fact may give weight to that which has already been done as well as that which remains to be accomplished. . . .'" *United States v. Pugh*, 937 F.3d 108, 119 (2d. Cir. 2019) (quoting *Manley*, 632 F.2d at 987).

Here, neither Ms. Stoynoff nor Ms. Leeds have alleged that Defendant took any "substantial step" towards violating Rule 413(d)(1) through (d)(4). Ms. Stoynoff's testimony—which alleges that Defendant "grabb[ed] [her] shoulders and push[ed] [her] against [a] wall and start[ed] kissing [her]"—simply does not implicate that Defendant sought to initiate non-consensual contact with her genitals, or any other conduct that fits the statutory definitions of "other sexual assault" set forth in Rule 413(d). *See* Habba Decl., Ex. A at tr. 21:7-8. As for Ms. Leeds, she testified that her supposed encounter with Defendant lasted "just a few seconds" and did not involve any contact, or attempted contact, with either party's genitals. Habba Decl., Ex. B. at tr. 19:13. While she did claim that Defendant "started putting his hands up [her] skirt," this non-descript account, without more, is insufficient to establish that Defendant took a "substantial step" towards violating Rule 415(d), particularly since she failed to indicate whether Defendant's hands made any contact with her body and, if so, how far the contact was from her genitals, what direction his hands were moving, how quickly they were moving, or any other relevant details that would provide a basis to infer that Defendant intended to initiate non-consensual contact with her genitals. *See Rapp,* 2022 WL 5243030, at *2 (finding that testimony that defendant placed his "'hand on [the deponent's] leg . . . about two inches above [his] knee' and remained there for 'maybe 30 to 45 seconds'" is "not evidence of an 'other sexual assault' within the meaning of Rule 415(a), regardless of the question of intent."); *see also Johnson v. Elk Lake School Dist.*, 283 F. 3d 138, 156 (3d Cir. 2002) ("Where a past act cannot be shown with reasonable certainty, its probative

value is reduced and it may prejudice the defendant unfairly, confuse the issues, mislead the jury, and result in undue delay and wasted time.").

Based on the foregoing, the testimony of Plaintiff's proposed witnesses, Ms. Stoynoff and Ms. Leeds, do not fall within the purview of Rule 415. Therefore, this evidence must be excluded from trial.

### B.  The Proposed Testimony Is Not *Modus Operandi* Evidence

While it is true that the Second Circuit takes an "inclusionary approach" to Rule 404(b)(2) evidence, this approach does not permit a party "to offer, carte blanche, any prior act of the defendant in the same category of [activity]." *United States v. McCallum*, 584 F.3d 471, 475 (2d. Cir. 2009) (quoting *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002)). The party seeking to introduce evidence under Rule 404(b)(2) "must do more than demonstrate that the evidence is not offered solely to show that the defendant is a bad person," *United States v. Benedetto,* 571 F.2d 1246, 1249 (2d Cir. 1978); she must show that one of the specifically enumerated exceptions to Rule 404(b)(2) applies.

Plaintiff contends that the testimony of Ms. Stoynoff and Ms. Leeds should be admitted as *modus operandi* evidence. The justification for permitting *modus operandi* evidence under Rule 404(b)(2) is "to prove the identity of the defendant as the person who committed the offense being prosecuted," which is established by demonstrating that the crime fits within a unique pattern of conduct attributable to the defendant. *United States v. Campbell*, 300 F.3d 202, 215 (2d Cir. 2002). As explained by the Second Circuit:

> Evidence of a person's prior similar acts is probative on the issue of identity, only when his commission of other acts tends to show that he had a design or plan to commit the act alleged. For the prior similar acts to be probative of identity there must be "a high degree of similarity ... [leading] to the logical inference, by virtue of the combination of common features, that a common plan or design was at the basis for all the [criminal acts] and hence that it was the [defendant] who committed

> this [criminal act]." *United States v. Danzey,* 594 F.2d 905, 913 (2d Cir.), *cert. denied,* 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979). Indeed, as we have previously noted, "evidence of other crimes offered to prove identity or common plan or design must be more similar than when those crimes are offered to prove intent." *Id.* at 913 n. 6. The more unique and unusual are the common characteristics of the similar acts involved, the more probative become the prior acts, since they then are sufficiently distinctive to be viewed as "fingerprints" or "signatures" of the person charged. *United States v. Benedetto,* 571 F.2d 1246, 1249 (2d Cir.1978).

*United States v. Neary*, 733 F.2d 210, 216 (2d Cir. 1984).

To qualify as evidence of a *modus operandi*, the alleged conduct must "share enough characteristics with the charged offenses that they share the 'signature' required for use in establishing a modus operandi under Rule 404(b)," *United States v. Reese,* 933 F.Supp.2d 579, 582 (S.D.N.Y. 2013) (citing *United States v. Danzey,* 594 F.2d 905, 911 (2d Cir.1979)). In other words, the evidence sought to be introduced must show be that of a "signature crime,' *i.e.*, a *modus operandi* where the crimes are 'so nearly identical in method as to ear-mark them as the handiwork of the accused.'" *United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990). "[M]uch more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts . . . *[t]he device used must be so unusual and distinctive as to be like a signature*." *United States v. Benedetto,* 571 F.2d 1246, 1249 (2d Cir. 1978) (emphasis in original).

In the instant scenario, Plaintiff's position that the conduct alleged by Ms. Stoynoff and Ms. Leeds is so distinct that it should be viewed as a "signature crime" is plainly without merit. *Mills*, 895 F.2d at 907. Indeed, the purported *modus operandi* that Plaintiff seeks to attribute to Defendant—sexually assaulting a woman and then subsequently denying it—is (unfortunately) not conduct that can be considered unique in our society.[4] It certainly is not the type of distinct

---

[4] Plaintiff acknowledges as much in her Complaint by repeatedly stressing her belief that sexual assault is "pervasive" in modern society and that "powerful" men are often not held accountable for such acts. *See generally* Complaint (ECF No. 1).

and identifiable conduct that can be "ear-mark[ed] . . . as the handiwork" of Defendant to charge

him as the only perpetrator who could have possibly committed the act in question. *Id.* At most,

the testimony of the two witnesses would merely purport to show the "repeated commission of

crimes of the same class," which falls well short of qualifying as a *modus operandi*.

Further, Plaintiff's contention that she seeks to introduce the testimonial evidence because

"it makes it *more likely* that [Defendant] sexually assaulted [Plaintiff] and then lied when he denied

having done so," Pl. Mem. at 10 (ECF No. 134), reveals her true intention – to introduce the

evidence solely for the purpose of establishing propensity. As such, Plaintiff's request should be

rejected for the same reason this Court declined to admit propensity evidence in *Rapp v. Fowler*:

> Plaintiff here argues that the evidence . . . is pertinent to whether Mr. Fowler's
> interaction with Mr. Rapp was motivated by Mr. Fowler's desire to gratify either
> his own or Mr. Rapp's sexual desire or to degrade or abuse Mr. Rapp or,
> alternatively, to corroborate Mr. Rapp's testimony concerning his encounter with
> the Mr. Fowler. The second of these arguments really amounts to saying that the
> evidence is offered precisely for the prohibited purpose of showing Mr. Fowler's
> character in order to show that he acted in accordance with that character on a
> different occasion — is offered purely to show propensity. And the probative value
> of the first argument, if it has any, would be outweighed quite substantially by the
> risk that the jury would consider the evidence regarding Mr. Dawes purely or
> predominantly for the unfair, and prejudicial purpose foreclosed by Rule 404(b)(1).

*Rapp*, 2022 WL 5243030, at *2.

Therefore, Plaintiff's request to introduce the testimony of Ms. Stoynoff and Ms. Leeds

as *modus operandi* evidence must be denied.

### C. Even If Otherwise Admissible, The Testimony Of Ms. Stoynoff and Ms. Leeds Must Be Precluded Under Rules 402 and 403

Assuming *arguendo* that one or both of the proposed testimonies of Ms. Stoynoff and/or

Ms. Leeds qualify under either the Rule 415 or Rule 404(b)(2) exceptions—which they do not—

such evidence is nonetheless inadmissible under Rules 402, due to irrelevance, and under 403,

since the probative value of such evidence is substantially outweighed by its potential for unfair

prejudice. These arguments are fully set forth in Defendant's Memorandum of Law in support of Motions *in Limine* (ECF No. 131), and Defendant fully incorporates them by reference herein. *See also Rapp*, 2022 WL 5243030, at *2 (finding testimony of prior sexual assault, which was inadmissible under Rule 415, was likewise inadmissible under Rule 404(d)(2) because it was "offered purely to show propensity" and because its probative value was "quite substantially outweighed by the risk that the jury would consider the evidence regarding [the witness] purely or predominantly for the unfair, and prejudicial purpose foreclosed by Rule 404(b)(1).").

## II.   Plaintiff's Motion *in Limine* to Exclude the Expert Report and the Testimony of Robert Fisher as Defendant's Rebuttal Expert Witness Should Be Denied

### A.   The Defendant's Expert Report of Robert Fisher Sufficiently Rebuts the Plaintiff's Expert Report of Professor Ashlee Humphreys

Plaintiff seeks to exclude Robert Fisher ("Fisher") as an expert witness in this litigation due to his purported failure to properly rebut the report of Plaintiff's proposed expert Professor Ashlee Humphreys.  This argument is wholly without merit, as set forth more fully below.

A court maintains full discretion to determine whether expert testimony will be admitted. *See United States v. Duncan,* 42 F.2d 359 (2d Cir. 1992) (internal citations omitted).  Further, the Federal Rules of Evidence "provide a liberal standard for the admissibility of expert testimony." *United States v. Dukagjini,* 326 D.3d 45, 52 (2d Cir. 2003) (citing *Daubert v. Merrell v. Down Pharmaceuticals,* 509 U.S. 579, 588 (1993).

As such, "[o]ne of the fundamental requirements of Rule 702 is that the proposed testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"  *In re Resuling Prod. Liab. Litig.,* 309 F. Supp.2d 531, 540 (S.D.N.Y. 2004) (quoting Rule 702).

As stated in Plaintiff's moving papers, under Rule 26(a)(2)(D)(ii), a party may submit expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter

identified by another party."  However, "[a] rebuttal report is not the proper 'place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice."  *Ebert v. Nassau County,* No. CV 05-5445, 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008) (citations omitted).

Despite Plaintiff's assertions to the contrary, the content of Fisher's expert report **does** proffer evidence that effectively "contradicts or rebuts evidence" provided by Professor Humphreys in her proposed expert report.  With respect to her qualifications as a potential expert, Fisher emphasizes that Professor Humphreys "does not indicate that she has any professional background, experience or expertise in reputation management, damage or repair – which are the center of this case."  *See* Habba Decl., Ex. C at 2.

Regarding Professor Humphreys' methodology in preparing her report, Fisher emphasizes:

It [is] also important to note that internet exposure (and even media exposure) is a form of 'indirect' communications meaning that the receiver is not getting the message directly from the sender. The most effective form of communications is "direct" contact.  There are many ways to do this (e.g., direct verbal conversations, letters, emails, speaking engagements, appearances at events) and does not appear that any form of direct communications is in Humphreys' program.

Habba Decl., Ex. C at 10.

Additionally, on page eight of his expert report, Fisher rebuts Professor Humphreys' definition of "reputation" and counters by stating that "[a] more appropriate definition of reputation would be that a reputation is the sum of all our actions that is reflected by the people around us in the way they treat us or interact with us.  It is an indirect result of anything and everything that we do.  Successful people have always stressed on the building and maintaining of reputation as a fundamental ingredient to success.  This distinction is important in relation to the claims made by Carroll against Trump." *Id.*

Further, with respect to the reputational repair program proffered by Professor Humphreys and the methodology to support her conclusions, Fisher opines that "[h]aving almost the entire program geared to online exposure is equivalent to 'putting all your eggs in one basket.' The most successful type of communications program features dissemination of information through multiple communications channels." *Id.*

On that point, Fisher further rebuts Humphreys' report by stating that "the most effective ways to do this (e.g., direct verbal conversations is 'direct' contact. There are many ways to do this (e.g., direct verbal conversations, letters, emails, speaking engagements, appearances at events) and it does not appear that any form of direct communications is in Humphreys' program." *Id.*

Based upon the foregoing, Plaintiff's argument is meritless. In compliance with Rule 26(a)(2)(D)(ii), Rule 702, and applicable and supporting case law, it is clear that the expert report of Robert Fisher effectively "contradicted or rebutted" the opinions set forth by Professor Humphreys. Furthermore, the rebuttal report set forth by Fisher is supported by sufficient and compelling evidence, as set forth above. Accordingly, Fisher's expert testimony should be admitted at the time of trial, and Plaintiff's Motion *in Limine* should be denied.

**B. Defendant's Expert Report from Robert Fisher Should Not be Excluded as It Complies with Rule 702 and the *Daubert* Case**

Plaintiff also seeks to preclude Robert Fisher from testifying as an expert at trial due to his purported failure to comply with the case of *Daubert v. Merrell v. Dow Pharmaceuticals,* 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence. Plaintiff's contentions in this regard are similarly unpersuasive and should be summarily dismissed by this Court.

As set forth above, the applicable Rule of Evidence governing expert testimony is Fed. R. Evid. 702. In applying Rule 702, "general acceptance" is not a prerequisite to admissibility. *See*

*Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169 (1988).  On that point, the Supreme Court of the United States held that a rigid "general acceptance" requirement would be contrary to the "liberal thrust" of the Federal Rules and the Court's "general approach of relaxing the traditional barriers or 'opinion' testimony."  *Beech Aircraft Corp,* 488 U.S. at 169 (citing Rules 701 to 705).

Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702. In analyzing the requirements set forth in Rule 702, it is essential to note that not all five elements need to be complied with in order to comply with Rule 702 – only one of the five elements need to be satisfied.  *See Daubert v. Merrell v. Dow Pharmaceuticals,* 509 U.S. 579 (1993).

Therefore, regarding the requirements set forth by Rule 702, it is respectfully submitted that Fisher meets three of these elements: knowledge, skill and experience.  As such, Robert Fisher clearly qualifies as an expert in this litigation and his expert testimony should be admitted.

With respect to the "skill element" set forth in Rule 702, Fisher testified during his deposition that he received several awards and honors throughout his career.  Specifically, he received awards from the Public Advisors Society of America and the Public Communicators of Los Angeles. *See* Habba Decl., Ex. D at tr. 41:5-42:4.

In particular, Fisher testified that one of the multiple awards he received in the reputational damage field was when he repaired the damaged reputation of the brothel industry in Nevada and rehabilitated its perception overall in the community. *Id.* at tr. 42:5 – 43:22.  Additionally, Fisher testified that he "managed to short-circuit the eviction of [tenants of an upscale condo complex,

Marina Del Verde] by creating a reputational damage program to repair the tenants' reputation and allow them to remain as tenants in this condo complex. *Id.* at tr. 43:23-44:9.

Regarding the "experience element" set forth in Rule 702, Fisher further testified to his extensive experience in public relations, which is essential when analyzing situations involving reputational harm and reputational damage repair. *Id.* at tr. 49:12-50:15. With respect to his expertise in public relations, Fisher's expert report states that he has 50 years of experience as a public relations professional and during that time period, "80 to 100 [of his clients] had issues relating to a damaged reputation crisis situation that negatively impacted their reputation.

Additionally, throughout his lengthy and extensive career, Fisher "acquired a significant national reputation with both the legal profession and the news media as a preeminent expert in crisis communications and reputation damage and repair…." *See* Habba Decl., Ex. C at 1.

Fisher also satisfied the "knowledge element" of Rule 702 through his deposition testimony. Specifically, Fisher testified to the following:

Q:     And – and what data do you rely upon to determine what the best media is for your target audience in terms of credibility and the other things you mentioned?

A:     Knowledge. I've been in this business 50 years. A reporter for "The New York Times", I was in journalism – I know the media, I know which media – who the media are, I know what they do, I know who they reach out to, I know who reads them or listens to them, I know that – for instance, if I had something from Mr. Trump back in the day, I wouldn't go to MSNBC for it,, I would go to FOX, you know or now Newsmax or America One [sic] or whatever..

But the bottom line is I – I have knowledge; that's why I'm an expert. I have 50 years of knowledge of working with the media. Most of them were around 50 years ago. "New York Times" was around 50 years ago, so was the Washington Post, so was ABC, so was AP, so was Wall Street Journal. I don't need to consult textbooks or media guides – again, we're just talking about news media at this point. I don't need to consult them to kno**?**w who – who the movers and shakers are or where I need to be.

*See* Habba Decl., Ex. D at tr. 313:4-314:3.

Thus, as set forth above, although only one out of five elements are required to be shown under Rule 702 to be permitted to provide expert testimony, Fisher clearly establishes three of those elements: knowledge, experience and skill.  As such, it is respectfully requested that Fisher's expert testimony should be admitted at trial and Plaintiff's Motion *in Limine* should be denied.

Accordingly, as set forth herein and as evidenced by the contents of Robert Fisher's expert report and deposition testimony, Robert Fisher should be admitted as an expert rebuttal witness for this litigation, as his expert report clearly complies with Rule 702 and the *Daubert* case. Consequently, Plaintiff's Motion *in Limine* should be denied.

### III. There Is No Basis To Preclude Any Additional Information, Including Witnesses Identified In Defendant's Pre-Trial Order and References to DNA Evidence

#### A. Reference to Plaintiff's Public Representations concerning DNA Evidence Must Be Permitted.

Plaintiff's contention that this Court should preclude *any* testimony or commentary concerning DNA evidence is wholly unavailing. Contrary to Plaintiff's assertion, Defendant is entitled to cross-examine Plaintiff with respect to the fact that she publicly, and falsely, proclaimed that she was in possession of Defendant's DNA.

As previously stated, the Court may only exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, issue confusion, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *U.S. v. Frederick*, 702 F. Supp. 2d 32, 35 (E.D.N.Y. 2009).

In the instant matter, Defendant seeks to cross-examine Plaintiff on her prior representations to the public that she had somehow obtained Defendant's DNA. Indeed, during her deposition testimony, she candidly admitted that she publicly stated that she had his DNA. *See*

Habba Decl., Ex. E at tr. 217:24-218:22. The probative value of Plaintiff's testimony regarding her prior representations outweighs any nominal prejudice she may claim under the Rule 403 balancing test. The fact that Plaintiff was publicly representing that she was in possession of Defendant's DNA, when she in fact was not, goes towards her motivation and tends to show that she was seeking to attract media attention and bolster her story in the public eye. Indeed, a jury could view this evidence as a significant and probative factor in support of Defendant's argument that Plaintiff manufactured her defamation claim for the purpose of garnering publicity.

As for potential undue prejudice to Plaintiff, there simply is none. For the avoidance of doubt, Defendant is not seeking to introduce an expert to opine on Plaintiff's report, nor does he intend to introduce Plaintiff's DNA report on this subject. Instead, Defendant only seeks to cross-examine Plaintiff as to public statements that she made regarding Defendant's DNA, and her motivation for making such statements. Given the limited nature of this inquiry, such testimony could not conceivably unduly prejudice Plaintiff.

Nor would such a line of inquiry encroach upon any of the concerns that this Court raised in the Order dated February 15, 2023 in *Carroll II. See Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023). Despite Plaintiff's attempt to characterize the February 15, 2023 Order as a blanket ban on any and all evidence pertaining to DNA in *Carroll II* (and, presumably, this mater), this Court's ruling was narrow in scope and merely denied Defendant's application to obtain an appendix which was attached to a DNA report that Plaintiff filed in state court. *Id*. at *3. The denial was premised upon the Court's finding that pre-trial discovery has already concluded and that such a request may delay the trial date. *Id*. at *8. The Order does not, however, purport to preclude the parties from making *any* mention of DNA at trial, nor does it specifically exclude reference to Plaintiff's numerous public assertions that she obtained

20

Defendant's DNA, thereby prematurely condemning him of guilt[5]. Plaintiff has not argued, nor

can she, that Defendant's cross-examination of Plaintiff on her own prior statements would delay

this trial, nor force the parties to regale the entire history of Plaintiff's attempts to obtain

Defendant's DNA. As such, Plaintiff is entitled to introduce testimony and commentary regarding

this highly relevant issue.

### B. All of Defendant's Trial Witnesses Should Be Permitted To Testify

In the Motion, Plaintiff contends that Defendant should be precluded from calling five non-

party witnesses identified by Defendant in the pre-trial order—namely, David Haskell, Elizabeth

Dyssegaard, Erin Hobday, Laurie Abraham, and Sarah Lazin—on the basis that Defendant

purportedly violated Rule 26(a)(1) by failing to amend his Initial Disclosures to identify said

witnesses. This position is flawed in its premise since Plaintiff did not have any obligation to

identify these witnesses because they were known to—in fact, disclosed by—Plaintiff. Further,

even if there were some technical violation of Rule 26, the omission of these witnesses from

Defendant's Initial Disclosures is "harmless" because their names were "known to all parties." *See*

Advisory Committee Notes, 146 F.R.D. 682, 691 (1993).

Rule 26 requires parties to provide "the name . . . of each individual likely to have

discoverable information . . . that the disclosing party may use to support its claims or defenses,

unless solely for impeachment, identifying the subjects of the information." Fed. R. Civ. P.

26(a)(1)(A). Further, Rule 26(e) requires that the parties supplement its initial disclosures "if the

party learns that in some material respect the information disclosed is incomplete or incorrect, and

---

[5] For instance, Plaintiff has made numerous posts on social media claiming that the DNA
evidence on "the dress" will purportedly serve as damning evidence against Defendant in this
case. *See, e.g., https://twitter.com/ejeancarroll/status/1400122740720480262;
https://twitter.com/ejeancarroll/status/1364995845439901700;
https://twitter.com/ejeancarroll/status/1256301599426785280.*

if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

The key language Plaintiff has conveniently overlooked is that "additional or corrective information" need only be supplemented in an initial disclosure if it "***has not otherwise been made known to the other parties*** during the discovery process or in writing." *Id.* (emphasis added). Indeed, as memorialized in the Advisory Committee Notes to the 1993 Amendments, it is well established that Rule 26 imposes "***no obligation*** to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition[.]" Advisory Committee Notes, 146 F.R.D. 682, 691 (1993); *see also Marvel Worldwide, Inc. v. Kirby,* 777 F. Supp. 2d 720, 727 (S.D.N.Y. 2011), *aff'd in part, vacated in part on other grounds sub nom. Marvel Characters, Inc. v. Kirby,* 726 F.3d 119 (2d Cir. 2013) ("[T]he duty to supplement a Rule 26 disclosure is only necessary when the omitted or afteracquired information has not otherwise been made known to the other parties during the discovery process.") (*quoting* 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049.1 (3d ed. 2010));

Consistent with this principle, it is evident that Defendant did not commit any violation of Rule 26. It is beyond dispute that Plaintiff was aware of the identities of the five witnesses and the scope of their knowledge. In fact, it was *Plaintiff* who disclosed four of those witnesses, Haskell, Dyssegaard, Abraham, and Lazin, as individuals who "have any knowledge or information about any of the allegations in the Complaint" in her answers to interrogatories. Pl. Mem. at 24 (ECF No. 134); *see also* Habba Decl., Ex. F. The fifth, Hobday, was discussed by Plaintiff in her deposition and identified as the managing editor of *Elle* and the individual who advised Plaintiff

of her termination.[6] *See* Habba Decl., Ex. E at tr. 178:12-19.  As a result, Defendant did not have

any duty to supplement his Rule 26 initial disclosures to include the identities of any of these

witnesses, since Plaintiff was the one who made their identities known in the first place. *See*, *e.g.*,

*Laspata DeCaro Studio Coporation v. Rimowa GmbH*, 16-cv-934 (LGS), 2018 WL 3059650 at

*9 (S.D.N.Y. June 20, 2018) (finding that plaintiff had "no duty to supplement its initial

disclosures" to include a witness who the defendant had "list[ed] as an individual likely to possess

knowledge relevant to th[e] action."); *Howard University v. Borders,* 20-CV-04716 (LJL), 2022

WL 3568477, at *2 (S.D.N.Y. Aug. 17, 2022) (finding that plaintiff had "no obligation to

supplement its initial disclosures" to identify trial witness when defendant was "well aware of [the

witness's] identity and her role from the beginning of the litigation and that it was possible that

[the plaintiff] might choose to use her as a witness."); *Marvel* Worldwide, 777 F. Supp. 2d at 727

("Because [plaintiff] became aware of [declarants] at . . . depositions, [defendants] did not have a

duty to supplement their Rule 26 initial disclosures.").

Moreover, even assuming *arguendo* that Defendant did commit some technical violation

of Rule 26, it does not follow that preclusion of Defendant's proposed witnesses is warranted under

Rule 37. "The purpose of [Rule 37] is to prevent the practice of 'sandbagging' an opposing party

with new evidence." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004). "Imposition

of sanctions under Rule 37 is a drastic remedy and should only be applied in those rare cases where

a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil

Procedure." *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995) (citation omitted); *see also*

---

[6] Plaintiff was also shown communications which revealed that Ms. Hobday was involved in the internal deliberations to terminate Plaintiff, for reasons that were "shocking" to Plaintiff and which directly contradict allegations contained in the Complaint. *See* Habba Decl., Ex. E at tr. 188:25-189:19.

*Ventra v. United States*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000) ("[P]reclusion is a drastic remedy and therefore [warrants] discretion and caution."); *Kunstler v. City of New York*, 242 F.R.D. 261, 265 (S.D.N.Y. 2007) (noting that preclusion is "disfavored"); *Ebewo v. Martinez*, 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004) ("Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution.").

Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . at trial, *unless the failure was substantially justified or is harmless*." Fed. R. Civ. P. 37(c) (emphasis added). The 1993 Advisory Committee Notes to Rule 37 emphasizes that "the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties" and clarifies that situations where violation should be considered "harmless" include, among other things, "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties." *See* Advisory Committee Notes, 146 F.R.D. 682, 691 (1993); *see also Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A.*, 2002 WL 31108380, at *2 (S.D.N.Y. Sept. 23, 2002) ("[A] failure to disclose witness information is 'harmless' if the other party was well aware of the identity of the undisclosed witness and the scope of their knowledge well before trial.") (quoting 6 Moore's Federal Practice § 26.27[2][d] at 26-93).

Here, any violation of Rule 26 by Defendant would clearly qualify as a "harmless" one since Plaintiff was aware of the identities of Haskell, Dyssegaard, Hobday, Abraham, and Lazin, and fully understood their relevance to this case. As such, she has no basis for arguing that they should be precluded from testifying at trial. *See*, *e.g.*, *Harris v. Donohue*, 2017 WL 3638452 (N.D.N.Y. Aug. 23, 2017) (declining to preclude witnesses when "[p]laintiff was clearly aware

that both [witnesses] possessed relevant knowledge [and] could have taken the deposition of either individual at an appropriate time prior to trial and chose not to."); *Hewitt v. Metro-North Commuter Railroad*, 14-CV-8052 (AJN), 2017 WL 1155068, at *3 (S.D.N.Y. Mar. 24, 2017) ("Because [the plaintiff] 'was well aware of the identity of the undisclosed witness and the scope of knowledge well before the trial,' [the defendant's] 'failure to disclose . . . is 'harmless.'") (citations omitted); *Howard University*, 2022 WL 3568477, at *2 ("Defendants were well aware of Ms. Jones Gentry's identity and her role from the beginning of the litigation and that it was possible that Howard might choose to use her as a witness . . . [t]here thus was no obligation on Howard to supplement its initial disclosures . . . [a]nd, even if there were such a duty, the violation would be harmless."); *Mugavero v. Arms Acres, Inc.,* 03-CV-5724, 2009 WL 1904548, at *5 (S.D.N.Y. July 1, 2009) ("[B]ecause Defendants had reason to know during the discovery period that Peter Mugavero and Dr. Weinshel might have information relevant to Plaintiff's damages claims, her failure to disclose their identity in her discovery responses was harmless, and Defendants' motion to preclude them from testifying is denied."); *Universe Antiques, Inc. v. Vareika,* 10-cv-3629, 2011 WL 5117057, at *4 (S.D.N.Y. Oct. 21, 2011) ("The [plaintiffs] will suffer no prejudice if the Undisclosed Witnesses are called at trial because the Undisclosed Witnesses include individuals with whom the [plaintiffs] are very familiar . . . [i]n these circumstances, the Court finds no credible risk of unfair surprise or sandbagging with new evidence.")

Further, to the extent that Plaintiff argues that she has been prejudiced because she was unaware that Defendant intended to call these five individuals as trial witnesses, no such notice requirement exists under Rule 26. As the court in *Harris v. Donahue* explained:

> Plaintiff asserts that [he lacked notice] that the defendants intended to use either Nielson or Palumbo as witnesses. However, the purpose of Rule 26(a)(1)(A) is to "alert an opposing party of the need to take discovery of the named witness." *Badolato v. Long Island R.R.*, 2016 WL 6236311, at *4 (E.D.N.Y. Oct.

25, 2016). Plaintiff was clearly aware that both Nielson and Palumbo possessed relevant knowledge of underlying June 21, 2014 incident at issue in the case. As such, plaintiff could have taken the deposition of either individual at an appropriate time prior to trial and chose not to.

As Harris was well aware of the identity and general scope of knowledge of both Nielson and Palumbo before trial, defendants' failure to include either Nielson or Palumbo in their Rule 26 disclosure was harmless. Therefore, plaintiff's motion to preclude the testimony of Nielson and Palumbo will be denied.

*Harris v. Donahue*, 1:15-CV-01274 (DNH) (CFH), 2017 WL 3638452, at \*2(N.D.N.Y. Aug. 23, 2017). Thus, Plaintiff's argument is entirely unfounded in the law.

Lastly, Plaintiff's contention that Defendant's has engaged in conduct tantamount to "trial by ambush" is completely undermined by the manner in which Plaintiff identified her own trial witnesses throughout the course of discovery proceedings. For instance, Plaintiff identified Cheryl Lee Beall—who supposedly has knowledge of the Bergdorf Goodman store during the relevant time periods— as a potential witness for the first time in her Second Supplemental Rule 26(a)(1) Disclosures, which was served on October 14, 2022 – just *five days* before the fact discovery period ended on October 19, 2022. Habba Decl., Ex. G Similarly, Plaintiff identified another Bergdorf-related witness, Robert Salerno, for the first time in her Third Supplemental Rule 26(a)(1) Disclosure, which was served on January 6, 2023 – approximately *two and a half months* after the close of fact discovery. *See* Habba Decl., Ex. E. Prior to these disclosures, Defendant had no knowledge of these individuals, their knowledge, or the purported relevance to this action. Yet, due to Plaintiff's late disclosure, Defendant was not provided ample opportunity to depose either witness; as a result, to date Defendant lacks any understanding as to the subject matter of the testimony that either witness seeks to provide. This is precisely the type of "'sandbagging' an opposing counsel with new evidence" that is precluded under Rule 37, *Ebewo v. Martinez*, 309 F.

Supp. 2d 600, 607 (S.D.N.Y. 2004), and is, undoubtedly, significantly more prejudicial than Defendant's purported failure to disclose witnesses who Plaintiff was well aware of.

Therefore, Plaintiff's request to precluded Defendant from calling David Haskell, Elizabeth Dyssegaard, Laurie Abraham, Sarah Lazin, and Erin Hobday as witnesses at trial must be denied.

## **CONCLUSION**

For the foregoing reasons, Defendant, Donald J. Trump, respectfully requests that the Court deny Plaintiff's omnibus motion *in limine* in its entirety.

Dated: February 23, 2023          Respectfully submitted,
      New York, New York

Alina Habba, Esq.
Michael T. Madaio, Esq.
HABBA MADAIO & ASSOCIATES LLP