UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

*Plaintiff*,

v.

DONALD J. TRUMP,

*Defendant*.

No. 22 Civ. 10016 (LAK)

**PLAINTIFF E. JEAN CARROLL'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DONALD J. TRUMP'S MOTION FOR SUMMARY JUDGMENT**

Roberta A. Kaplan
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, D.C. 20001
Telephone: (212) 742-2661
Facsimile: (212) 564-0883
jmatz@kaplanhecker.com

*Attorneys for Plaintiff E. Jean Carroll*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

STANDARD OF REVIEW ................................................................................................. 4

ARGUMENT ...................................................................................................................... 5

    I.    TRUMP'S OCTOBER 12, 2022 STATEMENT DEFAMING CARROLL IS NOT
        PRIVILEGED UNDER SECTION 74 OF THE NEW YORK CIVIL RIGHTS LAW ....... 5

        A.  The Applicable Legal Standard ............................................................................ 5

        B.  The October 12 Statement Was Not a "Report" of *Carroll I* ............................... 7

        C.  The October 12 Statement Was Not "Fair and True" ........................................... 14

CONCLUSION.................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Abkco Music, Inc. v. William Sagan, Norton LLC*,
   No. 15 Civ. 4025, 2016 WL 2642224 (S.D.N.Y. May 6, 2016)....................................... 7, 15, 16

*Aguirre v. Best Care Agency, Inc.*,
   961 F. Supp. 2d 427 (E.D.N.Y. 2013) ............................................................................. 5, 6, 14

*Alf v. Buffalo News, Inc.*,
   21 N.Y.3d 988 (2013) ........................................................................................................ 9, 15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505 (1986).................................................................................... 4

*Arrow Commc'ns Labs., Inc. v. Pico Prods., Inc.*,
   606 N.Y.S.2d 114 (4th Dep't 1993)....................................................................................... 15

*Calvin Klein Trademark Tr. v. Wachner*,
   129 F. Supp. 2d 248 (S.D.N.Y. 2001)...................................................................................... 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548 (1986).................................................................................... 4

*Cholowsky v. Civiletti*,
   887 N.Y.S.2d 592 (2d Dep't 2009).......................................................................................... 7

*Corp. Training v. Nat'l Broad. Co.*,
   868 F. Supp. 501 (E.D.N.Y. 1994) .................................................................................. 11, 12

*Daniel Goldreyer, Ltd. v. Van de Wetering*,
   630 N.Y.S.2d 18 (1st Dep't 1995)........................................................................................... 17

*D'Annunzio v. Ayken, Inc.*,
   876 F. Supp. 2d 211 (E.D.N.Y. 2012) ..................................................................................... 6

*Elliott Assocs., L.P. v. Banco de la Nacion*,
   194 F.3d 363 (2d Cir. 1999).................................................................................................... 5

*Fine v. ESPN, Inc.*,
   11 F. Supp. 3d 209 (N.D.N.Y. 2014)............................................................................... 8, 9, 11

*Fine v. ESPN, Inc.*,
   No. 12 Civ. 836, 2013 WL 528468 (N.D.N.Y. Feb. 11, 2013) ................................................ 7

*Francis v. Costco Wholesale Corp.*,
   No. 19 Civ. 1979, 2021 WL 1298616 (S.D.N.Y. Apr. 7, 2021).................................................. 4

*Friedman v. Bloomberg L.P.*,
    884 F.3d 83 (2d Cir. 2017) .............................................................................. 9, 17

*Garr v. Selden*,
    4 N.Y. 91 (1850) ............................................................................................ 5, 14

*Geiger v. Town of Greece*,
    311 F. App'x 413 (2d Cir. 2009) ....................................................................... 14

*Glantz v. Cook United, Inc.*,
    499 F. Supp. 710 (E.D.N.Y. 1979) ................................................................... 10

*Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*,
    49 N.Y.2d 63 (1979) .......................................................................................... 15

*Immuno AG. v. Moor-Jankowski*,
    77 N.Y.2d 235 (1991) .......................................................................................... 9

*James v. Gannett Co.*,
    40 N.Y.2d 415 (1976) ........................................................................................ 15

*Karedes v. Ackerley Grp., Inc.*,
    423 F.3d 107 (2d Cir. 2005)............................................................................... 14

*Kinsey v. New York Times Co.*,
    991 F.3d 171 (2d Cir. 2021)............................................................................. 8, 9

*Law Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys., Inc.*,
    844 F.2d 955 (2d Cir. 1988).............................................................................. 15

*Long v. Marubeni Am. Corp.*,
    406 F. Supp. 2d 285 (S.D.N.Y. 2005)................................................................. 6

*McRedmond v. Sutton Place Rest. & Bar, Inc.*,
    851 N.Y.S.2d 478 (2008) ................................................................................... 14

*Pisani v. Staten Island Univ. Hosp.*,
    440 F. Supp. 2d 168 (E.D.N.Y. 2006) ......................................................... 14, 15

*Reddington v. Staten Island Univ. Hosp.*,
    511 F.3d 126 (2d Cir. 2007)................................................................................. 5

*Shiles v. News Syndicate Co.*,
    27 N.Y.2d 9 (1970) .............................................................................................. 7

*Tacopina v. O'Keeffe*,
    645 F. App'x 7 (2d Cir. 2016) ...................................................................... 15, 16

*Thomas v. City of New York*,
    No. 17 Civ. 06079, 2018 WL 5791965 (E.D.N.Y. Nov. 5, 2018) ........................................... 15

*US Dominion, Inc. v. Fox News Network, LLC*,
    No. 21 Civ. 03-257, 2021 WL 5984265 (Del. Super. Ct. Dec. 16, 2021) ........................... 8, 15

*Wenz v. Becker*,
    948 F. Supp. 319 (S.D.N.Y. 1996) ................................................................................ 7, 9, 11

*Wexler v. Allegion (UK) Ltd.*,
    374 F. Supp. 3d 302 (S.D.N.Y. 2019) ................................................................................ 9, 10

*Williams v. Williams*,
    23 N.Y.2d 592 (1969) ................................................................................................... *passim*

**Statutes**

N.Y. Civ. Rights Law § 74 .............................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................................ 4

**Other Authorities**

Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* (5th ed. 2017) ....... 6

## INTRODUCTION

In 2019, Plaintiff E. Jean Carroll filed suit against Defendant Donald J. Trump to restore her good name after Trump issued a series of defamatory attacks branding her a fraud and a liar for revealing that he had sexually assaulted her a couple of decades earlier. *See Carroll v. Trump*, No. 20 Civ. 7311 (S.D.N.Y.) ("*Carroll I*"). On October 12, 2022—by which point Trump no longer held public office—Trump published yet another defamatory attack against Carroll, this time on Truth Social (his own social media platform). This independent and widely reported attack caused Carroll to suffer new and distinct reputational harm, for which she has sought redress in a separate defamation claim ("*Carroll II*"). While Trump now asserts that his latest defamatory statement is immune from liability under Section 74 of New York's Civil Rights Law, that is incorrect.

In this setting, the whole point of Section 74 is to protect the public interest in access to judicial proceedings. Section 74 does so by shielding from liability certain out-of-court statements, but *only* if those statements represent a "fair and true report of any judicial proceeding." Trump's October 12 statement, however, was neither a "report" nor "fair and true." It was not a "report" because it focused on the underlying facts, rather than on anything happening in the judicial proceedings in *Carroll I*, and because it mixed independent attacks on Carroll concerning those underlying facts with wide-ranging commentary on the legal system, CNN, the New York Attorney General, and an assortment of other supposed "Hoaxes." And even if it was a "report" on *Carroll I*, Trump's October 12 statement was not "fair and true" because it asserted—as true, rather than as allegations—much more serious misconduct on the part of Carroll than Trump had asserted in *Carroll I*, including her involvement in an even broader and more corrosive conspiracy involving elements of our judicial system. Taken as a whole, Trump's October 12 statement simply does not satisfy the established standards for what constitutes a "fair and true report."

Trump's position here is mistaken in its own right, but his errors loom even larger when situated alongside his arguments in *Carroll I*. There, Trump seeks summary judgment on Carroll's original defamation claim based on an argument that she somehow "consented" to his defamatory statements. *See Carroll I*, ECF 109 at 27-30. More specifically, Trump argues that by coming forward to reveal that he had sexually assaulted her, Carroll affirmatively agreed to whatever attacks he might unleash on her in response; in other words, he seeks to justify his defamation with a claim that she was (literally) "asking for it." *See Carroll I*, ECF 112 at 30-32. Now, Trump doubles down on his claim that Carroll did all this to herself: he insists in *Carroll II* that Carroll, just by filing her lawsuit in *Carroll I*, effectively invited and immunized under Section 74 any additional attacks he may continue to level against her in out-of-court statements.

But Section 74, to borrow a phrase from Ian Fleming, does not provide a "license to defame." The Court should therefore deny Trump's latest bid to escape accountability for his October 12 statement, which follows Trump's well-known playbook of re-victimizing any woman who dares to call him to account. At the very least, the Court should reject Trump's motion because it raises a question of fact properly entrusted to the jury, which will hear extensive evidence at trial about the October 12 statement regardless of how this summary judgment motion is decided.

## BACKGROUND

In her opposition to Trump's summary judgment motion in *Carroll I*, Carroll has already set forth much of the relevant background. *See Carroll v. Trump*, No. 20 Civ. 7311 (S.D.N.Y.) ("*Carroll I*"), ECF 113. For efficiency, Carroll incorporates that discussion by reference here— including its description of Trump's underlying sexual assault, as well as its account of Trump's decision to punish and humiliate her through repeated defamatory attacks in June 2019. *Id.* at 1-6.

2

On October 12, 2022—by which point he was a private citizen—Trump decided to defame Carroll yet again. This time, he attacked her through a lengthy post on Truth Social. *See* Plaintiff E. Jean Carroll's Response to Defendant Donald J. Trump's Local Civil Rule 56.1 Statement ("Pl. 56.1") ¶ 31. This post was styled as a "Statement by Donald J. Trump, 45th President of the United States of America," and it included a recent photograph of Carroll:



- October 12, 2022 -

Statement by Donald J. Trump, 45th President of the United States of America

This "Ms. Bergdorf Goodman" case is a complete con job, and our legal system in this Country, but especially in New York State (just look at Peekaboo James), is a broken disgrace. You have to fight for years, and spend a fortune, in order to get your reputation back from liars, cheaters, and hacks. This decision is from the Judge who was just overturned on my same case. I don't know this woman, have no idea who she is, other than it seems she got a picture of me many years ago, with her husband, shaking my hand on a reception line at a celebrity charity event. She completely made up a story that I met her at the doors of this crowded New York City Department Store and, within minutes, "swooned" her. It is a Hoax and a lie, just like all the other Hoaxes that have been played on me for the past seven years. And, while I am not supposed to say it, I will. This woman is not my type! She has no idea what day, what week, what month, what year, or what decade this so-called "event" supposedly took place. The reason she doesn't know is because it never happened, and she doesn't want to get caught up with details or facts that can be proven wrong. If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper. Our Justice System is broken along with almost everything else in our Country. Her lawyer is a political operative and Cuomo crony who goes around telling people that the way to beat Trump is to sue him all over the place. She is suing me on numerous frivolous cases, just like this one, and the court system does nothing to stop it. In the meantime, and for the record, E. Jean Carroll is not telling the truth, is a woman who I had nothing to do with, didn't know, and would have no interest in knowing her if I ever had the chance. Now all I have to do is go through years more of legal nonsense in order to clear my name of her and her lawyer's phony attacks on me. This can only happen to "Trump"!



3

At the time he published his October 12 statement, Trump had more than four million followers on Truth Social. *Id.* ¶ 33. Moreover, Trump also had his October 12 statement distributed to a lengthy list of reporters. *Id.* ¶ 35. The statement thus reached a wide audience and received extensive national news coverage. *Id.* ¶¶ 36-37. As demonstrated through discovery—and confirmed by expert testimony—Trump's October 12 statement caused Carroll to suffer substantial additional reputational harm, above and beyond the damage that she suffered as a result of his earlier defamatory statements from June 2019. *Id.* ¶¶ 36-38.

On November 24, 2022, Carroll filed her complaint in *Carroll II*, alleging one claim of battery (for the underlying sexual assault) and one claim of defamation (for the October 12 statement). ECF 1. On December 22, 2022, Trump moved to dismiss the complaint, but did not raise any argument related to Section 74. ECF 21. After the Court rejected his motion to dismiss, ECF 38, Trump filed an answer that also made no mention of Section 74. ECF 41. It was not until Trump filed an amended answer on February 10, 2023, that he first raised this affirmative defense, which is the sole basis on which he now seeks summary judgment. ECF 50 at 14.

## STANDARD OF REVIEW

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant bears the burden of proof. *See id.* at 323, 106 S. Ct. at 2552. The court resolves all ambiguities and draws all factual inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); *Francis v. Costco Wholesale Corp.*, No. 19 Civ. 1979, 2021 WL 1298616, at *2 (S.D.N.Y. Apr. 7, 2021) (Kaplan, J.).

4

**ARGUMENT**

**I. TRUMP'S OCTOBER 12, 2022 STATEMENT DEFAMING CARROLL IS NOT PRIVILEGED UNDER SECTION 74 OF THE NEW YORK CIVIL RIGHTS LAW**

Section 74 protects out-of-court statements made to parties independent of a case when two requirements are met: (1) the statement is a "report of [a] judicial proceeding"; and (2) that report is both "fair and true." Here, as discussed below and applying the summary judgment standard of review, Trump's October 12 statement satisfies neither of these requirements.

**A. The Applicable Legal Standard**

Section 74 of the New York Civil Rights Law provides that "a civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding." Because the interpretation and application of Section 74 presents questions of state law, this Court's role is "to determine how the New York Court of Appeals would decide them." *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007). For obvious reasons, the decisions of the New York Court of Appeals carry the greatest weight in this regard. *See Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.3d 363, 370 (2d Cir. 1999). Beyond that, the Court is free to consider all the resources to which the New York Court of Appeals itself might look—including the decisions of federal judges or other state court judges applying New York law—but it is not bound by any of them. *See id.*; *see also Reddington*, 511 F.3d at 133.

Under New York law, a party to a civil case (like Trump here) may conceivably be covered by two separate privileges against defamation liability. The first privilege governs oral or written communications that are made during the course of judicial proceedings and relate to the litigation. *See Garr v. Selden*, 4 N.Y. 91, 94 (1850); *accord Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 455-56 (E.D.N.Y. 2013). This "litigant's privilege" is limited to conduct that occurs *within judicial proceedings* and ensures that parties "testify with minds absolutely free from the

5

apprehension of being annoyed by civil actions for anything they may say as witnesses." Robert

D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems*, § 8.2.1 at 8-20 (5th ed. 2017)

(citation omitted); *accord Aguirre*, 961 F. Supp. 2d at 456. If Trump had made the October 12

statement while being deposed (or if he were to repeat his statement while testifying at trial), then

he would enjoy immunity because he acted in the course of a judicial proceeding. That, however,

is not what happened in connection with the October 12 statement—and Trump does not invoke

the litigants' privilege in his summary judgment motion.

Where, as here, a party in a civil action makes the choice to publish defamatory statements

relating to his own case—and publishes them *outside the judicial proceedings*—the only

protection that could potentially apply is known as the reporting privilege, pursuant to which out-

of-court statements are "privileged only to the extent that they represent fair and true reports of

what occurred in the proceeding." *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 294

(S.D.N.Y. 2005). This reporting privilege covers a narrower range of statements and is subject to

specific requirements. *See id.* ("The privilege for in-court statements is considerably broader in

scope than that for out-of-court reports relating to the proceedings."); *see also Aguirre*, 961 F.

Supp 2d. at 456; *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 217 (E.D.N.Y. 2012).

As its name itself suggests, the reporting privilege originally offered no protection to a

party who used the pendency of a case to make statements about other participants in the litigation.

Instead, it originated from a desire to ensure that reporters and publishers could inform the public

by producing fair and true reports of otherwise inaccessible judicial proceedings. *See Williams v.

Williams*, 23 N.Y.2d 592, 600 (1969) (Burke, J., concurring). In the century following its adoption,

the doctrine expanded to facilitate that core purpose: the New York legislature dropped an "actual

malice" limitation and broadened the privilege to reach all persons who might report on official

proceedings. *See id.* at 601. Ultimately, these developments led to the passage of Section 74, which the New York legislature enacted to vindicate the "public interest in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice." *Shiles v. News Syndicate Co.*, 27 N.Y.2d 9, 14 (1970) (citation omitted).

Consistent with this purpose, out-of-court statements are covered by Section 74 only if two requirements are met: (1) the statement must *in fact* be a "report" of an official proceeding; and (2) that report must be "fair and true." *See Wenz v. Becker*, 948 F. Supp. 319, 322 (S.D.N.Y. 1996).

In assessing whether these two elements are satisfied, the Court may determine as a matter of law whether Trump's October 12 statement qualifies as a fair and true report of the *Carroll I* judicial proceedings. *See, e.g.*, *Abkco Music, Inc. v. William Sagan, Norton LLC*, No. 15 Civ. 4025, 2016 WL 2642224, at *4 (S.D.N.Y. May 6, 2016); *Fine v. ESPN, Inc.*, No. 12 Civ. 836, 2013 WL 528468, at *3 (N.D.N.Y. Feb. 11, 2013). Alternatively, if the Court concludes that there is a genuine issue of material fact concerning whether these requirements have been met, the court must leave that "question … for the jury." *Abkco Music*, 2016 WL 2642224, at *4. In other words, if a reasonable juror could find that the October 12 statement was not a "report" of *Carroll I*, or that it was not "fair and true," then the issue should be decided by the jury. *See, e.g.*, *Calvin Klein Trademark Tr. v. Wachner*, 129 F. Supp. 248, 253 (S.D.N.Y. 2001); *Wenz,* 948 F. Supp. at 324.

**B.      The October 12 Statement Was Not a "Report" of *Carroll I***

"Allegedly defamatory statements are protected by Section 74 only where the statements report on a judicial proceeding." *Wenz*, 948 F. Supp. at 323. The party asserting immunity (here, Trump) bears the burden of demonstrating that this requirement is met. *See Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 596 (2d Dep't 2009). "Doubt regarding whether the report is 'of' a proceeding

is resolved against the privilege." *US Dominion, Inc. v. Fox News Network, LLC*, No. 21 Civ. 03-257, 2021 WL 5984265, at *25 (Del. Super. Ct. Dec. 16, 2021) (applying New York law).

To qualify as a "report" under Section 74, an "ordinary reader" must be able to "determine from the publication itself that the publication is reporting on a judicial proceeding." *Kinsey v. New York Times Co.*, 991 F.3d 171, 178-79 (2d Cir. 2021) (citation omitted). "The key question is whether the reader is able to determine that the report is *of a proceeding*." *Id.* at 180.

In the most thorough survey of precedent on this point, Judge Lawrence Kahn of the United States District Court for the Northern District of New York found that a mere "overlap between the subject matter of the report and the subject matter of a proceeding does not suffice." *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 216 (N.D.N.Y. 2014) (collecting cases). Rather, there must be "some perceptible connection between the challenged report and the proceeding." *Id.* (cleaned up). Where an out-of-court statement quotes and summarizes pleadings or case documents—or where it has some other suitably direct connection or functions as a background report on the proceeding—the reporting privilege may apply. *See id.* at 216-17. But "a report's mere mention of an official proceeding does not automatically extend the privilege to an entire publication; the privilege may apply to some portions of a report and not others." *Id.* at 217. Thus, "[i]f context indicates that a challenged portion of a publication focuses exclusively on underlying events, rather than an official proceeding relating to those events, that portion is insufficiently connected to the proceeding to constitute a report of that proceeding." *Id.* Moreover, it has long been understood that the reporting privilege "does not extend to commentary on the proceeding." *Id.* at 218 (collecting cases).

Of course, there is particularly good reason to doubt that a statement qualifies as a "report" on a judicial proceeding when the statement is made by a party to the case, rather than by a reporter,

observer, or other outside actor. As noted above, this privilege historically arose from the strong public policy in New York to protect journalists and publishers. *See Williams*, 23 N.Y.2d at 600 (Burke, J., concurring); *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 248-50 (1991). Not surprisingly, the vast majority of opinions concerning Section 74 involve statements by journalists and traditional news outlets. *See, e.g.*, *Kinsey*, 991 F.3d at 174-75; *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 94-95 (2d Cir. 2017); *Alf v. Buffalo News, Inc.*, 21 N.Y.3d 988, 989 (2013).

While the reporting privilege has been expanded over time to capture other individuals and entities who may report on official proceedings—and the privilege as codified in Section 74 covers "any person" who engages in conduct that meets the remaining statutory requirements—not every covered "person" is equally likely to "report" on a pending judicial proceeding. As a survey of precedent confirms, it is rare for a party to a case to attempt to invoke this privilege, as opposed to the litigant's privilege. *See* ECF 67 ("Trump Br.") at 15 n.6 (scrounging together a few examples). And when a party does so, the odds are much greater—given their obvious interest—that they have issued an "independent attack," *Wenz*, 948 F. Supp. at 323, have engaged in "commentary on the proceeding," *Fine*, 11 F. Supp. 3d at 218, or have "focus[ed] on the underlying events," *Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 313 (S.D.N.Y. 2019), none of which is immunized by Section 74. Although the plain language of Section 74 covers parties, that does not mean that everything a party says about their case qualifies as a "report" on their own judicial proceedings. If anything, there is reason to expect exactly the opposite. This case is thus unique (and potentially precedent setting) in an important sense: we are unaware of any reported case where a defendant in a defamation suit engaged in additional defamation targeting the same plaintiff in a similar sense

9

and style during the pendency of the original suit, and then sought to invoke Section 74 as a defense to an ensuing defamation claim for this further tortious conduct.[1]

Indeed, when the New York legislature first extended this privilege to "any person" (in the predecessor statute to Section 74), its purpose was *not* to shield parties, but rather "to extend to all *disinterested persons* the privilege then possessed by the press." *Williams*, 23 N.Y.2d at 603 (Burke, J., concurring) (emphasis added). For this reason, a concurrence joined by a majority of the Court of Appeals in *Williams* observed that "it is clearly sufficient that parties … be protected from anything that they say or write which is germane to a lawsuit, without clothing them also with an absolute right to distribute whatever malicious matter they may author." *Id.* In *Williams* itself, this concern led the court to address the risk that plaintiffs would file a lawsuit in bad faith and then leverage that suit into a shield for any ensuing defamation. *See id.* at 598-99 (principal opinion). That same concern is applicable to a defamation case like this one, where a defendant seeks to leverage the reporting privilege into a shield for continued defamatory attacks on the plaintiff—even when he is merely reprising and extending his culpable conduct, rather than actually "reporting" on the case.

Applying these legal principles, as well as common sense, the October 12 statement was clearly not a "report" on *Carroll I*, but rather a statement focused on the underlying facts, mixed with independent attacks on Carroll herself and commentary on the broader American legal system. The unmistakable "thrust" of the October 12 statement—and most specifically of its defamatory parts—is directed at the "underlying events." *See Wexler*, 374 F. Supp. 3d at 313. Here, Trump does not describe or recount judicial proceedings, nor does he even claim to report on or

---

[1] In fact, the only reporting privilege case involving a defamation defendant of which we are aware is *Glantz v. Cook United, Inc.* But there the defendant "quoted directly from the complaint in the [underlying] action," 499 F. Supp. 710, 715 (E.D.N.Y. 1979), and thus the allegedly defamatory statement fell squarely within the definition of "report."

characterize his litigation positions. The October 12 statement includes no legal terminology and no qualifying language, and does not cite, quote, or refer to any pleading or discovery material. *See, e.g.*, *Wenz*, 948 F. Supp. at 323. Instead, Trump offers straightforward accusations about the truth of Carroll's claim that he sexually assaulted her, as well as unadorned attacks on Carroll and statements disparaging her appearance, honesty, sanity, and motives. A defendant in a defamation suit does not "report" on the proceedings by defaming the plaintiff yet again in an out-of-court statement that lacks any "report on the nature or status of the pending litigation." *See id*. Such a statement instead constitutes an "independent attack" that is not protected by Section 74. *Id.*

Trump insists otherwise, largely in reliance on two lines in the October 12 statement: the first clause, which states that "This 'Ms. Bergdorf Goodman case' is a complete con job," and the third sentence, which states that "This decision is from the Judge who was just overturned on my same case." Trump Br. at 2. Such indirect references to *Carroll I* do not transform the entirety of his statement into a "report" on the case. *See, e.g.*, *Fine*, 11 F. Supp. 3d at 217; *Corp. Training v. Nat'l Broad. Co.*, 868 F. Supp. 501, 508-10 (E.D.N.Y. 1994). That is particularly clear in context: after these sentences, Trump immediately spins out into broader gripes about the legal system, as well as criticism of the New York Attorney General ("Peekaboo James"), who obviously has nothing to do with *Carroll I*. *See* 56.1 Resp. ¶ 33. He then offers a series of direct attacks on Carroll, linking these attacks not to anything in the judicial proceedings, but instead to his public commentary about many "other Hoaxes that have been played on me for the past seven years." *Id.*; *see Wenz*, 948 F. Supp. at 323 (noting the importance of considering the "context of the entire" statement in assessing whether it is a "report").

At that point, Trump then abruptly declares, "while I am not supposed to say it, I will," adding "This woman is not my type!" Trump's reiteration of his attack on Carroll's appearance is

not presented as an issue in the proceedings or connected to any filing in *Carroll I*; it is presented solely as a reason to think he could not have sexually assaulted her, and his disclaimer only further confirms that he is attacking Carroll, rather than somehow reporting on his own case. Trump then launches into commentary on an Anderson Cooper interview that was not at issue in the *Carroll I* case on October 12, 2022—as Trump's lawyers effectively admit while straining to show otherwise (*e.g.*, by noting that it was referenced in one of the many articles listed in a footnote in the *Carroll I* complaint). *See* Trump Br. at 8-9. Finally, Trump concludes with critical commentary of "Our Justice System" and "everything else in our Country," another attack on Carroll that makes no mention of the *Carroll I* proceedings, and an assertion (with his own name in quotation marks) that "This can only happen to 'Trump'!" 56.1 Resp. ¶ 33. At bottom, while the October 12 statement includes a couple of indirect references to *Carroll I*, it consists principally of commentary (on Carroll herself, the legal system, CNN, the New York Attorney General, and assorted "Hoaxes"), mixed with a series of independent attacks on Carroll that simply do not come across as reporting on a case.

Perhaps recognizing the awkwardness of invoking Section 74, Trump falls back on an argument that his October 12 statement should count as a "report" because its substance overlaps with positions he has taken in court. Trump Br. at 15-17. But that is not the applicable legal standard. As explained above, the key question is whether an ordinary reader would understand Trump to be reporting on a judicial proceeding in his October 12 statement, not whether his statement can later be backfilled with references to such a proceeding. Courts have rejected similar efforts to invoke the reporting privilege where a party was "unfairly attempting to 'back-in' the facts from the [trial proceedings] into the [out-of-court statement]." *Corp. Training*, 868 F. Supp. at 509 (denying summary judgment to NBC where a news broadcast, despite its overlap with

testimony at trial, presented the underlying facts as true and referred only in passing to judicial proceedings). The striking consistency between Trump's various public attacks on Carroll (including on October 12) does not transform his most recent attack into a "report" on *Carroll I*.[2]

For these reasons alone, the Court should deny Trump's motion for summary judgment: Trump's October 12 statement was an intemperate outburst of commentary and independent attack aimed at Carroll, the judiciary, New York state officials, CNN, and other perceived "Hoaxes." It was not a "report" on a judicial proceeding under Section 74 and thus is not protected; at the very least, that question should be decided by the jury in this case, which will hear extensive evidence about the October 12 statement in any event and will therefore be positioned to evaluate it.

That conclusion is bolstered by an additional point concerning Section 74's recognized public policy goals. *See Williams*, 23 N.Y.2d at 598 ("[T]he courts must of necessity examine the purpose of the statute and determine the intention of the Legislature."). Section 74 exists for "the protection of reports of judicial proceedings *which are made in the public interest*." *Id.* at 599 (emphasis added). Consistent with that statutory purpose, the reporting privilege recognized by Section 74 has long been understood mainly to protect journalists and publishers. *See supra* at 6-10. Taking an unduly expansive view of how Section 74 applies to parties in litigation risks inviting all manner of ugliness and conflict concerning out-of-court defamatory statements that parties may believe they are absolutely privileged to make. Given that parties already enjoy

---

[2] Trump's tirade in the October 12 statement looks far more like a statement he would make about his grievances at a political rally than a "report" (let alone a "fair and true" one) concerning Carroll's first lawsuit. *See, e.g.*, *Carroll I*, ECF 139-7 (stating at political rally that "[t]hese claims [of sexual misconduct] are all fabricated. They're pure fiction and they're outright lies. These events never ever happened and the people who said them meekly fully understand. You take a look at these people, you study these people, and you'll understand also."); ECF 139-10 (stating at political rally that Natasha Stoynoff "is a liar. She's writing a story. Check out her Facebook page. You'll understand."); ECF 139-11 (stating at political rally that Jessica Leeds "would not be my first choice. That I can tell you. Man. You don't know. That would not be my first choice."); ECF 139-12 (stating at political rally that "[e]very woman [who accused Trump of sexual misconduct] lied when they came forward to hurt my campaign. Total fabrication. The events never happened. Never. All of these liars will be sued after the election is over.").

powerful protections for any statements uttered *within* the course of a judicial proceeding under the litigant's privilege, *see Garr*, 4 N.Y. at 94; *Aguirre*, 961 F. Supp. 2d at 455-56, the public policy animating Section 74 requires a court to carefully scrutinize a party's out-of-court statements before concluding that they qualify as a "report" (or a "fair and true" one) of their own "judicial proceeding."

And of course, this is even more compelling when it comes to defamation cases. Allowing defendants in defamation cases to compound their injury to a plaintiff's reputation is not the aim of Section 74, and the public does not benefit by giving such defendants broad leeway to defame with impunity. That is particularly true where their out-of-court statement does not describe the case, and does not make any reference to the parties' filings and testimony, but instead repeats and expands the underlying attacks that gave rise to a defamation claim in the first place. Trump breaks new ground with his summary judgment motion here—not because he presents creative or correct legal arguments, but because he stretches the concept of a "report" to an extreme. But New York law, especially as stated by the Court of Appeals in *Williams*, does not permit him to do so.

### C.     The October 12 Statement Was Not "Fair and True"

For a report to be "fair and true" within the meaning of Section 74, the substance of the publication must also be "substantially accurate." *McRedmond v. Sutton Place Rest. & Bar, Inc.*, 851 N.Y.S.2d 478, 480 (2008); *Geiger v. Town of Greece*, 311 F. App'x 413, 417 (2d Cir. 2009). "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005). A report, for purposes of Section 74, is not fair and true if the statement "suggest[s] more serious conduct than that actually suggested in the official proceeding," *id.*, or if the statement "transform[s] allegations … into fact," *Pisani v. Staten Island Univ. Hosp.*,

440 F. Supp. 2d 168, 178 (E.D.N.Y. 2006) (emphasis omitted). To conduct this fact-intensive inquiry, courts must analyze "the publication as a whole, rather than individual statements within the larger publication separately." *US Dominion*, 2021 WL 5984265, at *26 (citing *James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1976)).

Like the "report" requirement, the standard of substantial accuracy derives from the goal of ensuring that disinterested parties continue to report on judicial proceedings without the fear of incurring liability for simple mistakes or misstatements. *See Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 68 (1979). As the Court of Appeals more recently reiterated: "[N]ewspaper accounts of legislative or other official proceedings must be accorded some degree of liberality. When determining whether an article constitutes a 'fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision." *Alf*, 21 N.Y.3d at 990. As a result, courts generally look favorably on publications that use "conditional language," "aspirational terms," or present disputes as matters to be resolved, rather than forgone conclusions. *Abkco Music*, 2016 WL 2642224, at *6; *see also Thomas v. City of New York*, No. 17 Civ. 06079, 2018 WL 5791965, at *10 (E.D.N.Y. Nov. 5, 2018); *Tacopina v. O'Keeffe*, 645 F. App'x 7, 9 (2d Cir. 2016); *Law Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys., Inc.*, 844 F.2d 955, 961 (2d Cir. 1988).

Applying that standard here, it is easy to conclude that "reasonable inferences" drawn from Trump's October 12 statement would have "a different effect on a reader than the documents filed as part of the litigation" in *Carroll I. Pisani*, 440 F. Supp. 2d at 177-78. For starters, Trump's October 12 statement presents his allegation of a conspiracy in unconditional terms, creating the "unmistakable impression" that he is providing statements of fact, rather than descriptions of a position being taken by a party in a lawsuit. *Cf. Arrow Commc'ns Labs., Inc. v. Pico Prods., Inc.*,

15

606 N.Y.S.2d 114, 115 (4th Dep't 1993) (statements "convey[ed] the unmistakable impression that they are statements of fact" because they "mislead the reader regarding the finality of the" issue). In this respect, Trump's language is drastically different than the routine discussions of judicial proceedings that courts have determined were substantially accurate for purposes of Section 74. *See, e.g.*, *Abkco Music*, 2016 WL 2642224, at *6 (finding a report did not improperly transform allegations into facts where it "explicitly state[d] only that a lawsuit has been filed," used "conditional language," and cast the "purpose" of the lawsuit "in aspirational terms"); *Tacopina*, 645 F. App'x at 9 (finding reporting privilege applied when article said only that plaintiff had "'come under public scrutiny' for cocaine allegations").

Even more fundamentally, Trump's October 12 statement suggests more serious misconduct by Carroll than anything Trump asserted in his defense to *Carroll I*. In the October 12 statement, Trump asserts a far broader conspiracy of malfeasance that encompasses Carroll, her lawyer, the justice system at large, and even this Court. *See* 56.1 Resp. ¶ 33. Trump calls Carroll's case a "complete con job" and takes a stab at the "legal system" for being a "broken disgrace" where parties have to "fight for years, and spend a fortune, in order to get your reputation back from liars, cheaters, and hacks." *Id.* He then walks through complaints concerning this Court, Carroll, and "all the other Hoaxes that have been played on me for the past seven years"—and he suggests that Anderson Cooper, CNN, and Carroll's own lawyer were also in on the "Hoax," which the "court system does nothing to stop." *Id.* He then ends with the line that this attempt to ruin his "name" could only happen to "'Trump.'" *Id.* Taking all this together, a reasonable juror could find that Trump was complaining of a far broader and more corrosive conspiracy than anything that was at issue in *Carroll I* in October 2022—which is all that Trump relies on for support in his

16

summary judgment motion. *See* Trump Br. at 15-17; *cf. Friedman*, 884 F.3d at 94-95; *Daniel Goldreyer, Ltd. v. Van de Wetering*, 630 N.Y.S.2d 18, 23 (1st Dep't 1995).

Section 74 was not designed to protect out-of-court statements that transform mere allegations in a judicial proceeding into sweeping (yet baseless) statements of purported truth, particularly where they directly imply more serious and wide-ranging malfeasance than is at issue in the underlying case. *See, e.g.*, *Williams*, 23 N.Y.2d at 598-99. In his summary judgment motion, Trump has failed to show otherwise as a matter of law, and his motion should therefore be denied.

## CONCLUSION

For the foregoing reasons, Trump's summary judgment motion should be denied.

Dated: New York, New York
March 9, 2023

Respectfully submitted,

Roberta A. Kaplan
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Attorneys for Plaintiff E. Jean Carroll*