UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

        *Plaintiff*,

v.

DONALD J. TRUMP,

        *Defendant*.

No. 22 Civ. 10016 (LAK) (JLC)

**PLAINTIFF E. JEAN CARROLL'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF HER OMNIBUS MOTION IN LIMINE**

Roberta A. Kaplan
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT .............................................................................................................................. 1

    I.    CARROLL'S MOTION IN LIMINE IS LARGELY UNCONTESTED ........................... 1

    II.   THE COURT SHOULD EXCLUDE ANY TESTIMONY FROM UNDISCLOSED WITNESSES, AND COMMENTARY OR TESTIMONY CONCERNING DNA .......... 2

        A.    The Court Should Exclude Trump's Undisclosed Witnesses ..................................... 2

        B.    The Court Should Preclude Testimony Concerning DNA Evidence ......................... 4

    III.  THE COURT SHOULD PRECLUDE FISHER AS A REBUTTAL WITNESS .............. 7

        A.    Trump Fails to Address an Independent Ground for Excluding Fisher ...................... 7

        B.    Fisher Is Not a Rebuttal Witness ................................................................................ 8

        C.    Fisher's Analysis Is Not Reliable ................................................................................ 9

CONCLUSION .......................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                  **Page(s)**

*Benavidez v. Burger Bros. Rest. Grp., Inc.*,
  No. 17 Civ. 200, 2019 WL 1459044 (E.D.N.Y. Mar. 29, 2019) ................................................ 4

*Cajero Torres v. Sushi Sushi Holdings Inc.*,
  No. 19 Civ. 2532, 2021 WL 2158017 (S.D.N.Y. May 27, 2021) ................................................ 4

*Capri Sun GmbH v. Am. Beverage Corp.*,
  595 F. Supp. 3d 83 (S.D.N.Y. 2022) ........................................................................................... 8

*Carroll v. Trump*,
  No. 20 Civ. 7311, 2023 WL 2441795 (S.D.N.Y. Mar. 10, 2023) ............................................... 1

*Carroll v. Trump*,
  No. 22 Civ. 10016, 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023) .............................................. 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579, 113 S. Ct. 2786 (1993) ..................................................................................... 7, 9

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006) ....................................................................................................... 4

*Feltenstein v. City of New Rochelle*,
  No. 14 Civ. 5434, 2018 WL 3752874 (S.D.N.Y. Aug. 8, 2018) ................................................ 4

*Harris v. Donohue*,
  No. 15 Civ. 1274, 2017 WL 3638452 (N.D.N.Y. Aug. 23, 2017) ............................................. 4

*Kullman v. New York*,
  No. 07 Civ. 716, 2009 WL 1562840 (N.D.N.Y. May 20, 2009) ............................................... 3

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137, 119 S. Ct. 1167 (1999) ...................................................................................... 10

*Lebada v. New York City Dep't of Educ.*,
  No. 14 Civ. 758, 2016 WL 8453417 (S.D.N.Y. May 16, 2016) ................................................ 2

*Lebada v. New York City Dep't of Educ.*,
  No. 14 Civ. 758, 2016 WL 626059 (S.D.N.Y. Feb. 8, 2016) ................................................ 2, 3

*Leong v. 127 Glen Head Inc.*,
  No. 13 Civ. 5528, 2016 WL 845325 (E.D.N.Y. Mar. 2, 2016) .................................................. 4


*Lujan v. Cabana Mgmt., Inc.*,
   284 F.R.D. 50 (E.D.N.Y. 2012) .................................................................................... 2, 3

*Nimely v. City of N.Y.*,
   414 F.3d 381 (2d Cir. 2005) ............................................................................................ 7

*Patterson v. Balsamico*,
   440 F.3d 104 (2d Cir. 2006) ........................................................................................ 3, 4

*Sadler v. Moran Towing Corp.*,
   No. 01 Civ. 1666, 2002 WL 1977604 (S.D.N.Y. Aug. 28, 2002) ............................... 6, 7

*Taylor v. N.Y. State Off. for People With Developmental Disabilities*,
   No. 13 Civ. 740, 2016 WL 2858856 (N.D.N.Y. May 13, 2016) ..................................... 4

*United States v. Gatto*,
   No. 17 Cr. 686, 2019 WL 266944 (S.D.N.Y. Jan. 17, 2019) .......................................... 7

*Williams v. Bethel Springvale Nursing Home, Inc.*,
   No. 14 Civ. 09383, 2018 WL 1662644 (S.D.N.Y. Apr. 5, 2018) .................................... 3

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................. 2, 3, 4, 9

Fed. R. Evid. 702 .................................................................................................................. 7, 9, 10

**PRELIMINARY STATEMENT**

Given that the evidence in *Carroll I* and *Carroll II* is almost identical, the parties have tailored their motions in limine to be nearly the same in both. *See* ECF 70, 73, 75, 77; *Carroll I*, ECF 131, 134, 136, 138, 140, 143. But even after five rounds of briefing across the two cases, Trump still has not responded to a significant portion of Carroll's omnibus motion. And the few arguments that Trump does make are inconsistent both with precedent and the factual record. Accordingly, for the reasons stated in her prior briefing and below, Carroll's motion should be granted in its entirety.

**ARGUMENT**

**I.     CARROLL'S MOTION IN LIMINE IS LARGELY UNCONTESTED**

Trump has explicitly incorporated the arguments from his *Carroll I* opposition. *See* ECF 75 ("Trump *Carroll II* Opp.") at 1 (incorporating *Carroll I*, ECF 136 ("Trump *Carroll I* Opp.")). But that opposition pointedly failed to address four of Carroll's requests, namely to: (1) admit her prior statements to Lisa Birnbach and Carol Martin, *see Carroll I*, ECF 134 ("*Carroll I* MIL") at 2–4; (2) preclude Trump from testifying to undisclosed information, including the testimony that non-testifying witnesses could theoretically offer in support of his defense, *id.* at 25–27; (3) preclude cross-examination or evidence regarding Stephanie Grisham on specific topics, *id.* at 30–33; or (4) preclude comments and cross-examination regarding Carroll's choice of counsel, *id.* at 34–35; *see also* ECF 73 ("*Carroll II* MIL") at 2–4 (incorporating *Carroll I* MIL). The Court should therefore grant those unopposed portions of Carroll's motion. *See Carroll I*, ECF 143 ("*Carroll I* Reply") at 2 (collecting cases).[1]

---

[1] One portion of Carroll's motion that Trump did oppose concerns the admissibility of Natasha Stoynoff's and Jessica Leeds' testimony. Trump *Carroll I* Opp. at 1–14. The Court already ruled this evidence to be admissible in *Carroll I*. *See Carroll v. Trump*, No. 20 Civ. 7311, 2023 WL 2441795, at *4–*8 (S.D.N.Y. Mar. 10, 2023). There is no reason

1

## II. THE COURT SHOULD EXCLUDE ANY TESTIMONY FROM UNDISCLOSED WITNESSES, AND COMMENTARY OR TESTIMONY CONCERNING DNA

### A. The Court Should Exclude Trump's Undisclosed Witnesses

Trump listed five witnesses on the joint pretrial order that he never disclosed previously. ECF 65. Trump insists that he did not violate Rule 26(a)(1) in doing so because, as he sees it, the identities of those witnesses were "made known" during the proceedings. *See* Trump *Carroll I* Opp. at 21–23.

This argument rests on a plain misunderstanding of well-settled law. The operative question is not whether the opposing party had "knowledge of the existence of a witness," but rather whether "[the disclosing party] informed [the opposing party] that it might call the witness" to "support its own case at trial." *Lebada v. New York City Dep't of Educ.*, No. 14 Civ. 758, 2016 WL 626059, at *5 (S.D.N.Y. Feb. 8, 2016) (citation omitted), *objections overruled*, 2016 WL 8453417 (S.D.N.Y. May 16, 2016) (Kaplan, J.); *see also Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 73 (E.D.N.Y. 2012) ("[T]o satisfy Rule 26, parties must make an *unequivocal statement* that they may rely upon an individual on a motion or at trial." (emphasis added) (collecting cases)).

Trump cannot (and does not) contest that he failed to comply with these requirements. In *Carroll I*, after Carroll listed four of the individuals who Trump now seeks to call as witnesses at trial in her response to Trump's interrogatories,[2] Trump failed to make "any simple, clear, unequivocal statement" that he intended to use any of them to support his defense at trial. *Lujan*, 284 F.R.D. at 73. Trump did not list them on his Rule 26(a) disclosures in that action, supplement his disclosures to include them, depose the witnesses, or indicate "either in a letter, electronic mail, on-the-record during another deposition or court proceeding" that he intended to call them at trial.

---

to treat that evidence differently here, so it should be admitted for the reasons set forth in Carroll's briefing and this Court's prior decision.

[2] She listed David Haskell, Elizabeth Dyssegaard, Laurie Abraham, and Sarah Lazin. *Carroll I*, ECF 137-6 at 5.

2

*Id.*; *see Carroll I* MIL at 24–25; *Carroll II* MIL at 3.

Then, in *Carroll II*, Trump continued to hide his strategic intentions by not listing the witnesses in his Rule 26(a) initial disclosures. Ex. 1. Taken together, Trump's actions left Carroll to "properly assume[] that [Trump would] not rely upon [those] witness[es]." *Lebada*, 2016 WL 626059, at *5; *cf. Patterson v. Balsamico*, 440 F.3d 104, 118 (2d Cir. 2006). As a matter of settled precedent—and under a straightforward reading of Rule 26(a)—the mention of one of the witnesses in a deposition and his notices of subpoenas to them in *Carroll I*, without any effort to actually serve those subpoenas or take the depositions, was not enough to provide the requisite notice. *See, e.g.*, *Kullman v. New York*, No. 07 Civ. 716, 2009 WL 1562840, at *6–*8 (N.D.N.Y. May 20, 2009) (precluding undisclosed witness even though witness' name had been mentioned in discovery and plaintiffs' counsel withdrew a notice of deposition for that witness); *Williams v. Bethel Springvale Nursing Home, Inc.*, No. 14 Civ. 09383, 2018 WL 1662644, at *5 (S.D.N.Y. Apr. 5, 2018) (same for undisclosed witness mentioned in a deposition).[3]

While Trump argues that preclusion is a "drastic remedy" reserved for "rare cases," Trump *Carroll I* Opp. at 23–24, this is *precisely* the type of case where Rule 37(c) should apply. Here, after discovery was complete in *Carroll I* and the Court directed the parties to consider carefully what additional discovery they needed in *Carroll II*, Trump failed to disclose that these witnesses were necessary to (or even a part of) his trial defense. *See* ECF 16 at 4–5; Conf. Tr. at 5–7 (Dec. 21, 2022). Then, Trump again made the deliberate choice to exclude these witnesses from his *Carroll II* disclosures. Ex. 1. Such callous disregard for Rule 26(a), accompanied by a pre-trial effort to sandbag an opposing party in pursuit of improper strategic advantage, is exactly when the

---

[3] Carroll noted in her motion that Trump had provided notices of subpoenas to all five of the at-issue witnesses on August 9, 2022, but it was "not clear which of the subpoenas were served." *Carroll I* MIL at 25 n.12. Trump has not addressed this point or provided any information suggesting that he diligently pursued those subpoenas of these witnesses.

sanction of preclusion is appropriate. Indeed, courts have frequently precluded testimony from witnesses who were disclosed late in the process and shortly before trial, since such a tardy and irregular disclosure is inherently highly prejudicial. *See, e.g.*, *Patterson*, 440 F.3d at 117–18; *Cajero Torres v. Sushi Sushi Holdings Inc.*, No. 19 Civ. 2532, 2021 WL 2158017, at *4 (S.D.N.Y. May 27, 2021).[4]

Trump further attempts to resist this conclusion by asserting that his failure to disclose was harmless. Trump *Carroll II* Opp. at 24. He reasons that his violation of the rules caused no harm because Carroll "was aware of [the witnesses'] identities" and, according to him, "understood their relevance to this case." *Id.* But this position presupposes that Carroll should have conducted discovery of witnesses who she never intended to put on to build her own case, even as Trump hid his intention to call them. Courts routinely reject comparable efforts to excuse a failure to follow the rules. *See Cajero Torres*, 2021 WL 2158017, at *4; *see also Benavidez v. Burger Bros. Rest. Grp., Inc.*, No. 17 Civ. 200, 2019 WL 1459044, at *6 (E.D.N.Y. Mar. 29, 2019) ("Defendants' bald assertion … that Plaintiffs should have anticipated that Defendants would call the non-parties listed in [Plaintiffs'] interrogatory responses as witnesses is unpersuasive.").[5]

### B.     The Court Should Preclude Testimony Concerning DNA Evidence

---

[4] In contrast, where courts have allowed parties to call witnesses who were not previously disclosed, they have done so in circumstances entirely unlike those here: for instance, where a trial date had not yet been set, or where a discovery continuance allowed the prejudiced party to depose the previously undisclosed witnesses. *E.g.*, *Feltenstein v. City of New Rochelle*, No. 14 Civ. 5434, 2018 WL 3752874, at *9 (S.D.N.Y. Aug. 8, 2018); *Taylor v. N.Y. State Off. for People With Developmental Disabilities*, No. 13 Civ. 740, 2016 WL 2858856, at *15 (N.D.N.Y. May 13, 2016); *Leong v. 127 Glen Head Inc.*, No. 13 Civ. 5528, 2016 WL 845325, at *6 (E.D.N.Y. Mar. 2, 2016). Because Trump chose to list undisclosed witnesses for the first time in the joint pretrial order, measures like extending discovery deadlines are not available. In any event, under no circumstances should Trump be permitted to put witnesses on the stand at trial without Carroll first having an opportunity to depose them. *See Leong*, 2016 WL 845325, at *6 (collecting cases).

[5] In his reply, Trump invokes *Harris v. Donohue*, No. 15 Civ. 1274, 2017 WL 3638452 (N.D.N.Y. Aug. 23, 2017), to support his claim that his actions were harmless. In *Harris*, however, unlike in this case, the party seeking to exclude the undisclosed witnesses had listed them on her own Rule 26(a) as potential witnesses and then failed to depose them. *Id.* at *2. In addition, *Harris* incorrectly stated that Rule 37(c) requires a showing of bad faith, *id.* at *1—a standard that the Second Circuit has long rejected, *see Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006).

Trump does not actually dispute Carroll's position that testimony related to DNA evidence has no probative value in this case. *Carroll I* MIL at 27–28; Trump *Carroll I* Opp. at 19–21. Nor does he dispute that permitting questioning on DNA would require an airing of the discovery dispute related to it, leading to jury confusion, wasted time, and prejudice. *Carroll I* MIL at 29–30; Trump *Carroll I* Opp. at 19–21. Yet, Trump seeks to carve out a supposedly narrow exception to the inadmissibility of DNA evidence by arguing that he should be allowed to cross-examine Carroll about "the public statements that she made regarding [his] DNA, and her motivation for making such statements." Trump *Carroll I* Opp. at 20. This is a brazen attempt to present exactly the type of evidence that Trump concedes is not probative, not to mention distort the record as it relates to DNA and leave the jury with a misimpression that is both inaccurate and highly prejudicial.

Significantly, Trump seeks to justify his carve-out based on a clear mischaracterization of Carroll's "public statements." He erroneously asserts that she had "represent[ed] that she was in possession of [Trump's] DNA, when she in fact was not." *Id.* A review of Carroll's statements, however, confirms that this is incorrect. Two of the tweets that Trump seeks to use on cross-examination state only that Carroll possessed a dress containing DNA.[6] The other tweet explicitly states that Carroll did *not* have Trump's DNA because Trump had refused to provide it in discovery: "I am STILL waiting for Trump to provide his DNA sample to be tested against the dress I wore when he attacked me." @ejeancarroll, Twitter (May 1, 2020), https://twitter.com/ejeancarroll/status/1364995845439901700. None of these tweets is relevant to whether Carroll

---

[6] @ejeancarroll, Twitter (June 2, 2021), https://twitter.com/ejeancarroll/status/1400122740720480262 ("Didn't last as long as DNA on a dress."); @ejeancarroll, Twitter (Feb. 25, 2021), https://twitter.com/ejeancarroll/status/1256301599426785280 ("Cyrus Vance, the Manhattan District Attorney, has Trump's taxes. Fani Willis, the Georgia Prosecutor, has Trump's phone call. Mary Trump has her grandfather's will. And I have the dress. Trump is basically in deep shit").

accurately reported Trump's assault in a book she wrote years prior. And none of them constitutes a public statement that she was actually in possession of Trump's DNA.[7]

Moreover, Trump's argument seems to presuppose that Trump's DNA is not present on the dress and that Carroll somehow knew this to be the case. A jury certainly could not draw that conclusion given the current record. Indeed, Carroll never obtained Trump's DNA and therefore was never able to test it.

Trump's proposed carve-out is also not feasible under the Rules of Evidence. He cannot ask Carroll about her public comments regarding the dress without also running straight into the fundamental Rule 403 concerns that Trump does not dispute. Trump's proposed cross-examination would inevitably lead to evidence and testimony regarding: (1) Trump's adamant refusals for more than three years to provide his DNA evidence to test; (2) Carroll's decision to pivot and conduct discovery while accepting that such evidence would not be available; (3) Trump's eleventh-hour "offer" to provide his DNA months after discovery had closed; and (4) this Court's order rejecting Trump's "offer" to provide his DNA in exchange for an undisclosed appendix that Trump knew about for years. *See Carroll I* MIL at 27. Indeed, to open this door an inch would be to blow it off its hinges, since Trump obviously cannot question Carroll about her statements regarding the DNA on her dress, but at the same time bar her from explaining the lack of DNA evidence in the case. That would be nonsensical and highly prejudicial to Carroll—and it would cause substantial jury confusion. This effort to freeze the DNA issue to capture Carroll's comments in isolation is thus misleading and seeks to paint an inaccurate picture. Rule 403 exists to ensure juries do not make decisions based on this kind of problematic presentation of evidence. *Cf. Sadler v. Moran Towing*

---

[7] The deposition testimony that Trump cites also includes mentions of the discovery dispute between the parties: "Q. … [Y]ou stated in the public that you had DNA from the former president; is that correct? A. Yes. Q. Why did you state that? A. Because we sent the dress to be examined and then we got back a report." Ex. 2 at 217:22–218:5.

6

*Corp.*, No. 01 Civ. 1666, 2002 WL 1977604, at *1 (S.D.N.Y. Aug. 28, 2002) (Kaplan, J.).

Trump made a considered choice to take DNA out of the conversation through his strategic decisions during the discovery process. And as this Court has recognized, Carroll "prepared for trial on the entirely justified basis that there will be no DNA evidence." *Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 2006312, at *2 (S.D.N.Y. Feb. 15, 2023). Trump's effort to avoid these consequences by insisting on an unrealistic and prejudicial carve-out would raise the very same concerns that led the Court to deny Trump's motion to re-open discovery. *Id.* at *7–*9.

### III. THE COURT SHOULD PRECLUDE FISHER AS A REBUTTAL WITNESS

#### A. Trump Fails to Address an Independent Ground for Excluding Fisher

Across both of her cases, Carroll has engaged seriously with the caselaw governing the reliability of expert testimony and has applied those standards to each aspect of the two reports that Fisher submitted. *See Carroll I* MIL at 10–22; *Carroll II* MIL at 4–18. Trump has not. By continuing to evade Carroll's grounds for precluding Fisher, Trump all but concedes her points.

With respect to *Carroll II* specifically, Carroll offered three independent reasons for precluding Fisher from testifying: (1) he was not a proper rebuttal expert; (2) his methods did not satisfy the reliability standards of Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993); and (3) each portion of his report provided additional grounds on which to exclude his testimony. *See Carroll II* MIL at 4–18. Despite every opportunity to do so, Trump does not respond to the third ground *at all*. But an expert's testimony must be "reliable at every step," *United States v. Gatto*, No. 17 Cr. 686, 2019 WL 266944, at *6 (S.D.N.Y. Jan. 17, 2019) (Kaplan, J.), and cannot contain impermissible legal or factual conclusions that usurp the role of the judge or jury, *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005). The individual portions of Fisher's report violate these well-established principles. *Carroll II* MIL at 10–18. That is reason alone to preclude him from testifying—and the Court need not go further.

### B. Fisher Is Not a Rebuttal Witness

But even if the Court reaches the question, Trump does not dispute that the only appropriate function of Fisher is as a rebuttal expert. And Fisher has admitted that he does not rebut or respond to Professor Ashlee Humphreys' *Carroll II* report; that he never considered himself to be a rebuttal expert in this action; and that he was not directed by Trump to perform that role. *Carroll II* MIL at 4–5; *see also, e.g.*, Ex. 3 ("Fisher *Carroll II* Dep.") at 10:1–5, 11:5–7, 12:5–7, 52:9–13. This testimony should be conclusive as to whether he is a rebuttal expert. Yet Trump bravely soldiers on, asserting that Fisher makes the cut despite Fisher's own sworn testimony to the contrary.

Principally, Trump seizes on two assertions in the last three and a half pages of Fisher's *Carroll II* report as evidence that Fisher offered rebuttal testimony. *Carroll II* Opp. at 2–4. The first assertion is that Fisher acknowledged that Professor Humphreys completed a second report and discussed her qualifications. Ex. 4 ("Fisher *Carroll II* Rep.) at 21–22. But Fisher clarified at his deposition that this reference does not "respond to that [second report] in any way." Fisher *Carroll II* Dep. at 54:10–15. Regardless, this discussion of Professor Humphreys' qualifications is not permissible as a matter of law, *see Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 142 (S.D.N.Y. 2022), and does not transform the rest of Fisher's report into rebuttal opinion.

The second assertion relates to Fisher's discussion of Professor Humphreys' purported "social media campaign" in the sub-section of his report entitled, "Reputation Repair Program." Fisher *Carroll II* Rep. at 22–24. But this is not rebuttal testimony for purposes of *Carroll II*. Fisher lifted this text from his *Carroll I* report, which discussed Professor Humphreys' *Carroll I* report alone. Fisher *Carroll II* Dep. at 206:23–207:8. Eliminating any doubt on this score, Fisher confirmed that the "citations in this section are to the pages in Professor Humphreys' first report," and this was an "excerpt" where he "just pulled out sort of the gist of, you know, the important

8

points from [his] first report." *Id.* at 207:13–208:5. In other words, the language Trump relies on to show that Fisher rebuts Professor Humphreys' *Carroll II* report actually confirms the opposite. Since Fisher failed to disclose any opinion regarding Professor Humphreys' *Carroll II* report, he cannot offer such opinion for the first time at trial. *See* Fed. R. Civ. P. 26(a)(2)(B)(i).

### C. Fisher's Analysis Is Not Reliable

As Carroll detailed in her motion, Fisher cannot meet the governing reliability standards to testify as an expert because "his work demonstrate[s] an utter lack of care or preparation" and "the methodology that he applied—his so-called 'common sense'—was nothing more than his *ipse dixit* opinions regarding Carroll's damages as derived from conclusion-driven speculation." *Carroll II* MIL at 7. Trump's defense of Fisher only confirms these conclusions.

To start, Trump points to Fisher's experience. Trump *Carroll II* Opp. at 4–6. But as Carroll detailed in her reply brief in *Carroll I*, this is beside the point: "[t]o 'satisfy the admissibility standards set forth in Rule 702 and *Daubert*, the expert must not only be qualified, but his or her testimony must also be *reliable*.'" *Carroll I* Reply at 3 (citation omitted).

This leaves only Trump's seemingly half-hearted reliability arguments, which do not fare any better. Trump *Carroll II* Opp. at 6–10. Trump recites—but does not actually apply—legal standards regarding expert testimony. *Id.* at 8–10. He also cherry-picks instances in Fisher's report where Fisher says "experience," "methodology," or "method," as if Fisher can satisfy the reliability standard with magic words. *Id.* at 6–8. But even those references fall apart upon scrutiny.

For example, Trump quotes Fisher's general disclaimer where he lists the "methodology" that he supposedly applied to the case. *Id.* at 6–7. There, Fisher said he "[c]arefully reviewed all documentation and information on the background of this dispute," Fisher *Carroll II* Rep. at 13— which he later revealed to entail reading only six news articles and preparing for less than an hour.

9

Fisher *Carroll II* Dep. at 46:5–47:11, 149:6–13. Then, Fisher claims he "researched information as needed on the internet," which in reality involved unspecified "googling" that even Fisher had difficulty explaining. *Id.* at 148:9–11, 149:13–14, 197:1–3. Next, Fisher states that he "[f]ollowed peer accepted procedure in both the public relations and expert witness professions," Fisher *Carroll II* Rep. at 13, even though he admitted in his *Carroll I* deposition that "I don't need peer review" and doesn't review or use peer-reviewed methodologies, Ex. 5 at 299:3–301:2, 304:23–305:16; *see also* Fisher *Carroll II* Dep. at 28:11–14 ("Q. And would you say your methodology in Carroll II is similar to your methodology in Carroll I? A. I would say so yes."). Finally, Fisher asserts that he "reviewed and analyzed previous applicable experiences," Fisher *Carroll II* Rep. at 13, but admitted at his deposition that he did no such thing for purposes of this case, Fisher *Carroll II* Dep. at 49:12–15. The remaining examples Trump relies on are merely more of the same.[8]

At bottom, Trump's efforts cannot avoid or distract from the straightforward and natural conclusion that follows from Fisher's report and the caselaw governing expert testimony. Fisher fails to apply the "same level of 'intellectual rigor that characterizes the practice' of his field," Fed. R. Evid. 702, advisory committee note (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176 (1999)), and he should be precluded from testifying at trial.

## CONCLUSION

For the reasons set forth above, and in Carroll's omnibus motion in limine, the Court should grant Carroll's motion.

---

[8] Trump cites Fisher's general conclusion that "it is my professional assessment and opinion that [Carroll] benefitted from this public dispute" without also confronting the inputs that Fisher relied on to reach that conclusion. Trump *Carroll II* Opp. at 8. Carroll walked through those inputs in her omnibus motion in limine, demonstrating the utter unreliability that plagued each step of Fisher's analysis. *Carroll II* MIL at 12–17.

| | |
|---|---|
| Dated: New York, New York<br>March 16, 2023 | Respectfully submitted,<br><br>*/s/ Roberta A. Kaplan*<br>_____<br>Roberta A. Kaplan<br>Shawn G. Crowley<br>Trevor W. Morrison (admitted *pro hac vice*)<br>Matthew J. Craig<br>Kaplan Hecker & Fink LLP<br>350 Fifth Avenue, 63rd Floor<br>New York, New York 10118<br>Telephone: (212) 763-0883<br>Fax: (212) 564-0883<br>rkaplan@kaplanhecker.com<br>scrowley@kaplanhecker.com<br>tmorrison@kaplanhecker.com<br>mcraig@kaplanhecker.com<br><br>Joshua Matz<br>Kaplan Hecker & Fink LLP<br>1050 K Street NW, Suite 1040<br>Washington, DC 20001<br>Telephone: (212) 763-0883<br>Fax: (212) 564-0883<br>jmatz@kaplanhecker.com<br><br>*Counsel for Plaintiff E. Jean Carroll* |