# MILLER KORZENIK SOMMERS RAYMAN LLP

THE PARAMOUNT BUILDING • 1501 BROADWAY, SUITE 2015 • NEW YORK, NY 10036
TEL 212-752-9200 • FAX 212-688-3996 • WWW.MKSR.LAW

March 17, 2023

VIA HAND DELIVERY

Hon. Lewis A. Kaplan
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: Carroll v. Trump, No. 1:22-cv-10016-LAK

Your Honor:

I write on behalf of Daily News, L.P., the publisher of the Daily News, and the Associated Press ("the Press Organizations") to respectfully object to the potential empaneling of an anonymous jury in this case. See Docket Entry No. 84.[1] As set forth below, the press and the public have a presumptive, qualified right of access to civil proceedings that includes the right to learn the identities of jurors – a right that is of particular importance in this landmark case involving a former President.

### The Press and Public Have a Presumptive Right of Access to Civil Proceedings

The Constitutional right of access to both criminal and civil cases is well-settled and long-established. As an initial matter, the United States Supreme Court has repeatedly held that the press and public have a presumptive, qualified First Amendment right of access to criminal proceedings and records. See, e.g., Press Enterprise Co. v. Superior Court of California, 464 U.S. 501, 508 (1984) ("Press-Enterprise I"). The Second Circuit has expressly held that this presumption of openness fully applies to civil as well as criminal cases. New York Civil Liberties Union v. New York City Transit Auth., 684 F.3d 286, 298 (2d Cir. 2012) ("the First Amendment guarantees a qualified right of access not only to criminal but also to civil trials and to their related proceedings and records . . . all the other circuits that have considered the issue have come to the same conclusion") (collecting cases).

Where the right of access applies, the presumption of openness can be overcome only if "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Press–Enterprise Co. v. Superior Court, 478 U.S. 1, 13-14 (1986) ("Press-Enterprise II"). Under this standard, "the most

---

[1] Pursuant to the Court's Individual Rules of Practice, we are submitting this letter via hand delivery rather than ECF; however, we respectfully request that the letter be posted on the electronic docket and be made part of the public record for this case.

compelling circumstances" are required to justify any restriction upon the constitutional presumption in favor of access to court proceedings and records. Application of Nat'l Broad. Co., 635 F.2d 945, 952 (2d Cir. 1980).

### The Right of Access Applies to the Identity of Jurors

In Press-Enterprise I, the Court held that the "process of selection of jurors has presumptively been a public process" throughout Anglo-American history. Id. at 505; see also ABC, Inc. v. Stewart, 360 F.3d 90 (2d Cir. 2004) (vacating order barring media from attending voir dire proceedings in high profile criminal case after concluding that presumption of openness had not been overcome). While neither the Supreme Court nor the Second Circuit has directly addressed whether the right of access includes the right to learn the names of seated jurors, numerous other courts have held that the First Amendment and/or the common law right of access does include a right of access to juror names. See, e.g., United States v. Wecht, 537 F.3d 222, 235 (3d Cir. 2008) (finding "presumptive First Amendment right of access to obtain the names of both trial jurors and prospective jurors"); In re Baltimore Sun Co., 841 F.2d 74, 75-6 (4th Cir. 1988) (holding that "[a]fter a jury has been seated . . . the names of those jurors are just as much a part of the public record as any other part of the case," as are the names of those "who have been stricken or otherwise not seated"); United States v. Blagojevich, 612 F.3d 558, 563, 565 (7th Cir. 2010) (finding common law "presumption in favor of disclosure" of juror names and holding that "a judge must find some *unusual* risk to justify keeping jurors' names confidential; it is not enough to point to possibilities that are present in every criminal prosecution") (emphasis in original); In re Globe Newspaper Co., 920 F.2d 88, 93 (1st Cir. 1990) (holding that disclosure of juror names was required under District of Massachusetts jury plan absent "exceptional circumstances," and noting that construing jury plan in that manner avoided Constitutional issues since "impounding juror names implicates the press's First Amendment right of access to criminal trials"). As the First Circuit explained in In re Globe,

> Knowledge of juror identities allows the public to verify the impartiality of key participants in the administration of justice, and thereby ensures fairness, the appearance of fairness and public confidence in that system. It is possible, for example, that suspicions might arise in a particular trial (or in a series of trials) that jurors were selected from only a narrow social group, or from persons with certain political affiliations, or from persons associated with organized crime groups. It would be more difficult to inquire into such matters, and those suspicions would seem in any event more real to the public, if names and addresses were kept secret. Furthermore, information about jurors, obtained from the jurors themselves or otherwise, serves to educate the public regarding the judicial system and can be important to public debate about its strengths, flaws and means to improve it.

In re Globe Newspaper Co., 920 F.2d at 94.

At least one district court in this Circuit has also held that the presumption of openness attaches to juror names. United States v. Shkreli, 264 F. Supp. 3d 417 (E.D.N.Y. 2017). In Shkreli, the court had ordered that the names of jurors would not be publicly released until after the trial. Following the trial, a group of press organizations submitted a letter seeking the release

2

of the juror names. Judge Matsumoto concluded that "the disclosure of juror identities at this stage of the instant case is mandated by the presumption of openness of judicial proceedings described in ABC v. Stewart." Shkreli, 264 F. Supp. 3d at 421.

### The Presumption of Openness is Not Overcome Here

Here, it is not clear what overriding interest could justify withholding the names of the jurors. While the Second Circuit has not addressed whether and how courts should weigh the First Amendment and common law right of access in assessing whether to empanel an anonymous jury, it has repeatedly articulated the types of factors that must be present to justify empaneling an anonymous jury in criminal cases in light of concerns regarding a defendant's constitutional rights. Thus, the Second Circuit has held that

> Sufficient reason for empaneling an anonymous jury has been found to exist where, for example, the defendants "were alleged to be very dangerous individuals engaged in large-scale organized crime who had participated in several mob-style killings," and there was "strong evidence of defendants' past attempts to interfere with the judicial process, and defendants were alleged to be part of a group that possessed the means to harm jurors" . . . or where the defendants have been charged with grand jury tampering and the trial is expected to attract publicity . . . or where the defendant has a history of attempted jury tampering and a serious criminal record . . . or where there had been extensive pretrial publicity and there were abundant allegations of dangerous and unscrupulous conduct.

United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991) (citations omitted).

No analogous circumstances appear to be present here. Nor would any concern for juror privacy be sufficient to overcome the presumption of openness. "The participation of jurors in publicized trials may sometimes force them into the limelight against their wishes, but we cannot accept the mere generalized privacy concerns of jurors as a sufficient reason to conceal their identities in every high-profile case." Wecht, 537 F.3d at 240; see also In re Globe Newspaper Co., 920 F.2d at 98 ("[w]hile we understand, and can sympathize with a juror's desire in a publicized criminal case such as this was to remain anonymous, the juror's individual desire for privacy is not sufficient justification by itself to withhold his or her identity"); Shkreli, 264 F.Supp.3d at 419 ("Despite the long and challenging service of the jury members and the court's profound gratitude for their service and attention throughout the trial, the privacy interests and preferences of the jury alone are generally insufficient to preclude disclosure of their names. . .")

Finally, even if the Court finds a compelling interest in anonymity and makes the required on the record findings "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest" Press-Enterprise II, 478 U.S. at 13-14, it must then also consider whether less restrictive alternatives to anonymity exist. Id.

Accordingly, in light of the presumption of openness that attaches to the names of the jurors, the obvious public importance of this high-profile lawsuit against a former President, and the lack of any clear interest in keeping the jurors' names secret other than the routine concerns

about privacy and publicity that arise in every high profile case, the Press Organizations respectfully object to the empaneling of an anonymous jury.

Respectfully submitted,

/s/ Matthew A. Leish

cc: Attorneys of Record (via email)