UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
E. JEAN CARROLL,

                Plaintiff,

      -against-                                 22-cv-10016 (LAK)

DONALD J. TRUMP,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

Roberta Kaplan
Joshua Matz
Shawn Crowley
Matthew Craig
Trevor Morrison
Michael Ferrara
KAPLAN HECKER & FINK LLP

*Attorneys for Plaintiff*

Joseph Tacopina
Matthew G. DeOreo
Chad Derek Seigel
TACOPINA SEIGEL & DEOREO, P.C.

Alina Habba
Michael T. Madaio
HABBA MADAIO & ASSOCIATES LLP

*Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

Plaintiff E. Jean Carroll alleges in this case ("*Carroll II*") and a second very closely related case ("*Carroll I*") that businessman Donald J. Trump, as he then was, raped her in a New York department store in the mid 1990s. In *Carroll I*, she accuses Mr. Trump only of defaming her in a series of statements he issued in June 2019, shortly after Ms. Carroll publicly accused him of rape. In this action, Ms. Carroll brings two other closely related claims. First, she seeks to recover damages and other relief for the alleged rape pursuant to a newly-enacted New York law, the Adult Survivors Act ("ASA"), which created a one-year period within which persons who allegedly were sexually assaulted as adults could sue their alleged assaulters. Second, she alleges that Mr. Trump libeled her in a statement he published on October 12, 2022 on Truth Social, his social media platform.

The matter now is before the Court on Mr. Trump's motion for partial summary judgment dismissing only the libel claim based on Mr. Trump's October 12, 2022 statement. He contends that it is barred by the "absolute litigation privilege" which he mistakenly locates in Section 74 of the New York Civil Rights Law and which in relevant part provides:

> "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published."[1]

For the reasons discussed below, Mr. Trump's motion is denied.

---

[1] N.Y. Civ. Rights Law § 74.

*Facts*

*Mr. Trump's Allegedly Defamatory June 2019 Statements*

Ms. Carroll's rape allegation first became public on June 21, 2019, when *New York* magazine published an excerpt from her then-forthcoming book that described Mr. Trump's alleged assault of her.[2]  That same day, Mr. Trump issued a statement that was published on Twitter by the press:

> "Regarding the 'story' by E. Jean Carroll, claiming she once encountered me at Bergdorf Goodman 23 years ago. I've never met this person in my life. She is trying to sell a new book—that should indicate her motivation. It should be sold in the fiction section.

> "Shame on those who make up false stories of assault to try to get publicity for themselves, or sell a book, or carry out a political agenda—like Julie Swetnick who falsely accused Justice Brett Kavanaugh. It's just as bad for people to believe it, particularly when there is zero evidence. Worse still for a dying publication to try to prop itself up by peddling fake news—it's an epidemic.

---

[2]

The Court assumes familiarity with its prior opinions, which describe in detail the facts and procedural histories of both actions involving these parties. Doc. No. 20-cv-7311 (*Carroll I*), Dkt 32, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir. 2022); *Carroll I*, Dkt 73, *Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022); *Carroll I*, Dkt 96, *Carroll v. Trump*, No. 20-cv-7311 (LAK), 2022 WL 6897075 (S.D.N.Y. Oct. 12, 2022); *Carroll I*, Dkt 145, *Carroll v. Trump*, No. 20-cv-7311 (LAK), 2023 WL 2441795 (S.D.N.Y. Mar. 10, 2023); Dkt 95, *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 2652636 (S.D.N.Y. Mar. 27, 2023); Dkt 92; Dkt 56, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023); Dkt 38, *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023).

Except where preceded by *"Carroll I"*, "Dkt" references are to the docket in this case.

4

"Ms. Carroll & New York Magazine: No pictures? No surveillance? No video? No reports? No sales attendants around?? I would like to thank Bergdorf Goodman for confirming that they have no video footage of any such incident, because it never happened.

"False accusations diminish the severity of real assault. All should condemn false accusations and any actual assault in the strongest possible terms.

"If anyone has information that the Democratic Party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible. The world should know what's really going on. It is a disgrace and people should pay dearly for such false accusations."[3]

On the following day, June 22, 2019, Mr. Trump made other statements to reporters:

"[Reporter]: [Y]ou had said earlier that you never met E. Jean Carroll. There was a photograph of you and her in the late 1980's—

"[Trump]: I have no idea who this woman is. This is a woman who has also accused other men of things, as you know. It is a totally false accusation. I think she was married—as I read; I have no idea who she is—but she was married to a, actually, nice guy, Johnson—a newscaster.

"[Reporter]: You were in a photograph with her.

"[Trump]: Standing with coat on in a line—give me a break—with my back to the camera. I have no idea who she is. What she did is—it's terrible, what's going

---

[3] *Carroll I*, Dkt 6-1 (Cpt.) at 15, ¶ 82.

on. So it's a total false accusation and I don't know anything about her. And she's made this charge against others.

"And, you know, people have to be careful because they're playing with very dangerous territory. And when they do that—and it's happening more and more. When you look at what happened to Justice Kavanaugh and you look at what's happening to others, you can't do that for the sake of publicity.

"New York Magazine is a failing magazine. It's ready to go out of business, from what I hear. They'll do anything they can. But this was about many men, and I was one of the many men that she wrote about. It's a totally false accusation. I have absolutely no idea who she is. There's some picture where we're shaking hands. It looks like at some kind of event. I have my coat on. I have my wife standing next to me. And I didn't know her husband, but he was a newscaster. But I have no idea who she is—none whatsoever.

"It's a false accusation and it's a disgrace that a magazine like New York—which is one of the reasons it's failing. People don't read it anymore, so they're trying to get readership by using me. It's not good.

"You know, there were cases that the mainstream media didn't pick up. And I don't know if you've seen them. And they were put on Fox. But there were numerous cases where women were paid money to say bad things about me. You can't do that. You can't do that. And those women did wrong things—that women were actually paid money to say bad things about me.

"But here's a case, it's an absolute disgrace that she's allowed to do that."[4]

Finally, on June 24, 2019, Mr. Trump stated in an interview with *The Hill*: "I'll say it with great respect: Number one, she's not my type. Number two, it never happened. It never happened, OK?"[5]

*Carroll I*

*The Complaint*

In November 2019, approximately five months after Mr. Trump's statements, Ms. Carroll sued Mr. Trump for defamation in the case now referred to as *Carroll I*. Her complaint, filed originally in a state court in New York, in relevant part alleges:

"11. When Carroll's account was published, Trump lashed out with a series of false and defamatory statements. He denied the rape. But there was more: he also denied ever having met Carroll or even knowing who she was. Through express statements and deliberate implications, he accused Carroll of lying about the rape in order to increase book sales, carry out a political agenda, advance a conspiracy with the Democratic Party, and make money. He also deliberately implied that she had falsely accused other men of rape. For good measure, he insulted her physical appearance.

"85. In the June 21 statement, Trump falsely stated that he did not rape

---

[4]    *Id.* at 17, ¶ 91.

[5]    *Id.* at 19, ¶ 97.

Carroll.

"86. In the June 21 statement, Trump falsely stated that he had never met Carroll.

"87. In the June 21 statement, Trump falsely implied and affirmatively intended to imply that he had no idea who Carroll was.

"88. In the June 21 statement, Trump falsely implied and affirmatively intended to imply that Carroll had invented the rape accusation as a ploy for increased book sales.

"89. In the June 21 statement, Trump falsely implied and affirmatively intended to imply that Carroll invented the rape accusation to carry out a political agenda.

"90. In the June 21 statement, Trump falsely implied and affirmatively intended to imply that Carroll invented the rape accusation as part of a conspiracy with the Democratic Party.

\* \* \*

"93. In the June 22 statement, Trump falsely stated that he did not rape Carroll.

"94. In the June 22 statement, Trump falsely stated that he had no idea who Carroll was.

"95. In the June 22 statement, Trump falsely implied and affirmatively intended to imply that Carroll had falsely accused other men of sexual assault.

"96. In the June 22 statement, Trump falsely implied and affirmatively

intended to imply that Carroll had been paid money to invent the rape accusation against him.

* * *

"100. In the June 24 statement, Trump falsely stated that he did not rape Carroll.

* * *

"116. Trump's other defamatory statements about Carroll in June 2019 – that she had fabricated the rape accusation to increase her book sales, to carry out a political agenda, as part of a conspiracy with the Democratic Party, or in exchange for payment-rested on the express or deliberately – rested on the express or deliberately-implied premise that Carroll's underlying accusation was false. Because Trump knew that the accusation was true, he also knew that his other statements about Carroll were false."[6]

*Mr. Trump's Answer*

Mr. Trump served an answer, meaning a responsive court pleading, in *Carroll I*. His response to each of the complaint's allegations quoted above was that he "[d]enies the allegations contained in [the corresponding paragraph of the complaint]."[7]  He asserted also an affirmative

---

[6]    *Id.* at 3,¶ 11, 16-17, ¶¶ 85-90, 18, ¶¶ 93-96, 20, ¶ 100, 22, ¶ 116.

[7]    *Carroll I*, Dkt 14-69 (Def. Answer), 1 ¶ 11, 6 ¶¶ 85-90, 7, ¶¶ 93-96, 100, 9 ¶ 116.

defense that "[t]he alleged [June 2019] defamatory statements are true."[8]  He did not elaborate on his denials of Ms. Carroll's allegations or on his affirmative defense in his answer.  He said nothing more in his answer in *Carroll I* about Ms. Carroll's allegations.

*Mr. Trump's October 12, 2022 Statement*

On August 8, 2022, more than three months before the effective date of the ASA, Ms. Carroll's counsel announced privately to her adversaries and to the Court that Ms. Carroll would sue Mr. Trump for damages for the alleged rape itself, as distinguished from the allegedly defamatory statements of June 2019, once the ASA became effective on November 24, 2022. That announcement was filed publicly on September 20, 2022.

On the morning of October 12, 2022, this Court denied for the second time Mr. Trump's motion to substitute the United States for him as the defendant in *Carroll I* and it denied his motion to stay the action.[9]  That night, Mr. Trump issued the following statement on his social media outlet:

> "This 'Ms. Bergdorf Goodman case' is a complete con job, and our legal system in this Country, but especially in New York State (just look at Peekaboo James), is a broken disgrace. You have to fight for years, and spend a fortune, in order to get your reputation back from liars, cheaters, and hacks. This decision is from the Judge who was just overturned on my same case. I don't know this woman, have no idea who

---

[8]    *Id.* at 11,¶ 150.

[9]    *Carroll I*, Dkt 96; *Carroll*, 2022 WL 6897075 at *7.

she is, other than it seems she got a picture of me many years ago, with her husband, shaking my hand on a reception line at a celebrity charity event. She completely made up a story that I met her at the doors of this crowded New York City Department Store and, within minutes, 'swooned' her. It is a Hoax and a lie, just like all the other Hoaxes that have been played on me for the past seven years.  And, while I am not supposed to say it, I will. This woman is not my type! She has no idea what day, what week, what month, what year, or what decade this so-called 'event' supposedly took place. The reason she doesn't know is because it never happened, and she doesn't want to get caught up with details or facts that can be proven wrong. If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper. Our Justice System is broken along with almost everything else in our Country. Her lawyer is a political operative and Cuomo crony who goes around telling people that the way to beat Trump is to sue him all over the place. She is suing me on numerous frivolous cases, just like this one, and the court system does nothing to stop it. In the meantime, and for the record, E. Jean Carroll is not telling the truth, is a woman who I had nothing to do with, didn't know, and would have no interest in knowing her if I ever had the chance. Now all I have to do is go through years more of legal nonsense in order to clear my name of her and her lawyer's phony attacks on me.

This can only happen to 'Trump'!"[10]

*Carroll II*

Within ten minutes after the ASA became effective, on November 24, 2022, Ms. Carroll filed *Carroll II* against Mr. Trump.  In addition to her claim under the ASA for damages for the alleged rape, Ms. Carroll sued for common law defamation based on allegedly false and defamatory statements about her contained in Mr. Trump's October 12, 2022 statement.[11]

*The Pending Motion*

Mr. Trump seeks dismissal on summary judgment of Ms. Carroll's defamation claim based on his October 12, 2022 statement. He argues that the alleged defamatory statements in his October 12 statement "are protected by the absolute litigation privilege under N.Y. Civ. Rights Law § 74" because "in the October 12, 2022 [s]tatement, [he] was merely writing about Plaintiff's pending lawsuit against him (*Carroll I*), while referencing Carroll's claims in *Carroll I*, his positions taken in *Carroll I*, and background information concerning *Carroll I*."[12]

---

[10]

Dkt 81 (Kaplan Decl.) ¶ 4, Dkt 81-2 (Ex. 2).

[11]

The portions of Mr. Trump's October 12, 2022 statement that are not statements of or about Ms. Carroll are not part of her defamation claim. Mr. Trump's statement is reproduced above in full for purposes of resolving this motion.

[12]

Dkt 67 (Def. Mem.) at 1.

***Discussion***

Mr. Trump's argument fails for two reasons. First, his October 12 statement is not a "report of any judicial proceeding." Second, *even if* his October 12 statement were a report of a judicial proceeding within the meaning of Section 74 of the New York Civil Rights Law, he has not demonstrated that it was a "fair and true report of any judicial proceeding."

*The Absolute Litigation Privilege Under Section 74 of the New York Civil Rights Law*

"New York law recognizes certain privileges that shield an individual from liability for defamation."[13]  At common law, the "litigant's privilege" shields "one who publishes libelous statements *in a pleading or in open court* for the purpose of protecting litigants' zeal in furthering their causes."[14]  "[A] statement made in the course of a judicial proceeding is absolutely privileged under New York common law so long as it is considered material and pertinent to the litigation."[15]  This absolute litigation privilege does not extend to out-of-court statements. Out-of-court statements instead are dealt with by Section 74 of the New York Civil Rights Law, which creates what often is called the "fair report privilege." And it is important to note that "[t]he [absolute litigation] privilege for in-court statements is considerably broader in scope than that for out-of-court reports

---

[13]     *Sheindlin v. Brady*, 597 F. Supp. 3d 607, 629 (S.D.N.Y. 2022).

[14]     *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 217 (E.D.N.Y. 2012) (emphasis added) (quoting *Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear Inc.*, 608 F. Supp. 1187, 1195 (S.D.N.Y. 1985)).

[15]     *Id.*

relating to the proceedings."[16]

As stated above, Section 74 in pertinent part provides that "[a] civil action cannot be maintained against any person . . . for the publication of a fair and true report of any judicial proceeding . . . ."[17]  "The purpose of providing immunity to fair and true reports of judicial proceedings is said to be to encourage the dissemination of information concerning the judicial branch of government and thereby to serve the public interest 'in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice.'"[18] Originally "a qualified privilege for newspapers publishing 'a fair and true report' of 'any judicial, legislative, or other public official proceedings,'" the law was amended in 1930 "to make the privilege absolute" and ten years later "was extended from newspapers to 'any person, firm or corporation.'"[19]

*Mr. Trump's Statement Is Not a "Report of a Judicial Proceeding"*

Mr. Trump argues that his October 12 statement is privileged under Section 74

---

[16]

*Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005).

[17]

N.Y. Civ. Rights Law § 74.

[18]

*D'Annunzio*, 876 F. Supp. 2d at 217 (citation omitted); *see also Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 328 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068-CV, 2022 WL 1013982 (2d Cir. Apr. 5, 2022) ("The New York legislature enacted this statute in order to avoid stifling 'an active, thriving, and untrammeled press' and to ensure that the press receive 'broad protection.'") (quoting *Idema v. Wagner*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (citation omitted), *aff'd*, 29 F. App'x 676 (2d Cir. 2002)).

[19]

*Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2d Dept. 2009) (citations omitted).

because it was nothing more than a summary and/or restatement of the allegations he made and positions he asserted in his *Carroll I* answer.[20]  Specifically, he contends that his statement merely summarized and/or repeated his denials and affirmative defense in relation to Ms. Carroll's allegations that he (1) falsely stated he did not rape her, (2) falsely stated he did not know who she was, and (3) falsely implied that she invented the rape accusation in order to increase her book sales.[21]  Mr. Trump contends also that his statement was about *Carroll I* because of two references it contains: (1) a portion of the first sentence of his statement that "[t]his 'Ms. Bergdorf Goodman case' is a complete con job", and (2) the third sentence of his statement that "[t]his decision is from the Judge who was just overturned on my same case."[22]  Neither of these references, considered individually or together, nor his statement as a whole, brings the statement within the meaning of "report of any judicial proceeding" under Section 74.

The standard to determine "whether a report qualifies for the fair report privilege is whether 'the ordinary viewer or reader' can 'determine from the publication itself that the publication is reporting on [a judicial] proceeding.'"[23]  "In other words, '[i]f the context in which the statement [is] made make[s] it impossible for the ordinary viewer [or reader] to determine whether

---

[20]

Dkt 67 (Def. Mem.) at 4-5.

[21]

*Id.* at 4.

[22]

Dkt 81 (Kaplan Decl.) ¶ 4, Dkt 81-2 (Ex. 2).

[23]

*Kinsey v. New York Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021) (alteration in original) (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 216 (N.D.N.Y. 2014)).

[the publication] was reporting on a judicial proceeding, the absolute privilege does not apply.'"[24] As another court in this Circuit explained:

> "An overlap between the subject matter of the report and the subject matter of a proceeding does not suffice; the ordinary viewer or reader must be able to determine from the publication itself that the publication is reporting on the proceeding. . . . Thus, there must be some perceptible connection between the challenged report and the[] proceeding. . . . How 'direct' this connection must be has not been clearly defined. . . . And, in light of the broad construction of § 74, . . . reports that bear a more attenuated relationship to a proceeding have been deemed sufficiently connected. [(citing cases)]

> "However, a report's mere mention of [a judicial] proceeding does not automatically extend the privilege to an entire publication; the privilege may apply to some portions of a report and not others. . . . If context indicates that a challenged portion of a publication focuses exclusively on underlying events, rather than [a judicial] proceeding relating to those events, that portion is insufficiently connected to the proceeding to constitute a report of that proceeding.. . . Furthermore, [t]he privilege does not extend to commentary on the proceeding or to additional facts not established in the proceedings."[25]

Nothing about the content or context of Mr. Trump's statement made it a "report" of

---

[24] *Id.* (alterations in original) (quoting *Cholowsky*, 69 A.D.3d at 114-15).

[25] *Fine*, 11 F. Supp. at 216-18 (internal quotation marks and citations omitted).

a judicial proceeding. The statement as a whole "does not even purport to be a report of [a judicial proceeding]."[26]  Instead, it is an amalgamation of Mr. Trump's personal views and comments on a wide range of subjects, including the legal system of the United States and of New York, this Court, Ms. Carroll and her rape accusation against him, CNN and its journalist Anderson Cooper, and Ms. Carroll's counsel. "[T]he way [it] is stylized . . . belies the notion that [Mr. Trump] was even attempting to provide a fair and true report of a judicial proceeding."[27]

As noted, the entire statement contains only two references to any judicial proceeding: (1) a statement that "[t]his 'Ms. Bergdorf Goodman' case is a complete con job", and (2) the reference to a decision of this Court, without specifying which decision or stating anything more about it other than that it came "from the Judge who was just overturned on my same case."[28]  When viewed in the context of the statement as a whole, these two references do not qualify his statement as a report of either *Carroll I* or of this Court's (unidentified) decision. The rest of the statement (1) expresses Mr. Trump's views on the legal system in the United States and in New York, (2) contains

---

[26]

> *Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*, 868 F. Supp. 501, 508-09 (E.D.N.Y. 1994).

[27]

> *Id* at 509.

[28]

> Dkt 81 (Kaplan Decl.) ¶ 4, Dkt 81-2 (Ex. 2).
>
> Based on the date of Mr. Trump's statement, his reference to "[t]his decision" ("*This decision* is from the Judge who was just overturned on my same case." *Id.* (emphasis added)) possibly refers to this Court's decision issued earlier that day in which the Court denied for the second time Mr. Trump's motion to substitute the United States for him as the defendant in *Carroll I* and denied his motion to stay the action. *Carroll I*, Dkt 96; *Carroll*, 2022 WL 6897075 at *7.  The reference to being "overturned on my same case" likely refers to the Second Circuit's reversal in September 2022 of this Court's decision on whether Mr. Trump was an "employee" of the United States within the meaning of the Westfall Act. *Carroll v. Trump*, 49 F.4th 759 (2d Cir. 2022).

statements about Ms. Carroll and the substance of her rape accusation, including, *inter alia*, that "[s]he completely made up a story that [he] met her at the doors of this crowded New York City [d]epartment [s]tore" and that "[i]f you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam", and (3) makes accusations against Ms. Carroll's counsel.[29]  The passing references in Mr. Trump's statement to *Carroll I* and an unidentified decision of this Court would not give an ordinary reader the impression that the statement is a report of a judicial proceeding.[30]

Mr. Trump nonetheless contends that these two references suffice to demonstrate that he "was clearly speaking of the *Carroll I* case when he made the October 12, 2022 [s]tatement."[31] He overlooks, however, that his comments about Ms. Carroll, the allegedly defamatory portions of his statement, "focus[] exclusively on underlying events" – namely, the substance of Ms. Carroll's rape accusation – "rather than a[] [judicial] proceeding relating to those events."[32]  It is unclear, for

---

[29]
    *Id.*

[30]
    *Corp. Training Unlimited, Inc.*, 868 F. Supp. at 509 (determining that the Section 74 privilege did not apply to a televised report broadcast where "the references to the . . . court proceedings occur mostly in passing and only towards the end of the [b]roadcast").

[31]
    Dkt 67 (Def. Mem.) at 15.

[32]
    *Fine*, 11 F. Supp. 3d at 217; *see also Easton v. Pub. Citizens, Inc.*, No. 91-cv-1639 (JSM), 1991 WL 280688, at *7 (S.D.N.Y. Dec. 26, 1991), *aff'd sub nom.*, 969 F.2d 1043 (2d Cir. 1992) ("This part of the sentence [(in the report)] indicates the conclusion to be drawn based on the facts presented in the case studies. Because it is clearly the author's analysis and commentary it is not protected by Section 74."); *Karp v. Hill & Knowlton, Inc.*, 631 F. Supp. 360, 363 (S.D.N.Y. 1986) ("[Defendant's] one word assessment of the Second Circuit's opinion does not publish that opinion, or otherwise expose the public to the workings of the judicial system. Rather, it conclusionally evaluates the circuit court's opinion. The Civil Rights Law does not protect such bald-faced commentary about the judicial branch and the proceedings therein.").

example, whether his statement that Ms. Carroll "completely made up a story that [he] met her" at a New York department store "and, within minutes, 'swooned' her," refers to Ms. Carroll's allegations in her complaint in *Carroll I*, or to a source separate from any judicial proceeding.[33]  The disconnect between the references to *Carroll I* and his allegedly defamatory statements about Ms. Carroll make it impossible for an ordinary reader "to determine from the publication itself that the publication is reporting on the proceeding."[34]

*Summary Judgment Would be Inappropriate Even if Mr. Trump's Statement Were a Report of a Judicial Proceeding*

Even if Mr. Trump's statement were a report of a judicial proceeding within the meaning of Section 74, Mr. Trump has failed to establish as a matter of law that his statement is a "fair and true" report of a judicial proceeding.

"A report may be considered 'fair and true' under Section 74 if its substance is substantially accurate. . . . A report cannot be said to be 'substantially accurate,' however, if it would have a 'different effect' on the mind of the recipient than the 'actual truth.' In other words, Section 74 does not afford protection if the specific statements at issue, considered in their context, 'suggest[ ] more serious conduct than

---

[33]

    *See Corp. Training Unlimited, Inc.*, 868 F. Supp. at 510 n.6 ("So long as the format of a program makes it impossible for the ordinary viewer to determine whether defendant was reporting on a trial or simply from interviews and independent research, the absolute statutory privilege does not attach.").

[34]

    *Fine*, 11 F. Supp. 3d at 216.

that actually suggested in the official proceeding.'"[35]

"When a report of a pleading is the subject of a request for immunity under section 74, a comparison of the pleading and the subsequent report of that pleading is the starting point for the analysis."[36]  Mr. Trump argues that his statement is a "fair and true" report because "all that he was doing [in his statement] was summarizing and/or restating his allegations (*i.e.*, his denials and affirmative defenses) asserted in his [a]nswer filed in *Carroll I*."[37]  A comparison of his comments about Ms. Carroll in his October 12 statement and his assertions in his answer in *Carroll I,* however, reveals that "a reasonable jury could find that [his October 12] statement had a different effect on [a] reader than [Mr. Trump's answer filed in *Carroll I*]"[38] and/or that his statement "go[es] well beyond anything reasonably suggested by [his answer]."[39]

Mr. Trump's answer consists of summary denials of Ms. Carroll's allegations and an affirmative defense that his allegedly defamatory statements issued in June 2019 are true. His comments about Ms. Carroll in his October 12 statement, by contrast, state much more than that he denies Ms. Carroll's allegations. For instance, Mr. Trump in his *Carroll I* answer "[d]enies the

---

[35]

Calvin Klein Trademark Tr. v. Wachner, 129 F. Supp. 2d 248, 253 (S.D.N.Y. 2001) (alteration in original) (quoting *Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 A.D.2d 434, 436 (1st Dept.1995)) (citing *Holy Spirit Assn. v. New York Times Co.*, 49 N.Y.2d 63, 67 (1979); *Wenz v. Becker*, 948 F.Supp. 319, 324 (S.D.N.Y.1996)).

[36]

*Karp*, 631 F. Supp. at 363.

[37]

Dkt 67 (Def. Mem.) at 15-16.

[38]

*Pisani v. Staten Island Univ. Hosp.*, 440 F. Supp. 2d 168, 177–78 (E.D.N.Y. 2006).

[39]

*Calvin Klein Trademark Tr.*, 129 F. Supp. at 253.

allegation" that he "had recognized Carroll on sight at [a New York department store]."[40]  In his

October 12 statement, he does not just deny recognizing or knowing Ms. Carroll.  Instead, he states:

> "I don't know this woman, have no idea who she is, other than it seems she got a
> picture of me many years ago, with her husband, shaking my hand on a reception line
> at a celebrity charity event. She completely made up a story that I met her at the doors
> of this crowded New York City Department Store and, within minutes, 'swooned'
> her. It is a Hoax and a lie, just like all the other Hoaxes that have been played on me
> for the past seven years. . . . She has no idea what day, what week, what month, what
> year, or what decade this so-called 'event' supposedly took place. The reason she
> doesn't know is because it never happened, and she doesn't want to get caught up
> with details or facts that can be proven wrong."[41]

As another example, Mr. Trump in his *Carroll I* answer "[d]enies the allegation" that

"[i]n [his] June 21[, 2019] statement, [he] falsely implied and affirmatively intended to imply that

Carroll had invented the rape accusation as a ploy for increased book sales."[42]  In his October 12

statement, he does not simply deny the allegation that he falsely implied that Ms. Carroll invented

---

[40]      *Carroll I*, Dkt 14-69 (Def. Answer), 2 ¶ 13.  *See also* Dkt 67 (Def. Mem.) at 16 (citing Mr. Trump's other denials in his answer of Ms. Carroll's allegations that he recognized and/or knew Ms. Carroll and/or that he falsely stated in his June 2019 statements that he had no idea who Ms. Carroll was).

[41]      Dkt 81 (Kaplan Decl.) ¶ 4, Dkt 81-2 (Ex. 2).

[42]      *Carroll I*, Dkt 14-69 (Def. Answer), 6 ¶ 88. *See also* Dkt 67 (Def. Mem.) at 16 (citing Mr. Trump's other denials in his answer of Ms. Carroll's allegations related to Mr. Trump's allegedly defamatory June 2019 statements that Ms. Carroll fabricated the rape accusation to increase her book sales).

the accusation to increase her book sales. Nor does he merely repeat or summarize his affirmative

defense that his statement in June 2019 that Ms. Carroll "is trying to sell a new book" is true.[43]

Instead, he states that "[i]f you watch Anderson Cooper's interview with [Ms. Carroll], where she

was promoting a really crummy book, you will see that it is a complete Scam. She changed her story

from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper."[44]

        The contrasts between Mr. Trump's assertions in his *Carroll I* answer and his October

12 statement show that a reasonable juror could find that his statement had a different effect on a

reader than his denials and affirmative defense in his answer. For one, "a reasonable juror could find

that [Mr.] Trump was complaining of a far broader and more corrosive conspiracy than anything that

---

[43]        *Carroll I*, Dkt 6-1 (Cpt.) at 15, ¶ 82.

[44]        Dkt 81 (Kaplan Decl.) ¶ 4, Dkt 81-2 (Ex. 2).

        Mr. Trump contends that his reference to Ms. Carroll's interview with Anderson Cooper in his October 12 statement does not prohibit the application of the § 74 privilege because (1) Ms. Carroll does not allege this statement to be defamatory as she "does not attribute any falsity to Trump's reference to this interview", and (2) "the Anderson Cooper interview was inextricably intertwined with the *Carroll I* [c]omplaint" and therefore "at the very least, was a description of background material regarding his positions taken in *Carroll I*." Dkt 67 (Def. Mem.) at 8, 16. *See also Riel v. Morgan Stanley*, No. 06-cv-524 (TPG), 2007 WL 541955, at *10 (S.D.N.Y. Feb. 16, 2007), *aff'd sub nom.*, 299 F. App'x 91 (2d Cir. 2008) ("The protections of section 74 extend to pleadings, transcripts, live proceedings and the release by the parties of background material regarding their positions in the case."). The Court need not and does not now address this argument in light of its determination that summary judgment is inappropriate regardless of the reference to the Anderson Cooper interview. It bears mention, however, that the allegedly defamatory aspect of Mr. Trump's reference to that interview comes not from the reference to the interview itself, but from his statement that Ms. Carroll "changed her story from beginning to end" during the interview where she was promoting her book. Dkt 81 (Kaplan Decl.) ¶ 4, Dkt 81-2 (Ex. 2); *see also* Dkt 38 (Motion to Dismiss Op.) at 25, *Carroll*, 2023 WL 185507, at *11 ("Drawing all reasonable inferences in favor of plaintiff, the October 12 statement on the whole can be construed as Ms. Carroll falsely accusing Mr. Trump of rape in order to promote her book and increase its sales.").

22

was at issue in *Carroll I* in October 2022,"[45] including based on his statements that Ms. Carroll "completely made up a story" that is a "Hoax" and "changed her story from beginning to end [(in an interview where she was promoting her book)]. . . to suit the purposes of CNN and And[erson] Cooper," along with his comments about the judiciary and Ms. Carroll's counsel.[46]

The Court need not and does not now decide the ultimate issue of whether Mr. Trump's statement is or is not a "fair and true" report of a judicial proceeding as a matter of law. It suffices for the purpose of denying summary judgment that a reasonable jury could find so as a matter of fact.[47]

### Conclusion

For the foregoing reasons, Mr. Trump's motion for partial summary judgment (Dkt 66) is denied.

SO ORDERED.

Dated:        March 28, 2023

_____
Lewis A. Kaplan
United States District Judge

---

[45]    Dkt 79 (Pl. Mem.) at 16.

[46]    Dkt 81 (Kaplan Decl.) ¶ 4, Dkt 81-2 (Ex. 2).

[47]    *Pisani*, 440 F. Supp. 2d at 178 ("[B]ecause the Court finds that a reasonable jury could decide that the Hospital statement was not a fair and true report, the Court cannot conclude that, as a matter of law, the Hospital statement is protected by the judicial proceeding privilege."); *Calvin Klein Trademark Tr.*, 129 F. Supp. 2d at 253 ("The Court therefore finds that Section 74 immunity is, at best, a jury question and cannot support summary judgment in plaintiffs' favor.").