**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL      212.763.0883
DIRECT EMAIL     rkaplan@kaplanhecker.com

April 12, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    *Carroll v. Trump*, 22 Civ. 10016 (LAK)

Dear Judge Kaplan:

      We write on behalf of Plaintiff E. Jean Carroll to oppose Defendant Donald J. Trump's letter of yesterday night requesting a four-week continuance of the April 25, 2023 trial date.

      As discussed below, courts must "distinguish between mere familiarity with [a party] or his past and an actual predisposition against him," since "[t]o ignore the real differences in the potential for prejudice would not advance the cause of fundamental fairness, but only make impossible the timely prosecution of persons who are well known in the community, whether they be notorious or merely prominent." *Murphy v. Florida*, 421 U.S. 794, 801 n.4, 95 S. Ct. 2031, 2036 (1975). Here, the Court will undertake a careful *voir dire* process to address any potential for prejudice arising from pretrial publicity. The constitutional adequacy of that process is only confirmed by the size of the jury pool, the fundamental difference between the complained-of publicity and the subject matter of this lawsuit, and the rapidly diminishing nature of the relevant pretrial publicity. Waiting an additional four weeks will do nothing to "cool" the unavoidable press and security concerns that will attend this trial—concerns that Your Honor has taken substantial measures to address. *See United States v. Rosado*, 728 F.2d 89, 94 (2d Cir. 1984) (affirming denial of continuance since "whenever conducted, [a] trial in the Eastern District of New York would have attracted considerable media coverage and required security precautions"). And in all events, Trump is exceptionally ill-suited to complain about fairness when he has instigated (and sought to benefit from) so much of the very coverage about which he now complains.

                      *      *      *

      "[T]rial courts enjoy very broad discretion in granting or denying trial continuances." *United States v. Stringer*, 730 F.3d 120, 127 (2d Cir. 2013). Moreover, the substantial practical "burden" of "assembling the witnesses, lawyers, and jurors at the same place at the same time …

counsels against continuances except for compelling reasons." *Morris v. Slappy*, 461 U.S. 1, 11, 103 S. Ct. 1610, 1616 (1983); *see also United States v. O'Connor,* 650 F.3d 839, 854 (2d Cir. 2011); *United States v. Al Fawwaz*, 116 F. Supp. 3d 194, 208 (S.D.N.Y. 2015) (Kaplan, J.).

Here, the only basis on which Trump seeks a continuance is adverse pre-trial publicity. But time and again, the United States Supreme Court has held that pretrial publicity in connection with the case to be tried—even "pervasive, adverse publicity"—"does not inevitably lead to an unfair trial." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554, 96 S. Ct. 2791, 2800 (1976); *see also Application of Nat'l Broad. Co., Inc.*, 635 F.2d 945, 953 (2d Cir. 1980) ("Even the intensive publicity surrounding the events of Watergate, very likely the most widely reported crime of the past decade, did not prevent the selection of jurors without such knowledge of the events as would prevent them from serving impartially."). Instead, the strong presumption is that a careful *voir dire* process is sufficient to ensure a fair and impartial trial. *See, e.g., id.* ("The opportunity for *voir dire* examination still remains a sufficient device to eliminate from jury service those so affected by exposure to pre-trial publicity that they cannot fairly decide issues of guilt or innocence."); *United States v. Martoma*, No. 12 Cr. 973, 2014 WL 164181, at *7 (S.D.N.Y. Jan. 9, 2014) ("Numerous courts in high-profile cases have recognized that a thorough *voir dire* may be adequate to address concerns about the effect of pre-trial publicity on a defendant's right to a fair trial."); *United States v. Volpe*, 42 F. Supp. 2d 204, 218 (E.D.N.Y. 1999) ("Careful *voir dire* questioning is a recognized and effective tool to uncover bias. Indeed, thorough *voir dire* examinations have been used in this circuit to produce unbiased juries, even in high-profile cases." (collecting cases)).[1]

Thus, contrary to Trump's filing, the Supreme Court has held that "prominence does not necessarily produce prejudice, and juror impartiality … does not require ignorance." *Skilling v. United States*, 561 U.S. 358, 381, 130 S. Ct. 2896, 2914-15 (2010). A "presumption of prejudice" attaches only where a trial atmosphere has been "utterly corrupted by press coverage" (again, and unlike here, typically press coverage about the very same case). *Id.* at 381. Generally, that has been held to occur in small jurisdictions rather than large cities, where it is easier to find individuals unaffected by pretrial developments. *See id.* at 382 ("At the time of Skilling's trial, more than 4.5 million individuals eligible for jury duty resided in the Houston area. Given this large, diverse pool of potential jurors, the suggestion that 12 impartial individuals could not be empaneled is hard to sustain."). Moreover, prejudice may typically be presumed only where pretrial publicity contains "evidence of the smoking-gun variety," such as a "dramatically staged admission of guilt." *See id.* at 382-83. When the "the decibel level of media attention diminished somewhat" between the original event and the trial, that development offers yet another reason to doubt insurmountable prejudice. *See id.* at 383. And in all events, "[w]hen pretrial publicity is at issue, primary reliance on the judgment of the trial court makes especially good sense because the judge sits in the locale where the publicity is said to have had its effect and may base her evaluation on her own perception of the depth and extent of news stories that might influence a juror." *Id.* at 386 (cleaned up); *see*

---

[1] *See also, e.g.*, *United States v. Shea*, No. 20 Cr. 412-4, 2022 WL 4298704, at *3 (S.D.N.Y. Sept. 19, 2022); *Mamakos v. United Airlines, Inc.*, No. 14 Civ. 7294, 2018 WL 11455783, at *3 (E.D.N.Y. Sept. 28, 2018); *United States v. Livoti*, 8 F. Supp. 2d 246, 249 (S.D.N.Y. 1998); *United States v. Yousef,* 1997 WL 411596 at *3 (S.D.N.Y. July 18, 1997); *United States v. Salameh*, 93 Cr. 0180, 1993 WL 364486 at *1 (S.D.N.Y. Sept. 15, 1993).

KAPLAN HECKER & FINK LLP

3

*also, e.g.*, *Volpe*, 42 F. Supp. 2d at 218 (explaining that "this issue is best determined during or after *voir dire* examinations" rather than prior to trial proceedings).[2]

Given these legal principles, Trump's request for a continuance is obviously meritless. To start, Your Honor has repeatedly made clear that the Court intends to undertake a careful *voir dire* process in this case, and to take additional steps to ensure the security and impartiality of the jury. *See* ECF 94, 105. Given the size of the Southern District of New York—and the diverse population comprising the pool of potential jurors who may be summoned—there is every reason to believe that the Court can empanel a fair jury in this case pursuant to appropriate *voir dire* procedures.

This is particularly true here given that Trump's recent indictment is an entirely different case and involves very different factual and legal issues. *See Skilling*, 561 U.S. at 383. The Grand Jury of the County of New York has indicted Trump for falsifying business records in connection with a political campaign. That is far afield from the disputes that we will present to the jury in E. Jean Carroll's case. Trump seeks to dodge this point by noting that the indictment also concerns (and has generated some publicity) about his extra-marital affairs with Stormy Daniels. *See* Trump Letter at 2. But the indictment says *nothing* about Carroll or the conduct that Carroll has alleged, and contains no confessions or evidence related to Carroll's case. There is a fundamental difference between publicity about an alleged consensual affair in 2006 and trial on an alleged sexual assault in 1996. The Constitution does not excuse Trump from standing trial on a sexual assault claim just because the national media has once again revisited longstanding reports about his assorted extra-marital affairs. *See, e.g.*, *United States v. Manfredi*, 488 F.2d 588, 604 (2d Cir. 1973) ("[T]he publicity here did not deal with the issue of guilt or innocence in the case itself.").

Moreover, the publicity around these issues is not nearly as widespread or persistent as Trump believes. Trump bases his argument to Your Honor on a Google search. But Google Trends (which tracks how often terms are searched for) offers a very different—and more granular—picture. Searches for "Donald Trump" and "Donald Trump Indictment" very briefly spiked when the indictment was announced and when Trump was arraigned. But interest in those topics has already fallen by over 85% and is now roughly even with pre-indictment levels:



---

[2] Trump cites *Wagner v. Shauers*, 574 U.S. 40, 50 (2014), for the familiar point that "the Constitution guarantees both criminal and civil litigants a right to an impartial jury." But in the very next sentence of that opinion, the Supreme Court adds: "And we have made clear that *voir dire* can be an essential means of protecting this right." *Id.*

KAPLAN HECKER & FINK LLP

4



The "Donald Trump Indictment" search on Google Trends also offers another relevant datapoint: when the results are analyzed through the "Interest by subregion" tool, "New York NY" ranks only 64th in the United States, behind "Cleveland-Akron (Canton) OH" and ahead of "Las Vegas NV." In other words, it appears New Yorkers are not as fixated on Trump as he thinks they are.

For these reasons alone, Trump's motion should be denied. But there is more. Trump seeks a four-week continuance on the premise that adverse publicity will abate by that point. There is no reason to believe that is true—and substantial reason to believe it is mistaken. Indeed, there is already litigation in this very Court between the District Attorney of New York and the House Judiciary Committee concerning a congressional investigation into the indictment of Trump. *See Bragg v. Jordan*, No. 23 Civ. 3032 (S.D.N.Y.). Moreover, Trump faces active criminal inquiries from a Special Counsel of the United States Department of Justice, as well as from the District Attorney in Fulton County (where a grand jury is expected to be seated in May). In the civil sphere, Trump confronts litigation arising from his incitement of violence on January 6, 2021, as well as a suit concerning alleged fraud in the conduct of the Trump Organization. *See, e.g.*, *Swalwell v. Trump*, No. 21 Civ. 00586 (D.D.C.); *Thompson v. Trump*, No. 21 Civ. 00400 (D.D.C.); *New York v. Trump*, No. 452564/2022 (N.Y. Sup. Ct.). And of course that is just the tip of the iceberg.

Not surprisingly, Trump's mounting legal difficulties have given rise to substantial press coverage and will continue to do so; he is not only a former President, but also a declared candidate in the next presidential election. As a result, each passing week will offer Trump yet another straw to grasp at in his campaign to avoid standing trial for sexually assaulting Carroll. But the fact that Trump is the subject of an unusually large number of criminal investigations cannot possibly mean that Carroll is barred from going forward in her unrelated civil action, which involves wholly different facts and claims (and the predecessor to which was filed in October 2019). At bottom, Trump's request for a "cooling off" period is just another delay tactic, and one foreclosed by governing law. *See United States v. Al Fawwaz*, No. 98 Cr. 1023, 2015 WL 400621, at *6 (S.D.N.Y. Jan. 23, 2015) (Kaplan, J.) ("[I]t is quite important to remember that postponements in circumstances such as this are not necessarily unmixed blessings from the standpoint of a defendant who is hoping for the dissipation of what he regards, or says he regards, as negative publicity. Events happen during postponements. Sometimes they can make matters worse.").

If anything, it is somewhat perverse for Trump to seek a continuance in these proceedings based on the recent indictment when so much of the publicity he complains about has been driven

KAPLAN HECKER & FINK LLP

5

by his own incendiary statements. *See* ECF 105 at 2 n.2 (collecting coverage); ECF 94 at 2-5 (same). Trump should not be heard to complain about unfairness from pretrial publicity when he has done everything in his power to intensify such coverage—including through statements that threaten and provoke violence against law enforcement and courts. *See, e.g.*, Maggie Haberman et al., *Trump, Escalating Attacks, Raises Specter of Violence If He Is Charged*, N.Y. Times (March 24, 2023). In fact, Trump filed his motion for a continuance less than two hours after appearing on Tucker Carlson's show, where he discussed (among other things) the indictment. *See Tucker Carlson Tonight - Tuesday, April 11*, Fox News (April 11, 2023).[3] Meanwhile, the first seven items in his political campaign's store include fake mugshots from the Manhattan DA indictment. *See* Trump Campaign, Official Merchandise (accessed April 12, 2023).[4] Within legal bounds, Trump is free to oppose the pending criminal indictment however he sees fit and to develop a political strategy that addresses it. But the Constitution does not entitle him to leverage his public opposition to the indictment (and ensuing press coverage) into a basis for avoiding his trial date here.

Respectfully submitted,

Roberta A. Kaplan

cc:     Counsel of Record

---

[3] Available at https://www.foxnews.com/video/6324723162112.
[4] Available at https://secure.winred.com/save-america-joint-fundraising-committee/storefront/?utm_medium=website&utm_source=homepage&utm_campaign=na_store-trump-homepage_na_saveamerica&utm_content=merch_na_na&_ga=2.216452246.1286168213.1681270630-44597241.1681270630.