

Alina Habba, Esq.
Managing Partner
ahabba@habbalaw.com
Admitted to practice in NJ, NY & CT

April 13, 2023

**VIA ECF**
The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
Daniel Patrick Moynihan
500 Pearl Street
New York, New York 10007

Re:   *E. Jean Carroll v. Donald J. Trump*
      *1:22-cv-10016 (LAK)*

Dear Judge Kaplan:

We write on behalf of the defendant, Donald J. Trump ("Defendant"), with respect to the recent, belated disclosure of material information by the plaintiff, E. Jean Carroll ("Plaintiff"), which raises significant concerns as to Plaintiff's bias and motive in commencing the instant lawsuit, and necessitates that discovery be re-opened for the limited purpose of addressing this issue.

For background, on October 14, 2022, Plaintiff sat for her deposition in the parallel proceeding of *Carroll v. Trump*, No. 1:20-cv-7311 (LAK) ("*Carroll I*").[1] At that time, she was asked about a pertinent issue that looms large over this case – whether her legal fees are being funded by a third-party benefactor, particularly one with political ties. She answered, unequivocally, in the negative:

> Q: Are you presently paying your counsel's fees?
>
> A: This is a contingency case.
>
> Q: So you're not paying expenses or anything out of pocket to date; is that correct?
>
> A: I'm not sure about expenses. I have to look that up.
>
> Q. Is anyone else paying your legal fees, Ms. Carroll?
>
> A: No.

*See* **Exhibit A** at tr. 209:11-21.

---

[1] Pursuant to the Court's Order dated December 21, 2022 (ECF No. 19), Plaintiff's October 14, 2022 deposition has, for all intents and purposes, been incorporated into the instant action and serves as the operative deposition with respect to all substantive issues aside from a particular subset of Plaintiff's damages claim.

Now, nearly six months later and a mere *two weeks* before trial is scheduled to commence, Plaintiff has acknowledged that the above statement was inaccurate. On April 10, 2023, defense counsel received a letter from Plaintiff's attorneys which stated, without elaboration, that Plaintiff "now recalls that at some point her counsel secured additional funding from a nonprofit organization to offset certain expenses and legal fees." *See* **Exhibit B** at 1.

Of course, the proposition that Plaintiff has suddenly "recollected" the source of her funding for this high-profile litigation—which has spanned four years, spawned two separate actions, and been before numerous state, federal, and appellate courts—is not only preposterous, it is demonstrably false. *Id.* Indeed, it simply defies logic to believe that Plaintiff's attorneys—four of whom were present at her deposition—were unaware that their *own firm* had "secured additional funding from a nonprofit organization" to bankroll their client's various lawsuits and ensure their bills were being paid. *Id.* It is equally inconceivable that neither Plaintiff nor her counsel have been aware of the identity of the third-party benefactor who was providing these payments. There is simply no justifiable excuse for Plaintiff's prolonged failure to disclose this information to Defendant in a timely manner. In short, Plaintiff apparently perjured herself during her deposition; her counsel sat by and allowed her to do so, knowing full well that her testimony was false[2]; and then they conspired to conceal the truth for nearly six months, only to disclose it on the eve of trial.

After receiving the April 10 letter, Defendant immediately scheduled a meet and confer with Plaintiff's counsel, which was held via conference call the next day, April 11, 2023. During the call, defense counsel: (i) inquired as to the identity of the "nonprofit organization" that was funding Plaintiff's lawsuits; (ii) requested that Plaintiff turn over documentation relating to the source of funding (i.e., payment history, retainer agreement with the third-party benefactor, communications with the third-party benefactor, etc.); (iii) requested that plaintiff appear for a supplemental deposition, limited in scope to the source of funding issue; and (iv) sought Plaintiff's consent to make a joint application to this Court seeking a brief adjournment of the trial date to allow sufficient time for the parties to engage in the additional discovery proceedings. In response, Plaintiff's counsel refused to disclose the identity of the "non-profit organization" and stated that they would advise as to their position on Defendant's remaining requests.

Later that evening, Plaintiff's lead counsel, Roberta Kaplan, submitted a letter to defense counsel, wherein she stated that she "would be willing to disclose the identity of the funder and agree not to object on relevance grounds to questions [defense counsel] might ask Ms. Carroll on cross-examination regarding her personal knowledge of the funding that her counsel secured" and suggested a follow-up meet and confer meeting. *See* **Exhibit C** at 2. Thereafter, pursuant to Ms. Kaplan's suggestion, a meet and confer was held via conference call the next morning, April 12, 2023. On the call, however, Plaintiff's counsel initially refused to disclose the identity of the third-party benefactor unless defense counsel first agreed to waive its ability to seek court intervention with respect to additional discovery surrounding the third-party benefactor. When defense counsel declined to do so, Plaintiff's counsel provided only the name of an individual, Reid Hoffman, who,

---

[2] *See* Rules of Professional Conduct, 22 NYCRR 1200.0, Rule 3.3(a)(3) ("If a . . . lawyer's client . . . has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures[.]"); Rule 3.4(a) ("A lawyer shall not . . . suppress any evidence that the lawyer or the client has a legal obligation to reveal or produce [or] conceal or knowingly fail to disclose that which the lawyer is required by law to reveal[.]").

according to Plaintiff's counsel, is primary backer of the "non-profit organization." Plaintiff's counsel continued to refuse to disclose the identity of the "non-profit organization" itself, prompting the parties to have a follow-up meet and confer later that day, when Plaintiff's counsel ultimately disclosed that the "non-profit organization" is American Future Republic. Additional discussions took place between the sides, but no agreement was able to be reached with respect to additional discovery to be turned over.

The eleventh-hour disclosure that Plaintiff's legal fees are being subsidized by American Future Republic and Reid Hoffman is troubling and raises significant questions that require further investigation. Based upon defense counsel's initial research, there appears to be little to no publicly available information on American Future Republic, aside from the fact that it is a 501(c)(4) social welfare organization entity funded by Reid Hoffman, the billionaire founder of LinkedIn. Hoffman is one of the largest donors to the Democratic party—reportedly "one of the most influential Democratic donors of the Trump era"[3]—and a vocal critic of Defendant and his political policies. In fact, Hoffman is on record stating that he would "'spend as much as [he] possibly can' to avoid another Trump presidency, saying it would be 'destructive to our society,'"[4] and, since 2017, has reportedly been "funding groups to create a bulwark against Mr. Trump's agenda."[5] Previously, Hoffman contributed more than $600,000 to the legal defense fund of Bean LLC[6]—otherwise known as Fusion GPS, the company responsible for the creation of the Steele Dossier—and was the primary source of funding for an organization that launched an "elaborate false flag" operation which involved spreading misinformation about a Republican senatorial candidate in the hopes that it would cost him the senatorial election.[7]

This revelation raises significant questions as to Plaintiff's credibility, as well as her motive for commencing and/or continuing the instant action. It also strikes at the heart of one of the key aspects of Plaintiff's defamation claim – whether the instant action is a "hoax" that was commenced and/or continued to advance a political agenda. As such, this issue has a material bearing on Defendant's defense strategy and additional discovery is needed. Due to the belated nature of Plaintiff's disclosure, Defendant was deprived of an opportunity to investigate this information in the course of discovery proceedings. In fact, given that this information was concealed for numerous months, only to be abruptly divulged on the eve of trial, Plaintiff's conduct appears to be a deliberate attempt to cut-off Defendant's ability to investigate this matter. *See*, *e.g.*, *Haibo Jiang v. Town of Tonawanda*, No. 15-cv-898-A, 2018 WL 3215575, at *4 (W.D.N.Y. July

---

[3] Theodore Schleifer, "This billionaire built a big-money machine to oust Trump. Why do some Democrats hate him?" *Vox*, September 23, 2020, available at https://www.vox.com/recode/21451481/linkedin-reid-hoffman-billionaire-democratic-party-tension-silicon-valley.

[4] Aaron Mok, "Reid Hoffman, LinkedIn cofounder, said he talks to his friend Peter Thiel less to avoid political discussions and feuding over Donald Trump," *Business Insider*, March 22, 2023, available at https://www.businessinsider.com/reid-hoffman-peter-thiel-politics-clash-dont-talk-trump-2023-3.

[5] Katie Benner, "Using Silicon Valley Tactics, LinkedIn's Founder Is Working to Blunt Trump," *The New York Times*, September 8, 2017, available at https://www.nytimes.com/2017/09/08/technology/reid-hoffman-silicon-valley-blunt-trump.html.

[6] https://projects.propublica.org/nonprofits/display_990/821110585/02_2020_prefixes_81-82%2F821110585_201812_990_2020021417149016

[7] Tony Romm, "Internet Billionaire Reid Hoffman Apologizes For Funding Group Tied to Disinformation In Alabama Race," *The Washington* Post, December 6, 2018, available at https://www.washingtonpost.com/technology/2018/12/26/internet-billionaire-reid-hoffman-apologizes-funding-group-behind-disinformation-alabama-race/?noredirect=on.

2, 2018) ("Given the timing of these disclosures—well after the discovery cutoff date, and on the eve of trial— the Defendant was unable to investigate these issues. The resulting prejudice to the Defendant was obvious.") (citing *Rienzi & Sons, Inc. v. N. Pugilisi & F. Industria Paste Alientari,* No. 80-cv-2540 (DLI), 2011 WL 1239867, at *3 (E.D.N.Y. Mar. 30, 2011)); *Res. Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 112 (2d Cir. 2002) (remanding and admonishing that "as a discovery deadline or trial date draws near, discovery conduct that might have been considered 'merely' discourteous at an earlier point in the litigation may well breach a party's duties to its opponent and to the court.").

Therefore, in view of the circumstances at hand, and for the reasons outlined below, Defendant respectfully seeks: (i) a limited re-opening of the discovery period restricted to investigation into the narrow source of funding issue, and (ii) a one-month continuance of the trial date, the need for which, with respect to this issue, stems solely from Plaintiff's failure to disclose the subject information in a timely manner; or (iii) in the alternative, that the Court permit an adverse inference instruction against Plaintiff with respect to her willful defiance of her discovery obligations.

\*   \*   \*

"A district court has broad discretion in deciding whether to re-open discovery." *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 2006312, at *15 (S.D.N.Y. Feb. 15, 2023) (citing *Iacovacci v. Brevet Holdings, LLC*, No. 1:18-cv-08048 (MKV), 2022 WL 540658, at *1 (S.D.N.Y. Feb. 23, 2022); *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004)). Pursuant to Federal Rule of Civil Procedure 16, discovery may be re-opened upon a showing of "good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

"District courts in this Circuit generally consider six factors in deciding whether good cause to re-open discovery exists: '(1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.'" *Carroll*, 2022 WL 540658, at 16 (citing *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011)). Here, all six factors weigh in Defendant's favor.

***First***, trial is currently scheduled to commence in less than two weeks, on April 25, 2023. Typically, such a close proximity to trial would weigh against Defendant, the moving party. However, given the circumstances at hand, this factor should be construed against Plaintiff, since it was Plaintiff's withholding of relevant information and then sudden disclosure on the eve of trial that created this dispute in the first place. Indeed, Plaintiff's counsel deliberately waited 178 days following their client's deposition to correct her materially false statement, clearly to gain a tactical advantage over Defendant in this proceeding. Had Plaintiff disclosed the source of her funding in a timely manner, Defendant would have been afforded ample opportunity to investigate the issue through routine discovery. Plaintiff should not be permitted to benefit from her failure to do so, nor the fact that she waited until the last possible moment.

4

***Second***, the request is opposed by Plaintiff. However, like the first factor, this consideration should not be weighed against Defendant. It is of no moment that Plaintiff opposes the instant motion, as she willfully neglected her discovery obligations. Thus, to consider this factor in her favor would be inequitable and unjust.

***Third***, Plaintiff would not be prejudiced by re-opening discovery for the purpose of allowing Defendant to engage in limited fact-finding surrounding the source of Plaintiff's funding. To the extent re-opening discovery causes any delay in the trial schedule, any such postponement would simply be the consequence of Plaintiff's own failure to timely abide by her discovery obligations. The resulting prejudice, if any, falls squarely upon Plaintiff's shoulders and should not be considered as a relevant factor by this Court.

***Fourth***, Defendant was diligent in obtaining discovery within the timeframe permitted by the Court. In his First Set of Interrogatories, served on May 27, 2022 in *Carroll I*, Defendant demanded that Plaintiff disclose the following information:

> 23. Identify all Persons who have made, provided, discussed, or offered to make or provide, any funds, payments, donations, gifts or consideration of any value, in connection with this Action . . . including but not limited to . . . attorneys' fees, and describe: (a) the nature of the contribution or provision of value or consideration; and (b) b. the dollar amount of the contribution or provision of value or consideration, if not financial in nature, the equivalent dollar amount of the contribution.

*See* **Exhibit D** at ¶ 23.[8] In her response, Plaintiff asserted that the information was protected by attorney-client privilege. *See* **Exhibit E** at 13. Thereafter, defense counsel questioned Plaintiff as to whether any third party was paying her legal fees, to which she unequivocally stated "No." *See* **Ex. A** at tr. 209:21.

Plaintiff's assertion of attorney-client privilege, coupled with her sworn denial that any third party was covering her legal expenses, provided Defendant with no reason to believe that any third-party benefactor was involved in the payment of Plaintiff's legal fees. It was only when Plaintiff corrected her false statement in her April 10, 2023 letter that Defendant was alerted to fact that a "nonprofit organization" has been funding her lawsuits. Since this information was not previously discoverable—and, in fact, was actively concealed by Plaintiff—Defendant never had *any* opportunity to engage in fact-finding on this issue within the confines of this Court's Scheduling Order. As such, this factor weighs heavily in favor of Defendant. *See*, *e.g.*, *Sokol Holdings, Inc. v. BMD Munai, Inc.*, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) (stating that, to re-open discovery, a moving party "must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met."); Fed. R. Civ. P. 16 Advisory Comm. Notes to 1983 Amendment (noting that a court "may modify the [discovery] schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."); *Geneva Pharm. Tech. Corp. v. Barr Labs., Inc.*, No. 98-cv-861, 2005 WL 2132438,

---

[8] Defendant propounded a corresponding document request upon Plaintiff seeking related documents and communications, to which she made the same assertion of attorney-client privilege. *See* **Ex. C** at 1-2.

at *5 (S.D.N.Y. Sept. 6, 2005) ("[M]aterial events have occurred since the last discovery period, which justice requires that the parties have an opportunity to develop through discovery.").

*Fifth*, for the same reasons described above, it was entirely unforeseeable that Defendant would require additional discovery as to the source of Plaintiff's third-party funding, since Plaintiff actively concealed the existence of a third-party benefactor throughout the course of discovery. This fact only came to light within the past couple days, after Plaintiff suddenly reversed course and disclosed said information. As a result, it was impossible for Defendant to foresee the need for discovery into this area of inquiry. Therefore, this factor weighs in favor of Defendant.

*Sixth*, there is a significant likelihood that the information sought by Defendant will lead to the discovery of relevant evidence. Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 882 F.2d 682, 687 (2d Cir.1989) (holding that "the broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all the evidence relevant to the merits of a controversy"). Indeed, the "right of litigants to discover and present relevant evidence in civil litigations is given great weight in federal courts," and there is a tendency "toward admitting as much evidence as possible so that the facts may be more accurately determined." *Apicella v. McNeil Labs.,* 66 F.R.D. 78, 82 (E.D.N.Y. 1975). "So long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *United States v. Jones*, 2018 WL 1115778, at *9 (S.D.N.Y. Feb. 27, 2018).

Here, there is no question that information pertaining to the "nonprofit organization" that has been funding Plaintiff's attorneys' fees is relevant to this case. It is well established that "[c]ourts can require [a party] to produce ... documents indicating the source of third-party payment of its legal fees." *Alfadda v. Fenn*, 1994 WL 577002, at *1 (S.D.N.Y. Oct. 19, 1994); *see also United States v. Zarrab*, 15-cr-867 (RMB), 2017 WL 1753466 (S.D.N.Y. Apr. 5, 2017). Such disclosure does not implicate attorney-client privilege or the attorney work product doctrine. *Vingelli v. U.S., Drug Enf't Agency*, 992 F.2d 449, 452 (2d Cir. 1993) ("[I]n the absence of special circumstances client identity and fee arrangements do not fall within the attorney-client privilege because they are not the kinds of disclosures that would not have been made absent the privilege and their disclosure does not incapacitate the attorney from rendering legal advice.") (2d Cir. 1993); *E. Profit Corp. Ltd. v. Strategic Vision US, LLC*, 18-CV-2185 (LJL), 2020 WL 7490107, at *8 (S.D.N.Y. Dec. 18, 2020) ("The identity of a person providing litigation funding—whether a private individual or a corporation or an insurance company—is not protected by the attorney-client privilege or attorney work product doctrine."); *In re Shargel*, 742 F.2d 61, 64 n.2 (2d Cir. 1984) ("[T]he privilege does not protect the identity of a 'benefactor' so far as legal fees are concerned . . . [t]he payment of another's legal fees is an act independent of that explanation and should not be accorded more protection against disclosure under the attorney-client privilege than a payment directly to the person for purposes of his or her retaining a lawyer.").

In addition, the source of funding of Plaintiff's legal fees is particularly relevant in the instant matter given the political overtones of this case. This action was filed against Defendant while he was the sitting President of the United States, and it has continued into his candidacy for the 2024 Presidential Election where he is currently the leading Republican candidate. Plaintiff, for her part, has long been an outspoken critic of Defendant's political policies and, at or around the time *Carroll I* was commenced, she frequently expressed her desire to see him removed from office.[9] Perhaps most interestingly, Plaintiff admitted during her deposition that she initiated the instant lawsuit at the urging of George Conway, a well-known detractor of Defendant and his politics,[10] who referred her to her current counsel, Kaplan Hecker & Fink LLP, a firm with ties to the Democratic party which is engaged in numerous lawsuits against Defendant:[11]

> Q: At what point did you decide to file a lawsuit against the defendant?
>
> A: Well, wherever I went after the story went people said are you going to sue him, are you going to sue him and I would say no, no, no, not going to do it. I'm just not -- and then I had a conversation with someone who knew the ins and outs, an actual lawyer, and he said you should really seriously think about this.
>
> Q: Who was that lawyer without getting into the conversation?
>
> A: George Conway.
>
> [. . .]
>
> Q: So after you spoke to George, did you retain counsel?
>
> A: Yes.
>
> Q: How soon after?
>
> A: The day after. The day – two days later.
>
> Q: Did George recommend Ms. Kaplan?
>
> A: Yes, he did.

*See* **Ex. A** at tr. 205:4-16, 209:3-10.

---

[9] *See, e.g.*, @ejeancarroll, 12/17/19, 6:05pm, https://twitter.com/ejeancarroll/status/1207074320440315906 ("I am a woman, and I want to see Trump Impeached and Removed. I want to stop the damage he and his flunkies are inflicting on the rights of women to control our our destinies!"); @ejeancarroll, February 3, 2017, 1:54pm, https://twitter.com/ejeancarroll/status/827591114437824514 ("The greatest threat to America is Donald Trump!"); @ejeancarroll, June 30, 2018, 4:39pm, https://twitter.com/ejeancarroll/status/1013160235295494144 ("Each of us should find one Trump Woman THAT WE PERSONALLY KNOW and spend the next three months tenderly and intelligently convincing her to vote against the candidates of his party in November. THAT WOULD STOP HIM.").

[10] *See, e.g.*, Erik Larson, "Roberta Kaplan Builds Progressive Firm Suing Trump, Defending Wall Street," *Bloomberg News*, March 13, 2021, available at https://news.bloomberglaw.com/us-law-week/roberta-kaplan-builds-progressive-firm-suing-trump-defending-wall-street; Catherine Triomphe, "Roberta Kaplan, The Lawyer Taking On Donald Trump And Fighting the Far-Right," *Barron's*, February 6, 2021, available at https://www.barrons.com/news/roberta-kaplan-the-lawyer-taking-on-donald-trump-and-the-far-right-01612662609.

[11] *See, e.g.*, George Conway III, "Unfit for Office: Donald Trump's narcissism makes it impossible for him to carry out the duties of the presidency in the way the Constitution requires," *The Atlantic*, available at https://www.theatlantic.com/ideas/archive/2019/10/george-conway-trump-unfit-office/599128/ (11,000 word op-ed written by Conway claiming that Trump's is unfit for office).

Moreover, Plaintiff's counsel has admitted that Reid Hoffman was one of the underlying sources of her funding. Hoffman is one of the largest individual donors to the Democratic party, an outspoken critic of Defendant, and an active contributor to numerous "anti-Trump" initiatives. Given the political machinations which are at issue in this case, Mr. Hoffman's involvement is certainly noteworthy.

In *Eastern Profit Corporation Limited v. Strategic Vision US, LLC*, No. 18-cv-2185 (LJL), 2020 WL 7490107 (S.D.N.Y. Dec. 18, 2020), the court made a conditional ruling allowing the admission of evidence at trial concerning the identity and political leanings of a third-party benefactor that had been funding the litigation costs of the defendant. The court permitted testimony and questioning on the identity of the funder provided that plaintiff could show it had a "good faith belief" that the funder was affiliated with a foreign political party, accepting the plaintiff's argument that this fact, if shown, would "tend to establish a relationship between [the] [d]efendant and the [foreign political party] and its supporters" and therefore make it "less likely" that certain defenses raised by the defendant were valid. *Id.* at *8. In so ruling, the court observed that the defendant had put "its own political associations" in issue and, therefore, could not complain if the plaintiff sought to "probe those associations." *Id.*

Here, similarly, Plaintiff's potential political ties are pertinent to her motivation for filing her lawsuits, her potential bias against Defendant, and her credibility as a witness. Plaintiff waited until Defendant was a sitting President to come forward with her purported twenty-five-year-old allegation that he sexually assaulted her; and she chose to do so in a profoundly public manner – through the publication of a book detailing her claims. She has also admitted that she had no intention of filing *Carroll I* (or, by extension, the instant lawsuit), until she was urged to do so by an individual with well-documented disdain for Defendant's political leanings. Thus, Plaintiff has undoubtedly put her "political associations" in issue in this case, and Defendant is entitled to "probe those associations." *Id.*

Moreover, aside from its relevance to Plaintiff's bias, motive, and intent, the source of litigation funding bears on a material aspect of Plaintiff's defamation claim – namely, whether this action has been brought for the purpose of advancing a political agenda. Defendant has consistently claimed that Plaintiff's *Carroll I* and *Carroll II* lawsuits are a "con job" and a "hoax," *see* Compl. (ECF No. 1) at ¶ 92, and has questioned whether she is "push[ing] a political agenda" or being funded by a rival political party, *id.* at ¶ 83 ("Shame on those who make up false stories of assault to try to get publicity for themselves, or sell a book, or carry out a political agenda[.]"); ("If anyone has information that the Democratic Party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible. The world should know what's really going on. It is a disgrace and people should pay dearly for such false accusations."). Carroll has also brought this issue into question, having argued that Defendant "asserts a far broader conspiracy of malfeasance that encompasses Carroll, her lawyer, the justice system at large, and even this Court," *see* ECF No. 79 at 16, and repeatedly questioning Defendant on these theories, *see, e.g.,* **Exhibit F** at tr. 88 14:-23 ("Q: Another thing that you say in your June 21 statement is that Ms. Carroll was trying to carry out a political agenda? A: Yeah. Q: How did you know she had a political agenda if you didn't know who she was? A: Somebody told me early on that she was somehow aligned with Hillary Clinton[.]"); tr. 89:22-25 ("Q: Before you issued your June 21 statement, did you have any documents indicating that she was pursuing a political agenda? A: No."); tr. 197:6-16 ("Q: So in

that video, you're talking about the women who had accused you of sexual impropriety; correct? A: Yeah. Q: And you say, "These are lies being pushed by the media and the Clinton campaign"; correct? A: Yeah. Not in all cases, but in some, yeah. I think that's what's happening with you and your client. I don't know if it's Clinton or if it's the Democrat party. It's probably not Clinton anymore."). Thus, the question of whether American First Republic and/or Reid Hoffman funded Plaintiff's legal fees for the purpose of pushing a political agenda is a substantive issue that goes directly towards the merits of Plaintiff's defamation claim. As a result, discovery that sheds light on this issue is relevant as a matter of law.

Lastly, should this Court not be inclined to re-open discovery, Defendant respectfully requests that the Court permit an adverse inference instruction against Plaintiff for her failure to comply with her discovery obligations. "[D]istrict courts have broad discretion in fashioning an appropriate sanction for a party's failure to produce documents in breach [of] its discovery obligations . . ." *Bogosian v. All Am. Concessions*, No. 06-CV-1633 (RRM) (RML), 2011 U.S. Dist. LEXIS 109082, 2011 WL 4460362, at *7 n.4 (E.D.N.Y. Sept. 26, 2011); *accord Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002) ("Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs."); *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."). An adverse inference may be drawn if (1) the party having control over the evidence had an obligation to timely produce it; (2) the party that failed to timely produce the evidence had a culpable state of mind; and (3) the missing evidence is relevant to a claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential Funding Corp.*, 306 F.3d at 107. As set forth at length above, Plaintiff, after receiving a written demand for discovery relating to third-party funding, failed to timely disclose responsive evidence and subsequently lied, under oath, when questioned about it. Further, Plaintiff and her counsel were fully aware that Reid Hoffman, through his non-profit, American Future Republic, was funding Plaintiff's litigation fees and yet consciously withheld this information. Finally, the sought after evidence is relevant to Plaintiff's credibility and bias, and it also relates directly to a substantive aspect of her defamation claim, namely, whether political considerations played into Plaintiff's decision to commence and/or continue the instant lawsuit. Therefore, permitting an adverse inference against Plaintiff is an appropriate sanction for Plaintiff's deliberate attempts to circumvent the discovery process.

For the reasons set forth above, Defendant respectfully seeks: (i) a limited re-opening of the discovery period restricted to fact-finding surrounding Plaintiff's litigation funding, including permitting Defendant to serve written discovery demands and re-depose Plaintiff on this singular issue, and (ii) a one month continuance of the trial date; or (iii) in the alternative, that the Court permit an adverse inference instruction against Plaintiff with respect to her willful defiance of her discovery obligations.

Respectfully submitted,

Dated: April 13, 2023
New York, New York

Alina Habba, Esq.
Michael T. Madaio, Esq.
HABBA MADAIO & ASSOCIATES LLP

9

1430 US Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188

-and-

Joseph Tacopina, Esq.
Chad Siegel, Esq.
Matthew DeOreo, Esq.
TACOPINA SEIGEL & DEOREO
275 Madison Avenue, 35th Floor,
New York, New York 10016
Telephone: (212) 227–8877

*Counsel for Defendant, Donald J. Trump*