**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL          212.763.0883
DIRECT EMAIL         rkaplan@kaplanhecker.com

April 13, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re: *Carroll v. Trump*, 22 Civ. 10016 (LAK)

Dear Judge Kaplan:

  We write on behalf of Plaintiff E. Jean Carroll in opposition to Defendant Donald J. Trump's motion to adjourn trial and reopen discovery. *See* ECF 108. Trial is less than two weeks away, and Trump has now requested two different one-month trial adjournments in the past three days. *See id.*; ECF 106. His latest transparent effort to keep a jury from deciding Carroll's claims should also be rejected.

* * *

  The factual and procedural background relevant to this motion is straightforward (though certainly not as Trump's letter portrays them). At her deposition in *Carroll I*, counsel for Trump asked the following questions and Carroll gave the following answers:

> Q. Are you presently paying your counsel's fees?
> A. This is a contingency case.
> Q. So you're not paying expenses or anything out of pocket to date; is that correct?
> A. I'm not sure about expenses. I have to look that up.
> Q. Is anyone else paying your legal fees, Ms. Carroll?
> A. No.

Dep. Tr. at 209:11-21. Plaintiff's counsel was not, in that deposition setting, able to object to that line of questioning on relevance grounds, *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302, 307 (S.D.N.Y. 2019), but did make an appropriate inquiry at the time to determine that Carroll had testified truthfully given her then-existing knowledge.

**KAPLAN HECKER & FINK LLP**

2

Last week, during the course of preparing for her testimony at trial, Carroll recollected additional information relating to the above exchange. Accordingly, we promptly disclosed to Trump's counsel that, while Carroll stands by her testimony about this being a contingency fee case, she now recalls that her counsel at some point secured additional funding from a nonprofit organization to cover certain expenses and fees.[1] See Ex. A. Our letter explained that while the funding was plainly irrelevant to Carroll's claims, we were supplementing the record in an abundance of caution. *Id.*

Since sending that letter, we have provided additional information to Trump's counsel, both by phone and letter. See Ex. B. We explained that Carroll has (and has always had) a contingency fee arrangement with our firm, but that in September 2020—well after Carroll filed her state court complaint in November 2019—financial support was obtained from a nonprofit to help pay certain costs and fees in connection with the firm's work on Carroll's behalf. We informed Trump's counsel that Carroll has never met and has never been party to any communications (written or oral) with anyone associated with the nonprofit. We disclosed to Trump's lawyers the name of the individual donor and the nonprofit organization from which the funds originated. Finally, we proposed a compromise by which we would agree not to object on relevance grounds to cross-examination of Carroll regarding her personal knowledge of the funding that her counsel had secured.

But apparently, that was not enough. Betraying their true motive for pressing the issue, counsel for Trump said they needed a "one-month continuance of the trial" to reopen written discovery (including document requests and interrogatories) and to take depositions.[2] Trump's claim that further discovery is necessary—and that such discovery is so urgent as to warrant a disruption of the trial—is baseless for multiple reasons, as set forth below.

\* \* \*

*First*, the proposed discovery is plainly irrelevant to the issues at stake in this litigation. Trump seems to principally argues that the proposed discovery concerns Carroll's credibility or political motive in writing about Trump's sexual assault in her book.[3] But that simply ignores the pertinent facts. That *Carroll's counsel* was able to obtain financial support *almost a year after Carroll commenced litigation* against Trump has absolutely no bearing on whether Trump sexually assaulted her in Bergdorf Goodman in the mid-1990s. Nor does it make it more or less likely that Trump lied when he denied her accusation in June 2019 and repated his denial in October 2022. Indeed, Carroll's book was published before she had even met her counsel—and more than a year

---

[1] That counsel sought additional resources for this case is not surprising. Carroll is not a wealthy person. Trump, by contrast, claims to be a billionaire who has reportedly used his own PAC funding to pay for his personal attorneys. *See* Maggie Haberman, *Trump Spent $10 Million From His PAC on His Legal Bills Last Year*, N.Y. Times (Feb. 21, 2023).

[2] Trump's counsel at first did not even outline what discovery they wanted to take until we insisted that they provide us with that information.

[3] Contrary to Trump's suggestion, Carroll's defamation claim does *not* turn on Carroll's motivation for filing suit; rather, the June 2019 defamation claim in *Carroll I* concerns whether Carroll *fabricated* an assault allegation to advance a political agenda. *Compare* ECF 108 at 8 ("[T]he source of litigation funding bears on a material aspect of Plaintiff's defamation claim – namely, whether this action has been brought for the purpose of advancing a political agenda.").

before her counsel secured financial resources to cover certain of Carroll's expenses and fees.[4] In these circumstances, funding obtained by counsel is not a proper topic for discovery, let alone a relevant issue at trial. *See, e.g.*, *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350, 2015 WL 5730101, at *3-5 (S.D.N.Y. Sept. 10, 2015) (denying request for documents relating to plaintiff's litigation funding where "defendants did not show that the requested documents are relevant to any party's claim or defense"), *aff'd*, 141 F. Supp. 3d 246 (S.D.N.Y. 2015) (Marrero, J.); *Benitez v. Lopez*, No. 17 Civ. 3827, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019) ("The financial backing of a litigation funder is as irrelevant to credibility as [a party's] personal financial wealth, credit history, or indebtedness. That a person has received litigation funding does not assist the factfinder in determining whether or not the witness is telling the truth."); *Mackenzie Architects, P.C. v. VLG Real Ests. Devs., LLC*, No. 15 Civ. 1105, 2017 WL 4898743, at *3 (N.D.N.Y. Mar. 3, 2017) (denying request for litigation funding documents and noting that the "Court will not allow this already contentious case to now travel down an unfruitful path in pursuit of 'litigation motivation'"). In any event, Trump is now in possession of all the funding-related information about which Carroll has personal knowledge.

Trump's reliance on *Eastern Profit Corporation Limited v. Strategic Vision US, LLC*, No. 18 Civ. 2185, 2020 WL 7490107 (S.D.N.Y. Dec. 18, 2020), is misplaced. There, the court allowed conditional questioning on the source of the defendant's litigation funding not because it was related to a political motive, but rather because the defendant's knowledge on the matter was relevant to whether it reasonably relied on certain statements in entering a contractual agreement. *Id.* at *8. Indeed, Judge Liman clarified that "courts in this Circuit have rejected claims for such documents when the only asserted relevance is that they will permit the requesting party to peer into its adversary's strategy [or] the adversary's reasons for pursuing what the requesting party might believe is baseless litigation." *Id.*

*Second*, even if the discovery were relevant (and it is not), Trump's request to reopen discovery into these issues has been waived. As far back as August 21, 2020, Trump sought discovery into documents concerning "payment of attorneys' fees or other expenses" and "funds, payments, [or] donations … provided … in connection with this Action or in connection with any … consultations with any legal counsel." Ex. D at 8. Carroll objected on relevance grounds, but expressed openness to a mutual exchange of responsive documents if Trump disclosed information concerning the entity (or entities) paying his attorney's fees in this action. Ex. E at 7-8. Once the case was in federal court, on May 27, 2022, Trump again requested documents relating to "payment of attorneys' fees or other expenses" and "funds, payments, [or] donations … provided … in connection with this Action or in connection with any … consultations with any legal counsel." Ex. F at 8. On the same day, Trump served an interrogatory for the identity of all persons who have "provided … funds, payments, [or] donations … in connection with this Action

---

[4] Trump's mischaracterization of the timeline is further apparent in his discussion of George Conway. Carroll testified at her deposition that she had received the undersigned counsel's name from Conway at a social gathering in mid-July 2019, after she had published her book. *See* Ex. C at 206:13-16. That has no bearing on whether the rape occurred or whether Carroll wrote truthfully about the rape in her book. Trump, of course, knows all this because his counsel explored it during Carroll's deposition, and he has not pursued it further. That social interaction between Carroll and Conway has nothing whatsoever to do with the funding that Carroll's counsel obtained more than a year later.

or in connection with any … consultations with any legal counsel." Ex. G at 10. Carroll objected to both requests on relevance and other grounds. Ex. H at 10-11; Ex I at 13-14.[5]

And then Trump did nothing. He did not press or pursue the issue within the discovery period (presumably, in part, because he sought the strategic benefit of avoiding reciprocal discovery concerning how he has funded his defense in this litigation). His counsel did not raise the issue in any of the numerous meet-and-confers on discovery requests that the parties had throughout the summer of 2022. Trump did not file any motions to compel in connection with any of his requests.[6] As a result, the time to pursue those requests has long since passed.[7] *See, e.g.*, *Agapito v. AHDS Bagel, LLC*, No. 16 Civ. 8170, 2018 WL 3216119, at *2 (S.D.N.Y. May 17, 2018) (denying motion to reopen discovery and explaining that "to the extent that [defendants] unsuccessfully requested production of these documents from [plaintiffs], the appropriate response would have been a motion to compel"); *Kelly v. Wright Med. Tech., Inc.*, No. 00 Civ. 8808, 2003 WL 40473, at *1 (S.D.N.Y. Jan. 3, 2003) (Kaplan, J.) ("There is no persuasive reason to relieve [a party] of the consequences of her own failure to seek discovery ... in a timely fashion.").

*Third and finally*, Trump's request to reopen discovery obviously cannot be separated from his many prior efforts to delay adjudication of Carroll's claims. *See, e.g.*, *Carroll v. Trump*, 590 F. Supp. 3d 575, 587 (S.D.N.Y. 2022) ("[D]efendant's actions have been dilatory throughout the litigation."); *Carroll v. Trump*, No. 20 Civ. 7311, 2022 WL 6897075, at *1 (S.D.N.Y. Oct. 12, 2022) ("Mr. Trump has litigated this case since it began in 2019 with the effect and probably the purpose of delaying it."); *Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 2006312, at *2 (S.D.N.Y. Feb. 15, 2023) (denying defendant's request to reopen discovery where granting the request "almost surely would delay the trial again").

Indeed, it has since become even more apparent that some of Trump's prior efforts to delay the proceedings—much like this one—reflected overt bad faith and dilatory conduct. As the Court will recall, Trump made a request on February 6, 2023 to delay trial from April 17 to sometime in June so that his new counsel could find a replacement for Trump's psychiatric expert, Dr. Edgar Nace. *See* ECF 48. In connection with that request, Trump's counsel represented to the Court that Dr. Nace had to withdraw from serving as an expert after counsel learned on January 24 that Dr. Nace's wife's health "had taken an unexpected turn for the worse, [she] needed immediate surgery, *and faced a real risk of death*." ECF 48 at 2 (emphasis added). But at Dr. Nace's deposition, it

---

[5] Trump's letter erroneously suggests that Carroll's sole basis for objecting to these requests was attorney-client privilege. ECF 108 at 5. But Carroll asserted relevance and other objections, which Trump never challenged.

[6] It is not even clear what Trump could hope to obtain in reopened discovery. As we explained to Trump's counsel, Carroll has not been involved in any communications with the nonprofit organization or its financial supporters, and we have already disclosed the information as to which she has personal knowledge. Because Carroll may not testify as to matters about which she has no personal knowledge, *see* Fed. R. Evid. 602, any discovery that Trump may hypothetically seek would have no effect on the upcoming trial. It is, of course, facially absurd for Trump to insist that Reid Hoffman, who has never met or communicated with Carroll, possesses evidence bearing on the truth or falsity of Carroll's battery and defamation claims, and so the rules of discovery and the upcoming trial schedule must be upended to depose him at the eleventh hour.

[7] Trump did make identical requests regarding funding as part of his document requests in *Carroll II*, which, despite the limitations imposed on discovery in this action, were largely copied and pasted from his *Carroll I* requests. Carroll once again objected to producing responsive documents, Ex. J at 7-8, and Trump's counsel did not raise any issue with our objections.

KAPLAN HECKER & FINK LLP

became clear this was not true. Dr. Nace testified that there was never a time that he was "no longer able to perform [his] role as a rebuttal expert." Ex. K at 108:23-109:2. Although Dr. Nace explained that his wife did undergo a medical procedure on January 17 or 18 that led to a complication, that complication was immediately addressed by a reversal of the procedure the following day, and she did not undergo any other surgery until February 14. *Id.* at 142:21-143:20. As a result, Dr. Nace testified that his wife's health was "stable" between the time he was retained on January 9 and his deposition on March 15. *Id.* at 114:17-115:4. Although we do not seek to diminish the seriousness or importance of Dr. Nace's wife's ongoing health concerns, Trump's lawyers' representations to this Court of a life-threatening emergency in order to seek an extension of the trial date were not only incorrect, but irreconcilable with this sworn testimony.[8]

\* \* \*

The parties are hard at work preparing for trial. Until three days ago, it finally seemed that we were past Trump's dilatory tactics. But then, without any advance notice to us (despite multiple calls between the parties on April 10 and 11), he filed a motion on April 11 seeking a four-week adjournment to "cool[] off" from the flames he himself had fanned. *See* ECF 106, 107. He now seeks to reopen discovery based on an irrelevant issue, which he raised and then dropped as part of the discovery process. One thing is clear—Trump will stop at nothing to avoid having a jury hear Carroll's claims. This latest motion to adjourn the trial date should also be denied.

Respectfully submitted,

Roberta A. Kaplan

cc:   Counsel of Record

---

[8] As a fallback to his adjournment request, Trump seeks some sort of unspecified adverse inference against Carroll "with respect to her willful defiance of her discovery obligations." That is a meritless request. An adverse inference instruction is "an extreme sanction" that "should not be given lightly." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003); *see also Mali v. Fed. Ins. Co.*, 720 F.3d 387, 392 (2d Cir.2013); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002). Here, there is no basis at all—let alone an "extreme" basis—for sanctions. *First*, for the reasons explained above, evidence about third-party funding obtained well after the initiation of *Carroll I* is wholly irrelevant to the claims and defenses in this lawsuit. *Second*, Trump is simply wrong to assert that Carroll "failed to timely disclose responsive evidence" in response his "written demand for discovery"; as noted above, Carroll objected to those written requests on relevance grounds, and Trump made a choice not to pursue the issue any further in negotiations over written discovery demands. *Finally*, Carroll and her counsel acted appropriately at all times and certainly never acted with a culpable state of mind: Carroll testified truthfully at her deposition as to her recollection; she promptly informed Trump's counsel when she recollected additional information; and Carroll's counsel adhered to their ethical obligations in this process (which did not include any asserted obligation to volunteer information to Trump's counsel at odds with their client's own actual recollection). Because evidence about third-party funding is not relevant to any claim or defense that will be presented to the trier of fact, because Carroll had no obligation to produce any written discovery on this topic after her express objections sparked no pushback by Trump, and because Carroll upheld her obligations to testify truthfully when deposed and to disclose her subsequent additional recollection, there is simply no basis for any adverse inference in this case.