UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

               Plaintiff,

      -against-                            22-cv-10016 (LAK)

DONALD J. TRUMP,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER DENYING
## DEFENDANT'S REQUEST TO ADJOURN TRIAL

LEWIS A. KAPLAN, *District Judge.*

      Mr. Trump seeks a month-long postponement of the April 25, 2023 trial.[1]  He does so

on the theory that such a "cooling off" period following the media coverage of Mr. Trump's indictment

on New York State charges of falsification of business records is essential in order to select a fair and

impartial jury in this civil case for alleged rape and libel.

      There is no justification for an adjournment. This case is entirely unrelated to the state

prosecution. The suggestion that the recent media coverage of the New York indictment – coverage

significantly (though certainly not entirely) invited or provoked by Mr. Trump's own actions – would

preclude selection of a fair and impartial jury on April 25 is pure speculation.  So too is his suggestion

---

[1]     Mr. Trump requested in early February 2023 "an extension of all deadlines [in this case] by 6 weeks, including the commencement of trial." Dkt 48 at 4.  The Court denied that request, but moved the trial date from April 17, 2023 to April 25, 2023 as a personal accommodation to Mr. Trump's then newly engaged trial counsel. Dkt 54, Tr., Feb. 7, 2023, at 19. On April 13, 2023, it denied another recent motion for a month-long postponement.  Dkt 108, Dkt 110.

that a month's delay of the start of this trial would "cool off" anything, even if any "cooling off" were

necessary.  And "it is quite important to remember [also] that postponements in circumstances such

as this are not necessarily unmixed blessings from the standpoint of a defendant who is hoping for the

dissipation of what he regards, or says he regards, as negative publicity. Events happen during

postponements. Sometimes they can make matters worse."[2]

*Legal Standard*

   The decision whether or not to adjourn a trial date is entrusted to the discretion of the

trial court.[3]  The "[Second Circuit's] precedent instructs [the court] to be 'particularly solicitous of a

---

[2]
  *United States v. Al Fawwaz*, No. S10 98-1023 LAK, 2015 WL 400621, at *6 (S.D.N.Y. Jan. 23, 2015).

  Mr. Trump faces a number of criminal and civil investigations and litigation including (1) the United States Department of Justice special counsel's investigations of matters relating to the possible mishandling of classified documents as well as matters relating to the 2020 presidential election and the events of January 6, 2021, (2) a criminal investigation by the district attorney of Fulton County, Georgia, and (3) the New York Attorney General's civil lawsuit against Mr. Trump, his family, and the Trump Organization for alleged financial wrongdoing. *See* Laura Italiano and Jacob Shamsian, *Donald Trump's docket: All the legal cases and investigations Trump faces including felony charges in New York*, Apr. 4, 2023, BUSINESS INSIDER, https://www.businessinsider.com/donald-trump-key-cases-civil-criminal -investigations-lawsuits-updates-2022-7.  Developments in at least one of these matters, as well as actions and statements by Mr. Trump in relation to any, may well give rise to intense publicity that, in some respects, Mr. Trump might claim to be prejudicial in this case.  Mr. Trump's suggestion that a one-month trial postponement in this case would ensure the absence of any such developments in the period immediately preceding jury selection is not realistic.

[3]
  *E.g.*, *United States v. Cusack*, 229 F.3d 344, 349 (2d Cir. 2000) ("A district court has broad discretion to grant or deny a motion for a continuance."); *Sanusi v. Gonzales*, 445 F.3d 193, 199 (2d Cir. 2006) ("The largely unfettered discretion of a district judge to deny or to grant a continuance is evidenced in our deferential review of challenges to such decisions.");*United States v. Al Fawwaz*, 116 F. Supp. 3d 194, 209 (S.D.N.Y. 2015) ("Whether a continuance is appropriate is a case-specific determination entrusted to the discretion of the trial court.").

district court's ruling on a motion to adjourn the scheduled start of a trial proceeding.' . . . [The court]

will not disturb such a ruling absent a showing of 'clear abuse.' . . .  '[T]o make that showing, the

complaining party must establish both that the denial of the adjournment was arbitrary, and that it

substantially impaired the presentation of his case.'"[4]  As the Second Circuit explained:

> "Trial courts 'necessarily require a great deal of latitude in scheduling trials'
>
> because trials are difficult to administer from a logistical and organizational standpoint.
>
> *Morris v. Slappy*, 461 U.S. 1, 11 . . . (1983). 'Not the least of their problems is that of
>
> assembling the witnesses, lawyers, and jurors at the same place at the same time. . . .'
>
> *Id.* The Supreme Court has recognized that the existence of all these complexities
>
> 'counsels against continuances except for compelling reasons.'   *Id.* Because
>
> continuances can be highly disruptive to the courts and the parties, especially when
>
> granted close to the start of trial, *see, e.g.*, *United States v. Rivera*, 900 F.2d 1462, 1475
>
> (10th Cir.1990) ('[A]ny continuance granted practically on the eve of trial inevitably
>
> will disrupt the schedules of the court, the opposing party, and the witnesses who have
>
> been subpoenaed or who have voluntarily arranged their schedules to attend the trial.
>
> When, as here, a jury trial is involved, there is additional potential inconvenience to
>
> jurors and to the court.'); *cf. Moffitt v. Ill. State Bd. of Educ.*, 236 F.3d 868, 873 (7th
>
> Cir.2001) (' . . . [T]rial dates—particularly civil trial dates—are an increasingly
>
> precious commodity in our nation's courts.'), trial courts are entrusted with broad
>
> discretion to decide whether the stated purpose of a continuance warrants the

---

4

       *Lewis v. Rawson*, 564 F.3d 569, 577 (2d Cir. 2009) (fourth alteration in original) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 147-48 (2d Cir.1998)).

4

disruption and delay of granting one, *see Slappy*, 461 U.S. at 12 . . . ."[5]
In determining whether a continuance is warranted, courts also have taken into account whether there
is a "reasonable concern that the request [for an adjournment] [is] a delay tactic."[6]

*Recent Media Coverage of Mr. Trump's New York State Criminal Case*

The essence of Mr. Trump's argument for a postponement is simple enough.  His recent
indictment and arraignment in New York on charges of falsification of business records was attended
by a wave of media coverage.  That "coverage," according to Mr. Trump, "pertain[ed] to alleged
sexual misconduct, [(which, Mr. Trump argues, is)] the same issue at the heart of this litigation."[7]  This
trial, he says, therefore must be postponed to allow that coverage to cool down and hence to permit
selection of a fair and impartial jury in this case.  Although there was a great deal of media coverage
of the expected New York charges and then of the indictment and of Mr. Trump's arraignment, Mr.
Trump's argument breaks down at every subsequent step.

First, the premise that the "heart[s] of this litigation" and of New York indictment (as
well as media coverage of the latter) are the same is just wrong.  The "heart of this litigation" is
whether Mr. Trump did or did not rape or sexually assault Ms. Carroll in a dressing room at a New
York department store.  The apparent "heart" of the New York State indictment is whether Mr. Trump

---

[5]
        *Payne v. Jones*, 711 F.3d 85, 92–93 (2d Cir. 2013).  *See also Al Fawwaz*, 116 F. Supp. 3d
at 209-11 (discussion of Supreme Court and Second Circuit precedents on standard governing
requests to adjourn trial).

[6]
        *United States v. Liounis*, 639 F. App'x 731, 733 (2d Cir. 2016) (citing *United States v. Pascarella*, 84 F.3d 61, 68–69 (2d Cir.1996)).

[7]
        Dkt 106 at 2.

5

falsified business records to cover up an alleged payment of "hush money" to "Woman 2" (presumably an adult movie performer, Stormy Daniels), to induce Woman 2 to keep quiet about an apparently consensual and adulterous sexual relationship she claims to have had with Mr. Trump and that Mr. Trump denies. To be sure, at a certain level of generality, both cases do indeed have something to do with "sex." But the "something" that each has to do with it is dramatically different.

In the New York State case, the sex (if there was any) was between consenting adults. Its significance to the New York indictment, to whatever extent it has any, is only that a desire to conceal the consensual relationship allegedly was a motive for the alleged hush money payment and the alleged falsification of the business records. In this case, on the other hand, the sex (if there was any) was rape. And while both adultery and rape are offenses in New York, they are offenses that the Legislature regards as quite remarkably different in seriousness. Adulterous consensual sex, which is what allegedly occurred between Mr. Trump and Woman 2, while technically a (probably rarely if ever prosecuted) offense in New York, is a misdemeanor[8] punishable by a maximum sentence of three months imprisonment and/or a fine of $500.[9] Rape, which is what Mr. Trump allegedly did to Ms. Carroll, in contrast, is a serious felony[10] punishable by a substantial term of imprisonment.[11] Thus, the suggestion that a postponement is required in this case because the plaintiff's allegations in this case

---

[8]
> N.Y. Penal Law § 255.17.

[9]
> *Id.* §§ 70.15(2), 80.05(2).

[10]
> *Id.* § 130.35(1).

[11]
> Of course, Mr. Trump is sued in this case only civilly. He is not here being prosecuted criminally for rape. The rape, if rape occurred, took place years ago and was not reported to law enforcement or made public for over two decades.

are also "the heart" of those in the New York indictment – i.e., both involve "sexual misconduct"[12] –

is of very limited persuasiveness.[13] And, much more to the point, the likelihood that some prospective

jurors in this case might be prejudiced against Mr. Trump by knowledge of the indictment gleaned

from media coverage – in other words, that they would be more likely to find that Mr. Trump forcibly

raped Ms. Carroll due to media coverage of Mr. Trump's indictment that discussed his alleged

payment of hush money to Woman 2 in order to buy her silence about their alleged adulterous and

---

[12]

    Dkt 111 (Def. Reply Letter) at 2.

[13]

    Mr. Trump points out that a search of Google News for "Jean Carroll Donald Trump" "yield[ed] 1,440 results in the seven days [after] news of the indictment broke" compared to "355 results during the week before the news of the indictment broke." Dkt 106 at 2. But comparison of Google News search results alone reveals nothing meaningful. Many of the recent news articles about this case – even if they mentioned also Mr. Trump's indictment – reported developments in this case or explained "what to know about [this] upcoming trial." *E.g.*, Becky Sullivan, *What to know about the Trump-E. Jean Carroll trial that is set to begin this month*, NPR, Apr. 9, 2023, https://www.npr.org/2023/04/09/1168664355/trump-e-jean-carroll-lawsuit-trial; Mark Berman and Shayna Jacobs, *What to know about the Trump-E. Jean Carroll case set for an April trial*, THE WASHINGTON POST, Apr. 1, 2023, https://www.washingtonpost.com/national-security/2023/04/01/trump-e-jean-carroll-rape-lawsuit/; Megan Sheets, Clémence Michallon, Graeme Massie, Ariana Baio, *What we know about E Jean Carroll's rape allegations against Donald Trump*, THE INDEPENDENT, Apr. 12, 2023, https://www.independent.co.uk/news/world/americas/trump-rape-trial-e-jean-carroll-indictment-b2318564.html; Larry Neumeister, *Will Trump attend his rape trial? Judge wants to know*, AP NEWS, Apr. 10, 2023, https://apnews.com/article/trump-rape-lawsuit-columnist-f8918262ef228775a7a7918549d305c1; Jane Wester, *Lawyers for Trump, E. Jean Carroll Ask for Attorney-Only Disclosure of Jurors' Identities Before Civil Trial*, NEW YORK LAW JOURNAL, Apr. 7, 2023, https://www.law.com/newyorklawjournal/2023/04/07/lawyers-for-trump-e-jean-carroll-ask-for-attorney-only-disclosure-of-jurors-identities-before-civil-trial/; David Knowles, *Trump's next April court date in N.Y. is on rape allegations*, YAHOO! NEWS, Apr. 5, 2023, https://news.yahoo.com/trumps-next-april-court-date-in-ny-is-on-rape-allegations-193009519.html; Ashley Collman, *Trump's attorneys want to sniff out potential jurors in the E. Jean Carroll rape case who '#believewomen' about sexual abuse*, BUSINESS INSIDER, Mar. 31, 2023, https://www.businessinsider.com/trump-wants-to-question-rape-case-jurors-about-metoo-2023-3.

    The increase in searches to which Mr. Trump points likely is explained as a product of the imminence of its start rather than Mr. Trump's indictment.

consensual sexual relationship or even of Mr. Trump's "alleged treatment of women [that] [(Mr. Trump argues)] pervades that publicity"[14] – is a matter readily handled by a proper examination of prospective jurors.  Mr. Trump has failed to show any likely prejudice as a result of proceeding on the current schedule.

Second, even if there were a meaningful likelihood of prejudicial "rub off" from the media coverage of the New York State falsification of business records charges among those prospective jurors aware of those charges to Ms. Carroll's rape claim, and there is not, Mr. Trump's assertion that the media coverage of his indictment and arraignment was so overwhelming that a "cooling off" period is needed before selecting a jury in this case, and that it would be effective, is unproven and speculative, not to mention illogical.  There was, of course, a great deal of media coverage – some of it invited and, indeed, provoked by Mr. Trump – first of the apparently impending indictment, then the indictment itself, and finally the arraignment.  But the connection that Mr. Trump seeks to draw between that coverage and either the need for or the effectiveness of a "cooling off" period is unsupported by any evidence.  The relevant inquiry is not whether "prospective jurors will have the criminal allegations top of mind when judging [Mr.] Trump's defense against Ms. Carroll's allegations."[15]  Rather, the relevant question is whether they will be able to render a fair and impartial judgment regardless of whether they have his criminal allegations in mind at all.  As the Second Circuit has written:

"Although often appearing unfair in the eyes of the public, pretrial publicity,

_____

[14]

Dkt 111 at 2.

[15]

Dkt 106 at 1.

8

'even pervasive, adverse publicity—does not inevitably lead to an unfair trial.' . . . It should not be overlooked that a jury need not consist of persons entirely ignorant of the case they are about to hear; all that the Constitution requires is a jury that is impartial, one that is capable of fairly deciding on the evidence before it whether defendants are innocent or guilty."[16]

There is no reason to assume that a sufficient number of fair and impartial jurors cannot be found on April 25, 2023 or that it would be materially easier to find such jurors on May 23, 2023. And it is important to recognize that the *voir dire* of prospective jurors in this case, whenever it occurs, quite likely will include inquiry into prospective jurors' awareness, if any, of Mr. Trump's various legal troubles – past, present and perhaps future – and jurors' ability and willingness to render a fair and impartial verdict in this case, regardless of any prior knowledge or attitudes.  Indeed, both Mr. Trump's and Ms. Carroll's proposed examinations of prospective jurors include such questions.[17] Thus, the effect of granting Mr. Trump's requested postponement would not be to take the New York State charges off the table with respect to jury selection.  It would be only to postpone that discussion.

Finally, it bears emphasis that at least some portion of the recent media coverage of Mr. Trump's indictment was of his own doing.  There has been no shortage of recent news articles focused on Mr. Trump's own public statements on his social media platform and in press conferences and

---

[16]   *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 609 (2d Cir. 1988) (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976)).

[17]   Dkt 112-1 (Def. Prop. Jury Questionnaire) ¶¶ 11-16; Dkt 97 (Def. Prop. Voir Dire Questions) ¶ 9; Dkt 100-1 (Pl. Prop. Jury Questionnaire) ¶¶ 9-11; Dkt 99-3 (Pl. Prop. Voir Dire Questions) ¶¶ 24-25.

interviews he has given about his indictment.[18]  It does not sit well for Mr. Trump to promote pretrial

publicity and then to claim that coverage that he promoted was prejudicial to him and should be taken

into account as supporting a further delay.  At bottom, Mr. Trump has failed to show that there is

anything about the media coverage of his indictment or about the supposed efficacy of a "cooling off"

period that would warrant an adjournment of this trial.


*Other Considerations*

The Court takes into account also (1) the difficulties that would ensue for the Court,

the plaintiff, witnesses, and jurors should this trial be adjourned, and (2) its concern that the request

to adjourn this trial is another delay tactic by Mr. Trump.

A jury panel for this trial was summoned over three weeks ago. The Court and those

concerned with related issues including security, among others, have invested time and resources.  The

requested adjournment, if granted, would "disrupt the schedules of the [C]ourt, the opposing party, and

the witnesses who have been subpoenaed or who have voluntarily arranged their schedules to attend

the trial" and cause "additional potential inconvenience to jurors."[19]

It is difficult also to ignore the possibility that this latest eve-of-trial request for a

---

[18]

        *See, e.g.*, Dkt 105 at 2 n.2 (collecting recent news articles on Mr. Trump's statements against the New York State judge presiding over his criminal case and threats reportedly made by his supporters); Dkt 107 (Pl. Opposition to Def.'s Adjournment Request) at 4-5 (providing as an example Mr. Trump's interview on a Fox News show less than two hours before his counsel filed this request for a postponement).

[19]

        *Payne*, 711 F.3d at 92–93 (quoting *Rivera*, 900 F.2d at 1475).

10

postponement is a delay tactic by Mr. Trump, a concern the Court has discussed in previous rulings.[20]

It now has been more than three years since Ms. Carroll filed her first lawsuit against Mr. Trump

alleging that he raped her in the mid 1990s.  She now is over 79 years of age and is entitled to her day

in court just as both parties are entitled to a fair trial. "The . . . delay caused by adjournments and

other dilatory tactics[] not only hobbles justice but causes the public to mistrust the entire judicial

process."[21] In consideration of the ages of both parties and extensive pretrial litigation that has

occurred in both of Ms. Carroll's actions, it would not be in the interest of justice to permit further

delay absent a strong justification. Mr. Trump has not provided any such justification.


*Conclusion*

For the foregoing reasons, Mr. Trump's request to adjourn the trial (Dkt 106) is denied.

The trial will commence on April 25, 2023.

SO ORDERED.

Dated:       April 17, 2023

Lewis A. Kaplan
United States District Judge

---

[20]
E.g., Docket No. 20-cv-7311 (*Carroll I*), Dkt 73 at 19, 21; *Carroll v. Trump*, 590 F. Supp. 3d 575, 587-88 (S.D.N.Y. 2022)).

[21]
*Davis v. United Fruit Co.*, 402 F.2d 328, 330 (2d Cir. 1968).