# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

          *Plaintiff,*

    v.

DONALD J. TRUMP,

          *Defendant.*

No. 22 Civ. 10016 (LAK)

## PLAINTIFF E. JEAN CARROLL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCUSE JUROR NO. 77

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 5

    I.   THE COURT SHOULD EXCUSE JUROR NO. 77 .......................................................... 5

      A. Legal Standard ............................................................................................................ 5

      B. Inferred Bias Requires Dismissing Juror No. 77 ......................................................... 7

          1.  Tim Pool........................................................................................................ 7

              a.   Sexism and Attacks on Women Who Reveal Sexual Misconduct .................. 9

              b.   Positions on Trump's Media Portrayal and the Big Lie ................................. 12

              c.   Support for Right-Wing Extremist Groups..................................................... 15

          2.  Juror No. 77's *Voir Dire* Creates a Powerful Inference of Bias ........................... 17

CONCLUSION.......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Garcia v. Spokane Cnty.*,
   745 F. App'x 730 (9th Cir. 2018) ............................................................ 6

*Interpool Ltd. v. Patterson*,
   874 F. Supp. 616 (S.D.N.Y. 1995) ........................................................... 6

*Murphy v. Florida*,
   421 U.S. 794, 95 S. Ct. 2031 (1975) ........................................................ 7

*Pena-Rodriguez v. Colorado*,
   580 U.S. 206, 137 S. Ct. 855 (2017) ...................................................... 16

*Skilling v. United States*,
   561 U.S. 358, 130 S. Ct. 2896 (2010) ...................................................... 1

*Thiel v. Southern Pac. Co.*,
   328 U.S. 217, 66 S. Ct. 984 (1946) ........................................................ 17

*United States v. Bouchard*,
   No. 12 Cr. 381, 2014 WL 12675245 (N.D.N.Y. Feb. 10, 2014) ............ 6

*United States v. Colombo*,
   869 F.2d 149 (2d Cir. 1989) .................................................................. 19

*United States v. Devery*,
   935 F. Supp. 393 (S.D.N.Y. 1996) .................................................. 17, 19

*United States v. Greer*,
   285 F.3d 158 (2d Cir. 2002) ................................................................ 6, 7

*United States v. Nieves*,
   58 F.4th 623 (2d Cir. 2023) ............................................................... 6, 17

*United States v. Parse*,
   789 F.3d 83 (2d Cir. 2015) ................................................................. 6, 19

*United States v. Quinones*,
   511 F.3d 289 (2d Cir. 2007) .................................................................... 7

*United States v. Reese*,
   33 F.3d 166 (2d Cir. 1994) ...................................................................... 6

*United States v. Torres*,
   128 F.3d 38 (2d Cir. 1997) ............................................................ 6, 7, 17

*Wainwright v. Witt*,
   469 U.S. 412, 105 S. Ct. 844 (1985)..................................................................... 7

**Rules**

Fed. R. Crim. P. 24 .................................................................................................. 6

Fed. R. Civ. P. 48 .................................................................................................. 17

Fed. R. Civ. P. 47 .............................................................................................. 5, 6

## PRELIMINARY STATEMENT

In light of the Court's recent *voir dire* of Juror No. 77, it is clear that he is biased in ways requiring his dismissal from the jury. This inference of bias arises, in part, from the fact that Juror No. 77 has only a single choice of news source: an extreme right-wing podcaster who consistently, aggressively, and unreservedly espouses highly prejudicial views on social and political issues directly implicated by this case. Juror No. 77 otherwise obtains his news only through sources just like that podcast—and does so pursuant to an algorithm notorious for promoting extreme content. Most significantly, Juror No. 77 has described Pool's podcast as "independent," "middle," and "balanced." A juror who views Pool's podcast in that way may subjectively believe that he has no relevant bias, but has just as certainly confirmed that he does. No person capable of deciding this case fairly and impartially would seek out only Pool's content, rely on YouTube to promote other content based on Pool's podcast, and maintain that Pool's commentary is indeed "middle" and "balanced." Under these circumstances, Juror No. 77 should be dismissed from the jury.

## BACKGROUND

The *voir dire* process affords an essential opportunity to assess a potential juror's "fitness for jury service." *Skilling v. United States*, 561 U.S. 358, 386-87, 130 S. Ct. 2896, 2918 (2010). To that end, the Court conducted a thorough *voir dire* hearing to ascertain whether potential jurors held biases or prejudices that might make it difficult for them to decide this case fairly and impartially. *See* Tr. at 4:4-6 (explaining that the Court's questions aimed to uncover "attitudes and experiences in life … that can subtly or otherwise[] affect [a potential juror's] ability to be fair"). In doing so, the Court emphasized that "the selection of fair and impartial jurors is part of the bedrock of this country … and it is very important that you be candid in answering the questions I am going to ask you." *Id.* at 3:4-7. Given the nature of the issues, the Court designed a *voir dire*

process meant to smoke out potential bias on a wide range of issues. Among other topics, the Court's questions properly focused on bias concerning sexual assault allegations, bias concerning Mr. Trump, and bias concerning the potential perceived political stakes of this case.[1]

Juror No. 77 did not answer any of these questions in the affirmative. He thus denied having any opinions about those issues that could make it difficult for him to be fair and impartial in this trial. Later in the *voir dire* process, when the Court asked Juror No. 77 individual questions, he stated as follows (according to the original transcript): "31, security, live in the Bronx all my life, no kids that I know of. News basically I tend to avoid, but every now and then podcasts, mainly independent like Temple or some other people like that. Any questions?" Tr. at 59:23-60:1.[2] Ultimately, no party peremptorily struck Juror No. 77 and he was seated on the nine-person jury.

On April 26, 2023, we became aware of public news reports—apparently from journalists who also listened to the proceeding—that the original transcription was incorrect. They reported that Juror No. 77 had stated that he received his news from "Tim Pool" rather than "Temple." Those reports raised an urgent concern that Juror No. 77 should have been excused for cause (or should, at the very least, have faced further *voir dire*), and they potentially cast doubt on some of

---

[1] *See, e.g.*, Tr. at 32:3-6 ("Does any of you in the jury box have any opinion, one way or the other, about the MeToo movement or the slogan Hashtag Believe Women that would make it difficult for you to be fair and impartial to both sides in this case?"); Tr. at 37:25-38:5 ("Is there anybody who thinks that the fact that Ms. Carroll brought this lawsuit over 20 years after the alleged sexual assault which Mr. Trump denies is said to have taken place makes her less credible than she would have been if she had sued him or reported it to law enforcement more quickly?"); Tr. at 31:18-25 ("Have you ever belonged to or considered yourself a supporter of any of the following groups: Qanon, Antifa, Jane's Revenge, Indymedia, John Brown Gun Club, Redneck Revolt, Youth Liberation Front, the Communist Party of the United States, Proud Boys, Oath Keepers, Three Percenters, Eleven Percenters, Boogaloo Boys, National Social Club, otherwise, I gather, known as NSC-131, the Ku Klux Klan, the Thin Blue Line or, Trump Supporters New York City."); Tr. at 31:8-10 ("Is there anybody in the jury box or in the back of the room who believes or ever believed that the last presidential election was stolen?"); Tr. at 35:7-13 ("Have any of you read or heard, through the media or otherwise, about any legal cases or investigations involving Mr. Trump that would make it difficult or impossible to put that aside and decide this case fairly and impartially to both sides based solely on the evidence you see and hear in this courtroom?"); Tr. at 51:16-17 ("Do any of you feel that Mr. Trump has been unfairly treated by the press?").

[2] Pool has repeatedly expressed "incel" views that modern feminism has destroyed male-female relationships. *See* Feminist Politics Has Made Dating Nearly IMPOSSIBLE, Timcast IRL (Feb. 18, 2020), https://www.youtube.com/watch?v=6hZkbIacydk. Juror 77's identification of Pool as his main source of news may thus cast part of this answer in a darker light.

the answers that Juror No. 77 provided to the Court's other *voir dire* questioning. Accordingly, the very next morning, we filed a motion under seal setting forth our concerns and requesting that the Court undertake an additional *voir dire* of Juror No. 77 to assess potential bias.

That same day, the Court held a confidential conference in chambers. Tr. at 278-307. There, following discussion with the parties, the Court conducted further *voir dire* of Juror No. 77. At the outset, Juror No. 77 confirmed that he had indeed said "Tim Pool," not "Temple." Tr. at 284:12-14. When the Court asked him "what sort of podcast is Tim Pool?", Juror No. 77 initially responded, "He is like middle. He gets different political figures from the right." *Id.* at 284:15-18. The Court then said, "I'm sorry?", and Juror No. 77 elaborated, "He gets different, like political figures or just celebrities like that, on the left, on the right, you know, balanced." *Id.* at 284:20-22. Juror No. 77 then stated that because he has been "doing doubles" at work, he has listened to Pool only "three or four" times in the past six months. *Id.* at 285:3-12.[3] One of those episodes related to "the gender thing" and Juror No. 77 represented that he could not remember the topic of the others because "I [didn't] really pay attention [to them]." *Id.* at 285:7-9, 288:3-15.[4]

When the Court asked whether there are "other podcasts you listen to?", Juror No. 77 did not identify any other podcast or news source that he affirmatively seeks out or could describe by name. *See id.* at 285:13-15. Instead, he stated that he "doesn't have time to listen for anything longer than five minutes" but that he also lets random YouTube videos play, including after Pool's podcast. *Id.* at 285:8-9, 286:5-287:9. (Based on our review of "Timcast IRL," Pool's episodes are

---

[3] Attached as Exhibit A is a list of all videos created by Tim Pool and posted on YouTube in the past six months.

[4] The "gender thing" was later clarified to refer to transgender issues in schools. Among the episodes that Pool has hosted on the topic include: Riley Gaines ATTACKED By Trans Activists, School Claims THEY WERE PEACEFUL (Apr. 11, 2023); Police STOP Trans Male, Arrested For Plot Against School (Apr. 7, 2023); Group Calling For 'Trans Day Of Vengeance' SLAMMED For Firearms Training, Fear Of Conflict ESCALATES (Mar. 30, 2023); Matt Walsh CANCELS Events After Death Threats, Media Continues To Treat Nashville Shooter As Victim (Mar. 30, 2023); Twitter BANS "Trans Vengeance" Advocacy After Nashville Shooting w/Kimberly Guilfoyle (Mar. 28, 2023); Female Cyclist Retires After Getting Beaten By Trans Male (Mar. 24, 2023).

usually 10-15 minutes long.) Those random videos are chosen by YouTube's algorithm, which curates content based on a user's watch history. Those videos, as Juror No. 77 noted, are "other stuff kind of like what [the Juror] was listening to." *Id.* at 286:19-20. Juror No. 77 described this algorithm-driven content as "Usually middle, but sometimes it leans left or right." *Id.* at 287:13-15. Juror No. 77 then stated that he has never heard of "E. Jean Carroll," has not heard "anything on any of these podcasts of women bringing lawsuits about sexual harassment," and was "confident that he could be fair and impartial to both sides." *Id.* at 289:15-290:15.

After Juror No. 77 left chambers, the parties presented their arguments as to whether he should be excused. Carroll argued that he should be, observing that he obtains his news only from a single source with "extremist views" about "the election being stolen, really misogynist stuff about women." *Id.* at 290:22-291:2. These issues were "similar to the kinds of questions Your Honor asked." *Id.* at 291:7-8. Carroll's counsel added: "[T]he fact that the one place he can identify that he goes to for his daily news when he listens to news is this really virulently extremist podcast is of great concern to us as a matter of for cause challenge. Obviously, had we known, we would have struck him if we heard him correctly." *Id.* at 292:9-15. Later, Carroll's counsel also noted: "He may subjectively believe that [Tim Pool] is the left, the right, or the center. No objective observer in the world believes that to be the case.… What we are being asked to credit here is the idea that he does not share the beliefs or have any feelings about the beliefs that are the overriding message of the only place from which he apparently gets news…. I'm struggling to swallow the idea that he is only getting news from one source with a pronounced, consistent, relentless point of view on many issues at the heart of the *voir dire* in this case and yet we are being asked to believe that he hears it and it washes through him and leaves nothing in its wake." *Id.* at 295:8-25.

Trump's counsel disagreed. He stated that Juror No. 77 "is being incredibly candid and honest. First of all, he disclosed the fact that he listened to what we all thought was Temple but now is Tim Pool. And if he were trying to hide that or had some agenda here, he would never have done that." *Id.* at 293:9-13. Trump's counsel continued: "He said he only listened to it three or four times in the last six months. He had never heard of this case. You know, he says the news comes from the middle, sometimes the right, sometimes from the left.… I just don't think there is anything on this record that would cause us to remove him during trial." *Id.* at 293:24-294:1.

The Court ultimately invited Carroll to make an appropriate motion. *Id.* at 298:12-16. The Court stated: "I am viewing it—and if anybody disagrees, you tell me—that as long as I decide the question relating to the juror before the jury starts to deliberate, it's time enough. Everybody agree?" *Id.* at 302:13-17. All parties agreed. *See id.* The Court added: "The only thing we are dealing with I'm assuming—tell me if I am wrong—is whether to remove him or not." *Id.* at 302:19-21. Again, all parties agreed. *See id.* Finally, the Court observed, "In my very quick scan of the plaintiff's letter … I came away with the impression that it's their view that I have pretty broad discretion with respect to this juror and this stage in the proceedings and that possible—and I'm not even sure about this—possibly the central question for me to decide is whether I believe the rest—I shouldn't say the rest of it, that's just too broad—whether I'm satisfied ultimately that this answer that he could be fair and impartial to both sides is credible to me. Anybody have a different view of that?" *Id.* at 303:12-21. Here too, all parties agreed. *See id.* at 303:22-23.

## ARGUMENT

## I. THE COURT SHOULD EXCUSE JUROR NO. 77

### A. Legal Standard

Federal Rule of Civil Procedure 47(c) states that "[d]uring trial or deliberation, the court may excuse a juror for good cause." In interpreting this provision, courts have pointed to precedent

interpreting the analogous juror-removal provision in the Federal Rules of Criminal Procedure, which "establishes that the determination of whether to excuse a juror" for good cause "lies within the discretion of the trial court." *Interpool Ltd. v. Patterson*, 874 F. Supp. 616, 618 (S.D.N.Y. 1995) (citing Fed. R. Crim. P. 24(c)). Under Second Circuit law, "[a]ll that is needed to satisfy a prudent exercise of discretion is to be certain the trial court had sufficient information to make an informed decision." *United States v. Bouchard*, No. 12 Cr. 381, 2014 WL 12675245, at *28 (N.D.N.Y. Feb. 10, 2014) (quoting *United States v. Reese*, 33 F.3d 166, 173 (2d Cir. 1994)).[5]

Rule 47(c) covers instances where a court determines that a particular juror is unable to be impartial or follow its instructions. *See, e.g.*, *Garcia v. Spokane Cnty.*, 745 F. App'x 730, 731 (9th Cir. 2018) (juror dismissed for bias during trial after thorough questioning on the record). Accordingly, dismissing a juror for cause prior to deliberations may be warranted "based on one of three species of bias: (1) actual bias, or 'bias in fact'; (2) implied bias, or bias that is 'presumed as a matter of law' where a typical person in the juror's position would be biased, irrespective of whether actual bias exists; and (3) inferable bias, which arises 'when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias." *United States v. Nieves*, 58 F.4th 623, 632 (2d Cir. 2023) (quoting *United States v. Greer*, 285 F.3d 158, 171-72 (2d Cir. 2002)). Here, we are concerned about the third category. Therefore, the crucial question is whether Juror No. 77's *voir dire* responses "permit an inference that [he] would not be able to decide the matter objectively." *United States v. Torres*, 128 F.3d 38, 47 (2d Cir. 1997).

---

[5] For obvious reasons, this "good cause" standard is materially different than the more stringent standard to set aside a verdict due to juror misconduct after it has been rendered. *See, e.g.*, *United States v. Parse*, 789 F.3d 83, 110 (2d Cir. 2015) (To "grant a motion 'for a new trial based on juror nondisclosure or misstatements, the party must show that 'a juror failed to answer honestly a material question on *voir dire*, and that a correct response would have provided a valid basis for a challenge for cause." (cleaned up)).

As the Second Circuit has emphasized, "once facts are elicited that permit a finding of inferable bias . . . the juror's statements as to his or her ability to be impartial become irrelevant." *Id.*; *see also id.* at 44 ("[A] trial judge might find that a juror is biased even in a situation where, when specifically asked, the juror professes that he or she could be impartial."); *Wainwright v. Witt*, 469 U.S. 412, 428 & n.9, 105 S. Ct. 844, 854 & n.9 (1985); *Murphy v. Florida*, 421 U.S. 794, 800, 95 S. Ct. 2031, 2036 (1975). "Because in such cases the bias of a juror will rarely be admitted by the juror himself, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it, partiality necessarily must be inferred from surrounding facts and circumstances." *Torres*, 128 F.3d at 47 (cleaned up). This determination is squarely within a district court's discretion and "must be grounded in facts developed at *voir dire*." *Greer*, 285 F.3d at 172; *see also, e.g.*, *United States v. Quinones*, 511 F.3d 289, 302 (2d Cir. 2007) ("While blunt acknowledgment of bias may support removal without further inquiry, the more ambiguous a prospective juror's responses, the more useful demeanor, and thus oral inquiry, become in allowing a trial judge to identify partiality warranting removal for cause.").

## B. Inferred Bias Requires Dismissing Juror No. 77

As demonstrated below, an understanding of Pool's podcast and a careful review of Juror No. 77's *voir dire* testimony confirms that he should be dismissed from the jury at this time.

### 1. Tim Pool

Pool is a notorious far-right Youtuber who occasionally styles himself as an independent, balanced journalist. He first gained a following while covering Occupy Wall Street for *Vice Media*.[6] Since then, however, Pool has become a prolific voice in the extremist niche of the right-wing ecosystem that includes Alex Jones and Steve Bannon—both of whom have appeared on his

---

[6] Andrew Marantz, *The Live-Streamers Who Are Challenging Traditional Journalism*, New Yorker (Dec. 4, 2017).

podcast.[7] Pool's role in promoting extremist personalities and causes has been widely documented, including with respect to 2020 election denialism and white supremacist groups.[8]

Although Pool sometimes makes claims designed to maintain a superficial veneer of balance,[9] he elsewhere freely admits his extremist, right-wing ideological allegiances: "There's disparate factions among the left and the right. Certainly, I'm not a traditional conservative, but they would associate me with the right-wing tribe in this country, and I think that's fair, absolutely."[10] Pool's entire project—as he has described it—is to "dish[] red pills every day"[11] to his audience so that they perceive the radical positions he espouses as natural and centrist.[12]

Pool doesn't dish those "red pills" at random. Instead, he maintains a determined focus on certain topics—including issues fundamental to this case and the Court's *voir dire* questioning. In

---

[7] Joe Rogan, Alex Jones, Blaire White, Michael Malice & DrewHLive Join The Crew LIVE (Nov. 16, 2021), https://www.youtube.com/watch?v=3IRyjNDVv3s; Reps Matt Gaetz And Dan Bishop Join To EXPOSE J6 Breaking news w/Steve Bannon, Timcast IRL (Mar. 10, 2023), https://www.youtube.com/watch?v=nwoXou5zWiE; GameStop; Stock Apes WIN, Hedge Fund COLLAPSES w/Steve Bannon, Timcast IRL (June 22, 2021), https://www.youtube.com/watch?v=B_nUUzvrjJQ.

[8] Michael Edison Hayden, *'We Make Mistakes': Twitter's Embrace of the Extreme Far Right*, Southern Poverty Law Center (Jul. 7, 2021) (describing Pool as a "reactionary social media performer" "who uses his YouTube show to showcase far-right extremists such as Enrique Tarrio of the Proud Boys and the neo-Nazi collaborator Jack Posobiec"); Kari Pail, *A Few Rightwing 'Super-Spreaders' Fueled Bulk Of Election Falsehoods, Study Says*, The Guardian (Mar. 5, 2021) (identifying Tim Pool as one of "the 'repeat spreaders' responsible for the most widely spread misinformation" of which bad a "rightwing" bent); Andrew Marantz, *The Live-Streamers Who Are Challenging Traditional Journalism*, New Yorker (Dec. 4, 2017) (noting that Pool uses his media platform to amplify the voices of far-right extremists while weighting their opinions "more or less equally").

[9] *E.g.*, Biden DOJ Files SEDITION Charges Against OathKeepers, Leader Stewart Rhodes Arrested With 10 Others, Timcast IRL (Jan. 13, 2022), https://www.youtube.com/watch?v=ZHklYfAXiKc ("Now, I'll be the first to say if these guys did engage in some kind of conspiracy, then by all means prosecute them. Lock them up. I mean it.").

[10] Tucker Carlson ROASTS Ted Cruz For Calling Jan 6th Terror, Trump is RIGHT Not To Address Media Lies, Timcast IRL (Jan. 6, 2022), https://www.youtube.com/watch?v=CGaUHPaqyLU.

[11] Tim EXPLODES, Slams The People Who REFUSE To Stand Up To The Mob, Timcast IRL (June 23, 2020), https://www.youtube.com/watch?v=BKTUQzDFwW4.

[12] The term "red pill" comes from The Matrix (a 1999 film starring Keanu Reeves). It is used by white supremacist and other "alt right" groups to connote a pill that one swallows to see the "truth" or reality about the state of race and gender issues in the United States. *See* Kaitlyn Tiffany, *The Alt-Right Has Lost Control of Redpill*, The Atlantic (Apr. 13, 2021) ("About eight years ago, boys who were spending too much time on the internet—usually on 4chan or Reddit—began to use taking the red pill as code for 'choosing to realize that feminism is destroying society and my life.' The phrase was adopted by other far-right political subcultures and slowly came to mean that a person had been radicalized in some way.").

particular, the videos posted on Pool's YouTube channel maintain a clear, consistent refrain of: (1) misogynistic statements and attacks on women who reveal sexual misconduct; (2) support for claims that the 2020 election was stolen and that Trump is treated unfairly by the news media; and (3) defenses of well-known, misogynistic, and Trump-supporting extremist groups. Although we do not know which three or four episodes Juror No. 77 has watched in the past six months (Pool posts approximately five videos per day), Juror No. 77 implied that he used to watch more episodes before his recent spate of double shifts. Tr. at 285:7-9. We therefore describe Pool's content not to illustrate specific videos that we believe Juror No. 77 has watched, but instead to provide a clear and thorough description of his sole chosen news source (which he used to listen to more often).

### a. Sexism and Attacks on Women Who Reveal Sexual Misconduct

Pool has consistently and vociferously attacked allegations of sexual misconduct without basis or reason, even as he has relished in the perceived failures of the MeToo movement and described women in sharply misogynistic terms. This is readily evidenced by just a small sampling of titles from his YouTube podcast, which regularly features such content:

- MeToo Is Officially DEAD, Woke Corporate Press PANICS Over Amber Heard Losing To Johnny Depp
- Feminist Tries to "MeToo" God, The Final Boss Of The Patriarchy
- Me Too BACKFIRE Is Getting Worse, Feminist Thinks Men Are Trying To Punish Women On Purpose
- MeToo Backlash? Men REFUSE To Save Women's Lives Over Fear Of False Accusations
- MeToo Backlash, ANOTHER Politician Refuses To Be Alone With Woman
- Several More MeToo Accusations Fall FLAT, Neil Degrasse Tyson Has Won In All Investigations
- Katy Perry Is Getting MeToo'd BAD, ANOTHER Accuser Comes Forward??!

- Feminist Me Too NPO Took MILLIONS In Donations And Put 90% In Paying Themselves
- Keanu Reeves Exposes The Sad State Of Me Too Feminism
- Feminist Politics Has Made Dating Nearly IMPOSSIBLE
- #MeToo Backlash Keeps Getting WORSE As MORE Men Won't Work With Women

Pool's social media presence—which reflects his podcast persona—includes frequent misogynistic language and attacks on women who reveal sexual misconduct.[13] So does his podcast itself, which regularly messages that women make up false allegations of sexual assault and seek to profit from such conduct. In one episode, Pool asserted that many lawsuits filed in the MeToo setting are really designed to help fundraise for unrelated purposes—and, in support of that claim, he discussed a litigation defense fund that had been created to support victims of sexual abuse:

> What they do here is they say this cause is getting bad, and if you don't fight it now it's going to get worse. That's why they need something like Time's Up, that's why they need something like MeToo, so they can say remember in the news you heard about that women and that guy? That's right, donate if they came out and said we want to fight for a cause to, like, you know, pass some diversity and inclusivity law or whatever. For businesses, you'll be like I'll do it later, but if you come out now and say these women need your help they're suing, they're going after these guys, they're going to get them locked up, then people donate. But then they go ahead and use that money as they see fit.[14]

---

[13] *See, e.g.*, https://twitter.com/Timcast/status/1258079126763769858?s=20 ("I don't care about 30 year old allegations against Biden, Trump or Kavanaugh."); https://twitter.com/Timcast/status/1640889398265892866?s=20 (Believe women?); https://twitter.com/Timcast/status/1621305128987885572?s=20 (defending the notorious sexual abuser Andrew Tate in a tweet stating "believe all women unless they go against your narrative wtf"); https://twitter.com/Timcast/status/1459499031625936899 ("If sex work is work then can a boss require women to suck his dick as a job requirement?").

[14] Feminist Me Too NPO Took MILLIONS In Donations And Put 90% In Paying Themselves, Timcast (Nov. 29, 2020), https://www.youtube.com/watch?v=0zAtyktqrQs.

The very fund discussed in this episode was founded in part by lead counsel for Carroll in this case,[15] and Pool's other statements in the episode reveal plain hostility toward MeToo claims.

Elsewhere, in an episode about allegations against Neil deGrasse Tyson, Pool implied that women collect photographs with famous men to bolster false, later-invented assault accusations:

> He grabbed a woman's arm to look at her tattoo of the solar system, I believe, and she got mad at him later. Here she is smiling. He's got his arm around her, he takes her arm, and looks at it. She was not upset that he put his arm around her. This was—apparently there were four women who accused Neil deGrasse Tyson of inappropriate behavior. All—and, and I don't want to talk about the others—but I will point to this specifically and say what do you think happens when a celebrity [referring to Keanu Reeves and photographs in which he is not touching the women he's pictured with] sees this high-profile target, lots of money, and you don't know where the line is and no one else cares.[16]

A significant document already admitted into evidence in this case as PX-12 is a decades-old photograph of Carroll with Trump. This is precisely the kind of relevant evidence supporting an older sexual assault claim about which Pool spoke so disparagingly on his podcast.

But there is more. Consistent with his focus on attacking women who reveal sexual misconduct, Pool has at least twice commented on this case and Carroll's allegations. In a June 2019 episode of his video podcast, he described Carroll's allegations and stated: "This woman: should we take her seriously? In my opinion, no.… I'm sorry, when you're accusing someone of a crime 30 years after the fact I don't know what we can do for you."[17] And just *a few days ago*, Pool referenced these proceedings in a video. Implying that trial was moving forward only because

---

[15] Bruce Haring, *Time's Up Empowerment Group Starts Legal Defense Fund For Sex Harassments*, Deadline (Jan. 1, 2018).

[16] Keanu Reeves Exposes The Sad State Of Me Too Feminism, Timcast IRL (June 11, 2019), https://www.youtube.com/watch?v=1WFkvXxbZTI.

[17] Trump Latest Accuser Jumped The Shark, CNN Cuts To Commercial, Timcast IRL (June 25, 2019), https://www.youtube.com/watch?v=SC4bJTnepMU.

Trump is the defendant—and that the case otherwise should not be heard—Pool said that Carroll is "accusing him of rape from like 50 years ago or something, and yup they got it in the courts."[18]

Pool thus has a marked and steady pattern of urging listeners to doubt allegations of sexual assault, especially if they involve conduct that occurred long ago, involve famous defendants and include photographic evidence, are part of any perceived MeToo or Time's Up agenda, or involve women's rights figures including Carroll's lead counsel. Needless to say, those issues are all potentially relevant in this case, and the Court thus inquired about many of them in *voir dire*.

### b. Positions on Trump's Media Portrayal and the Big Lie

Given Trump's political prominence—and given that he is accusing Carroll and other witnesses of inventing sexual assault allegations for political or PR purposes—the Court's *voir dire* included questions meant to suss out any relevant bias. Pool has been a leading voice on such topics as an outspoken critic of the media's treatment of Trump, as a prominent spreader of election disinformation, and as a supporter of Trump's lies about the 2020 election.

In fact, earlier this month, Pool interviewed Donald Trump Jr. and stated the following:

> I mean you guys are a very wealthy powerful family. I know celebrities who have when your dad was running in 2016 with all the negative press who would be like well I know the trumps they're actually really nice and good people they're super generous but you know he's a racist now I guess and I'm not going to vote for him. I I'm wondering like if you want to elaborate on the transformation from like you mentioned going to the Cool Kids Club then deciding to get involved in politics and now like the media's gone nuts and they treat you like trash. Yeah listen like I said it was interesting you know.[19]

---

[18] Georgia DA Plans To INDICT TRUMP, Puts Police On 'Heightened Security', Timcast IRL (Apr. 26, 2023), https://www.youtube.com/watch?v=o-t83P9QrR4.

[19] Donald Trump Jr CALLS IN To Timcast IRL SLAMMING Political Persecution Of Trump, YouTube (Apr 1, 2023), https://www.youtube.com/watch?v=1HJh-t7bR6s.

This was just one of many similar interventions by Pool in support of Trump and in opposition to perceived unfair press coverage of him. *See, e.g.*, Trump REINSTATED By Facebook, Trump ROASTS FB For Losing BILLIONS, FB LIES About Why Trump Was Axed, YouTube, Timcast IRL (Jan. 26, 2023) ("[B]ut this is the gaslighting because now here's how it works Facebook releases a statement saying we banned Trump for this reason the media then says Facebook says they banned Trump for this reason people then say yeah Trump got banned for praising violent groups that's how it works. I've talked about this with people internally, you've got to understand how the framing of media works and how it pertains someone like Trump.")[20]; Democrats are PANICKING Over Massive Trump Protest in DC, ALL GUNS Banned from City on January 6, Timcast IRL (Jan. 4, 2021) (describing January 6 coverage as media "depravity" to Trump).[21]

This position goes hand in hand with Pool's role as a superspreader of disinformation about the results of the 2020 election and the Capitol riot.[22] In the months leading up to the presidential election in 2020, Pool—who publicly supported Trump's 2020 candidacy—was already laying the groundwork to deny the results of the 2020 election. In September 2020, he released a video entitled: "Trump Is Starting To WIN In Key Swing States, But Mail In Voter Fraud Is Likely."[23] Indeed, the House January 6 Select Committee highlighted a video from Pool's Youtube channel in which he had amplified Trump's message, promising a "wild" protest.[24] Pool has continued to

---

[20] https://www.youtube.com/watch?v=5CKd_yEUKxQ.

[21] https://www.youtube.com/watch?v=hkodowwc-JI&t=280s.

[22] Michael Edison Hayden, *'We Make Mistakes': Twitter's Embrace of the Extreme Far Right*, Southern Poverty Law Center (Jul. 7, 2021).

[23] Trump Is Starting To WIN In Key Swing States, But Mail In Voter Fraud Is Likely, Timcast (Sept. 3, 2020), https://www.youtube.com/watch?v=7sFNPJ4ZjYw.

[24] User Clip: Tim Pool YT – 1, C-SPAN (July 12, 2022), https://www.c-span.org/video/?c5023303/user-clip-tim-pool-yt-1.

peddle claims of voter fraud—and has repeatedly accused Democrats of misconduct, even as he stated that if Democrats hold office "democracy itself is over and they will kill your children."[25]

Pool has also been outspoken in his defenses of the Capitol rioters. Immediately after the riot, he minimized the attack and suggested that "the left is using this essentially as their 9/11, basically to enact sweeping new laws and social restrictions and things like that."[26] On January 6, 2022, Pool derisively said that the mainstream media had been referring to the anniversary as "Insurrection Day." "I have been tweeting this," he said, "Never forget. January 6, also known as freedom day will forever be the day we remember the 100-day siege on the U.S. from the White House to federal courthouses to small-town America. Dozens lost their lives to the democrat-supported carnage."[27] As recently as October of last year, Pool—in his typical doublespeak—accused Nancy Pelosi of orchestrating the Capitol riot as part of some vast partisan conspiracy:

> Videos of police officers taking selfies with people, videos of police officers opening the door, saying "I don't agree with it but I respect it." And then Nancy Pelosi saying "I've been waiting for this"—for the trespassing on the Capitol grounds, and she has a camera crew with her. Do you want to buy a lottery ticket now? Because all of these things happening as a coincidence— No, I don't know that Pelosi was involved in anything. I'm not saying that Nancy Pelosi orchestrated anything. What I'm saying is probable cause now exists for subpoenas and an investigation into what exactly was she waiting for and why was she waiting for trespassing on the Capitol grounds. That's an extremely specific thing to say that you're waiting for.[28]

---

[25] *See, e.g.*, Democrat ADMITS To Voter Fraud On The View, Says She Voted FOR Her Son, Liberals RUSH To Excuse, Timcast IRL (Nov. 9, 2022), https://www.youtube.com/watch?v=C5KkpW0OncM; *see also* Tim Pool, https://twitter.com/Timcast/status/1590096564928024576?s=20 (tweet with hateful claims about Democrats).

[26] New Poll Says 71% Of Trump Supporters Feel Civil War is Coming, 40% Of Biden Voters Say The Same, Timcast IRL (Jan. 10, 2021), https://www.youtube.com/watch?v=5aZS64bwPvk.

[27] Tucker Carlson ROASTS Ted Cruz For Calling Jan 6th Terror, Trump is RIGHT Not To Address Media Lies, Timcast IRL (Jan. 6, 2022), https://www.youtube.com/watch?v=CGaUHPaqyLU.

[28] SHOCKING Video Shows Pelosi Saying She WANTED Jan 6th To Happen And Threatening To ATTACK Trump, Timcast IRL (Oct. 14, 2022), https://www.youtube.com/watch?v=e5oHKkwOqwA.

Pool's podcast is thus defined by attacks on perceived press unfairness toward Trump, on the legitimacy of the 2020 presidential election, and on the truth about January 6, 2021. Each of these themes is plainly relevant to assessing potential bias, as confirmed by the *voir dire* process.

### c.     Support for Right-Wing Extremist Groups

As summarized by Media Matters, "many of the individuals Pool invites on his [podcast] show are extremists, bigots, or conspiracy theorists. Sometimes, they're all three."[29] The *New Yorker* has similarly noted that Pool uses his media platform to amplify the voices of far-right extremists while weighing their opinions "more or less equally."[30] As summarized by the *Daily Beast* in a broader profile of Pool's role in stoking extremism in the run up to January 6:

> What Pool kept secret from his younger, overwhelmingly male, decidedly right-leaning audience during this time is that he seemed to have a pretty good idea what might happen on Jan. 6.
>
> "Dude, I've had messages from people saying that they've already got plans to rush to D.C. as soon as Nov. 3 goes chaotic," Pool said in early September during a recorded conversation reviewed by The Daily Beast.
>
> A few minutes later, Pool added: "The right-wing militias, the Oath Keepers, the Three Percenters, and just the Proud Boys and Trump supporters, they are going to rush full-speed to D.C. They are going to take the White House and do whatever they can and paramilitary." (Pool made these comments to then-colleagues at the media company he started. The following month, Pool used his YouTube platform to say the Oath Keepers had been unjustly "smeared" by the Southern Poverty Law Center. He habitually comes to the defense of the Proud Boys, as well.)[31]

---

[29] Justin Horowitz, *Extremists, Bigots, And Conspiracy Theorists: Youtuber Tim Pool's 2022 Guests In Review Pool*, Media Matters (Dec. 20, 2022).

[30] Andrew Marantz, *The Live-Streamers Who Are Challenging Traditional Journalism*, The New Yorker (Dec. 4, 2017).

[31] Robert Silverman, *How 'Coward and Phony' Tim Pool Became One of the Biggest Political YouTubers on the Planet*, Daily Beast (Aug. 3, 2021).

Consistent with this report, the Southern Poverty Law Center has described Pool as a "reactionary social media performer … who uses his YouTube show to showcase far-right extremists such as Enrique Tarrio of the Proud Boys and the neo-Nazi collaborator Jack Posobiec."[32]

Thus, in one podcast video on YouTube, Pool reacts incredulously to Canada designating the Proud Boys as a terrorist group. He guesses that "Democrats, Joe Biden, the House, [and] the Senate" may do the same in the name of censorship, and he minimizes the Proud Boys' actions as "go[ing] around and get[ing] drunk and then complain[ing] about SJWs."[33] In another, he forecasts that "continued [speeches] against the Proud Boys may lead to civil war."[34] In yet another, he criticizes the government's sedition conspiracy charges against certain Oath Keepers, including Stewart Rhodes, and again suggests that we are a country on the brink of civil war.[35]

Of course, these individuals and groups—all celebrated by Pool—are notorious for their misogyny, their racism, and their political embrace of Trump.[36] The Court's *voir dire* thus covered support for (and membership) in various extremist groups, and a juror inclined to defend or support these groups would undoubtedly present a substantial risk of bias in resolving this case.[37]

---

[32] Michael Edison Hayden, *'We Make Mistakes': Twitter's Embrace of the Extreme Far Right*, Southern Poverty Law Center (Jul. 7, 2021).

[33] Proud Boys Are Officially A Terror Group In Canada, Former CIA Says Treat US Citizens As Insurgents, Timcast IRL (Feb. 3, 2021), https://www.youtube.com/watch?v=auvMhsvy_lM.

[34] New Poll Says 71% Of Trump Supporters Feel Civil War Is Coming, 40% Of Biden Voters Say The Same, Timcast IRL (Jan. 10, 2021), https://www.youtube.com/watch?v=5aZS64bwPvk.

[35] Biden DOJ Files SEDITION Charges Against OathKeepers, Leader Stewart Rhodes Arrested With 10 Others, Timcast IRL (Jan. 13, 2022), https://www.youtube.com/watch?v=ZHklYfAXiKc ("[A]t a certain point right-wing groups will be purged and arrested they'll be up against the establishment left which currently controls the reins of power."). A jury later found Rhodes and another Oath Keeper guilty of sedition conspiracy charges. https://www.justice.gov/opa/pr/leader-oath-keepers-and-oath-keepers-member-found-guilty-seditious-conspiracy-and-other.

[36] *See* Ben Collins & Brandy Zadrozny, Proud Boys Celebrate After Trump's Debate Callout, NBC News (Sept. 29, 2020); Peter Baker, Trump's Far-right Embrace, N.Y. Times (Nov. 29, 2022); *"Venerating the Housewife:" A Primer on Proud Boys' Misogyny*, Anti-Defamation League (Aug. 12, 2021).

[37] Such a juror would also present a separate risk of confounding jury deliberations, given the mixed-race nature of the jury that has been selected for these proceedings. *Cf. Pena-Rodriguez v. Colorado*, 580 U.S. 206, 223, 137 S. Ct. 855, 868 (2017) (*voir dire* process must "ensure that individual who sit on juries are free of racial bias").

## 2. Juror No. 77's *Voir Dire* Creates a Powerful Inference of Bias

Inferable bias arises "when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause." *Nieves*, 58 F.4th at 632. Therefore, the ultimate question here is whether Juror No. 77's *voir dire* responses "permit an inference that [he] would not be able to decide the matter objectively." *Torres*, 128 F.3d at 47. If such an inference is permitted, then Juror No. 77's own statements concerning his impartiality "become irrelevant," since he may have "an interest in concealing his own bias" or (more probable here) "may be unaware of it." *Id.* (cleaned up). In deciding these issues, the Court need not address the competence of any general class of person to serve on the jury; instead, it engages in an individualized inquiry based on Juror No. 77's credibility and testimony as reflected in the *voir dire* process. *See United States v. Devery*, 935 F. Supp. 393, 400 (S.D.N.Y. 1996); *see also Thiel v. Southern Pac. Co.*, 328 U.S. 217, 220, 66 S. Ct. 984, 986 (1946).

Although news sources alone generally would not support disqualifying a juror, Juror No. 77's *voir dire* testimony evinces a clear risk of partiality justifying his dismissal from the jury—which has been seated with enough members to deliberate and reach a verdict if Juror No. 77 is excused. *See* Fed. R. Civ. P. 48(b) ("Unless the parties stipulate otherwise, the verdict must be unanimous and must be returned by a jury of at least 6 members."). When asked where he gets his news, Juror No. 77 originally singled out "Pool" while claiming to follow "some other people like that." Tr. at 59:23-60:1. When questioned again, Juror No. 77 made clear that there are no particular "other people." Rather, Pool is the *only* source of news that he seeks out, and he otherwise relies on YouTube's algorithm (which has been primed by his Pool viewership) to find any additional, similar content. *Id.* at 286:2-23. Of course, it is well known that YouTube's algorithm tends to promote even *more* ideologically extreme content than a viewer starts with. *See*

Kevin Roose, *The Making of a YouTube Radical*, N.Y. Times (June 8, 2019); Kelly Weill, *How YouTube Built a Radicalization Machine for the Far-Right*, Daily Beast (Dec. 19, 2018); Zeynep Tufekci, *You Tube, the Great Radicalizer*, N.Y. Times (Mar. 10, 2018).

As we have demonstrated, Pool's podcast is defined by a consistent, relentless, and extraordinarily prejudicial viewpoint on many of the most fundamental issues that structured the Court's *voir dire* in this case. A juror who shared or meaningfully sympathized with Pool's views on even a single one of these issues would presumptively be excusable for cause (and should, at minimum, have answered "yes" in response to some of the Court's original *voir dire* inquiries).[38]

Juror No. 77's unusual *voir dire* testimony—in which he identified only a single podcast as his go-to source of information and commentary, and that podcast is defined by extremely prejudicial perspectives on core issues in this case—thus offers a clear basis to infer that he may not decide this case impartially. That is particularly true given Juror No. 77's repeated claim that Pool's podcast is "independent," Tr. at 59:25, "middle," Tr. at 284:17, and "balanced," Tr. at 284:22. Simply put, it appears that Juror No. 77 has swallowed the "red pill": he believes that the content on Pool's podcast is genuinely neutral or balanced, and he does not perceive it as reflecting any biased view of the world or the issues in this case. That subjective belief may explain why Juror No. 77 seems to think he has no relevant bias. But it just as certainly confirms that he does. A juror who views Pool as his only desired source of news, who otherwise listens only to podcasters cut from the same mold as Pool, and who views Pool and his guests as reflecting a "balanced" perspective, has plainly demonstrated relevant bias—even if unaware of it.[39]

---

[38] As counsel for Plaintiff noted during the sealed conference in chambers, if such a juror were not excused for cause, he would be a prime candidate for a peremptory strike.

[39] *See, e.g.*, Justin Horowitz, *Extremists, Bigots, And Conspiracy Theorists: Youtuber Tim Pool's 2022 Guests In Review Pool*, Media Matters (Dec. 20, 2022).

There are two potential alternative explanations for Juror No. 77's testimony. The first explanation would be that he is dissembling: he is aware of Pool's right-wing views, he shares those views, he hoped they would not be detected when he described Tim Pool as "independent" at *voir dire*, and he hopes to sit on the jury so that he can inject his biases into this high-stakes case. If the Court reaches that conclusion, Juror No. 77 certainly must be dismissed. *See, e.g.*, *Parse*, 789 F.3d at 11; *United States v. Colombo*, 869 F.2d 149, 151-52 (2d Cir. 1989).

Still another potential explanation is that Juror No. 77 may exclusively seek out Pool's podcast (and others just like it) without sharing or sympathizing with any of Pool's views on the issues at stake here (even though those views constitute core, repetitive themes of Pool's show). But that potential explanation is contradicted by the record. Juror No. 77 made clear that he embraces core aspects of Pool's beliefs, including when he described Pool as "independent," "middle," and "balanced"—all terms that Juror No. 77 used approvingly (and all terms borrowed from Pool's "red pill" strategy). It is not credible that Juror No. 77 has placed Pool at the heart of his limited news coverage, and has come to view Pool as "balanced," only to ignore or reject Pool's unyielding message that would manifestly cause him to be biased. Given Juror No. 77's description of Pool as reflecting an "independent" approach that he evidently admires, it is simply implausible that Juror No. 77 could be fair and impartial in deciding this case. Such "mental gymnastics" would be "too precarious and too strenuous" to expect of him. *Devery*, 935 F. Supp. at 401.[40]

At the confidential conference conducted on April 27, 2023, Your Honor observed that the relevant question is "whether [the Court is] satisfied ultimately that [Juror No. 77] could be fair

---

[40] This situation would be akin to if a juror identified a site like 8chan as among their primary news sources in a case about race discrimination, described that site as "balanced," and maintained that it did not affect their thinking at all. *See* Julia Carrie Wong, *8chan: the far-right website linked to the rise in hate crimes*, The Guardian (Aug. 4, 2019).

and impartial to both sides." Tr. at 303:12-21. We agree with that framing of the question—and, as set forth above, the answer is "no." Accordingly, Juror No. 77 should be excused from the jury.

## CONCLUSION

For the foregoing reasons, Juror No. 77 should be excused from the jury at this time.

Dated: New York, New York
        April 30, 2023

Respectfully submitted,

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*