UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

                Plaintiff,

      -against-              Case No. 22-cv-10016 (LAK)

DONALD J. TRUMP,

                Defendant.

**DEFENDANT DONALD J. TRUMP'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCUSE JUROR NO. 77**

## INTRODUCTION

President Trump respectfully submits this memorandum of law in opposition to Plaintiff's motion to excuse Juror No. 77.[1] As set forth more fully below, there is no basis to find that Juror No. 77 should be excused from the jury and Plaintiff's motion should be denied.

## ARGUMENT

Under Federal Rule of Civil Procedure 47(c), "the court may excuse a juror for good cause." The parties agree the "central question" the Court must decide here is whether Juror No. 77's "answer that he could be fair and impartial to both sides is credible" to the Court. Apr. 27, 2023 Tr. 303:12-21. It is the Plaintiff's burden on this motion to establish that Juror No. 77 cannot be impartial and that he harbors a disqualifying bias. *See Knapp v. Leonardo*, 46 F.3d 170, 176 (2d Cir. 1995) (juror bias requires the challenger to show "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.") (*quoting Irvin v. Dowd*, 366 U.S. 717, 723 (1961)); *see also United States v. Ragland*, 375 F.2d 471, 475 (2d Cir. 1967) ("burden of proving [juror] prejudice rests with the challenger"). The record does not support Plaintiff's claim, and she has failed to meet this burden.

Most of Plaintiff's motion is dedicated to describing the views of Youtuber/journalist Tim Pool, not Juror No. 77. *See* Plaintiff's Mem. of Law, ECF No. 162 at 7-16. Plaintiff unreasonably attempts to attribute all of Mr. Pool's stated views to Juror No. 77. But Juror No. 77 is not Tim Pool. In fact, Juror No. 77 stated under oath that he listened to Pool "maybe three or four" times "in the last six months." Trial Tr. at 285:3-12.

Plaintiff attacks Juror No. 77's description of Mr. Pool as someone who runs a podcast down the "middle," "gets different political figures from the right" "or just celebrities like that,

---

[1] ECF No. 161.

on the left, on the right, you know, balanced." Transcript at 284:17-22; *see also* Mem. at 1. There is no reason to suspect Juror No. 77's description of the show was meant to mislead this Court, as Mr. Pool's show has, in fact, covered a variety of subjects with a variety of guests, including a discussion with television actor Mark Pellegrino regarding the charges against Alec Baldwin,[2] and a discussion with Damien Echols of the "West Memphis Three" who was released from death row after 18 years following the availability of new DNA evidence.[3] It is also untrue that Pool's commentary is universally pro-conservative. *See* Pool, "Conservatives Don't Understand Manga or Anime."[4]

In any event, a juror's political affiliation is not grounds for dismissal, even in cases involving a political figure. If it were, this Court would have asked prospective jurors to state their political affiliation during *voir dire*. Instead, the Court asked jurors whether they have "ever belonged to or considered yourself a supporter" of various groups widely considered to hold extreme political views (*e.g.*, QAnon, Proud Boys, etc.) and whether they "believe[] or believed that the last presidential election was stolen." Trial Tr. at 31:8-10; 35:7-13. Juror No. 77 answered "No" to those questions, and his answers are entitled to a presumption of truth. *United States v. Cox*, 324 F.3d 77, 87 (2d Cir. 2003) ("a court should generally presume that jurors are being honest").

Plaintiff argues that at most, the Court can excuse this juror not based on actual bias, or presumed bias, but from an "inferred" bias. Pl. Mem. at 6. Inferable bias arises "when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the

---

[2] https://www.youtube.com/watch?v=zUi-1PzJ-Kw

[3] https://www.youtube.com/watch?v=YoIqXVlYCqc

[4] https://www.youtube.com/watch?v=OuPELJ4NtY8

3

trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias." *United States v. Greer*, 285 F.3d 158, 171-72 (2d Cir. 2002) (reviewing juror's pretrial contact with a third party and finding no inferable bias).

Plaintiff repeatedly cites *United States v. Torres*, 128 F.3d 38, 47 (2d Cir. 1997) to support her assertion that Juror No. 77's bias must be inferred. But *Torres* does not bear the slightest resemblance to the facts of this case. In *Torres*, the district court excused a juror who had been "involved in activities like that charged in the indictment" (namely, structuring financial transactions). The Second Circuit held that "it was reasonable for Judge Preska to conclude" that the juror may "have felt personally threatened" in confronting the legality of their own past acts. Thus, *Torres* stands for the proposition that personal experiences similar to the ones on trial *may* permit a finding of inferred bias (and even then, the Second Circuit cautioned that "we do not hold that, even in such circumstances, the district court would have erred had it kept Juror No. 7 on the jury," *id.* at 47-48). This is simply not the case here; Juror No. 77 is not even alleged to have a personal experience similar to the ones alleged in this case.

Moreover, while Plaintiff argues a juror's statements regarding their ability to be impartial "become irrelevant" once facts are elicited that permit a finding of inferable bias, Mem. at 7 (citing *Torres*), she cites only half the standard. *Torres* added the caveat that a "judge may—particularly when considering whether some marginal types of disclosed facts are enough to show inferable bias—ask about a juror's impartiality and ***might be persuaded by the force of the juror's assurance*** (even though another judge would have discretion to take the disclosed fact and make a finding of inferred bias without further inquiry)." *United States v. Torres*, 128 F.3d 38, 47, n.12 (2d Cir. 1997) (emphasis added).

4

Here, Juror No. 77 candidly and without hesitation disclosed his occasional consumption of Tim Pool's podcast. If Juror No. 77 was a right-wing, agenda-driven juror seeking to be impaneled as a stealth juror, he would not have mentioned this podcast to the Court at all.

Indeed, Juror No. 77 provided a host of detailed and honest answers. He answered he had never heard of Ms. Carroll:

- The Court: "Have you ever heard anything on any podcasts about Jean Carroll?" Juror: *No. This is the first time I heard about her."* Tr. at 289:21-23.

He could not recall hearing any podcasts in which lawsuits on sexual harassment were discussed:

- The Court: Have you ever heard anything on any of these podcasts about women bringing lawsuits about sexual harassment? Juror: *No, not that I can think of."* Tr. at 290:2-5.

He discussed that the scope of his media consumption in the past six months was extremely limited:

- The Court: So it's a political podcast? Juror: *Sometimes. Not always. Sometimes it is just like certain events going on. But, yeah, I haven't been in a while, just because of work. We are not allowed to, you know, use phones.* The Court: How often in the last six months have you listed to the show? Juror: *Let me see. Six months.* The Court: More or less. Juror: *About maybe three or four. It's hard to say because work gets – I've been doing doubles, so I don't have time to listen for anything longer than five minutes.* The Court: So three or four times you listened in the last six months? Juror: *Yeah, about."* Tr. 284:23 – 285:12.

And he explained that the longest he had listened to a Tim Pool podcast in the past six months involved approximately fifteen minutes of content concerning transgender students:

- The Court: And what is the longest – we are talking about the last six months, and I understand you have only had it on three or four times in the last six months, what's the longest you ever listened to Tim Pool for . . . Juror: *Probably 14 or 15, and it was regarding something about the school with the kids.* The Court: The shootings? Juror: *No, not the shootings, the gender thing.* The Court: Ah, yes, transgender. Juror: *Yes.* Tr. 287:22 – 288:8.

5

This Court then made a reasoned credibility determination at that time that Juror No. 77 may continue to sit. Tr. 298:9-10. Had the Court been concerned with the demeanor or veracity of Juror No. 77's responses at that time, presumably the Court would have asked further questions and/or dismissed this juror. It did not. And nothing warrants a reversal of this credibility finding. And to the extent that the Plaintiff would have exercised a peremptory challenge to strike Juror No. 77, the Defense may have also made different decisions on peremptory strikes had Juror No. 77 been struck.

Indeed, no matter how many pages Plaintiff writes about Mr. Pool, or the characterization of some of his podcasts, Plaintiff has not and cannot make any showing that Juror No. 77 actually listened to any particular episode or shares any specific viewpoint that is discussed on that show. At most, the material Plaintiff provided and Juror No. 77's statements in *voir dire* support an inference that this juror consumes media that is generally aligned with the political right. This says nothing about the juror's own views, which the Court declined to interrogate.

Simply put, listening to "five minutes" of a podcast three to four times in the past six months—even if that podcast may at times reflect a political alignment shared by a party to civil litigation—does not meet the "inferred bias" standard in *Torres*. *See also United States v. Greer*, 285 F.3d 158 (2d Cir. 2002) (reviewing a juror's pretrial contact with a third party and finding no inferable bias); *United States v. Maxwell*, No. 20-cr-330 (AJN), 2022 WL 986298 (S.D.N.Y. April 1, 2022) (finding no inferable bias from a juror's childhood sexual victimization); *United States v. Nix*, 275 F.Supp.3d 420 (W.D.N.Y. 2017) (no inferred bias of juror with burglary conviction in case involving charges under the Hobbs Act); *United States v. Adeniyi*, No. 03-cr-86 (LTS), 2004 WL 1077963 (S.D.N.Y. May 12, 2004) (finding no inferable bias from a juror's history of bounced checks); *United States v. Liu*, 69 F.Supp.3d 374, 384 (S.D.N.Y. 2014) (finding

no inferable bias from a juror's interest in speaking with "FBI guys, judge, and AUSAs" about mystery writing); *C.f. United States v. Nieves*, 58 F. 4th 623 (2d Cir. 2023) (finding the trial court declining to question jurors about their gang-related ties abused discretion by impermissibly leaving bias unexamined).

At bottom, Plaintiff is asking the Court to make a bias finding because Juror No. 77 acknowledged occasionally listening to a podcast that might be considered conservative at times. This is not sufficient ground on which to infer bias. Under the Plaintiff's logic, police officers cannot serve on criminal cases, or jurors interested in women's rights issues cannot serve on sex discrimination cases. The law does not permit cause excusals based on such broad judgments about jurors' ability to serve fairly. *United States v. Rowell*, 457 F. App'x 49, 51 (2d Cir. 2012) ("It is well established that the mere fact of membership on a police force is not presumptively a disqualification for service on a jury in a criminal trial.); *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387 (1st Cir. 2002) (claim that juror's "interest in women's issues naturally correlates to" bias against employers and male defendants was "unfounded") (quoted in *United States v. Feng Ling Liu*, 69 F. Supp. 3d 374, 384 (S.D.N.Y. 2014)).

## CONCLUSION

For the foregoing reasons, there is no basis to find that Juror No. 77 should be excused from the jury and the Plaintiff's motion should be denied.

Dated: New York, New York
      May 2, 2023

TACOPINA, SEIGEL, & DeOREO

By: _____
Joseph Tacopina, Esq.
Chad Seigel, Esq.
Matthew G. DeOreo, Esq.
275 Madison Ave., Fl. 35
New York, New York 10016
Tel: (212) 227-8877
Fax: (212) 619-1028
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
mdeoreo@tacopinalaw.com

Counsel for Defendant, Donald J. Trump