N592CAR1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    E. JEAN CARROLL,
3
                    Plaintiff,              New York, N.Y.
4
            v.                              22 Civ.10016 (LAK)
5
    DONALD J. TRUMP,
6
                    Defendant.
7   ------------------------------x        Jury Trial

8                                          May 9, 2023
                                           10:05 a.m.
9
    Before:
10
                        HON. LEWIS A. KAPLAN,
11
                                           District Judge
12                                            and a Jury

13
                            APPEARANCES
14
    KAPLAN HECKER & FINK LLP
15        Attorneys for Plaintiff
    BY:   ROBERTA A. KAPLAN
16        MICHAEL J. FERRARA
          SHAWN G. CROWLEY
17        MATTHEW J. CRAIG

18
    TACOPINA SEIGEL & DeOREO
19        Attorneys for Defendant
    BY:   JOSEPH TACOPINA
20        CHAD D. SEIGEL
          MATTHEW G. DeOREO
21

22  HABBA MADAIO & ASSOCIATES, LLP
          Attorneys for Defendant
23  BY:   ALINA HABBA
          MICHAEL T. MADAIO
24

25  W. PERRY BRANDT
          Attorney for Defendant

N592Car1                         Charge

1              (Trial resumed; jury not present)

2              THE COURT:  Good morning, everyone.

3              COUNSEL:  Good morning, your Honor.

4              THE COURT:  Before I bring the jury in, I want to

5     alert you to the fact——and my law clerk will distribute copies

6     to counsel——that I am intending to make a small change in I

7     think it's the last paragraph of the proposed charge, the next

8     to last paragraph, headed "Juror Oath."  I will give you a

9     second to read it.  It's only a couple of paragraphs.

10             (Pause)

11             THE COURT:  Okay.  Ms. Kaplan, any objection to that?

12             MS. KAPLAN:  No objection, your Honor.

13             THE COURT:  Any objection, Mr. Brandt?

14             MR. BRANDT:  No, your Honor.

15             THE COURT:  Okay, fine.  Let's bring in the jury.

16             We still have the issue of that slide and it will be

17    our Court Exhibit C, but we will do that after the jury

18    retires, I think, and before that exhibit goes in, if it does.

19             Bring in the jurors.

20             THE DEPUTY CLERK:  Ladies and gentlemen in the

21    spectator gallery, the Court is about to charge the jury.  You

22    must either remain seated throughout the duration of the charge

23    or leave at this time.

24             (Jury present)

25             THE COURT:  Good morning, folks.  I hope everybody had

a relaxing evening.

The record will reflect the jurors are all present.

Members of the jury, we have reached the point in the trial where you are going to begin your final function as jurors.  My instructions to you are going to be in four parts.

First of all, your verdict in this case will be in the form of answers to questions on a verdict form, and I'm going to ask Aditi to pass out copies of the verdict form to you so that you can follow along.

I should say also that I will send in to the jury room, when you retire to deliberate, a typewritten copy of the entire set of instructions I am giving you, so you are free to take notes or not, whatever suits you.

In the course of my instructions, I, of course, am going to explain the verdict form and the law that applies to it.  I will instruct you about the trial process, including the burden of proof.  I will give you instructions concerning your evaluation of the evidence and my final words to you will be with respect to the conduct of your deliberations.

Now, of course you know that the plaintiff in this case, E. Jean Carroll, is suing the defendant, Donald Trump, for money damages for injuries she claims to have suffered as a result of an alleged incident with Mr. Trump in a New York department store in the mid 1990s and as a result of an allegedly defamatory statement Mr. Trump made about her in

N592Car1                        Charge

1    October 2022.

2              In support of the first claim, Ms. Carroll alleges

3    that Mr. Trump recognized her at the department store and asked

4    her to help him select a present for a woman who was not at the

5    store.  The two of them allegedly went to the lingerie

6    department, where Mr. Trump allegedly insisted that Ms. Carroll

7    try on a bodysuit, and she allegedly responded that he should

8    try it on himself.  According to Ms. Carroll, the pair

9    allegedly went to a dressing room and Mr. Trump allegedly

10   closed the dressing room door.  Ms. Carroll claims that

11   Mr. Trump then pushed her against the wall and kissed her

12   without her consent.  After she allegedly pushed him away and

13   laughed at him, she claims that he pushed her against the wall

14   again, pulled down her tights, and forcibly raped her before

15   she managed to push him away and flee the store.  Ms. Carroll

16   claims that this alleged conduct by Mr. Trump constituted a

17   battery as that term is used in the civil, as opposed to

18   criminal, context in this case.  Mr. Trump, as you know, denies

19   that this ever happened.

20             Now, the second claim in the case is based on a

21   statement Mr. Trump posted on social media on October 12, 2022,

22   in which he said that he didn't know Ms. Carroll, that her

23   story is a "Hoax and a lie," and that she changed her story

24   from the beginning to the end in an interview on CNN while she

25   was promoting her book in which she described the alleged

incident with Mr. Trump, among other things.  Ms. Carroll
claims that Mr. Trump's statement was false and defamatory and
that she suffered reputational, emotional, and professional
harm as a result of his statement.  Mr. Trump denies that his
statement was false or defamatory.

Now, I'm just going to cover something that I, in
part, anyway, covered right at the beginning of the case, but
two weeks have gone by, and so I'm going to cover it just
briefly again.

Ms. Carroll's first claim is called a claim for
battery.  I explained to you before what a battery claim is in
the context of a civil lawsuit.  Ms. Carroll's claim that
Mr. Trump raped her is a civil battery claim that she was
permitted to bring in this case because it falls under a new
law that New York enacted in 2022, called the Adult Survivors
Act.  Under the Adult Survivors Act, persons who allegedly were
abused sexually as adults, but whose time within which to sue
for damages for any such abuse had expired, were given a new
one-year period within which to sue their alleged abusers.  The
Adult Survivors Act thus "revived," in common language, claims
that otherwise might have expired.

Now, the Adult Survivors Act defines the kinds of
sexual misconduct for which that statute temporarily revived
the ability to bring civil lawsuits for damages, and it did it
by referring to the criminal law definitions of certain sex

crimes.  Ms. Carroll claims that Mr. Trump is liable to her for
battery on three different and alternative bases, each of which
corresponds to a criminal law definition of a different sex
crime.  Mr. Trump denies that he is liable to her for battery
on any of these three different and alternative bases.
Accordingly, the first set of questions in the verdict form has
to do with whether or not Ms. Carroll has established that
Mr. Trump's conduct, if any, came within any of those criminal
law definitions.  But I emphasize to you that this is a civil
case for damages.  It is not a criminal case.

        Now, if you look on the verdict form, you will see the
first question is whether Ms. Carroll proved by a preponderance
of the evidence that Mr. Trump raped her.  It's a yes/no
question.  I am going to explain the preponderance of the
evidence standard, which is incorporated in that question,
later on.  But right now I am going to tell you the required
elements of rape under the New York law.

        In order to establish that Mr. Trump raped her,
Ms. Carroll must prove each of two elements by a preponderance
of the evidence.

        The first element is that Mr. Trump engaged in sexual
intercourse with her.

        The second element is that Mr. Trump did so without
Ms. Carroll's consent by the use of forcible compulsion.  So
let me define each one of those terms.

1          "Sexual intercourse" means any penetration, however

2     slight, of the penis into the vaginal opening.  In other words,

3     any penetration of the penis into the vaginal opening,

4     regardless of the distance of penetration, constitutes an act

5     of sexual intercourse.  Sexual intercourse does not necessarily

6     require erection of the penis, emission, or an orgasm.

7          Now, of course, I hope you will forgive me for this

8     very explicit language, but I have no alternative——nobody has

9     in this case——in discussing the elements of the alleged

10    battery.

11         I also used the phrase "forcible compulsion," and what

12    that means is intentionally to compel by the use of physical

13    force.

14         If you find that Ms. Carroll has proved by a

15    preponderance of the evidence both of those two elements, you

16    will answer Question 1 "yes."  If you answer Question 1 "yes,"

17    I instruct you that Mr. Trump thus committed battery against

18    Ms. Carroll.  There would be no need to consider whether he

19    committed battery on either of the other two alternative bases.

20    Remember, I said there were three alternatives.  So if you

21    answer Question 1 "yes," you will skip question 2 and question

22    3 on the verdict form and go right on to question 4.  If you

23    find that Ms. Carroll has not proven either of the two elements

24    of rape by a preponderance of the evidence, you must answer

25    "no" to Question 1 and go on to Question 2, which deals with

1    the second of the three alternative bases for the battery

2    claim.

3          The second theory of battery corresponds to something

4    called sexual abuse.  Sexual abuse has two elements.  In order

5    to establish that Mr. Trump sexually abused her, Ms. Carroll

6    must prove each of two elements by a preponderance of the

7    evidence.

8          The first element is that Mr. Trump subjected

9    Ms. Carroll to sexual contact.

10          The second element is that he did so without

11    Ms. Carroll's consent by the use of forcible compulsion.

12          So let me define "sexual contact" for you.  Sexual

13    contact for this purpose means any touching of the sexual or

14    other intimate parts of a person for the purpose of gratifying

15    the sexual desire of either person.  It includes the touching

16    of the actor by the victim, as well as the touching of the

17    victim by the actor, and the touching may be either directly or

18    through clothing.

19          Now, I just used the term or the phrase "sexual or

20    intimate part" in defining sexual contact.  For this purpose, a

21    "sexual part" is an organ of human reproduction.

22          So far as intimate part is concerned, the law does not

23    specifically define which parts of the body are intimate.

24    Intimacy, moreover, is a function of behavior and not just

25    anatomy.  Therefore, if any touching occurred, the manner and

circumstances of the touching may inform your determination

whether Mr. Trump touched any of Ms. Carroll's intimate parts.

You should apply your common sense to determine whether, under

general societal norms and considering all the circumstances,

any area or areas that Mr. Trump touched, if he touched any,

were sufficiently personal or private that it would not have

been touched in the absence of a close relationship between the

parties.

I mentioned also that the touching, if any, of any

sexual or intimate parts must have been for the purpose of

gratifying the sexual desire of either party.  Sexual

gratification is a subjective determination that may be

inferred from the nature of the acts committed and the

circumstances in which they occurred.  There is no requirement

that actual gratification occur, but only that the touching, if

there was any, was for that purpose.

The second element of this theory is forcible

compulsion.  I defined that for you a couple of minutes ago

when I told you the elements of rape, and here, as there, it

means intentionally to compel by the use of physical force.

If you find that Ms. Carroll has proved by a

preponderance of the evidence both of the two elements that I

just referred to, the two elements of sexual abuse, then you

will answer "yes" to Question 2.  If you answer yes to Question

2, I instruct you that Mr. Trump thus committed battery against

N592Car1                    Charge

1    Ms. Carroll.  There would be no need to consider whether he

2    committed battery on the third alternative test.  So if you

3    answer Question 2 "yes," you therefore will skip Question 3 and

4    go on to Question 4.  If you find that Ms. Kaplan has not

5    proven either of the two elements of sexual abuse by a

6    preponderance of the evidence, you must answer "no" to

7    Question 2 and proceed to Question 3, which deals with the

8    third of the three alternative bases for the battery claim.

9    And if you will forgive me for a minute, I'm going to get a

10   drink of water.

11          The third alternative of battery is something called

12   forcible touching.

13          Forcible touching occurs when a person intentionally,

14   and for no legitimate purpose, forcibly touches the sexual or

15   intimate parts of another person for the purpose of degrading

16   or abusing that person or for the purpose of gratifying the

17   actor's sexual desire.  It has five elements.

18          The first element is that Mr. Trump touched a sexual

19   or intimate part or parts of Ms. Carroll.  I have already

20   defined the terms "sexual or intimate parts," and you will

21   apply that definition here on the issue of forcible touching.

22          The second element of forcible touching, as the name

23   implies, is that the touching of any of Ms. Carroll's sexual or

24   intimate part or parts, if any occurred, must have been

25   forcible.  Forcible touching includes squeezing, grabbing,

N592Car1                      Charge

1    pinching, rubbing, or other bodily contact that involves the

2    application of some level of pressure to the victim's sexual or

3    intimate parts.  Any bodily contact involving the application

4    of some level of pressure to another person's sexual or

5    intimate parts qualifies as forcible touching.

6           The third element of forcible touching is that the

7    forcible touching, if any, was intentional.  "Intent" means

8    conscious objective or purpose.  Thus, a person intentionally

9    forcibly touches the sexual or intimate parts of another person

10   when that person's conscious objective or purpose is to do so.

11          The fourth element of forcible touching requires that

12   the forcible touching, if there was any, of Ms. Carroll by

13   Mr. Trump must have been for the purpose of degrading or

14   abusing her or for the purpose of gratifying Mr. Trump's sexual

15   desire.  I have already defined the term "sexual

16   gratification," and you will apply that instruction here in

17   deciding whether Ms. Carroll has proved that Mr. Trump forcibly

18   touched her for the purpose of gratifying his sexual desire.

19   If you do not find that the forcible touching of Ms. Carroll,

20   if there was any, was for the purpose of gratifying Mr. Trump's

21   sexual desire, you must consider whether the forcible touching,

22   if any, was for the purpose of degrading or abusing

23   Ms. Carroll.

24          The fifth and final element is that the forcible

25   touching, if there was any, was committed without consent.

Forcible touching takes place without a person's consent when it results from any circumstances in which a person does not expressly or impliedly acquiesce to the actor's conduct.

If you find that Ms. Carroll has proved by a preponderance of the evidence all five of these elements, of forcible touching, you will answer Question 3 "yes." If you answer Question 3 "yes," I instruct you that Mr. Trump thus committed battery against Ms. Carroll. In that event, you will go on to Question 4. If you find that Ms. Carroll has not proven one or more of the elements of forcible touching by a preponderance of the evidence, you must answer "no" to Question 3. You will skip Questions 4 and 5 and go on to Question 6, which begins the questions relating to Ms. Carroll's defamation claim.

But let me now instruct you on Questions 4 and 5.

Questions 4 and 5 deal with the subject of damages in relation to Ms. Carroll's battery claim. My instructions to you on the law of damages should not be taken by you as a hint that you should find for the plaintiff. That is for you to decide by answering the questions I have put to you based on the evidence presented. But if you answer "yes" to any of Question 1, Question 2, or Question 3, you will have determined that Ms. Carroll has prevailed on her claim of battery. In that event, it will be your task to determine from the evidence a dollar amount, if any, that would justly and adequately

compensate Ms. Carroll for any physical injury, pain and

suffering, and mental anguish, as well as emotional distress,

fear, personal humiliation, and indignation that she has

suffered, or will suffer in the future, as a result of

Mr. Trump's alleged rape, sexual abuse, or forcible touching as

the case may be.

You may award damages only for those injuries that you

find Ms. Carroll has proved by a preponderance of the evidence.

Compensatory damages may not be based on speculation or

sympathy.  They must be based on the evidence presented at

trial and only on that evidence.

Now, if you answer "yes" to Question 4——and here I

invite your attention to the verdict form——in other words, if

you conclude that Ms. Carroll has proved by a preponderance of

the evidence that she was injured as a result of any of the

three theories of battery by Mr. Trump that I have already

explained, she would be entitled to a dollar amount to

compensate her adequately and fairly for any physical injury,

pain and suffering, mental anguish, emotional distress, and the

other things I just mentioned a moment ago, that she suffered

by virtue of Mr. Trump's alleged battery, in other words, his

alleged rape, sexual abuse, or forcible touching, as the case

may be.  Damages may be awarded based on a plaintiff's

subjective testimony of pain, but the plaintiff's proof must

satisfactorily establish that the injury is more than minimal.

1   So if you answer Question 4 "yes," you will determine the

2   amount that would fairly and adequately compensate Ms. Carroll

3   for the injuries she allegedly sustained as a result of

4   Mr. Trump's battery and enter that amount in the space provided

5   in Question 4 of the verdict form, which is right down at the

6   bottom of page 1.

7         On the other hand, if you answer "no" to Question

8   4——that is, if you decide that Ms. Carroll has not proved by a

9   preponderance of the evidence that she was injured as a result

10  of Mr. Trump's conduct, if any——you will write down in the

11  blank space provided on your form, and it appears at the top of

12  page 2, the figure $1.  That represents nominal damages.

13        Regardless of your answers to Question 4, you will go

14  on to Question 5.

15        Question 5 deals with the subject of punitive damages.

16        In the event you find Mr. Trump liable to Ms. Carroll

17  for battery——that is, for rape, sexual abuse, or forcible

18  touching——you may, but you are not required to, award

19  Ms. Carroll punitive damages in addition to any compensatory

20  damages that you may award.

21        You may award punitive damages if Ms. Carroll proved

22  by a preponderance of the evidence that Mr. Trump's conduct, if

23  any, that caused Ms. Carroll's alleged injury was wanton and

24  reckless or done with a conscious disregard for Ms. Carroll's

25  rights.  Punitive damages may be awarded for conduct that

reflects a high degree of immorality.  The purpose of punitive

damages is not to compensate the plaintiff.  It is to punish

the defendant for wanton and reckless acts or acts done with a

conscious disregard for the rights of the plaintiff, and

thereby to discourage the defendant and other people like him

from acting in a similar way in the future.

          The first part of Question 5 asks you to determine

whether Ms. Carroll has proved by a preponderance of the

evidence that Mr. Trump's conduct, if any, was done with

willful or wanton negligence, or recklessness, or a conscious

disregard of the rights of Ms. Carroll, or was so reckless as

to amount to such conscious disregard.  "Wantonly" means

causelessly, without restraint, and in reckless disregard of

the rights of others.  "Willfully" means with knowledge that

the conduct would result in a violation of a known legal duty.

"Negligence" means the omission to perform a duty as well as

the commission of an act that would violate a duty.  You are

instructed that Mr. Trump had a duty to exercise reasonable

care not to injure Ms. Carroll.  A person acts "recklessly"

when he or she is aware of and consciously disregards a

substantial and unjustifiable risk—a risk that is of such a

nature and degree that disregarding it constitutes a gross

deviation from the standard of conduct that a reasonable person

would observe in the situation.

          If you answer "yes" to the first part of Question

N592Car1                    Charge

5—in other words, if you find that Ms. Carroll has proved by a
preponderance of the evidence that Mr. Trump's conduct, if any,
was willfully or wantonly negligent, reckless, or done with a
conscious disregard of the rights of Ms. Carroll, or was so
reckless as to amount to such disregard—you will write down an
amount, if any, that you find that Mr. Trump should pay to
Ms. Carroll in punitive damages.

        In arriving at your decision as to the amount of
punitive damages, you should consider the nature and represent
reprehensibility of what Mr. Trump allegedly did, in other
words, what you find he did that got you to this point.  That
would include:

        The character of the alleged wrongdoing;

        Include whether Mr. Trump's alleged conduct
demonstrated an indifference to, or a reckless disregard of,
the health, safety, or rights of others;

        Whether Mr. Trump's conduct was -- alleged conduct was
done with an improper motive or with vindictiveness;

        Whether the alleged act or acts constituted outrageous
or oppressive intentional misconduct;

        How long the conduct went on;

        Mr. Trump awareness of what harm the alleged conduct
caused or was likely to cause;

        Mr. Trump's financial condition and the impact any
punitive damages award would have on Mr. Trump;

1            Whether and how often Mr. Trump has committed similar

2    acts of this type in the past and the actual and potential harm

3    inflicted or created by Mr. Trump's conduct, alleged conduct,

4    including the harm to individuals or entities other than

5    Ms. Carroll.

6            Importantly, with respect to that last consideration,

7    although you may consider the harm, if any, to individuals or

8    entities other than Ms. Carroll in determining the extent to

9    which Mr. Trump's conduct was reprehensible, and to that extent

10   relevant to whether to award punitive damages and any amount

11   thereof, you may not add a specific amount to your punitive

12   damage award, if you make one, to compensate persons other than

13   Ms. Carroll or to punish Mr. Trump for any harm that Mr. Trump

14   caused, if he did cause any harm, to others.  The amount of

15   punitive damages that you award must be both reasonable and

16   proportionate to the actual and potential harm suffered by

17   Ms. Carroll, and to the compensatory damages, if any, that you

18   award to Ms. Carroll.

19           Now, those are my instructions on the battery claim.

20   We still have the defamation claim to go and then the remainder

21   of my discussion of the trial process and your deliberation.

22   To give you an idea, just because I know it is hard to sit --

23   first of all, let me invite you, if you want to stand up for a

24   minute, to do so.  I think I need to stand up myself.  I know

25   it is hard always to listen without standing.  Sit or stand as

N592Car1                    Charge

1    ever you wish.  I'm going to sit down in just a minute.  And we

2    are about 40 percent of the way through what I have to say to

3    you this morning.

4           So now we are going to go on to the questions in the

5    verdict form, which are Questions 6 through 10, which deal with

6    Ms. Carroll's defamation claim in relation to Mr. Trump's

7    October 12, 2022 statement, and more specifically to the parts

8    of that statement about Ms. Carroll.  Under New York law, there

9    are two categories of defamation.  One of them is called libel.

10   Written statements, like Mr. Trump's October 12, 2022

11   statement, the law regards as libel.  I'm telling you this only

12   because I may use the terms "defamation" and "libel"

13   interchangeably in my instructions, and it means the same thing

14   as far as you are concerned for purposes of this case.

15          Now, you have seen and heard Mr. Trump's October 12

16   statement at various points in the course of this trial.  And

17   if memory serves, you will have it in the jury room.  To remind

18   you, that statement, which Ms. Carroll alleges was defamatory,

19   read as follows:  "This 'Ms. Bergdorf Goodman case' is a

20   complete con job . . . She completely made up a story that I

21   met her at the doors of this crowded New York City department

22   store and, within minutes, 'swooned' her.  It is a Hoax and a

23   lie. . . .  She has no idea what day, what week, what month,

24   what year, or what decade this so-called 'event' supposedly

25   took place.  The reason she doesn't know is because it never

N592Car1                         Charge

1    happened, and she doesn't want to get caught up with details or

2    facts that can be proven wrong.  If you watch Anderson Cooper's

3    interview with her, where she was promoting a really crummy

4    book, you will see that it is a complete Scam.  She changed her

5    story from beginning to end, after the commercial break, to

6    suit the purposes of CNN and Andy Cooper. . . .  In the

7    meantime, and for the record, E. Jean Carroll is not telling

8    the truth, is a woman who I had nothing to do with, didn't

9    know, and would have no interest in knowing her if I ever had

10   the chance."

11         Now, there are several elements that Ms. Carroll has

12   the burden of proving for her to recover damages for libel, and

13   I'm going to instruct you on each one as we go through the

14   verdict form.

15         Question 6 asks whether Ms. Carroll has proved by a

16   preponderance of the evidence that Mr. Trump's statement was

17   defamatory.  A statement is defamatory if it tends to disparage

18   a person in the way of that person's business or office or

19   profession or trade.  It is also defamatory if it tends to

20   expose someone to hatred or contempt or aversion or to induce

21   an evil or an unsavory opinion of that person in the minds of a

22   substantial number of people in the community, even though it

23   may impute no moral turpitude to the person.

24         Now, not every unpleasant or uncomplimentary statement

25   is defamatory.  A statement that is merely unpleasant, or

N592Car1                    Charge

1    offensive, or embarrassing, or that hurts someone's feelings,

2    isn't necessarily defamatory.  Because language often has

3    different meanings, the law imposes on the plaintiff the burden

4    of proving that the October 12, 2022 statement about the

5    plaintiff in fact would have been understood by the average

6    person as defamatory, as I defined that word a minute ago.

7         If Ms. Carroll has proved by a preponderance of the

8    evidence that Mr. Trump's October 12, 2022 statement was

9    defamatory, you will answer "yes" to Question 6 and go on to

10   Question 7.  If you answer it "no," your task ends right there

11   and you will return your verdict in the manner that I am going

12   to describe later.

13        Question 7 asks whether Ms. Carroll has proved by

14   clear and convincing evidence that Mr. Trump's statements about

15   her were false.  I will explain later -- and I just want to

16   make sure.  I want to correct myself.  I misspoke.

17        Question 7, as you see on the verdict form, asks

18   whether Ms. Carroll has proved by something called clear and

19   convincing evidence that Mr. Trump's statement was false.  I am

20   going to explain clear and convincing evidence, which is

21   different from a preponderance of the evidence, in a short

22   while.  A statement is false if it is not substantially true.

23   You will determine from the evidence presented what the truth

24   was and then compare that with Mr. Trump's October 12

25   statement, taking that statement according to its ordinary

N592Car1                     Charge

1    meaning, the ordinary meaning of its words.

2            As you probably already have guessed, whether

3    Mr. Trump's statement is false or true depends largely or

4    entirely on whether you find that Mr. Trump raped or sexually

5    abused or forcibly touched or otherwise sexually attacked

6    Ms. Carroll.

7            If Ms. Carroll has proved by clear and convincing

8    evidence that Mr. Trump's October 12, 2022 statement was false,

9    you will answer Question 7 "yes" and go on to Question 8.  If

10   you answer it "no," your task ends there, and you will return

11   your verdict as I will instruct you.

12           Question 8, in substance, asks you to determine

13   whether Ms. Carroll has proved by clear and convincing evidence

14   that Mr. Trump made the statement with what the law calls

15   actual malice.  Actual malice for this purpose——and I want to

16   alert you to the fact that it means something different from

17   malice in a different context that I am going to speak to you

18   about in a few minutes——means that Mr. Trump made the statement

19   knowing that it was false or acted in reckless disregard of

20   whether or not it was true.  Reckless disregard means that when

21   he made the October 12 statement, he had serious doubts as to

22   the truth of the statement or made the statement with a high

23   degree of awareness that it was probably false.  So Question 8

24   asks you to decide whether Ms. Carroll proved by clear and

25   convincing evidence that Mr. Trump, when he made his October 12

N592Car1                     Charge

1  statement, knew that it was false, had serious doubts as to its

2  truth, or had a high degree of awareness that the statement

3  probably was false.

4        Just making a note to fix a typo before it goes in to

5  you.

6        If you so find, you will answer "yes" to Question 8

7  and go on to Questions 9 and 10, which deal with damages for

8  the defamation claim.  If you answer Question 8 "no," your task

9  ends there, and you will return your verdict as I will

10  instruct.

11        Question 9 and 10 deal with damages for the defamation

12  that's alleged in this case.  As I said before in relation to

13  the battery claim, the fact that I instruct you on the law of

14  damages relating to defamation is not to be taken by you as a

15  hint that you should decide that claim for Ms. Carroll.  You

16  will decide, on the basis of the evidence presented and the law

17  as I gave it to you and am giving it to you, whether

18  Ms. Carroll is entitled to recover from Mr. Trump for

19  defamation.

20        Question 9 deals with the subject of compensatory

21  damages for the alleged defamation, and of course you will be

22  answering that only if you found Mr. Trump liable for that

23  alleged defamation, which would require "yes" answers To

24  Questions 6, 7, and 8.

25        In the event Mr. Trump is liable for defamation, you

N592Car1                    Charge

1   will award an amount that, in the exercise of your good

2   judgment and common sense, you decide is fair and just

3   compensation for the injury to the plaintiff's reputation and

4   the humiliation and mental anguish in her public and private

5   life which you decide was caused by the defendant's statement.

6   In fixing that amount, if you fix one, you should consider the

7   plaintiff's standing in the community, the nature of

8   Mr. Trump's statement made about Ms. Carroll, the extent to

9   which the statement was circulated, the tendency of the

10  statement to injure a person such as Ms. Carroll, and all of

11  the other facts and circumstances in the case.  These damages

12  can't be proved with mathematical certainty.  Fair compensation

13  may vary, ranging from one dollar, if you decide that there was

14  no injury, to a substantial sum if you decide that there was

15  substantial injury.

16         Now, in this case, Question 9, I have divided the

17  damages determination into two parts, and you will see those on

18  page 3 of the verdict form in the parts below the yes/no

19  question.  The first of those two parts asks you whether or not

20  Ms. Carroll has proved by a preponderance of the evidence that

21  she was injured in any of the respects I have just described.

22  I misspoke about where on the form.  The first part of

23  Question 9, right at the top, the yes/no question asks you to

24  decide whether Ms. Carroll has proved by a preponderance of the

25  evidence that she was injured in any of the respects I just

N592Car1                    Charge

1   described.  That's the yes/no question.  If the answer is
2   "yes," you first will fill in the amount you award for all
3   defamation damages, excluding the reputation repair program.
4   You will leave that out if you put in a figure in the first
5   blank.  That was of course the testimony of
6   Professor Humphreys.  Second, you will fill in the amount, if
7   any, that you award for the reputation repair program only.

8        On the other hand, if your answer to the first part of
9   Question 9 is "no"——that is, you determine that Ms. Carroll has
10  not proved by a preponderance of the evidence that she was
11  injured as a result of Mr. Trump's October 12, 2022
12  statement——you will write down in the blank space provided
13  right under the yes/no question "$1" in nominal damages, just
14  like in the other case.

15       Regardless of your answer to Question 9, you go on to
16  Question 10.

17       In addition to the claim for punitive damages for the
18  defamation, Ms. Carroll asks also that you award punitive
19  damages for the defamation.  Similar to my earlier instructions
20  to you regarding punitive damages on the battery claim,
21  punitive damages in relation to a libel claim——the defamation
22  claim——may be awarded to punish a defendant who has acted
23  maliciously and to discourage others from doing the same.  Now,
24  this is where that difference between "actual malice," which I
25  already talked about, and "malice" or "maliciously" comes into

1  play.  I previously instructed you about "actual malice" with

2  regard to Question 8.  With regard to Question 10, I'm using

3  the words "malice" or "maliciously," not the phrase "actual

4  malice," and the word "malice" and the word "maliciously" for

5  purposes of Question 10 means something different from "actual

6  malice."  A statement is made with malice or it's made

7  maliciously for the purpose of Question 10 if it's made with

8  deliberate intent to injure or made out of hatred or ill will

9  or spite or made with willful or wanton or reckless disregard

10  of another's rights.

11        If you answer "yes" to the first part of Question

12  10—in other words, if you find that Mr. Trump acted with

13  malice, as I have just defined that term for you, in making the

14  October 12 statement about Ms. Carroll—you will write down an

15  amount, if any, that you find Mr. Trump should pay to

16  Ms. Carroll in punitive damages for the defamation.  If you

17  answer "no" to that first part of Question 10—that is, you

18  find that Mr. Trump's statement was not made maliciously—you

19  may not award punitive damages.  Ms. Carroll bears the burden

20  of proving by a preponderance of the evidence that Mr. Trump

21  acted in accordance with this standard.

22        In arriving at your decision as to the amount of

23  punitive damages, you should consider here with respect to the

24  defamation punitive damage claim:

25        The nature and reprehensibility of what Mr. Trump did

N592Car1                    Charge

1    if he defamed her; that would include the character of the

2    wrongdoing and Mr. Trump's awareness of what harm the conduct

3    caused or was likely to cause.  In considering the amount of

4    punitive damages to award, you should weigh that factor

5    heavily;

6          You should consider the actual and potential harm

7    created by Mr. Trump's conduct; and

8          You should consider Mr. Trump's financial condition

9    and the impact of your award of punitive damages, if any, on

10   Mr. Trump.

11         Once you have answered Question 10, if you answer

12   Question 10, you will return your verdict, your task will be

13   over.

14         Those are my substantive instructions on the law, that

15   is, on battery, on defamation, and on damages.  Those are the

16   rules you must apply here to the facts as you find them.

17         Now, the remaining part of what I have to say, and it

18   is shorter, I promise, I know that you are probably ready to

19   get up and do your job, but I need -- ah, yes.  Andy, thank

20   you, or whoever passed the note.

21         In instructing you on punitive damages on the

22   defamation claim, I skipped over one sentence, and I will read

23   it to you now.

24         The amount of punitive damages that you award, if any,

25   must be reasonable and proportionate to the actual and

N592Car1                    Charge

1   potential harm suffered by the plaintiff, and to the

2   compensatory damages, if any, that you award the plaintiff on

3   the defamation claim.

4           I am now going to instruct you about the trial process

5   and I am going to start with the burden of proof.  You have

6   already heard a little bit about that.  You heard about it at

7   the beginning of the trial, but I need to tell you about it

8   again.

9           Ms. Carroll bears the burden of proving her claim by a

10  preponderance of the evidence with respect to all questions on

11  the verdict form except No. 7 and No. 8, which I will talk

12  about separately.  As I told you at the beginning, proof beyond

13  a reasonable doubt, which is the standard that applies in a

14  criminal trial, does not apply at all in this case and you

15  should put it entirely out of your mind.

16          Now, to establish something by a preponderance of the

17  evidence means to prove that the contention of the party with

18  the burden of proof on that question is more likely true than

19  not true.  In other words, a "preponderance" of the evidence

20  means that the party with the burden of proof on a particular

21  question by a preponderance of the evidence has persuaded you

22  that the odds that that person is right on that question is

23  more than 50/50, even by the tiniest amount.  It refers to the

24  quality and the persuasiveness of the evidence, not to the

25  number of witnesses or documents.  In determining whether a

1    claim has been proved by a preponderance of the evidence, you

2    may consider the relevant testimony of all the witnesses,

3    regardless of which side called them, and all the relevant

4    exhibits received in evidence, regardless of which side

5    produced them.

6            If, after considering all the evidence, you find that

7    the evidence of both parties with respect to a question on

8    which the burden of proof is a preponderance of the evidence is

9    exactly in balance——in other words, that the chance that the

10   plaintiff's contention or the defendant's contention is correct

11   is exactly equal——then the party with the burden of proof on

12   that question has failed to sustain his or her burden of proof

13   on the particular question, and you must find for the other

14   side on that issue.  On the other hand, if the party with the

15   burden of proof on a particular question by a preponderance of

16   the evidence has persuaded you that its contention is more

17   likely correct than the chances that the other side is correct,

18   as I said, even by only a little, then you must find for the

19   party with the burden of proof by a preponderance on that

20   question.

21           Now, Questions 7 and 8 are different.  On those two

22   questions, and those two questions alone, Ms. Carroll's burden

23   is to prove her claims, that is, her claim on those questions,

24   by clear and convincing evidence.  If you conclude that

25   Ms. Carroll has failed to establish her claim with respect to

N592Car1                    Charge

the issues in Question 7, which is the falsity of the statement
of October 12 and Question 8, actual malice, by clear and
convincing evidence, you must decide against her on those
issues.  What does "clear and convincing evidence" mean?  Clear
and convincing evidence is a more exacting standard than proof
by a preponderance of the evidence, where you need believe only
that a party's claim is more likely true than not.  On the
other hand, clear and convincing evidence, clear and convincing
proof, is not as high a standard as the burden of proof applied
in criminal cases, beyond a reasonable doubt.  Clear and
convincing proof leaves no real substantial doubt in your mind.
It is proof that establishes in your mind not only the
proposition -- not only that the proposition at issue is
probable, but also that it is highly probable.  It is enough if
Ms. Carroll establishes that Mr. Trump's statement was
false—which is Question 7—and that he made the statement with
actual malice—that's Question 8—beyond any "substantial
doubt"; she does not have to dispel every "reasonable doubt."

          Now, you folks, the nine of you, are the sole and
exclusive judges of the facts.  I certainly do not mean to
indicate any opinion as to the facts or as to what your verdict
ought to be.  The rulings I have made during this trial are not
any indication of any views on my part about what your decision
ought to be or as to who should prevail here.  I express no
such opinion with respect to what you ought to do here.

1       It is my duty, on the other hand, to instruct you as
2  to the law, and it's your duty to accept these instructions on
3  the law and apply the law as I give it to you to the facts as
4  you determine the facts to be.  I'm going to return to that
5  before I conclude.

6       You are certainly to draw no inference from the fact
7  that I probably, on a few occasions, asked questions of some of
8  the witnesses or made comments to counsel about the manner in
9  which they made their presentations.  I do that to bring out
10  the evidence more quickly, more clearly, to save time, and to
11  ensure that the trial is conducted properly.  I do not intend
12  to suggest any view concerning the credibility of any witness
13  or as to which side ought to prevail, and you mustn't take any
14  comments or questions that I may have made in doing so --
15  excuse me, as doing so.  In addition, you must not draw any
16  inferences or take into account any comments or remarks that I
17  made to any of the lawyers when you are deliberating.  You
18  should ignore also that from time to time I was taking notes or
19  entering things or looking things up on my computer.  Whatever
20  I may have been doing with my computer or whatever notes I may
21  have been taking or not taking may have nothing at all to do
22  with you and what you are concerned with in this case.  You are
23  to decide the case fairly and impartially based solely on the
24  evidence and my instructions.

25       Now a few words about what is and isn't evidence.

1           The evidence in this case is the sworn testimony of

2    the witnesses, the exhibits received in evidence, and the

3    stipulation or stipulations between counsel.  I know there was

4    at least one.  I don't remember if there was more than one.

5    You will.  A stipulation, as I told you, is just an agreement

6    between the parties as to some factual matter that you must

7    accept.

8           What is not evidence, however, is questions,

9    arguments, and objections by the lawyers.  You are not to

10   consider any statements that I struck or told you to disregard.

11          In deciding this case, I remind you that you are

12   obliged to consider only the evidence you have seen and heard

13   in this courtroom.  Anything that you may have learned

14   elsewhere that could conceivably have a bearing on this case

15   must be disregarded.

16          Now, before I get on to the conduct of your

17   deliberations, there are two specific bits of evidence that I

18   need to talk about.

19          There was evidence received during the trial that

20   Ms. Carroll claims shows that Mr. Trump sexually assaulted

21   women other than Ms. Carroll.  A sexual assault, or an

22   attempted sexual assault on a person other than Ms. Carroll—in

23   other words, on somebody else—may be considered by you in

24   deciding whether Mr. Trump raped, sexually abused, or forcibly

25   touched Ms. Carroll, as she claims, provided that Ms. Carroll

1    has established by a preponderance of the evidence that

2    Mr. Trump sexually assaulted or attempted to sexual assault the

3    other person.  To illustrate the point, if you find that

4    Ms. Carroll proved by a preponderance of the evidence that

5    Mr. Trump sexually assaulted, or attempted to sexual assault,

6    Ms. Leeds, then you may consider that fact in deciding whether

7    Ms. Carroll proved also that Mr. Trump raped or sexually abused

8    or forcibly touched Ms. Carroll——in other words, in answering

9    questions 1, 2, and 3 on the verdict form.  If you do not find

10   that Ms. Carroll proved by a preponderance of the evidence that

11   Mr. Trump sexually assaulted, or attempted to sexual assault,

12   Ms. Leeds, then you may not consider the alleged incident

13   involving Ms. Leeds in deciding whether Ms. Carroll proved also

14   that Mr. Trump raped, sexually abused, or forcibly touched

15   Ms. Carroll——in other words, Question 1, 2, or 3 on the verdict

16   form.  That same analysis would apply to the testimony of

17   Ms. Stoynoff.

18        Now, there are three points I need to make in relation

19   to the evidence of alleged sexual assault or attempted sexual

20   assault on women other than Ms. Carroll.

21        First, the term "sexual assault," solely for the

22   purpose of considering whether Mr. Trump sexually assaulted or

23   attempted to sexual assault women other than Ms. Carroll, has a

24   different meaning than the other definitions of sex offenses

25   throughout the rest of my instructions, principally and

probably exclusively in relations to questions 1, 2, and 3.  In

determining whether Mr. Trump sexually assaulted or attempted

to sexual assault Ms. Leeds or Ms. Stoynoff, he must have

brought himself into contact, or attempted to bring himself

into contact, without the other women's consent, with the

sexual or reproductive organs of the other women, in other

words, their genitals, and not merely other parts of the body.

        Second, I used the word "attempt."  The word "attempt"

in this context means that Mr. Trump intended to make contact

with a woman's genitals and did some act that was a substantial

step in an effort to make such contact.  A substantial step is

something more than mere preparation or planning.

        Third, a sexual assault on a person other than

Ms. Carroll on its own would not alone be sufficient to prove

that the defendant, Mr. Trump, committed the alleged rape,

sexual abuse, or forcible touching of Ms. Carroll.  As you

consider this evidence, bear in mind at all times that

Ms. Carroll has the burden of proving that Mr. Trump raped,

sexually abused, or forcibly touched her.

        Those are my instructions concerning your

consideration of evidence of alleged sexual assaults or

attempted sexual assaults on women other than Ms. Carroll.  But

just to be sure that I am clear, the definition of "sexual

assault" that I have just given you applies only to your

determination of whether to consider the evidence concerning

1    alleged assaults or attempted assaults on those other women.

2    It has no application to anything else in these instructions.

3            The other item of evidence I now will address.  During

4    the cross-examination of Ms. Carroll, you heard some questions

5    directed to her concerning an e-mail that Ms. Carroll received

6    from another person in which the other person purported or

7    claimed to describe an alleged episode of a TV show called

8    *Law & Order SVU* and of Ms. Carroll's reply to that e-mail.  The

9    e-mail from the other person was not offered to prove that what

10   the other person said in that e-mail was true.  It was offered

11   only to prove that somebody said those things to Ms. Carroll,

12   and then you have Ms. Carroll's response for whatever it tells

13   you about Ms. Carroll's state of mind or credibility.  In other

14   words, you can consider this other person's e-mail as evidence

15   of what that person wrote to Ms. Carroll, telling her that

16   there was such an episode, but not as evidence that there in

17   fact ever was such an episode or what it may have contained.

18   Remember I talked about the moon being made of green cheese or

19   Limburger cheese.  That's the principle I am alluding to here.

20           Now, as for other matters affecting your analysis and

21   consideration of the evidence, just a few things to say.

22           I suspect all of you have heard the terms somewhere in

23   your lives "direct" and "circumstantial evidence."  I, for one,

24   although I must be insane to do it, am a trial movie and TV

25   show addict.  I watch them all.  And I hear all these

discussions of direct and circumstantial evidence, and a lot of them are wrong.  So let me tell you what it is all about and -- I could not do this job without Andy.  Thank you, Andy.

Direct evidence is evidence that you hear when a witness testifies about something that the witness knows because the witness saw it, heard it, touched it, felt it, smelled it and, in my last trial, tasted it.  It was a trial about beer.  That is direct evidence.  The witness is telling you, because they perceived it, something about what the witness saw and knows.

Direct evidence can also be in the form of an exhibit.  Suppose this transcript binder was an exhibit in this case.  Suppose it mattered what color it was bound in or how many pages were in it.  You could look at it yourself, the physical object.  You could tell it's blue binding and you could check the pagination or count them.  That's direct evidence, something you know because it is knowable.  It is right in front of you.

The other kind of evidence is referred to as circumstantial evidence.  Circumstantial evidence simply refers to proving fact A indirectly by offering evidence of fact B and drawing a conclusion from fact B that fact A is probably so or not probably so.

The wet umbrella example is always used in this courthouse.  If, suddenly, people started walking into this

N592Car1                    Charge

1   courtroom with wet umbrellas and you couldn't see outside and

2   it was sunny this morning when you came in, the wet umbrellas

3   are circumstantial evidence.  Your common sense tells you the

4   weather changed.  It is raining.  It could be a pipe burst, but

5   the chances are it's raining.  Circumstantial evidence is

6   logic, common sense.  The bottom line, the punch line is

7   circumstantial evidence in the eye of the law is just as

8   valuable as direct evidence.  Your verdict must be based on

9   your conscientious evaluation of all the evidence——direct and

10  circumstantial.  If that disabused any misimpressions, good.

11  And if it was just a new education, that's fine, too.

12           Now, we have heard the word "credibility" yesterday,

13  didn't we, a few times.  Obviously it's at issue in this case

14  in a lot of ways.  The determination of credibility in this

15  case is up to you.  It's up to you to decide how believable

16  each witness was in the testimony the witness gave.  You are

17  the sole judges of that.  You are the sole judges of how

18  important that testimony was.  In deciding on the weight to

19  give to the testimony of witnesses, use all the tests for

20  truthfulness you would apply in determining something important

21  to you in your life.

22           Your decision on whether or not to believe a witness

23  may depend on how the witness impressed you.  You have watched

24  all or substantially all of them testify.  Everything a witness

25  does or says on the witness stand counts in your determination.

N592Car1                          Charge

1    Did the witness appear to be frank, forthright, and candid?  Or

2    did the witness answer questions on direct examination in a

3    responsive and forthcoming manner but answer questions on

4    cross-examination evasively or unresponsively?  You should

5    consider the opportunity the witness had to see, hear, and know

6    the things about which the witness testified, the accuracy of

7    the witness's memory, the reasonableness and probability of the

8    testimony, whether the testimony is consistent or inconsistent,

9    and whether it is corroborated or not corroborated with other

10   credible testimony and evidence.

11          In evaluating credibility, use your own common sense,

12   your good judgment, your life experience.  You must, in

13   evaluating witness testimony, do so without bias or prejudice

14   for or against either party and with an attitude of complete

15   fairness and impartiality.

16          If in the course of your deliberations you conclude

17   that a witness intentionally testified falsely to a material

18   fact during the trial, you are entitled to disregard everything

19   that witness said on the principle that one who testifies

20   falsely as to a material fact may also testify falsely to other

21   facts.  But credibility is not necessarily an all-or-nothing

22   proposition.  You may accept so much of any witness's testimony

23   as you think is true and accurate and reject only those parts,

24   if any, that you conclude is false or inaccurate.

25          Now, you have heard during this trial from two expert

witnesses——specifically, Dr. Lebowitz and Professor Humphreys.
An expert witness is somebody who, by education and experience,
has become expert in some art, science, profession, or calling.
Under the rules of evidence, expert witnesses may give opinions
as to matters in which they profess to be experts.  They can
also explain the reasons for their opinions.  The purpose of
expert testimony is to assist you in understanding the evidence
and in coming to an independent decision.

          In deciding on the credibility and persuasiveness of
expert testimony, you should consider the expert's
qualifications, his or her opinions, the bases for the expert's
opinions, and all of the other considerations I have talked
about in regard to witness credibility generally.  You may give
the testimony of experts whatever weight you think it deserves
in light of everything else in this case.  You shouldn't
expect -- excuse me, accept expert testimony just because
somebody is an expert.  Even with expert witnesses, use your
common sense, your good judgment, and your own life experience.

          You each may give expert testimony as much weight, if
any, as you think it deserves in light of all of the evidence.
You also may reject the testimony of any expert witness in
whole or in part if you conclude that the reasons given in
support of an opinion are unsound or if you for other reasons
don't believe or credit the expert witness.

          Now, we are truly in the home stretch.  I will stand

 1   up for a while if I can get this microphone where I can be

 2   heard.

 3            You are going to retire to decide this case in just a

 4   few minutes.  It's your duty to consult with each other and to

 5   deliberate with the goal of coming to an agreement.  Each of

 6   you must decide for yourself the answers to the questions I

 7   have put to you, but you should do so only after considering

 8   the case with your fellow jurors, and you should not hesitate

 9   to change an opinion when convinced that it's mistaken.

10            Just give me a second.

11            Your answers to each question must be unanimous, but

12   you are not required to give up your honest convictions

13   concerning the effect or the weight of the evidence for the

14   mere purpose of returning a verdict or solely because of the

15   opinion of other jurors.  Discuss and weigh your respective

16   opinions dispassionately, without regard to sympathy, without

17   regard to prejudice or favor for either party, and adopt that

18   conclusion which in your good conscience appears to be

19   consistent with the truth.

20            I need to say a word about your notes.  Any notes you

21   may have taken are for your personal use only.  You each may

22   consult your own notes during deliberations, but any notes you

23   have taken are not to be relied upon during deliberations as a

24   substitute for the collective memory of all nine of you.  Your

25   notes should be used as memory aids, but should not be given

1    precedence over your independent recollection of the evidence.

2    If you didn't take notes, you should rely on your independent

3    recollection of the proceedings and you should not be

4    influenced by the notes of others.  The notes are not to be

5    given any greater weight than the recollection or impression of

6    each juror as to what the testimony may have been.

7          Again, you each must make your own decision concerning

8    the proper answer to each question based on your consideration

9    of the evidence and your discussions with your fellow jurors.

10   No one should surrender his or her conscientious beliefs solely

11   for the purpose of returning a unanimous verdict.

12         As I told you, you are going to have a printed copy,

13   you will have plenty of printed copies of my instructions in

14   the jury room.  It will probably take us ten or 15 minutes to

15   get them back there.  You will see that the printed

16   instructions contain here and there legal citations which

17   usually appear in brackets.  Those citations are included to

18   aid the lawyers and me and you are to ignore them.  You will

19   probably think they are in hieroglyphics anyway.  They are

20   there because both the lawyers and I need an order trail when

21   we are considering these instructions in case there is a

22   question about the legal authority for the proposition just

23   preceding the citation, but you ignore the citations

24   altogether.

25         Now, it is conceivable that you may have questions

N592Car1                    Charge

1   about my instructions despite the fact that the lawyers and I

2   have done our level best to make them as clear as they possibly

3   can be.  The procedure, if you have a question, is that you

4   should agree on what the question is.  The foreperson of the

5   jury——and I will come to that in a minute——should make a note

6   of what the question is.  Every page and line number of the

7   jury instructions -- to rephrase it more accurately, every page

8   and every line of type is numbered, so if there is a question

9   about a particular part or parts of the instructions, please

10  include the page number and the line numbers that the question

11  pertains to.  There is a very practical reason for that.  When

12  I get a question from the jury, the lawyers have to be

13  consulted, we all have to understand what the question is.  If

14  we don't all agree what the question means, further proceedings

15  have to be undertaken.  If we all agree what the question

16  means, we have to discuss what the right answer is.  If there

17  is a disagreement, I decide the right answer.  And the more

18  clear we are on what the question is, the more quickly we can

19  do that and the more responsive we can be to the question.

20          I would also, in that vein, say that if you want any

21  of the testimony reread or provided to you in writing, we can

22  do that.  The procedure is the same.  Agree on what you want, I

23  hope.  Foreperson sends in a note.  Any notes that come in

24  should be in sealed envelopes, by the way.  Indicate exactly

25  what you want as best you can——who the witness was, what the

1    subject was, direct, cross, do the best you can.  And the

2    procedure we undergo is the same.  We have to agree on what we

3    think you are asking for, we have to decide what the right

4    portion to read back is, and all of that takes a certain amount

5    of time.

6            So by all means, if you want something, we will

7    provide it to you.  Be sure you need it because it takes time

8    and we need to be responsive to save your time.

9            It also can take time to prepare the material because

10   sometimes we send it in in writing, sometimes we bring you into

11   the courtroom to read it, and if it's done in writing, various

12   things have to be taken care of before it can go into the jury

13   room.

14           All nine of you need to be there to deliberate.  If

15   somebody is missing, you are not a jury.  Do not deliberate

16   unless you are all there.

17           When you retire, you are going to select one member of

18   the jury as your foreperson.  That person will preside over

19   your deliberations and speak for you in open court when, as,

20   and if that becomes necessary.  The foreperson, as I said, will

21   send out any notes.

22           Now let's talk about the verdict.  When you reach a

23   verdict, the foreperson is to write a note saying "verdict."

24   Put it in a sealed envelope.  Do not label the envelope.  Hand

25   it to the officer who will be right outside the jury room.  The

1  officer will bring it to me, and I will get the people who need

2  to be here here.

3        Now, it is 11:30.  I'm going to give the lawyers a

4  period of time to go out for lunch if they need to or feel they

5  want to, so it may take a little time once you have reached a

6  verdict or indeed if there is a note, depending on where people

7  are, to get back to you.  But be patient.  We understand that

8  we need to be as quick as we can and we will do that.  But

9  that's the way it will work.  Note, "verdict," sealed envelope,

10  and we will take it from there.

11        Your answers to the questions on the verdict form need

12  to be unanimous.  You also have to follow the instructions.

13  This is not necessarily a ten-question quiz.  This is like

14  taking an exam, right?  You answer Question 1.  If you answer

15  Question 1 one way, you go to Question 2.  If you answer it the

16  other way, you go to Question 4.  Follow the instructions.

17  Make sure you are following the instructions.  Don't add any

18  commentary on the verdict forms.  Believe it or not, I had a

19  jury do that once, and it was a lengthy problem for everybody.

20  If there is editorial comment, it's a mistake.

21        Of course you know that -- well, you don't know if you

22  have been following my instruction, but you have probably

23  guessed that there may have been some media coverage of this

24  case, and hopefully you have not partaken of any of it or

25  allowed anybody to communicate it to you.  And that continues.

N592Car1                    Charge

1   No reading, no watching, no listening to media coverage, no

2   commentary.  You are totally insulated.  It is between and

3   among the nine of you while your deliberations go on and until

4   I take a verdict and discharge you.

5        I have already talked about notes.  One more thing

6   about notes.  Do not, in a note or if for some reason you are

7   in open court, ever say how the vote stands on anything unless

8   I specifically ask you.  Okay?

9        Now, folks, I remind you that you guys took an oath to

10  render a fair and impartial judgment, without prejudice,

11  without sympathy, and without fear, based solely on the

12  evidence and the applicable law.  And I want to elaborate for a

13  minute on your obligation under that oath to render judgment

14  solely upon the evidence in this case and the applicable law.

15       As I said, forgive me for repeating, you as the jurors

16  are the judges of the facts, and nothing I have said or done

17  should be taken as indicating any view on my part as to what

18  your conclusion should be about the facts——about what actually

19  happened.  But in determining what actually happened——that is,

20  in reaching your decision on the facts——it is your sworn duty

21  to follow all of the rules of law that I have explained to you.

22  You have no right to disregard or to question the wisdom or

23  correctness of any rule I have stated to you.  You must not

24  substitute or follow your own notion or opinion as to what the

25  law is or what it ought to be.  It is your duty to apply the

N592Car1                    Charge

 1   law as I have explained it to you, regardless of the

 2   consequences.  And that applies to all of the law I have given

 3   you, including the fact that all or most of the issues of fact

 4   that I have put to you and that you will answer must be decided

 5   according to the preponderance of the evidence and the meaning

 6   of preponderance of the evidence.

 7              I know you are going to do your duty under your oath

 8   and render a just and true verdict according to the facts as

 9   you find them and the law that I have given you.

10              I will ask you to remain seated for just a moment.

11              Counsel, if there are any objections to the charge as

12   given upon which I have not already ruled, come to the sidebar.

13              (Continued on next page)

N592Car1                    Charge

1              (At the sidebar)

2              THE COURT:  Okay.  Plaintiff, anything?

3              MS. KAPLAN:  Nothing, your Honor.

4              THE COURT:  Mr. Tacopina.

5              MR. TACOPINA:  We have four, your Honor.

6              THE COURT:  All right.

7              MR. TACOPINA:  The first one is——I will refer to the

8     instructions——page 11, on line 11.  The sentence ends with

9     "responsibility of what Mr. Trump allegedly did" in here.  You

10    injected something that is not here on the instructions and

11    it's on page 15/line 5 of the trial transcript, "in other

12    words" --

13             THE COURT:  I'm trying to follow you, that's all.  I'm

14    puzzled because I don't know how I injected something here from

15    page 15 of the trial transcript, but go ahead.

16             MS. KAPLAN:  If you read page 15 of the trial

17    transcript, you will see what you injected, the monitor --

18             THE COURT:  All right, so let's see that.

19             MR. TACOPINA:  You added, "In other words, what you

20    find he did that got you to this point."  If you are going to

21    add that, your Honor should add, "if anything," "what he did,

22    if anything," but this sentence was added in.

23             THE COURT:  Okay.  Just let me make a note.  You are

24    on line 11?

25             MR. TACOPINA:  Yes, your Honor, right after here,

N592Car1                    Charge

1    right after "did."

2              THE COURT:  What you really want there "if anything."

3              MR. TACOPINA:  Well, your Honor, hold on, make sure

4    I'm making this clear.  There was a sentence that's not written

5    here that was injected, and what you said is, "In other words,

6    what you find he did that got you to this point."  Being that

7    you injected that sentence, I think you have to add the word

8    "in other words, what you find he did, if anything, that got

9    you to this point."

10             MS. CROWLEY:  Judge, if we are on this question,

11   punitive damages, then they have decided that he's done

12   something, so I don't think --

13             MR. TACOPINA:  That's happened throughout this,

14   "allegedly did," "if he did."  You don't assume -- you don't

15   instruct the jury, in other words, what you find he did that

16   got --

17             THE COURT:  Mr. Trump, true or false, this relates to

18   Question 5?

19             MR. TACOPINA:  True.

20             THE COURT:  True.  The instructions are that they are

21   not to answer Question 5 unless they answered Question 1,

22   Question 2, or Question 3 "yes."  True or false.

23             MR. TACOPINA:  True, true.

24             THE COURT:  Overruled.  Next one.

25             MR. TACOPINA:  Next page, 12, this is the only -- the

N592Car1                    Charge

1   other ones have to do with things you said extemporaneously.

2            THE COURT:  Page 12.

3            MR. TACOPINA:  12 is, the way it is written I think is

4   improper.  "Written statements, like" --

5            MS. KAPLAN:  Line?

6            MR. TACOPINA:  Sorry, 21.

7            "Written statements like Mr. Trump's October 12, 2022

8   statement constitute libel."  I think that obviously should be

9   "written statements," without referring to Mr. Trump, "if found

10  to be defamatory."

11           THE COURT:  My view is that it is fine as given, but I

12  will clarify it.

13           MR. TACOPINA:  Okay.  Page 24.

14           MS. KAPLAN:  24.

15           MR. TACOPINA:  Page 24, end of line 4 through line 6

16  you didn't read this, your Honor.  Page 24.

17           THE COURT:  I thought I did.

18           MR. TACOPINA:  No.  You stopped.  The last word you

19  said was "episode may have contained."

20           THE COURT:  But I made the point.

21           MR. TACOPINA:  You said the Limburger cheese things.

22           THE COURT:  I made the point.

23           MR. TACOPINA:  You made the point, but it's written in

24  the instructions here.

25           THE COURT:  So you would like me to do it again?

N592Car1                    Charge

1          MR. TACOPINA:  I would like you to read that sentence

2     that you didn't read.  "You may also consider Ms. Carroll's

3     response to the e-mail to the extent, if any, that you believe

4     Ms. Carroll's response bears" --

5          THE COURT:  I'm absolutely confident that I am right

6     about this and that, you are correct, I may not have read it

7     exactly there, but in that context, I said it in substance.

8          MR. TACOPINA:  Okay, your Honor.

9          THE COURT:  Can we go back?

10         (Pause)

11         MR. TACOPINA:  If that's your recollection, I'm fine

12    with it.

13         THE COURT:  I want to be sure I understand and it's an

14    important case and I want to be sure my recollection is right.

15    So give me a minute, and I will go look on the screen.

16         (In open court)

17         THE COURT:  This will only be a minute or two, folks.

18         (At the sidebar)

19         THE COURT:  I did cover it, but I'm having Andy print

20    out the page if, of course, we can print out the page.

21         MR. TACOPINA:  Okay, your Honor.  Should I give you

22    the last one or do you want to wait?

23         THE COURT:  Give me the last one as long as Kris is

24    here.

25         MR. TACOPINA:  It's on page 25.

N592Car1                    Charge

1          THE COURT:  Okay.

2          MR. TACOPINA:  This first full paragraph.  Instead of

3    "you watched each witness testify" what you said was "you

4    watched all or substantially all of them testify."

5          THE COURT:  I understand your point, and I will fix

6    it.

7          MR. TACOPINA:  Thank you.

8          THE COURT:  Anything else?

9          MR. TACOPINA:  That's it.

10          THE COURT:  Let's just see whether Andy can print this

11    up.

12          MR. TACOPINA:  So, your Honor, page 12 you said you

13    were going to go correct?

14          THE COURT:  Yes.

15          MR. TACOPINA:  And then we have to change the actual

16    instruction going back to the jury.

17          THE COURT:  Don't worry about that.

18          MR. TACOPINA:  I'm a little worried about it, but if

19    you say don't worry, I won't worry.

20          THE COURT:  No.  Come back.  We are still waiting --

21          MR. TACOPINA:  I followed them.

22          MS. KAPLAN:  Excuse me.

23          THE COURT:  I'm waiting to print if we can do it.

24          MS. KAPLAN:  Sorry, your Honor.

25          THE COURT:  Andy, as always, you are a wonder.

1    THE DEPUTY CLERK:  I did not succeed with line

2    numbers.

3    THE COURT:  Okay.  So where are we?  Here is the

4    transcript.  "The other item of evidence I now will address.

5    During the cross-examination of Ms. Carroll you heard some

6    questions directed to her concerning an e-mail that Ms. Carroll

7    received from another person in which the other person

8    purported or claimed to describe an alleged episode of a TV

9    show called *Law & Order SVU* and of Ms. Carroll's reply to that

10   e-mail.  The e-mail from the other person was not offered to

11   prove that what the other person said in that e-mail was true.

12   It was offered only to prove that somebody said those things to

13   Ms. Carroll, and then you have Ms. Carroll's response for

14   whatever it tells you about Ms. Carroll's state of mind or

15   credibility.  In other words, you can consider" --

16   MR. TACOPINA:  Got it.

17   THE COURT:  -- "this other person's e-mail as evidence

18   of what that person wrote to Ms. Carroll, telling her that

19   there was such an episode, but not as evidence that there in

20   fact ever was such an episode or what it may have contained."

21   MR. TACOPINA:  Thank you, your Honor.  Okay.

22   THE COURT:  So we have page 12 and page 24, right?

23   MR. TACOPINA:  Yes, your Honor.

24   (In open court)

25   THE COURT:  Okay, folks.  Two little things.  Counsel,

N592Car1                    Charge

1   quite understandably, pay close attention to whether what I say

2   is precisely what's written down here and call to my attention

3   anything where I perhaps departed by a word or two.

4          When I was explaining to you that I was going to use

5   the terms "defamation and libel" interchangeably, I said

6   "written statements, like Mr. Trump's October 12, 2022

7   statement, constitute libel.  I'm striking those words, in

8   other words, "like Mr. Trump's October 12, 2022 statement," to

9   avoid any implication that I was making a determination as to

10  whether Mr. Trump's statement that day was defamatory.  That's

11  your job.  The reference to Mr. Trump's October 12, 2022

12  statement was simply another way of saying that the social

13  media, written social media post was a written statement and

14  because it was written, it falls into the libel category rather

15  than the other category of defamation.  It will be corrected

16  and it will be precisely right in the copy you get, and I have

17  just told you what was meant by it.

18         Mr. Tacopina, point me to the other reference.

19         MR. TACOPINA:  Sure, your Honor.  It was page 25,

20  lines 3 and 4.

21         THE COURT:  Thank you.

22         When I was talking to you about witness credibility, I

23  made the statement "you watched" -- I think I said "all or

24  substantially all of the witnesses testify."  Well, of course,

25  what I had in mind there is you saw almost all of the witnesses

testify live in this courtroom.  You also saw some deposition

testimony, including Mr. Trump's.  That was testifying.  You

are entitled to evaluate what you saw in that video in

assessing his credibility and what you saw in the videos of

other people in evaluating their credibility.

          That's all I have to say in terms of corrections, and

we will send you a corrected copy of the typed script as soon

as you retire.

          Now, it's a quarter to 12, and I think what we will

do, I normally keep lawyers in the courtroom while a jury is

deliberating so that we can get everybody together quickly if

there is a note, but everybody on both sides has been working

extremely hard, and we are going to have, for them, not for

you——you will have your own lunch——a lunch break where if they

want to leave the premises, they can.  And so if there were a

note or, for that matter, a verdict between 12:15 and 1:30, we

may not be in a position to respond because there may be people

missing and you will just have to hang out.  But if there is a

verdict during that period, you write the note, give it to the

officer, and I will know that and we will move as fast as we

can.

          All right.  Anything else, counsel, before we swear

the officer?

          MS. KAPLAN:  Not for plaintiff, your Honor.

          MR. TACOPINA:  No, your Honor.  Thank you.

N592Car1                    Charge

1                    THE COURT:  All right.

2                    (Court and deputy confer).

3                    THE COURT:  You will have what has been referred to to

4        me as a clean laptop, whatever exactly that means, in the jury

5        room with images of all of the exhibits on it.  It will take us

6        some time to get that back to you.

7                    (Deputy and court confer)

8                    THE COURT:  We also have a DVD player and we have some

9        hard copies.  Andy is in charge of wrangling this with the

10       lawyers and, as fast as we can, you will get all the exhibits

11       one way or the other.  And if there is anything you find you

12       need and you don't have, send us a note and we will fix it.

13                   Okay.  Let's swear the officer.

14                   THE DEPUTY CLERK:  Would the marshal please come

15       forward and raise your right hand.

16                   You do solemnly swear that you will keep the jurors

17       impaneled and sworn in this cause together in some private and

18       convenient place.  You shall suffer no one to speak to them,

19       nor shall you speak to them yourself without direction of this

20       Court, unless it be to ask them if they have agreed upon the

21       verdict, so help you God.

22                   THE MARSHAL:  I do.

23                   THE DEPUTY CLERK:  Thank you.

24                   THE COURT:  Ladies and gentlemen, you will now retire

25       and deliberate upon your verdict.

```
 1              (Jury retires to deliberate; 11:50 a.m.)

 2              THE COURT:  Please be seated, folks.

 3              Counsel, is there any reason why the Court should not

 4    fill media requests for copies of the verdict form, blank

 5    copies?

 6              MS. KAPLAN:  Not from our side, your Honor.

 7              MR. TACOPINA:  No, your Honor.

 8              THE COURT:  Andy will take care of it in due course.

 9              Andy, the answer to the question is the DE can

10    distribute the blank verdict form.

11              Okay, folks, we are in recess pending -- one more

12    thing.  I assume it's suitable, acceptable to counsel on both

13    sides that you will work out whatever needs to be worked out

14    with the exhibits and the laptop and the DVD player and all of

15    that and that there will either be an agreement and he will,

16    without any further court appearance, take whatever needs to go

17    into the jury room without any further involvement by me, and

18    if there is a disagreement, you will bring me the disagreement.

19              MS. KAPLAN:  Absolutely.

20              THE COURT:  Acceptable?

21              MS. KAPLAN:  Absolutely, your Honor.

22              MR. TACOPINA:  Yes, your Honor.

23              THE COURT:  Done.  Okay.  Thanks, folks.

24              (Recess pending verdict; 11:51 a.m.)

25              (In open court; jury not present; 12:25 p.m.)
```

N592Car2

```
1          THE COURT:  In a superabundance of caution, my law
2     clerk has prepared a redlined, revised copy of the jury
3     instructions, and she is giving them to counsel.  And we will
4     mark -- is Andy here?  Andy is here.  Andy, would you mark this
5     Court Exhibit D.  And then I will tell you what pages there are
6     markings on, but I invite you to scrutinize the whole thing.
7     The pages that I have tabs on are 12, 15, 26, and 31-32.
8          MR. TACOPINA:  Your Honor, just to be clear, there are
9     pages on those five pages?
10         THE COURT:  That is my understanding, but I want you
11    to just turn all the pages and you be satisfied that there are
12    no other marked changes.  That's what my law clerk tells me.
13         MR. TACOPINA:  We don't see a mark on page 12, for
14    example, or 15 either.
15         THE COURT:  Did I say 12?  It's on 13.  Sorry, I
16    misread it.
17         MR. TACOPINA:  Can I make a request?
18         THE COURT:  Yes.
19         MR. TACOPINA:  Page 13, where it says "written
20    statements constitute libel," would I be able to -- my request
21    would be that it say "written statements constitute libel if
22    found to be defamatory by clear and convincing proof."  Here it
23    just says "written statements constitute libel."
24         THE COURT:  Yeah, I know.  Now, look.  I respect
25    lawyers doing whatever they can to get an edge and to do what
```

N592Car2

1    they think is in the interests of their clients, and I respect

2    you for that; but, you know, given the verdict form here, it is

3    impossible for there to be a finding of defamation unless what

4    you just asked me to add were satisfied.  You know that.  And

5    furthermore, you didn't object to this in the charge conference

6    yesterday.  And so I understand where you are coming from, but

7    I'm not going to do it because it's totally superfluous.

8            Okay.  Anything else from either side?

9            MS. KAPLAN:  About something other than the charge,

10   your Honor?

11           THE COURT:  No.  I'm talking about --

12           MS. KAPLAN:  Still on the charge.

13           THE COURT:  Right?  So my copy with these changes,

14   Court Exhibit D, I take it there are no objections.

15           MR. TACOPINA:  I just need a second, your Honor.  One

16   more second.  There's five pages.  One more second.

17           We're good, your Honor.

18           THE COURT:  You're good.  Okay.

19           So then with the agreement of all sides, I trust, my

20   law clerk will run this in final.  The final without the

21   redline markings will be marked Court Exhibit E, and Andy will

22   take nine copies into the jury room and give final copies to

23   counsel on both sides.

24           Agreed, Mr. Tacopina?

25           MR. TACOPINA:  Yes, your Honor.

N592Car2

1                THE COURT:  Ms. Kaplan?

2                MS. KAPLAN:  Yes, your Honor.

3                THE COURT:  Okay.  Done.  Now we have already eaten up

4     your lunchtime.  So if you got back at 1:45, you will be

5     forgiven.  Okay?

6                Ms. Kaplan.

7                MS. KAPLAN:  One additional issue, your Honor.

8                THE COURT:  I'm sorry?

9                MS. KAPLAN:  One additional issue.  Do you want me to

10    raise it later?

11               THE COURT:  I don't know what it is.

12               MS. KAPLAN:  Okay.  So, your Honor, I think you may

13    have been provided with a copy of this.  At approximately 9:04

14    this morning, Donald Trump put up on Truth Social a statement

15    which I could read aloud, but it could be -- have two possible

16    meanings to people, either that the fact that he can't speak in

17    the press is unfair to him or possibly implying that he wasn't

18    given an opportunity to speak in his own defense in this case.

19    That second meaning is obviously very troublesome for us.  It's

20    been picked up in at least seven journalistic -- Rolling Stone,

21    Law & Crime, ABC already.  If the jury reaches a verdict before

22    the end of the day, there is no problem, because they are

23    obviously sequestered and that's not an issue.  If the jury is

24    unable to reach a verdict by the close of business today, we

25    would suggest an instruction be read to them about --

N592Car2

1   basically -- I can read it to your Honor, basically suggesting

2   that Mr. Trump had every opportunity to testify in this case

3   and he was not prevented in any way from presenting a defense.

4   And I can read it aloud if your Honor would like or I can hand

5   it --

6          THE COURT:  I don't think that's necessary.

7          Mr. Tacopina.

8          MR. TACOPINA:  Your Honor, I mean, so what I just

9   heard was a request for a missing witness charge or a witness

10  statement as a whole.  But let me just put this in context.  I

11  read this and, look, I had that other post removed the other

12  day.  Every other post has been removed.  There has been no

13  further post.

14         THE COURT:  You know, I know you said that, and I

15  accept that you thought it was accurate when it was

16  communicated to me, and the other side sent me a letter a day

17  or two ago saying it isn't true.

18         MR. TACOPINA:  But it's true now.

19         THE COURT:  It's true now.

20         MR. TACOPINA:  Yeah, yeah, it was removed.  It was

21  removed.

22         THE COURT:  When?

23         MR. TACOPINA:  When they sent the letter.  We all

24  thought it was removed.  They thought it.  So did I.  And I

25  don't know how to search that stuff, and it was way back from

N592Car2

1  April 20-whatever, when it first came up, your Honor.

2          THE COURT:  So now when did you tell him -- and I'm

3  not imputing dishonesty to you --

4          MR. TACOPINA:  Yeah.

5          THE COURT:  -- you understand.  When you told me it

6  had been removed, in fact it hadn't been removed.

7          MR. TACOPINA:  Well, actually I didn't say that to

8  your Honor, because I didn't see it with my own eyes.  What I

9  did say was Eric Trump's post was removed.  We were discussing

10  that and that was removed.

11          We all believed— Ms. Kaplan's side, as well—that the

12  other post was removed, but apparently it wasn't.  It was in a

13  queue from April 26, your Honor.  But it's a resolved issue.

14  It has been removed.  And I'm doing everything I can to make

15  sure everyone is satisfied here.

16          But on this recent post, if I may address it, I assume

17  your Honor has seen it, yes?

18          THE COURT:  I've been told of it.

19          MR. TACOPINA:  Okay.  It is not anything that would

20  require any instruction to a jury.

21          First of all, let's put this in context.  He is --

22          THE COURT:  I'm not instructing the jury.

23          MR. TACOPINA:  Okay.

24          THE COURT:  Look.  We are dealing here with what we

25  are dealing with --

N592Car2

1                    MR. TACOPINA:  Yes.

2                    THE COURT:  -- and I have no further comment.

3                    MR. TACOPINA:  Okay.  Thank you, your Honor.

4                    1, 2?

5                    THE COURT:  What?

6                    MR. TACOPINA:  I'm more concerned about lunch right

7        this minute.  The cafeteria?  Can I go to the cafeteria?

8                    THE COURT:  Yes, you can go to the cafeteria.  You can

9        even go out.

10                   MR. TACOPINA:  No, coming in is so much fun, I'd

11       rather stay in.

12                   THE COURT:  Good.

13                   MR. TACOPINA:  Thank you.

14                   MS. KAPLAN:  Thank you, your Honor.

15                   (Recess pending verdict; 12:32 p.m.)

16                   (In open court; jury not present; 3:02 p.m.)

17                   THE COURT:  Good afternoon.  I have received a note

18       reading in its entirety "Verdict."

19                   THE DEPUTY CLERK:  Shall I get the jury?

20                   THE COURT:  Just give me one minute.

21                   Assuming that there is in fact a verdict and, for that

22       matter, even assuming there isn't, which doesn't seem very

23       likely, decorum will be maintained in the courtroom.  No

24       shouting, no jumping up and down, no race for the door.  Just

25       remain seated and quiet.  There are further things that have to

N592Car2

1   happen in that event.

2              All right.  Let's get the jury.

3              (Jury present; 3:04 p.m.)

4              THE COURT:  Jurors all present.

5              Members of the jury, who is the foreperson?

6              (Juror 81 stands)

7              THE COURT:  Yes, ma'am.  Has the jury in fact reached

8   a verdict?

9              THE FOREPERSON:  We have.

10             THE COURT:  Would you please pass the envelope to

11  Andy.  Thank you.

12             (Pause)

13             THE COURT:  The clerk will publish the verdict.

14             THE DEPUTY CLERK:  As to battery, did Ms. Carroll

15  prove, by a preponderance of the evidence, that (1) Mr. Trump

16  raped Ms. Carroll?  Answer:  No.

17             Question 2.  Did Mr. Trump sexually abuse Ms. Carroll?

18  Answer:  Yes.

19             Question 4.  Ms. Carroll was injured as a result of

20  Mr. Trump's conduct?  Answer:  Yes.

21             Dollar amount that would fairly and adequately

22  compensate her for injury --

23             THE COURT:  "For that injury."

24             THE DEPUTY CLERK:  For that injury or those injuries.

25  $2 million.

1        Question 5.  Mr. Trump's conduct was willfully or

2    wantonly negligent, reckless, or done with a conscious

3    disregard of the rights of Ms. Carroll, or was so reckless as

4    to amount to such disregard?  Answer:  Yes.

5        How much, if any, should Mr. Trump pay to Ms. Carroll

6    in punitive damages?  Answer:  $20,000.

7        As to defamation, did Ms. Carroll prove, by a

8    preponderance of the evidence, that, Question 6, Mr. Trump's

9    statement was defamatory?  Answer:  Yes.

10        Did Ms. Carroll prove, by clear and convincing

11    evidence, that, as to Question 7, Mr. Trump's statement was

12    false?  Answer:  Yes.

13        Question 8.  That Mr. Trump made the statement with

14    actual malice?  Answer:  Yes.

15        Did Ms. Carroll prove, by a preponderance of the

16    evidence, that, Question 9, Ms. Carroll was injured as a result

17    of Mr. Trump's publication of the October 12, 2022 statement?

18    Answer:  Yes.

19        If "yes," answer a dollar amount for any damages other

20    than reputation repair program.  $1 million.

21        If "yes," insert a dollar amount for any damages for

22    the reputation repair program only.  $1,700,000.

23        Question 10.  In making the statement, Mr. Trump acted

24    maliciously, out of hatred, ill will, spite, or wanton,

25    reckless, or willful disregard of the rights of another?

N592Car2

1   Answer:  Yes.

2          If "yes," how much, if any, should Mr. Trump pay to

3   Ms. Carroll in punitive damages?  $280,000.

4          THE COURT:  And it has affixed to it the juror

5   numbers.

6          Is there a request for a poll, Mr. Tacopina?

7          MR. TACOPINA:  Yes, your Honor.

8          THE COURT:  Poll the jury, please, Andy.

9          THE DEPUTY CLERK:  Juror No. 10, in seat no. 1, is

10  that your verdict?

11         JUROR 10:  Yes.

12         THE DEPUTY CLERK:  Juror No. 37, is that your verdict?

13         JUROR 37:  Yes.

14         THE DEPUTY CLERK:  Juror No. 39, is that your verdict?

15         JUROR 39:  Yes, it is.

16         THE DEPUTY CLERK:  Juror No. 44, is that your verdict?

17         JUROR 44:  Yes.

18         THE DEPUTY CLERK:  Juror No. 48, is that your verdict?

19         JUROR 48:  Yes.

20         THE DEPUTY CLERK:  Juror No. 58 --

21         JUROR 58:  Yes, it is.

22         THE DEPUTY CLERK:  -- is that your verdict?

23         JUROR 58:  Yes, it is.

24         THE DEPUTY CLERK:  Thank you.

25         Juror No. 77, is that your verdict?

N592Car2

```
1              JUROR 77:  Yes.

2              THE DEPUTY CLERK:  Juror No. 80, is that your verdict?

3              JUROR 80:  Yes.

4              THE DEPUTY CLERK:  Juror No. 81, is that your verdict?

5              JUROR 81:  Yes.

6              THE DEPUTY CLERK:  Verdict unanimous, your Honor.

7              THE COURT:  Thank you.

8              Is there any reason why the verdict should not be

9    filed and recorded and judgment entered?

10             Ms. Kaplan.

11             MS. KAPLAN:  None from our side, your Honor.

12             THE COURT:  Mr. Tacopina.

13             MR. TACOPINA:  No, your Honor.

14             THE COURT:  The judgment will be filed and recorded.

15             Any reason why the jury shouldn't be discharged at

16   this time?

17             MS. KAPLAN:  None for plaintiff, your Honor.

18             MR. TACOPINA:  No, your Honor.

19             THE COURT:  Members of the jury, you have done an

20   important and a hard task.  I never comment on jury verdicts

21   because I respect the role of the jury.  It is the bedrock of

22   the system.

23             When I first began practicing law in New York, there

24   was a then very elderly and distinguished judge of this Court

25   who at least two members of the United States Supreme Court
```

1  referred to at various times as the finest trial judge in

2  America.  His name was Ed Weinfeld.  And Ed Weinfeld made it a

3  point of principle never to thank jurors.  It was his view that

4  serving on a jury is a civic duty and a privilege of being an

5  American.

6          I follow Ed Weinfeld almost all the time, but not on

7  this point.  It is a duty, it is a privilege, but, as someone

8  said—and it was probably Mr. Tacopina—you were torn out of

9  your lives, you were brought here, told not to read anything in

10 the papers, not to talk to anybody, and to do a hard job of

11 work; and I knew, watching you through this trial, and I know

12 the lawyers did, too, that you paid close attention even when

13 it wasn't riveting at the moment.  You took this with the

14 seriousness to which both sides were entitled in the great

15 American tradition.

16         And so I, as an officer of the United States and I

17 know on behalf of the lawyers in this case on both sides,

18 express gratitude to you for the job you have done, whether one

19 agrees with it or not.  You did what we asked you to do and you

20 did it conscientiously.

21         Now, in a minute I'm going to discharge you.  I want

22 to talk about anonymity for a moment.  Once you leave here

23 today, each of you individually has the right to talk about the

24 case, to relate your experiences, and you have the right not to

25 do that.  You would each individually have the right to

N592Car2

1    identify yourself as someone who was on this jury or not.  My

2    advice to you is not to identify yourselves——not now and not

3    for a long time.

4            What I do direct is that if you are one who elects to

5    speak to others and to identify yourselves to others, I direct

6    you not to identify anyone else who sat on this jury.  Each of

7    you owes that to the other, whatever you decide for yourself.

8            Now, with that, I discharge you.  You will go back

9    into the jury room and collect your belongings.  You will leave

10   your notes there, they will be taken care of, and you will

11   leave the courthouse as you have left the courthouse each day

12   of this trial.  I understand your transportation is waiting.

13           So I thank each and every one of you, and you are now

14   discharged and may rise and leave.

15           (Jury discharged)

16           THE COURT:  You may be seated.

17           Counsel, is there anything else we need to accomplish

18   this afternoon?

19           MS. KAPLAN:  Not from our side, your Honor.

20           MR. TACOPINA:  No, your Honor.

21           THE COURT:  All right.  I thank you all, counsel, for

22   your cooperation and for your willingness to work with each

23   other, and for your respect for the Court——not for me, but for

24   this institution.  That's what it's about.  I don't think I

25   have anything else to say.  Good job all around.  Thank you,

N592Car2

1    folks.

2          COUNSEL:   Thank you, your Honor.

3                          oOo