UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
E. JEAN CARROLL,                                          Civil Action No.:
                                                          22-cv-10016
                *Plaintiff*,

  – against –

DONALD J. TRUMP,

                *Defendant*.
-------------------------------------------------------------------X

---

## DEFENDANT DONALD J. TRUMP'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A NEW TRIAL OR REMITTITUR

---

TACOPINA, SEIGEL & DeOREO
275 Madison Ave., Fl. 35
New York, New York 10016
Tel: (212) 227-8877
Fax: (212) 619-1028
Counsel for Defendant Donald J. Trump

<s>

**TABLE OF CONTENTS**

INTRODUCTION..........................................................................................................................1

ARGUMENT................................................................................................................................1

      POINT I    THE COURT SHOULD GRANT A NEW TRIAL OR REMITTITUR PURSUANT TO FED. R. CIV. P. 59................................................................1

           A.    COMPENSATORY DAMAGES FOR THE BATTERY CLAIM...................1

           B.    COMPENSATORY DAMAGES FOR THE DEFAMATION CLAIM..........3

           C.    PUNITIVE DAMAGES FOR THE DEFAMATION CLAIM.........................6

CONCLUSION.............................................................................................................................7

</s>

## **TABLE OF AUTHORITIES**

**CASES:**

*Alla v. Verkay*, 979 F. Supp. 2d 349 (E.D.N.Y. 2013)..................................................................4

*Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34 (2d Cir. 2015)..............................4

*Bouveng v. NYG Cap. LLC*, 175 F. Supp. 3d 280 (S.D.N.Y. 2016).................................................6

*Breest v. Haggis*, 180 A.D.3d 83 (1st Dep't 2019)..........................................................................2

*Breest v. Haggis*, No. 161137/2017, 2023 WL 374404
(Sup. Ct. NY Co. Jan. 24, 2023)..................................................................................................1-2

*Cantu v. Flanigan*, 705 F. Supp. 2d 220 (E.D.N.Y. 2010).........................................................5-6

*Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573
(S.D.N.Y. 2011)................................................................................................................................4

*Egan v. Gordon*, No. 904231-20 (Sup. Ct. Albany Co. Nov. 10, 2022)..........................................2

*Fin. Cas. & Sur. Co., Inc. v. Zouvelos*, No. 12CV3476AMDRLM, 2018
WL 3950634 (E.D.N.Y. May 3, 2018).............................................................................................3

*Grant v. City of Syracuse,* 357 Supp. 3d 180 (N.D.N.Y. 2019).......................................................1

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, No. 1:00-1898, 2008
WL 1971538(S.D.N.Y. May 7, 2008)..............................................................................................3

*MJAC Consulting, Inc. v. Barrett*, No. 04 CIV. 6078(WHP), 2006
WL 2051129 (S.D.N.Y. July 24, 2006)............................................................................................3

*Ortiz v. New York City Hous. Auth.*, 22 F. Supp. 2d 15
(E.D.N.Y. 1998)................................................................................................................................2

*Osorio v. Source Enterprises, Inc.*, No. 05 CIV. 10029 (JSR), 2007 WL 683985
(S.D.N.Y. Mar. 2, 2007*)*...................................................................................................................5

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994)...........................................................................5

*Rombom v. Weberman*, No. 1378/00, 2002 WL 1461890
(Sup. Ct. Kings Co. June 13, 2002)..............................................................................................6-7

*Stampf v. Long Island R. Co.*, 761 F.3d 192 (2d Cir. 2014)..........................................................4

**STATUTES/RULES**

Fed. R. Civ. P. 59....................................................................................................................1, 7

New York's Adult Survivor's Act..............................................................................................4

## INTRODUCTION

Defendant Donald J. Trump ("Trump" or "Defendant"), by and through his undersigned counsel, respectfully submits this Reply Memorandum of Law in further support of his Motion for a new trial or remittitur pursuant to Fed. R. Civ. P. 59.

## ARGUMENT

### POINT I

### THE COURT SHOULD GRANT A NEW TRIAL OR REMITTITUR PURSUANT TO FED. R. CIV. P. 59

**A.   Compensatory Damages for the Battery Claim**

In her opposition papers, Plaintiff argues that the Court should not reduce the compensatory damages for the battery claim because a loss of consortium claim does not apply to her, and that the damages awarded in the cases that she cites support such compensatory damages.

As to a loss of consortium claim, Defendant is not arguing that Plaintiff alleged a loss of consortium claim but argues that her alleged damages are identical to plaintiffs in other cases asserting such a claim, namely that Plaintiff argued to the Jury that she should be compensated for living a life since early 1996 without companionship: "What is the price for decades of living alone without companionship, for having no one to cook dinner with, no one to walk your dog with, no one to watch TV with, and for feeling for decades like you are dirty and unworthy?" (Tr. 1272:22 - 1273:1); *see also Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 195 (N.D.N.Y. 2019)(holding that damages for loss of consortium "includes such items as loss of support services, companionship, society, sexual relations, and solace").

Additionally, the cases cited by Plaintiff are distinguishable. In *Breest v. Haggis*, No. 161137/2017, 2023 WL 374404, at *3 (Sup. Ct. NY Co. Jan. 24, 2023)(*see also* Plaintiff Exhibit 7),

1

the Plaintiff was raped, diagnosed with PTSD and most traumatized ("worst part" of the rape) by the defendant "jamming his penis into her throat repeatedly and her gagging."[1] These facts clearly make *Breest* inapplicable here since Defendant did not rape Plaintiff or force oral sex upon her, and Plaintiff was not diagnosed with *any* medical condition.

In *Egan v. Gordon*, No. 904231-20 (Sup. Ct. Albany Co. Nov. 10, 2022), the plaintiff was raped and diagnosed with PTSD, and her career was "upended by the abuse she suffered." *Breest*, 2023 WL 374404, at *3 (the Court in *Breest* summarized the facts of the *Egan* case). Here, Plaintiff was not raped, was not diagnosed with any injury, and Plaintiff does not even argue that the battery had an effect on her career.

In *Ortiz v. New York City Hous. Auth.*, 22 F. Supp. 2d 15, 19, 38 (E.D.N.Y. 1998), Plaintiff "was raped at gunpoint in the stairwell of her building" and "diagnosed ... with chronic post-traumatic stress disorder, which condition [was] not abated in the four years" of treatment by her psychiatrist. Those facts are in no way similar to the facts of this case.

Therefore, the cases cited by Defendant – including multiple from the last few years – are clearly applicable and support Defendant's position that Plaintiff's compensatory damages award for her battery claim is excessive.

Consequently, the Jury's $2 million award was clearly motivated by sympathy rather than by evidence of harm, and the Court should grant a new trial as to compensatory damages for the battery claim, or grant a remittitur of such award to an amount no more than $400,000.

---

[1] Plaintiff Ex. 7 at 1210:17-22; *see also id.* at 364:17-19; *Breest v. Haggis*, 180 A.D.3d 83, 86 (1st Dep't 2019)("defendant eventually forced plaintiff to give him oral sex; then he digitally penetrated her and commented that she was "nice and tight"; then he raped her").

B.     **Compensatory Damages for the Defamation Claim**

Plaintiff first asserts that Defendant cannot now argue that the testimony of Plaintiff's damages expert (Professor Humphreys) was based upon faulty analysis because Defendant did not raise that issue at trial and attempt to exclude it. The Court should reject such assertion because, to the extent an expert's testimony is not convincing, that is an issue of weight and not admissibility. *See, e.g., In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, No. 1:00-1898, 2008 WL 1971538, at *10 (S.D.N.Y. May 7, 2008)("Defendants raise two principal objections to the reliability of Huggins' opinion: he does not use a proper methodology, and his conclusions are speculative. .... The concerns defendants raise go to the weight to be accorded his testimony rather than its admissibility.").

Furthermore, during the trial, Defendant cross-examined Professor Humphreys concerning the issues of Plaintiff being allegedly damaged by Defendant's June 2019 Statements and Professor Humphreys's failure to distinguish any harm from the October 12, 2022 Statement from any harm caused by the June 2019 Statements. (Defendant Ex. B at 148:8 - 1150:3; 1152:13-18). Defendant also cross-examined Professor Humphreys on the issue of her estimate of damages being speculative because she did not "know exactly who may have seen the" October 12, 2022 Statement (which was on social media), and did not factor in the effects of traditional media (newspapers and television) or Plaintiff's book on Plaintiff's reputation. (*Id.* at 1150:12-23; 1152:19 - 1153:8-15). Such cross-examination also focused on the fact that Professor Humphreys was aware of, but did not measure, the significant amount of positive support that Plaintiff received from the public. (*Id.* at 1154:3-20). Therefore, Defendant clearly raised Professor Humphreys's faulty analysis at trial.[2]

---

[2] Additionally, the cases cited by Plaintiff on this point are inapposite. In *Fin. Cas. & Sur. Co., Inc. v. Zouvelos*, No. 12CV3476AMDRLM, 2018 WL 3950634, at *2 (E.D.N.Y. May 3, 2018), the Court did not hold that the movant waived any argument and its language on this issue was dicta. In *MJAC Consulting, Inc. v. Barrett*, No. 04 CIV. 6078(WHP), 2006 WL 2051129, at *3 (S.D.N.Y. July 24, 2006), the movant raised arguments based upon facts not in the trial transcript, and here, Defendant bases all of his arguments on the trial transcript.

3

Moreover, Plaintiff does not even mention the holdings of cases cited by Defendant that establish that a Court should grant remittitur when the jury award is based upon speculative evidence. *See Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 51 (2d Cir. 2015)("[O]ur detailed assessment of the trial evidence bearing on damages convinces us that the jury's inclusion in its award of $900,000 for the lost developer's fee was impermissibly speculative."); *Stampf v. Long Island R. Co.*, 761 F.3d 192, 208 (2d Cir. 2014)(Reducing $100,000 of compensatory damages to $20,000 because the $100,000 award was based upon speculation); *Alla v. Verkay*, 979 F. Supp. 2d 349, 376 (E.D.N.Y. 2013)(granting remittitur because the "damages award [was] rooted in speculation"); *Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 577 (S.D.N.Y. 2011)(granting remittitur because the compensatory damages award was "unduly speculative and would arguably constitute a 'windfall'").

As to Defendant's argument concerning double recovery, contrary to the Plaintiff's assertions, this is not a jury instruction issue. Plaintiff highlights the Court's jury instruction wherein the Court instructed the jury that it need not consider *Carroll I*. (Plaintiff Exhibit 1 at 537:13 - 538:7). However, that instruction does not concern Professor Humphreys testifying that Plaintiff was harmed by the June 2019 Statements but failing to separate that harm from any additional harm caused by the October 12, 2022 Statement.

As to Defendant's argument that the value of Plaintiff's defamation claim (Defendant allegedly defamed Plaintiff when he denied the rape) was significantly decreased by the Jury finding that no rape occurred, Plaintiff attempts to confuse the issue by citing to New York's Adult Survivor's Act ("ASA"). Merely because the ASA covers a groping of intimate parts (as well as rape) does not change the fact that the overall essence of Plaintiff's defamation claim was that Defendant allegedly defamed Plaintiff when he denied her rape allegation. (Complaint [Defendant Exhibit A] at ¶¶ 96 & 98). This is also not

4

a jury instruction issue because the Court's instruction highlighted by Plaintiff[3] goes to liability on the defamation claim, not to the amount of damages that should be awarded.

Lastly, the cases cited by Plaintiff do not support her position. In *Osorio v. Source Enterprises, Inc.*, No. 05 CIV. 10029 (JSR), 2007 WL 683985, at *10 (S.D.N.Y. Mar. 2, 2007), the Court upheld a $3.5 million defamation award because the defendant "'branded [plaintiff] as a criminal in the industry' and thereby impaired her ability to work in that industry." Here, Defendant did not accuse Plaintiff of criminal conduct, and she offered no proof that the October 12, 2022 Statement impaired her ability to work in her industry and blamed the June 2019 Statements (not the October 12, 2022 Statement ) for the loss of her position at Elle magazine. (Defendant Exhibit B at 268:20 - 269:19; 271:10-17; 271:18 - 273:10).

In *Purgess v. Sharrock*, 33 F.3d 134, 142 (2d Cir. 1994), the jury awarded Plaintiff $3.5 million for defamatory statements that caused a physician to lose $370,000 a year income, which is a far cry from the facts of this case.

In *Cantu v. Flanigan*, 705 F. Supp. 2d 220, 227 (E.D.N.Y. 2010), the Court was faced with a $150 million award for "non-economic" injuries for "the loss of reputation, which includes the loss of professional status and the ability to earn wages." Due to the defamatory statements made against plaintiff, he suffered incredible harm to his ability to earn future income, including the loss of hundreds of millions of dollars of business:

> Cantu depended upon his reputation to secure large, multi-million dollar contracts, and stood to lose the ability to secure such contracts if his reputation were tarnished. The record indicates that such contracts were quickly lost when Cantu came under a cloud of suspicion for corrupt and fraudulent business practices. In fact, the record reveals that Georgala rescinded a contract valued at $289,950,000 due to the defamation, and that

---

[3] The jury instruction to which Plaintiff cites merely provides: "As you probably already have guessed, whether Mr. Trump's statement is false or true depends largely or entirely on whether you find that Mr. Trump raped or sexually abused or forcibly touched or otherwise sexually attacked Ms. Carroll." (Plaintiff Exhibit 1 at 1431:2-6).

5

Petroleos Mexicanos declined to enter into a contract valued at $69,000,000 due to the defamation. This indicates that the statements were particularly damaging to Cantu.

*Cantu*, 705 F. Supp. 2d at 229. Here, as noted above, to the extent that Plaintiff's income was diminished (and she testified that she made more money after losing her job at Elle[4]), such harm was caused by the June 2019 Statements and not the October 12, 2022 Statement.

Therefore, the Jury's $2.7 million award for Plaintiff's defamation claim was clearly motivated by sympathy rather than by evidence of harm, and the Court should grant a new trial as to compensatory damages for the defamation claim, or grant a remittitur of such award to an amount no more than $100,000 for general compensatory damages and $368,000 for the reputation repair campaign (the low end estimate for such a campaign according to Professor Humphreys).

## C.  Punitive Damages for the Defamation Claim

Plaintiff argues that the $280,000 punitive damages award for the defamation claim is appropriate because of the degree of reprehensibility. Here, Defendant submits that there is a very low degree of reprehensibility, if any, because, in the October 12, 2022 Statement, Defendant was defending himself against a false accusation of rape that was published and republished around the globe. Again, the Jury found that Defendant did not rape Plaintiff, and Plaintiff has always portrayed the Bergdorf Goodman Incident as nothing less than a rape. The purported sexual abuse found by the Jury could have only included alleged groping of Plaintiff's intimate parts through clothing, which is clearly not rape.

The cases cited by Plaintiff are also distinguishable. In *Bouveng v. NYG Cap. LLC*, 175 F. Supp. 3d 280, 319 (S.D.N.Y. 2016), the defendants made 66 defamatory statements which accused plaintiff of extortion, visa fraud, bank fraud and prostitution. In *Rombom v. Weberman*, No. 1378/00, 2002 WL 1461890, at *1–2 (Sup. Ct. Kings Co. June 13, 2002), Defendant made multiple defamatory statements

---

[4] Defendant Exhibit B at 547:15-19 and 550:2-5.

accusing Plaintiff of being a dangerous psychopath and being confined to a mental institution as well as bombing government installations, kidnaping and serving time in prison.  Here, we are faced with one defamatory statement, which Defendant made in an effort to defend himself against a false public accusation of rape, and such statement did not accuse Plaintiff of criminal activity.

Consequently, the Jury's $280,000 punitive damages award for Plaintiff's defamation claim clearly violated due process, and the Court should grant a new trial as to such punitive damages, or grant a remittitur of such award to an amount no more than $50,000.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant his Motion for a new trial or remittitur pursuant to Fed. R. Civ. P. 59 to the amounts set forth above, with such further and other relief as the Court deems just and equitable.

Dated: New York, New York
      June 29, 2023

TACOPINA, SEIGEL & DeOREO

By: _____
Joseph Tacopina, Esq.
Chad Seigel, Esq.
Matthew G. DeOreo, Esq.
275 Madison Ave., Fl. 35
New York, New York 10016
Tel: (212) 227-8877
Fax: (212) 619-1028
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
mdeoreo@tacopinalaw.com
*Counsel for Defendant Donald J. Trump*