# EXHIBIT E


# NATIONAL LEGAL AND POLICY CENTER

July 2, 2026

Attorney Grievance Committee
Supreme Court of the State of New York
Appellate Division
First Judicial Department
180 Maiden Lane, 17th Floor
New York, New York 10038
Via Email: AD1-AGC-newcomplaints@nycourts.gov

**RE: COMPLAINT AGAINST ROBERTA ANN KAPLAN (Registration No. 2507093) 1133 AVENUE OF THE AMERICAS, SUITE 1500, NEW YORK, NY 10036, rkaplan@kaplanmartin.com REGARDING LITIGATION FUNDING FROM REID HOFFMAN'S AMERICAN FUTURE REPUBLIC IN *E. JEAN CARROLL v. TRUMP***

Dear Attorney Grievance Committee:

The National Legal and Policy Center (NLPC) hereby submits this complaint with the Attorney Grievance Committee (AGC) against New York lawyer Roberta Ann Kaplan for violating the Rules of Professional Conduct regarding the outside funding of her client's defamation lawsuits against President Donald Trump from billionaire Reid Hoffman and his nonprofit American Future Republic.

As more fully described herein, during E. Jean Carroll's deposition on October 14, 2022, when asked under oath whether "anyone else [is] paying your legal fees," she unequivocally answered "No." At that moment, Ms. Kaplan, who did not object to the question, knew that answer was false but waited almost *six months* later until the eve of trial to correct the record by informing opposing counsel and the court that indeed Mr. Hoffman, a vocal Trump critic who associated with convicted sex offender Jeffrey Epstein, was funding some of Ms. Carroll's litigation expenses *and* legal fees via his nonprofit. Moreover, it does not appear from the public record whether Ms. Kaplan received informed consent from her client before she solicited Mr. Hoffman for financial assistance to help fund her litigation. These and related allegations of

misconduct must be "thoroughly investigated" by the AGC and appropriate disciplinary measures imposed if warranted.[1]

### Interests of Complainant

Founded in 1991, the NLPC is a nonprofit ethics watchdog organization based in the Washington, D.C., area that promotes ethics in public life through research, investigation, education and legal action  To carry out its mission, NLPC files misconduct complaints against public figures before appropriate agencies and bodies, including this one, as part of its Government Integrity Project.[2] Accordingly, it has an institutional interest in submitting this complaint.

### Background

NLPC's allegations of professional misconduct concern the well-publicized litigation by Ms. Kaplan's client, E. Jean Carroll, against Donald Trump.  In short, Ms. Carroll filed two lawsuits against Mr. Trump, the first one in November 2019 for defamation, *Carroll v. Trump*, No. 1:20-cv-7311 (LAK) (*"Carroll I"*), for which she was awarded $83.3 million by the jury, and the second one in November 2022 for defamation and sexual assault for which she was awarded $5 million, *Carroll v. Trump*, No. 22-cv-10016-LAK (*"Carroll II"*).  While she prevailed in each case at trial and on appeal to the court of appeals, the U.S. Supreme Court recently

---

[1] The AGC *"safeguards the reputation of the legal profession by enforcing high standards of conduct, while at the same time **ensuring that complaints are <u>thoroughly investigated</u>.**"* See https://www.nycourts.gov/courts/AD1/Committees&Programs/DDC/How%20to%20File%20a%20Complaint%2007.30.2020.pdf at 2 (emphasis added).

[2] https://nlpc.org/government-integrity-project/. *See, e.g.,* NLPC Complaint against United States Senator Charles Schumer for threatening Supreme Court Justices on the courthouse steps. https://nlpc.org/featured-news/ny-dismissed-our-bar-complaint-against-schumer-for-threatening-kavanaugh/; NLPC's D.C. Bar Complaint against FBI lawyer Kevin Clinesmith convicted on a felony charge for altering CIA document to obtain FISA warrant against Carter Page. https://nlpc.org/featured-news/double-standard-at-work-more-leniency-for-clinesmith/. *See also* NLPC's House Ethics and Federal Election Commission Complaints against Representative Alexandria Ocasio- Cortez for violating the House Gift Rule for attending the Met Gala and for using campaign funds for private psychiatric services. https://nlpc.org/featured-news/ethics-complaint-filed-against-aoc-for-using-campaign-funds-for-ketamine-doctor/.
In addition, NLPC has a robust Corporate Integrity Project that seeks to hold corporations and their board members, including Microsoft's Reid Hoffman, accountable for misconduct and actions that are inimical to good corporate governance and shareholder interests. https://nlpc.org/corporate-integrity-project/; https://nlpc.org/?s=reid+hoffman&et_pb_searchform_submit=et_search_proccess&et_pb_include_posts=yes&et_pb_include_pages=yes

declined further review of *Carroll II*; however, an appeal of *Carroll I* to the Supreme Court is expected to be filed soon.[3]

Recently, press attention has been made regarding the possible investigation by the Department of Justice into the payments of legal expenses and fees paid by Reid Hoffman and his nonprofit American Future Republic to fund Ms. Carroll's lawsuits.[4]

This investigation centers around E. Jean Carroll's deposition in *Carroll I* on October 14, 2022, when the following exchange took place:

Q: Are you presently paying your counsel's fees?

A: This is a contingency case.

Q: So you're not paying expenses or anything out of pocket to date; is that correct?

A: I'm not sure about expenses. I have to look that up.

Q. Is anyone else paying your legal fees, Ms. Carroll?

A: No.

Dep. Tr. at 209:11-21.[5]

Ms. Kaplan did not object to these questions on relevance or privilege grounds. Since at least some of her legal fees for *Carroll I* were being paid by Reid Hoffman through his nonprofit at the time, the "No" answer was false. Ms. Carroll either 1) lied under oath and committed perjury; 2) forgot the expense and fee arrangement with Reid Hoffman that her counsel had arranged for; or 3) didn't even know about the expense and fee arrangement.

---

[3] Kelsey Dallas & Amy Howe, *"Supreme Court will not consider $5 million verdict against Trump,"* SCOTUSblog (Jun 29, 2026) https://www.scotusblog.com/2026/06/supreme-court-will-not-consider-5-million-verdict-against-trump/

[4] Sarah N. Lynch, *"Justice Dept. investigating outside funding E. Jean Carroll received for civil lawsuits against Trump, sources say,"* CBS News (May 28, 2026). https://www.cbsnews.com/news/justice-dept-reid-hoffman-e-jean-carroll-trump-lawsuits/

[5] See Letter from Alina Habba to Judge Lewis Kaplan with Exhibits A-F (April 13, 2023), *Carroll II (*ECF 108) https://assets.bwbx.io/documents/users/iqjWHBFdfxIU/r3oEzrMqhcWU/v0

Notably, her answer to the question as to her *"paying expenses or anything out of pocket to date"* with *"I'm not sure about expenses. I have to look that up,"* suggests that either she may have indeed paid for some expenses but needed to 'look that up" in her financial records to be sure, such as her check book or credit card statement, as opposed to her needing to "look up" her attorney's communications about Reid Hoffman paying any litigation expenses (in which case, she would have also learned about legal fees being paid in addition to expenses). It's not clear whether in fact she did "look up" the expense payments and if so, when or whether she reported her findings to Ms. Kaplan or opposing counsel.

Ms. Carroll did testify that she had a "contingency case" whereby a client owes no attorney fees until and if an award is made, and then, usually owes a one-third contingency fee of the award, the maximum allowed under New York ethical rules.[6] As for the payment of litigation expenses, the retainer agreement with Ms. Kaplan's firm should specify how those are to be paid, either by the client as they are incurred or advanced by the lawyer to be deducted from any award.[7] As part of this investigation, Ms. Kaplan should turn over to the AGC copies of her original retainer agreement with Ms. Carroll and any amendments or changes thereto since according to Ms. Kaplan, Reid Hoffman's funding was not received until September 2020, subsequent to the filing of the complaint in 2019, and thus, after the initial retainer agreement was signed.[8] Moreover, the second lawsuit for both defamation and assault, *Carroll II*, was filed on November 24, 2022, after the October 14, 2022 deposition in *Carroll I*, which would necessitate another retainer or amendment to the first one that would require Ms. Carroll's informed consent about any outside funding.

Regardless of whether Ms. Carroll perjured herself or was mistaken during her deposition, *it was clear at that moment that Ms. Kaplan knew that her answer was false as to any other source of legal fees and failed to correct the record for almost six months until the eve of trial.* It was incumbent on Ms. Kaplan during a break in the deposition to remind her client of the Hoffman funding arrangement so she could correct her answer after the break or correct it on the deposition errata sheet after reviewing the transcript of the deposition. Instead, Ms. Kaplan

---

[6] 22 NYCRR 1015.15.
https://www.nycourts.gov/LegacyPDFS/rules/jointappellate/4th%20Dept.%20-%201015.15.pdf

[7] See Rule 1.8(e)(1).

[8] Those documents, including the source of third-party funding, are not subject to attorney-client or work product privilege. See *HK Capital LLC v Rise Dev. Partners LLC* 2022 NY Slip Op 50024(U) [74 Misc 3d 1201(A)], Supreme Court, Kings County (January 6, 2022) (*"It is well settled that 'absent special circumstances, retainer agreements, a client's identity, invoices and the payment of fees are not subject to the attorney client-privilege' (see, First Capital Estate Investments LLC v. SDDCPO Brokerage Advisors LLC, 2020 WL 353100 [S.D.NY 2020]). Indeed, any communication that does not have any direct relevance to any legal advice is collateral and not privileged (see, Sarfati v. Bertino, 24 Misc 3d 13(A), 890 NYS2d 371 [Supreme Court Appellate Term 2009]))."*
https://www.nycourts.gov/reporter/3dseries/2022/2022_50024.htm

waited from October 14, 2022, until April 10, 2023, almost *six months,* until the eve of trial to inform opposing counsel and the court of the allegedly true facts, and even then, delayed disclosing the identity of the source of the funding. NLPC submits that this inordinate delay in correcting the record constituted unethical and unprofessional conduct and should not be countenanced by the AGC.

More troubling, the excuse Ms. Kaplan provided for the inordinate delay in correcting the record strains credulity and raises more questions than it answers. In her letter to opposing counsel Alina Habba on April 10, 2023, on the eve of trial, Ms. Kaplan explains:

> *During the course of preparing for her testimony at trial, Ms. Carroll has recollected additional information. While Ms. Carroll stands by that testimony about this case being contingency case, she **now** recalls that **at some point** her counsel secured additional funding from a nonprofit organization to offset certain expenses **and legal fees.***
> (Emphasis added).[9]

Confusingly, Ms. Kaplan later explained on April 13, 2023, to the trial court that presumably during either a break in the October 14, 2022, deposition or shortly thereafter she "*did make an appropriate inquiry **at the time** to determine that Carroll had testified truthfully given her then-existing knowledge.*"[10] For that representation to be true, Ms. Kaplan apparently asked her client "at the time" of the deposition (or shortly thereafter) whether she remembered that Ms. Kaplan's law firm was getting outside funding, and allegedly Ms. Carroll responded in the negative (meaning that either Ms. Carroll did not remember that fact or was never told of the outside funding by Ms. Kaplan) and therefore, it can be said that technically she testified "*truthfully given her **then**-existing knowledge.*"

Ms. Kaplan would have the court believe that while preparing Ms. Carroll for the upcoming trial in *Carroll II* in April 2023, which centers around her encounter with President Trump, she *sua sponte* remembered an extraneous fact that "at some point" that her counsel "*secured additional funding from* [an unnamed] *nonprofit to offset certain expenses **and legal fees.***" Why would Ms. Carroll spontaneously recollect that supposedly irrelevant fact (as Ms. Kaplan maintains) "now" but not six months earlier during her October 14, 2022, deposition when she was specifically asked about it **and** when Ms. Kaplan allegedly informed Mr. Carroll "*at the time*" that she was indeed getting outside funding? Was her recollection refreshed? Yet again? By Ms. Kaplan? Moreover, *Carroll II* was filed on November 24, 2022, a month *after* her October 14 deposition regarding outside funding for *Carroll I*. Did Ms. Kaplan's second or amended retainer agreement with Ms. Carroll for that suit also disclose any outside funding for

---

[9] *See* Letter dated April 10, 2023, from Roberta Kaplan to Alina Habba (ECF 108-2, 22-cv-10016-LAK) Exhibit B.
https://assets.bwbx.io/documents/users/iqjWHBFdfxIU/r3oEzrMqhcWU/v0

[10] Letter dated April 13, 2023, from Roberta Kaplan to Judge Lewis A. Kaplan at 1.
https://storage.courtlistener.com/recap/gov.uscourts.nysd.590045/gov.uscourts.nysd.590045.109.0.pdf

*Carroll II* was coming from Reid Hoffman's nonprofit as she was required to do under rules of professional conduct?

But more importantly, from an ethical point of view, Ms. Kaplan knew all along that Ms. Carroll's testimony was false and nevertheless let that falsehood remain on the record for almost six months until the eve of trial, forcing opposing counsel to use judicial resources by asking the court to reopen discovery to explore this issue, which was granted over Ms. Kaplan's strong objection. Yet Ms. Kaplan claims in an April 13, 2023, letter to the court that she and her firm *"adhered to their ethical obligations in this process (which did not include any asserted obligation to volunteer information to Trump's counsel at odds with their client's own actual recollection."*[11] Really? So, if Ms. Carroll had not fortuitously and spontaneously recollected the outside funding arrangement at the last minute (despite being informed "at the time" of the October 2022 deposition by Ms. Kaplan, and again when Ms. Carroll presumably gave her informed consent for the funding for *Carroll II* in November 2022), the outside funding would presumably have been kept secret to this day and no one the wiser?

In any event, NLPC submits that Ms. Kaplan is wrong to claim that she acted ethically to allow false testimony by her client to go uncorrected for six months. This committee should conclude after its "thorough investigation" that her conduct was unethical, including her lack of candor as an officer of the court about the timing and circumstances of Ms. Carroll's recollection of the outside funding arrangement, and impose appropriate disciplinary action. Such sanction should include at a minimum a public reprimand so that other members of the New York bar know what their ethical obligations are when they know their clients provide false deposition testimony, intentional or not.

Any such investigation must include discovery when Ms. Kaplan first advised her client of the outside funding arrangement. Did she even get Ms. Carroll's informed and written consent for the third-party funding arrangement, including the identity of the true source of funding, billionaire Reid Hoffman,[12] who was then known to have associated with Jeffrey Epstein, a convicted and registered sex offender since 2008, and who visited his notorious private island and tried to rehabilitate his image?[13] Would Ms. Carroll have agreed to have her

---

[11] Letter dated April 13, 2023, from Roberta Kaplan to Judge Lewis A. Kaplan at 5 n.8. https://storage.courtlistener.com/recap/gov.uscourts.nysd.590045/gov.uscourts.nysd.590045.109.0.pdf

[12] See Rule 1.8(f): "A lawyer shall not accept compensation for representing a client, or anything of value related to the lawyer's representation of the client, from one other than the client unless: (1) the client gives informed consent...." Roy D. Simon, Simon's New York Rules of Professional Conduct Annotated, Vol. 1 (2024 ed.) at 654 ("Simply put Rule 1.8(f) means that a lawyer owes a client the same duties owed to a client without regard to the source of the fees the lawyer is paid, with the added proviso that a client must give 'informed consent' to the arrangement.").

[13] Megan Hernbroth, *"LinkedIn founder and Greylock partner Reid Hoffman apologizes for his role in rehabbing Jeffrey Epstein's public image in 2015,"* Business Insider (Sept. 12, 2019).

case(s) funded or continue to be funded by such a close associate and apologist of a registered sex offender?[14]

Furthermore, why the vague statement from Ms. Kaplan that Ms. Carroll spontaneously remembered during trial preparation that "*at some point*" Ms. Kaplan secured the additional funding? Even this belated admission raises further questions. Ms. Kaplan stated that "*While Ms. Carroll stands by that testimony about this case being a contingency case…her counsel secured additional funding from a nonprofit organization to offset certain expense **and legal fees**.*" But how could Ms. Kaplan's legal fees be governed by **both** a contingency fee and have 'certain. . . legal fees" paid for by the nonprofit? Did Ms. Kaplan bill her client an hourly rate for certain work which was then paid for by Reid Hoffman? Either this was a contingency fee case as Ms. Carroll testified and as Ms. Kaplan reaffirmed or was it some sort of hybrid contingency/hourly fee case?

While hybrid fees may be ethical in some situations, where, for example, an hourly rate is charged for an administrative hearing followed by a lower contingency fee if suit is filed for damages, the arrangement here is problematic. Did Ms. Kaplan charge Ms. Carroll the maximum one-third contingency fee and on top of that was paid an additional hourly fee from Reid Hoffman's nonprofit for certain work? If so, the total fee charged would be an excessive fee, even if the excess over the contingency fee was paid by a third party.[15] Were those legal fees billed to Ms. Carroll and then deducted from the Reid Hoffman grant? Did Ms. Kaplan overstaff Ms. Carroll's litigation, such as having four lawyers attend Ms. Carroll's deposition, knowing that those "legal fees" would be paid for by Reid Hoffman, whether she won the contingency fee or not, and thus, engaged in charging an "excessive fee"?[16]

---

https://www.businessinsider.com/linkedin-founder-reid-hoffman-apologizes-helping-jeffrey-epstein-2019-9

[14] STATEMENT OF CLIENT'S RIGHTS 22 NYCRR 1210.1
"*4. You are entitled to be charged reasonable fees and expenses and to have your lawyer explain before or within a reasonable time after commencement of the representation how the fees and expenses will be computed and the manner and frequency of billing. You are entitled to request and receive a written itemized bill from your attorney at reasonable intervals. **You may refuse to enter into any arrangement for fees and expenses that you find unsatisfactory.**"*
https://nysba.org/wp-content/uploads/2020/01/StatementClientsRights_22NYCRR1210_1.pdf?srsltid=AfmBOopYX2aS T62mb6P4uU9xkyrcrTVzEmt0B-BVG84DT0-n_yx7nZLB

[15] See Roy Simon, **Hybrid Fee Agreements: Okay or No-kay?** New York Legal Ethics Reporter (March 2000) ("*[A]n attorney's retainer agreement may provide for a combination of hourly, flat, and contingent fees, **but only if** (1) the total fee is reasonable under all of the circumstances, **and** (2) if the court rules apply in the particular case then the total fee does not exceed 33-1/3% of the client's net recovery.*) https://www.newyorklegalethics.com/hybrid-fee-agreements-okay-or-no-kay/

[16] Rule 1.5(a) ("excessive fee" prohibited). *See* Peter Lattman, "S*uit Offers a Peek at the Practice of Inflating a Legal Bill,"* New York Times (March 25, 2013).

Would those legal fees paid by Reid Hoffman be considered as a gift to Ms. Carroll and subsequently be accounted for as a payment by Ms. Carroll to Ms. Kaplan, in which case they would constitute taxable income to Ms. Kaplan? While any contingency fee is taxable income to a lawyer, how were the legal fees paid by Reid Hoffman accounted for? The AGC investigation should include a review of the billing and accounting records of Ms. Kaplan and her firm's trust and operating accounts, including communications with Reid Hoffman, his nonprofit, his agents, and Ms. Carroll.

*Reid Hoffman Funding.* Ms. Kaplan contends that because the outside litigation funding was obtained *after* Ms. Carroll filed her defamation suit in November 2019, and because Ms. Carroll had no direct contact with Reid Hoffman or his nonprofit, the funding received in September 2020 was irrelevant to Ms. Carroll's and the funder's motives in bringing that lawsuit. Even if that were true,[17] the relevant issue here is whether Ms. Kaplan handled and disclosed those funds ethically.

While Ms. Kaplan admitted that her firm had previously obtained a donation from Mr. Hoffman's American Future Republic, a 501(c)(4) nonprofit in 2020 for a different case, she did not disclose the amount. A review of American Future Republic's IRS Form 990 for calendar year 2020 filed in October 2021 shows the following:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| (10) GRAB YOUR WALLET ALLIANCE 548 MARKET ST 54110 SAN FRANCISCO, CA 94104 | 82-5095411 | 501(C)(4) | 150,000 | | | | CONSUMER EMPOWERMENT OUTREACH |
| (11) KAPLAN HECKER & FINK LLP 350 FIFTH AVE SUITE 7110 NEW YORK, NY 10118 | 82-1685797 | | 7,000,000 | | | | PUBLIC INTEREST LITIGATION FUNDING |
| (12) LATINO VICTORY PROJECT 700 14TH ST NW | 46-4651149 | 501(C)(4) | 250,000 | | | | ENCOURAGING VOTER TURNOUT AMONG LATINAS |

While the average donation made in 2020 by Reid Hoffman's group to 27 liberal activist political organizations, themselves nonprofits, were in the $250,000-$500,000 range, Mr. Hoffman gave an eye-popping $7,000,000 to Ms. Kaplan's for-profit law firm for "public interest litigation funding," the largest single donation that was made.[18] So, when did Ms.

https://archive.nytimes.com/dealbook.nytimes.com/2013/03/25/suit-offers-a-peek-at-the-practice-of-padding-a-legal-bill/

[17] Third-party funding even after the lawsuit is filed could implicate how the litigation is conducted, what discovery to take, and litigation strategies. Moreover, the funding received in September 2020, *preceded* the filing of *Carroll II* in November 2022, which was also funded by Reid Hoffman. In any event, the question is not what communication Ms. Carroll had with Reid Hoffman regarding the conduct of her litigation, but what communication did Roberta Kaplan have with Reid Hoffman.

[18] Schedule I, Part II. https://pdf.guidestar.org/PDF_Images/2020/833/181/2020-833181719-202122999349302132-9O.pdf. Mr. Hoffman reports that he spends on average only 6 minutes a

Kaplan tap into this largesse to bankroll Ms. Carroll's lawsuit? According to Dmitri Melhorn, one of Hoffman's advisors:

> [Melhorn] added that [American Future Republic] **had made an earlier grant through a nonprofit to support a different public interest lawsuit** being handled by the firm Kaplan Hecker & Fink, which later took up Ms. Carroll's case. He said that later, in September 2020, Ms. Carroll's lawyer, Roberta A. Kaplan, asked if money from **that grant** could be used for Ms. Carroll's suit.

> "We had no prior knowledge at the time of the original grant that our funding would go to support her case in particular," Mr. Mehlhorn said.[19]

What was this "different public interest lawsuit" that Ms. Kaplan was handling that Mr. Melhorn refers to? According to Reid Hoffman, he was funding her lawsuit against the infamous participants in the "Unite the Right Rally" in Charlottesville, VA.[20] That suit, *Sines v. Kessler,* 17-cv-00072 (W.D. VA), was filed on October 11, 2017, by Ms. Kaplan shortly after she formed her new law firm Kaplan and Company LLP[21] and shortly after she helped establish IFA. It was

---

week working on American Future Republic's affairs as its President and Board Chair. See Part VII, Section A.

[19] Benjamin Weiser and Charlie Savage, *"LinkedIn's Co-Founder Helped Fund the Suit Accusing Trump of Rape,"* New York Times (Apr. 13, 2023). https://www.nytimes.com/2023/04/13/nyregion/trump-carroll-lawsuit-hoffman-linkedin.html?unlocked_article_code=1.olA.ahLZ.0CZF_jbvi4L4&smid=nytcore-ios-share&referringSource=articleShare. Mr. Melhorn later suggested that Trump's assassination attempt in 2024 was possibly staged. Eric Revell, *"Top adviser to anti-Trump LinkedIn billionaire sorry for suggesting assassination bid was 'false flag'."* Fox Business (July 14, 2024) https://www.foxbusiness.com/politics/democratic-strategist-backtracks-after-suggesting-reporters-consider-whether-trump-shooting-staged

[20] Besides supporting E. Jean Carroll's lawsuits, Hoffman gave "Third-party litigation support for clients of attorney Roberta Kaplan, who held the Charlottesville rioters accountable under the Ku Klux Klan Act...." https://www.linkedin.com/posts/reidhoffman_over-the-last-couple-of-weeks-some-of-my-activity-7055205462375366657-wwW5?utm_source=share&utm_medium=member_ios&rcm=ACoAAAo3twcBXoucraVbp6toBOR8RvVj31fIIKI. However, American Future Republic IRS filings show no donations to Integrity First for America.

[21] See *Kaplan & Company, LLP Files Federal Lawsuit on Behalf of Plaintiffs Injured by the Violent Events in Charlottesville* https://www.heckerfink.com/newsroom/kaplan-company-llp-files-federal-lawsuit-behalf-plaintiffs-injured-violent-events.
Since then, Ms. Kaplan formed Kaplan Hecker & Fink LLP to file Ms. Carroll's two lawsuits. In 2024, Ms. Kaplan left that firm under controversial circumstances regarding her alleged demeaning treatment of colleagues and now practices with Kaplan Martin LLP. Katie J. M. Baker and David Enrich, *"Prominent Lawyer Roberta Kaplan Departs Firm After Clash With*

reported that Reid Hoffman donated $1 million to IFA in 2017, which must have come from either his personal account or some other entity he controls other than Future American Republic since that entity did not exist in 2017.[22] Thus, presumably the nonprofit that Dmitri Melhorn referred to when he said American Future Republic "*had made an earlier grant through a nonprofit to support a different public interest lawsuit being handled by the firm Kaplan Hecker & Fink*" was IFA, which was funding the *Kessler* suit.[23] It is unclear what grant Mr. Melhorn was referring to other than 2020 grant of $7 million to Ms. Kaplan, but he stated that the grant was "through a nonprofit," not Ms. Kaplan's for-profit law firm.

As it turns out, IFA was apparently established by Roberta Kaplan on or about March 17, 2017, incorporated in the State of Delaware and later registered in New York on May 16, 2017. IFA received IRS tax exempt status notice on November 20, 2017, retroactive to March 17, 2017.[24] Dmitri Melhorn, political advisor to Reid Hoffman, was a board member. Although founded in 2017 and having received donations in 2017, IFA did not register with the New York Attorney General's Charities Bureau as a foreign entity until February 1, 2019.[25] It was terminated in October 2025.

---

*Colleagues,"* New York Times (June 26, 2024). https://www.nytimes.com/2024/06/26/business/roberta-robbie-kaplan.html. *See also* Jodi Kantor and Michael Gold, *"Roberta Kaplan, Who Aided Cuomo, Resigns from Time's Up,"* New York Times (Aug. 9, 2021). https://www.nytimes.com/2021/08/09/nyregion/roberta-kaplan-times-up-cuomo.html?smid=nytcore-ios-share&referringSource=articleShare

[22] Kenneth P. Vogel, *"The 'Resistance,' Raising Big Money, Upends Liberal Politics,"* New York Times (Oct. 7, 2017) ("Among Mr. Hoffman's donations are at least $1 million each to two of the groups . . . United to Protect Democracy, started this year by a former Obama White House lawyer, and Integrity First for America, which will be unveiled later this year by the pioneering New York trial lawyer Roberta A. Kaplan."). https://www.nytimes.com/2017/10/07/us/politics/democrats-resistance-fundraising.html?smid=nytcore-ios-share&referringSource=articleShare

[23] https://www.integrityfirstforamerica.org/our-work/case/charlottesville-case\ "The lawsuit [was]funded by Integrity First for America, a nonprofit civil rights organization formed in response to the violence in Charlottesville...") https://whyy.org/articles/jury-awards-26m-in-damages-for-unite-the-right-violence/ See also https://www.influencewatch.org/political-party/integrity-first/#note-27

[24] https://www.influencewatch.org/political-party/integrity-first/

[25] Telephone call from Paul Kamenar to New York State Attorney General, Charities Division, June 18, 2026, 3:51pm ET.

IFA paid Ms. Kaplan's firm $855,970 in legal fees in 2017;[26] $3,276,083 in 2018;[27] $250,000 in 2019;[28]$273,036 in 2020;[29] $334,681 in 2021;[30] and nothing in 2022.[31] In 2023, Integrity First for America terminated its operation.[32] Two unnamed law firms also billed IFA an additional $3.5 million and $4.2 million for legal services rendered in 2019 and 2020, which was forgiven in 2020 and 2021.[33]

Thus, in total, Ms. Kaplan and her firm received approximately $5 million in fees from IFA and was awarded approximately another $3.2 million in fees by the court to share with co-counsel. Because Reid Hoffman gave Ms. Kaplan's firm $7 million in 2020, and she was thereafter paid approximately $600,000 in 2020 and 2021 by IFA, it can be reasonably assumed that she had at her disposal at least $6.4 million from the 2020 Reid Hoffman $7 million grant to use for E. Jean Carroll's lawsuits. But that assumes part of the $7 million grant given to Kaplan in 2020 was used to pay some of Kaplan's expenses in the *Kessler* suit, a scenario that doesn't

---

[26] See 2017 Form 990, Part VII, Section B.
https://projects.propublica.org/nonprofits/organizations/821110585/201920309349300512/full.
There was also an asset of $220,000 listed as "Legal Retainers." *Id.* Schedule D, Part IX.

[27] See 2018 Form 990 Part VII, Section B
https://projects.propublica.org/nonprofits/organizations/821110585/202002449349301340/full

[28] See 2019 Form 990, Part VII, Section B
https://pdf.guidestar.org/PDF_Images/2019/821/110/2019-821110585-202013219349324466-9.pdf

[29] See 2020 Form 990, Part VII, Section B
https://pdf.guidestar.org/PDF_Images/2020/821/110/2020-821110585-202133199349306283-9.pdf

[30] See 2021 Form 990, Part VII, Section B
https://pdf.guidestar.org/PDF_Images/2021/821/110/2021-821110585-202233199349323098-9.pdf

[31] See 2022 Form 990, Part VII, Section B.
https://pdf.guidestar.org/PDF_Images/2022/821/110/2022-821110585-202301329349308485-9.pdf

[32] See 2023 Form 990. https://pdf.guidestar.org/PDF_Images/2023/821/110/2023-821110585-202423209349204852-.pdf

[33] See 2022 Form 990, Schedule O: *"IN 2021 AND 2020, IFA ENTERED INTO AGREEMENTS WITH TWO LAW FIRMS TO HAVE UNPAID INVOICES FROM 2020 AND 2019 FORGIVEN. THE AMOUNTS FORGIVEN TOTALED $3,535,566 AND $4,202,212, RESPECTIVELY."* https://pdf.guidestar.org/PDF_Images/2020/821/110/2020-821110585-202133199349306283-9.pdf

comport with Mr. Melhorn's statement that Reid Hoffman made a donation to fund the Charlottesville litigation "through a nonprofit" as opposed to the donation to Ms. Kaplan's pro-profit law firm.

In any event, all of these funding arrangements can be clarified by obtaining not only the original retainer agreement between Ms. Kaplan and Ms. Carroll and changes thereto, but also communication between Ms. Kaplan and Reid Hoffman and/or Dmitri Melhorn about their understanding of how his $7,000,000 donation would be used and accounted for.[34] At a minimum, the last-minute limited discovery and deposition taken by Trump's counsel of Ms. Carroll on the eve of the trial on April 19, 2023, as ordered by Judge Kaplan should be released:

> *[P]laintiff shall furnish the defendant, no later than April 16, 2023, with documents sufficient to establish that the inception of the financing assistance for the Carroll litigation in fact occurred in or after mid-2020, (b) any documents concerning the state of plaintiffs knowledge, if any, of the financing assistance as of the date of her deposition and as of the present, and(2) defendant may conduct an additional deposition of Ms. Carroll not to exceed 60 minutes in duration, unless otherwise ordered by the Court, which shall be (1) limited to the subject of Ms. Carroll's knowledge of the financing assistance as of the date of her deposition and as of the present, and (2)completed no later than April 19, 2023."* Judge Lewis A. Kaplan Order, April 13, 2023 (ECF 110).

---

[34] The funds from Reid Hoffman's nonprofit earmarked or used in Ms. Carroll's litigation can be favorably compared to those obtained by crowdfunding that a lawyer raises on behalf of her client. According to the District of Columbia Bar Ethics Opinion 375:

The fact that crowdfunds come from sources other than the client does not alter the fact that they are *client* funds and must be treated as such consistent with the Rules.

Funds collected on behalf of a client by the lawyer through crowdfunding must be treated as advanced fees. Unless there is an agreement with the client under Rule 1.15(e), these funds must be placed in trust for the client, as required by Rules 1.15(a) and (b). The lawyer should invoice the client and transfer funds to the operating account only as fees are earned and expenses incurred, or as otherwise consistent with the guidance provided in D.C. Legal Ethics Opinion 355. (Emphasis in original).

**Ethics Opinion 375 - Ethical Considerations of Crowdfunding** https://www.dcbar.org/For-Lawyers/Legal-Ethics/Ethics-Opinions-210-Present/Ethics-Opinion-375

On April 19, 2023, the limited discovery took place and on the next day, Ms. Kaplan filed a request to Judge Kaplan to file a motion under seal relating to information about the funding of Ms. Carroll's lawsuit on the grounds of limited public interest, implication of attorney-client and work-product privilege, and unwarranted publicity on the eve of trial.[35] Now that the trial is over, those reasons are no longer valid. If warranted, this committee can request and examine them.

**Grounds for Disciplinary Action Against Ms. Kaplan**

As a member of the New York Bar, Roberta Ann Kaplan is subject to Part 1200 Rules of Professional Conduct for the New York State Unified Court System, and particularly Rule 8.4 *Misconduct*.[36] Rule 8.4(c) makes it a violation of professional conduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Rule 8.4(d) makes it a violation of professional conduct for an attorney to "engage in conduct that is prejudicial to the administration of justice." Rule 3.3(a)(3) states: "If a . . . lawyer's client . . . has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures[.]." Rule 3.4(a) states: "A lawyer shall not . . . suppress any evidence that the lawyer or the client has a legal obligation to reveal or produce [or] conceal or knowingly fail to disclose that which the lawyer is required by law to reveal[.]"[37]

---

[35] Jacob Samshian, *"Judge seals filings over whether billionaire Democratic donor is bankrolling E. Jean Carroll's rape lawsuit against Trump,"* Business Insider (Apr. 21, 2023). https://www.businessinsider.com/carroll-donald-trump-lawsuit-judge-seals-filings-reid-hoffman-funding-2023-4

[36] https://nysba.org/wp-content/uploads/2026/04/NYSBA-NY-Rules-of-Professional-Conduct-Nov-10-2025.pdf

[37]NYCLA COMMITTEE ON PROFESSIONAL ETHICS FORMAL OPINION, No. 741 (March 1, 2010):

> *While the phrase is not defined in the rules, the taking of a deposition is no different from calling a witness at a trial. Under certain circumstances, deposition testimony, which is offered under oath and penalty of perjury, is admissible evidence at trial.*
>
> *While not formally adopted as part of the Rules, the comments to the New York Rules of Professional Conduct explicitly contemplate the applicability of Rule 3.3 to depositions:*
>
> *This Rule governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal. ...It also applies when the lawyer is representing a client in an ancillary proceeding conducted pursuant to the tribunal's adjudicative authority, such as a deposition.* ***Thus, for example, paragraph (a)(3) requires a lawyer to take reasonable remedial measures if the lawyer comes to know that a client has offered false evidence in a deposition.*** *(Emphasis added).*

https://www.nycla.org/resource/ethics-opinion/nycla-committee-on-professional-ethics-formal-opinion-on-lawyer-learns-after-the-fact-that-a-client-has-lied-about-a-material-iss/

NLPC submits that Ms. Kaplan's inordinate delay in correcting the false deposition testimony of Ms. Carroll as well as the contradictory and misleading excuses she offered to the court and opposing counsel for her delay, constitute "conduct involving dishonesty, fraud, deceit or misrepresentation," is "prejudicial to the administration of justice," and a failure to take timely "remedial measures" to correct the false testimony.

Moreover, the circumstances surrounding Ms. Kaplan's solicitation of the third-party funding from Reid Hoffman's nonprofit, the use of those funds for expenses and legal fees in light of the contingency fee arrangement with Ms. Carroll, whether those funds were treated as belonging to Ms. Carroll and placed in a trust account, and whether she obtained the informed consent of Ms. Carroll to use those funds, including informing her that Reid Hoffman was a close associate of a convicted sex offender, may also constitute a violation of Rule 1.8(f), Rule 8.4 and/or other rules of professional conduct as determined by the AGC.

## Conclusion

For the foregoing reasons, NLPC requests that the AGC ensure that this complaint is *"thoroughly investigated"* as it promises to do for all ethics complaints[38] by obtaining, and if necessary, by issuing subpoenas,[39] for the following information, at a minimum, from Ms. Kaplan in addition to her written response:

1. A copy of original retainer agreement with E. Jean Carroll and any changes thereto.

2. A copy of all communications between American Future Republic, Reid Hoffman, Dmitri Melhorn or their agents and Ms. Kaplan and members of her firm regarding the receipt of $7,000,000 in 2020.

3. A copy of any communication to or from E. Jean Carroll and American Future Republic, Reid Hoffman, or their agents regarding the receipt and use of funds from American Future Republic to fund legal expenses and legal fees for Ms. Carroll's case.

---

[38] The AGC *"safeguards the reputation of the legal profession by enforcing high standards of conduct, while at the same time **ensuring that complaints are <u>thoroughly investigated</u>.**"* See <u>https://www.nycourts.gov/courts/AD1/Committees&Programs/DDC/How%20to%20File%20a%20Complaint%2007.30.2020.pdf</u> at 2 (emphasis added).

[39] See Rule 1.15(i) ("financial records required by this Rule…shall be produced in response to a notice or **subpoena duces tecum** issued in connection with a complaint before…the appropriate grievance or department al disciplinary committee"); Rule 1.15(b)(4) (separate trust account must be used for funds "belonging in part to a client or third person"); Rule 1.15(c)(1)-(4) (maintain "complete records of all funds…of a client or third person…."); Rule 1.15(d) (maintain for **seven years** required bookkeeping records, including retainer agreements, invoices, bank records, including deposits and withdrawals, and statements to clients).

4. A copy of all communication between Ms. Kaplan and Ms. Carroll seeking her informed consent to the outside funding from a group controlled by Reid Hoffman, and what information, if any, Ms. Kaplan provided Ms. Carroll concerning Mr. Hoffman's relationship with Jeffrey Epstein.

5. A copy of all invoices sent by Ms. Kaplan and her firm to E. Jean Carroll for legal services rendered or expenses incurred in connection with the two lawsuits against Donald Trump.

6. A copy of Ms. Kaplan's law firm operating and trust account that reflect the receipt and disposition of funds received from American Future Republic for E. Jean Carroll's cases.

7. A copy of all documents submitted under seal regarding funding and the transcript of E. Jean Carroll's second deposition taken on April 19, 2023, pursuant to Judge Lewis A. Kaplan's Order of April 13, 2023 (ECF 110).

After receiving Ms. Kaplan's written response and these documents, further investigation may include interviews with Ms. Kaplan, members of her firm, Ms. Carroll, Reid Hoffman and Dmitri Melhorn.

We reserve the right to supplement this complaint with additional facts and arguments.

Respectfully submitted,

Paul D. Kamenar, Esq.*
1629 K Street, NW, Suite 300
Washington, D.C. 20006
Paul.kamenar@gmail.com
301-257-9435
Counsel to NLPC
*Member, Association of Professional Responsibility Lawyers

cc: Alexander Boutros
    United States Attorney
    Northern District of Illinois