**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

E. JEAN CARROLL,

               *Plaintiff,*

    v.

PRESIDENT DONALD J. TRUMP,

               *Defendant.*

No. 1:22-cv-10016 (LAK)

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN
ORDER DIRECTING DISBURSEMENT OF DEPOSITED FUNDS FROM THE
<u>REGISTRY OF THE COURT</u>**

President Donald J. Trump opposes Plaintiff E. Jean Carroll's motion for an order directing immediate disbursement of millions of dollars from the Court Registry Investment System ("CRIS"). Specifically, Plaintiff asks this Court to release $5,779,783 from the Court's accounts, while President Trump's timely petition for rehearing remains pending before the Supreme Court. Plaintiff's request violates the plain terms of the parties' Stipulation and Order, and would cause President Trump irreparable harm while not improperly disadvantaging Plaintiff in any way.

Plaintiff makes no attempt to parse the Stipulation and Order—because its plain text forecloses her request. Paragraph 8 permits collection only "[a]fter the latest of" three specified appellate events. ECF No. 210 ¶ 8. One of those events is the final denial of a petition for certiorari, *id.* ¶ 8(b), and another is the Supreme Court's entry of an order after granting certiorari "in connection with the Appeal," *id.* ¶ 8(c). Both provisions confirm that collection cannot begin while proceedings remain pending before the Supreme Court, which is currently the case.

Subparagraph 8(c) remains a live condition unless and until the Supreme Court denies rehearing, because a grant of rehearing would place the case back before the Court, and would

1

require a further order "in connection with the Appeal." Additionally, Subparagraph 8(b) independently forecloses collection because a timely rehearing petition keeps the certiorari process pending until the Supreme Court finally disposes of that petition. Thus, whether viewed through Subparagraph 8(c), which cannot be ruled out as the operative provision until the Court acts on rehearing, or through Subparagraph 8(b), which requires final disposition of the certiorari process, Paragraph 8 does not permit collection while the rehearing petition remains unresolved. Further, due to the petition for rehearing being timely filed with the Supreme Court by President Trump, Paragraph 10 of the Stipulation and Order, which covers repayment of the deposited funds, plus interest, minus court fees, to President Trump should the original judgment be reversed, remains operative as an option. That mandates that Plaintiff's motion be denied since it would materially disrupt the Stipulation and Order, by making it impossible to implement Paragraph 10. The status quo must remain until when and if Paragraph 10 can no longer be put into operation.

On the other hand, Plaintiff's incorrect reading of the Stipulation and Order would require immediate disbursement even if the Supreme Court grants rehearing and vacates the judgment, which would be a clear violation of Paragraph 10 specifically, and the Stipulation and Order as a whole. Plaintiff's position contradicts the plain text and purpose of a security arrangement designed to preserve the status quo during appellate review.  Plaintiff faces only temporary delay, *fully compensable by interest*, unless judgment is overturned on appeal. That has been the status quo throughout the appellate process in this case, and it must remain so pending resolution of the petition for rehearing. President Trump, however, faces unrecoverable loss: Plaintiff has repeatedly stated that she intends to give away all funds that she collects from him, and once those funds are distributed to third parties, they likely cannot be recovered.

The motion should be denied, or, at the very least, held in abeyance pending the Supreme Court's disposition of the rehearing petition.

## BACKGROUND

On May 9, 2023, a jury returned a verdict in favor of Plaintiff and awarded her $5 million in compensatory and punitive damages. ECF No. 174. That verdict was premised, in part, on a claim that would have been barred by the statute of limitations had the State of New York not enacted a statute that was largely designed to target President Trump. This Court entered judgment on May 11, 2023. ECF No. 178. President Trump appealed and moved for a new trial. ECF Nos. 179, 204, 205.

On June 23, 2023, while the appeal was pending, the parties submitted a joint stipulation governing the use of a cash deposit in court as security in lieu of a supersedeas bond. The Court so ordered that stipulation the same day. ECF Nos. 209, 210. Plaintiff's motion recognizes that, under the Stipulation and Order, President Trump's deposit would serve as "other security" under Federal Rule of Civil Procedure 62(b).

Paragraph 8 of the Stipulation and Order provides that Plaintiff may collect only "[a]fter the latest of" three events:

> (a) the mandate issued by the Second Circuit in connection with the Appeal; (b) a denial of a timely filed petition for writ of certiorari to the Supreme Court (if any) in connection with the Appeal; or (c) upon the Supreme Court's granting of certiorari, an order of the Supreme Court in connection with the Appeal.

ECF No. 210 ¶ 8. Plaintiff's motion quotes this language and relies on it as the basis for disbursement. Paragraph 9 further provides that collection may occur by motion or stipulation and order. *Id.* ¶ 9.

Paragraph 10 of the Stipulation and Order provides:

If the Judgment is reversed and set aside completely, then the sums originally deposited with the Court by Defendant, together with any interest earned on such funds less any fees, shall be paid to Defendant. Collection by Defendant of the funds held by the Court may be accomplished by means of a motion or a stipulation and order, with notice served on the Clerk of this Court.

ECF No. 210 ¶ 10.

The Second Circuit affirmed the judgment on December 30, 2024, and denied rehearing en banc on June 13, 2025, with Judge Menashi and Judge Park dissenting. President Trump then filed a timely petition for a writ of certiorari. On June 29, 2026, the Supreme Court denied that petition. Plaintiff filed this motion the next day, seeking immediate disbursement of the funds. Her proposed order would direct the Clerk to disburse the $5,000,000 principal judgment and $779,783 in asserted post-judgment interest as of June 30, 2026.

President Trump has filed a timely petition for rehearing in the Supreme Court. *See* Exhibit 1. That petition remains pending.

**I.    Disbursement Is Premature Because President Trump's Timely Supreme Court Rehearing Petition Remains Pending**.

Plaintiff's motion wrongly and improperly treats the Supreme Court's denial of certiorari as the last word, even though President Trump has timely invoked the Supreme Court's prescribed rehearing procedure. ECF No. 233. Paragraph 8 does not authorize disbursement while President Trump's timely Supreme Court rehearing petition remains pending, and Paragraph 10 prohibits it. Because Plaintiff's argument conflicts with the plain language, context, and purpose of Paragraphs 8 and 10, the Court should deny her motion.

**A. Disbursement Cannot Occur Under Section 8(c) of the Stipulation and Order Before the Supreme Court Acts Upon President Trump's Petition for Rehearing.**

Courts interpret stipulations pursuant to "settled principles of contractual interpretation." *Tobin v. Gluck*, 137 F. Supp. 3d 278, 293 (E.D.N.Y. 2015) (quotation omitted). When interpreting a contract, "courts must effectuate its plain language." *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 68 (2d Cir. 2002). Here, the plain language of the Stipulation and Order conditions collection on the occurrence of certain conditions. *See* ECF No. 210 ¶ 8. Thus, as a matter of contract law, collection cannot occur until those conditions have been satisfied. *Cauff, Lippman & Co. v. Apogee Fin. Grp., Inc.*, 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992) ("Where the performance of either party or the validity of the contract itself is conditioned upon the occurrence of some event, the contractual obligation does not arise if that event does not occur."). Here, the plain language, structure, and purpose of Paragraph 8 all point to the same conclusion: Subparagraph 8(c) remains potentially operative while President Trump's timely rehearing petition is pending, and Plaintiff may not collect before the Supreme Court resolves that petition.

*Text*. Under the plain language of Paragraph 8, the conditions precedent to collection have not yet been satisfied. The Stipulation and Order permits collection only "[a]fter the latest of" three distinct events. ECF No. 210 ¶ 8. Under the plain language of this provision, collection is not triggered merely by the occurrence of one (or even two) of these events. *Cf. Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 324 (2d Cir. 1997); *GE Med. Sys., S.C.S. v. Symx Healthcare Corp.*, No. 18-20922, 2019 WL 3409489, at *6 (S.D. Fla. May 17, 2019); *Morris v. Haren*, 52 F.3d 947, 949 (11th Cir. 1995). Paragraph 8 permits collection—*i.e.*, provides that "Plaintiff may collect"—only "after the latest of" *all* of the enumerated events. ECF No. 210 ¶ 8.

Plaintiff's motion rests on her wrongful contention that the second enumerated event—"denial of a timely filed petition for writ of certiorari"—has occurred. *See* ECF No. 210 ¶ 8(b). It

has not. Plaintiff ignores that Paragraph 8 includes a third potentially triggering event: "upon the Supreme Court's granting of certiorari, an order of the Supreme Court in connection with the Appeal." *Id.* ¶ 8(c). A timely petition for rehearing from the denial of certiorari is part of the Supreme Court proceedings in connection with that same appeal. *See* Sup. Ct. R. 44.2. If the Supreme Court grants the petition for rehearing and then grants certiorari, as it should, Subparagraph 8(c) would be the governing condition that dictates the timing of collection by Plaintiff, if the judgment is not overturned. Until the Supreme Court decides the pending petition for rehearing, the Court cannot conclude that "the latest of" the conditions enumerated in Paragraph 8 has occurred. ECF No. 210, ¶ 8. As a result, under the plain language of Paragraph 8, collection is premature and impermissible.

*Context.* The structure of Paragraph 8 confirms that reading. Paragraph 8 must be construed as a whole, with each subparagraph read in context rather than in isolation. *See MJM Visions, LLC v. CSC Serviceworks, Inc.*, No. 18-cv-4452, 2019 WL 2451936, at *3 (E.D.N.Y. June 12, 2019) ("Contracts are to be considered as whole and their language interpreted in context."). Read together, Subparagraphs 8(a), 8(b), and 8(c) establish a sequential framework keyed to how appellate review unfolds: if review ends with the Second Circuit's mandate, Subparagraph 8(a) governs; if a timely certiorari petition is filed, and the petition and rehearing are fully denied, Subparagraph 8(b) governs; and if certiorari is granted, Subparagraph 8(c) governs. See ECF No. 210 ¶ 8. It is impossible to currently know whether 8(b), 8(c), or 10 will become the operative provision, and thus Plaintiff's motion must be denied.

That framework explains why no party treated the Second Circuit's July 10, 2025, mandate as triggering collection under Subparagraph 8(a). Once President Trump timely sought Supreme Court review, it became necessary to determine whether Subparagraph 8(b) or 8(c)—rather than

8(a)—would supply the operative condition if judgment were not reversed, which would trigger Paragraph 10. The same logic applies now. Plaintiff cannot treat the Supreme Court's initial denial of certiorari as conclusively triggering Subparagraph 8(b), while a timely petition for rehearing remains pending. Until that petition is resolved, including after rehearing, the Supreme Court could grant rehearing and then grant certiorari, in which case Subparagraph 8(c) or Paragraph 10 would govern. Thus, read in context, Paragraph 8 postpones collection, if any, until the Court can determine which appellate-review provision supplies the "latest of" the relevant events. ECF No. 210, ¶ 8. That determination cannot be made until when and if the Supreme Court disposes of the pending rehearing petition.

*Purpose*. This proper reading also gives effect to the Stipulation and Order's purpose. President Trump deposited cash security to preserve the status quo while appellate review proceeded. Plaintiff remains fully protected by that security today. Releasing the funds now would improperly dissolve the security before the Supreme Court completes the rehearing process expressly authorized by its rules. *See Litton Sys., Inc. v. AT&T*, 568 F. Supp. 507, 510 (S.D.N.Y. 1983) ("Thus, to further the stay's obvious goal of permitting full judicial review of this case prior to execution of the massive judgment, it seems sensible to give effect to that alternative provision, rather than the 90-day limitation."); *see also* Sup. Ct. R. 44.2.

By contrast, Plaintiff's interpretation of Paragraph 8 would lead to unreasonable results, including wrongly mooting out Paragraph 10. Under settled principles of contractual interpretation, "a contract should not be interpreted to produce an absurd result." *Professional Fighters League, LLC v. Takeover Indus., Inc.*, 770 F. Supp. 3d 718, 723-24 (S.D.N.Y. 2025) (quotation omitted). Under Plaintiff's interpretation, Paragraph 8 would mandate collection now, *even if* the Supreme Court were to grant President Trump's petition for rehearing, grant the petition

for writ of certiorari, and reverse on the merits, which would then make Paragraph 10 operative, and cause for funds to be returned to President Trump. Such result of Plaintiff's interpretation would be absurd: Plaintiff would not be entitled to the judgment, and yet those amounts would have been distributed to her without any realistic chance of recoupment. This untenable result directly conflicts with principles of contractual interpretation. *See id.* Those principles instead mandate the conclusion that Paragraph 8 does not permit collection before the Supreme Court acts upon President Trump's pending petition for rehearing.

### B. Under Subparagraph 8(b), a Certiorari Denial Does Not Trigger Disbursement While Rehearing Remains Pending.

Further, Subparagraph 8(b) has not yet been triggered, because President Trump's pending petition for rehearing is a component of the certiorari process contemplated by the Supreme Court's Rules. Subparagraph 8(b) refers to the "denial of a timely filed petition for writ of certiorari," and it cannot be read to require disbursement before that denial is final in any practical sense—*i.e.*, while a timely petition for rehearing remains pending under the Supreme Court's own rules. *See* Sup. Ct. R. 44.2. Until the Supreme Court resolves that petition, its denial of certiorari remains subject to reconsideration by the Court itself. *Id.*

Plaintiff's contrary reading would produce an unreasonable and absurd result. It would require immediate distribution even though the Supreme Court could still grant rehearing, grant certiorari, and ultimately reverse. In that scenario, Plaintiff would have collected on a judgment that President Trump no longer owed, and the security would have been released before the appellate process had concluded. That would, again, be a total violation of Paragraph 10, and thus the Stipulation and Order as a whole. The Stipulation and Order cannot be construed to compel that result. See *Tobin*, 137 F. Supp. 3d at 293; *Professional Fighters League*, 770 F. Supp. 3d at

8

723–24. Rather, Subparagraph 8(b) should be read to permit collection only after the certiorari denial is no longer subject to a timely rehearing petition, which it currently still is.

Nor does Supreme Court Rule 16.3 compel a different result. Plaintiff invokes Rule 16.3 because it provides that an order denying certiorari "will not be suspended pending disposition of a petition for rehearing except by order of the Court or a Justice." ECF No. 233, at 7. But that rule addresses the internal effect of the Supreme Court's denial order; it does not interpret the parties' Stipulation and Order, require disbursement of funds from a district-court registry, or deprive this Court of authority to properly maintain the security until the rehearing petition is resolved. The issue here is not whether the Supreme Court has formally denied rehearing of its denial order—it has not done so. It is whether Paragraph 8 requires this Court to release secured funds before the Supreme Court has completed the rehearing process that its Rules expressly authorize. It does not. The Stipulation and Order in fact mandates that status quo be maintained and Plaintiff's motion be denied.

### C.    Plaintiff's Position Cannot Be Reconciled with Paragraph 10 of the Stipulation and Order.

Plaintiff's wrong interpretation of Paragraph 8 cannot be squared with Paragraph 10 of the Stipulation and Order because it creates an irreconcilable contradiction within the document. Contracts must be read as a whole, and courts reject interpretations that cause provisions to conflict or nullify one another. *See, e.g.*, *Kinek v. Paramount Communications, Inc.*, 22 F.3d 503, 509 (1994) ("[W]ell established principles of contract construction . . . require that all provisions of a contract be read together as a harmonious whole, if possible."). Plaintiff's incorrect reading would conflict with these bedrock interpretive principles by rendering Paragraph 10 internally inconsistent with Paragraph 8.

Paragraph 10 provides that if the Judgment is "reversed and set aside completely," the deposited sums, with interest less fees, "shall be paid to Defendant." Yet under Plaintiff's interpretation, those same funds could already have been disbursed to Plaintiff before appellate review is complete. That creates a direct contradiction: Paragraph 10 presumes the funds remain available with the Court for return to Defendant after the appellate process is final, while Plaintiff's reading would allow those funds to be removed from the Court's control altogether. Both propositions cannot be true at the same time.

The Stipulation and Order should instead be read to avoid this contradiction, and give effect to both provisions. Paragraphs 8 and 10 operate in tandem: Paragraph 8 does not authorize disbursement while Supreme Court review remains pending, as it does here, and Paragraph 10 ensures that the funds remain available for return to Defendant if the judgment is ultimately reversed and set aside. The motion must be rejected.

## II.    At Minimum, Any Uncertainty Should Be Resolved By Preserving The Status Quo Pending The Supreme Court's Disposition Of The Rehearing Petition.

To the extent that the Court concludes that Paragraph 8 is ambiguous, that Paragraph 10 is not mooted out by the Plaintiff's reading, or that the certiorari denial triggered Plaintiff's ability to seek disbursement, all of which would be error, the Court should maintain the status quo until the Supreme Court resolves President Trump's rehearing petition. The governing stay factors strongly support that modest relief.

Courts consider four factors in determining whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation omitted). The Second Circuit applies

10

those factors on "a sliding scale," under which "more of one excuses less of the other." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (quotation omitted). "The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors." *Id.* (cleaned up). Further, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay." *Id.* (cleaned up). The factors clearly favor a stay.

*First*, President Trump has presented a serious petition for rehearing. Plaintiff treats Supreme Court rehearing as though it were imaginary. It is not. Supreme Court Rule 44.2 expressly authorizes rehearing from a denial of certiorari based on "intervening circumstances of a substantial or controlling effect" or "other substantial grounds not previously presented." Sup. Ct. R. 44.2. Plaintiff's own motion quotes the rule. President Trump's rehearing petition invokes that rule and relies on the grounds specified by the rule. This Court need not decide whether the Supreme Court will grant rehearing.[1] It need only recognize that the petition is timely, authorized by the Supreme Court's rules, and pending, all of which is the case.

*Second*, President Trump will be irreparably harmed absent a stay. Plaintiff seeks immediate disbursement of a multimillion-dollar judgment while Supreme Court rehearing

---

[1] Rehearing is not some legal impossibility. The Supreme Court has granted rehearing in multiple cases, including *Oklahoma v. United States*, 145 S. Ct. 2836 (2025); *Abdirahman v. United States*, 585 U.S. 1046 (2018); *Kent Recycling Services, LLC v. U.S. Army Corps of Engineers*, 578 U.S. 1019 (2016); *Johnson v. Alabama*, 136 S. Ct. 1837 (2016); *Liberty University v. Geithner*, 568 U.S. 1022 (2012); *Melson v. Allen*, 561 U.S. 1001 (2010); *Boumediene v. Bush*, 551 U.S. 1160 (2007); *Adams v. Evatt*, 511 U.S. 1001 (1994); *Harris v. Reederei*, 451 U.S. 965 (1981); *Place v. Weinberger*, 426 U.S. 932 (1976); *McKenzie v. Director*, 408 U.S. 916 (1972); *United States v. Ohio Power Co.*, 353 U.S. 98, 98-99 (1957); *R. Simpson & Co. v. Commissioner*, 319 U.S. 778 (1943); and *Crane-Johnson Co. v. Commissioner*, 309 U.S. 692 (1940). The Court must not ignore the grave and irreparable consequences of disbursing funds that may never be recovered.

remains pending. If the funds leave CRIS now, and the Supreme Court later grants rehearing and alters the posture of the case, President Trump is likely to never recover the funds.

That risk is not speculative. Plaintiff has repeatedly stated publicly that she intends to give away money collected from President Trump. *See, e.g.*, Tom Sanders, *E. Jean Carroll Reveals Why She'll Give Away Her $80M From Trump: 'To P\*\*\* Him Off,'* THE DAILY BEAST (July 1, 2025);[2] Mandy Taheri, *E. Jean Carroll on 'Comedy Gold' of Trump Trial and How She'll Spend $83M*, NEWSWEEK (June 18, 2025);[3] Jenna Amatulli, *E. Jean Carroll aims to give defamation money 'to something Trump hates,'* THE GUARDIAN (Jan. 29, 2024);[4] Peter Charalambous, *E. Jean Carroll says she plans to use $83 million on 'something Donald Trump hates,'* ABC NEWS (Jan. 29, 2024);[5] Holly Patrick, *E. Jean Carroll vows to use $83m defamation damages on 'something Trump hates,'* THE INDEPENDENT (Jan. 29, 2024).[6] She reportedly has even created a foundation to distribute the funds. *See Taheri*, *supra*. Once funds are distributed to third-party organizations, they likely will not be recoverable.

That is the definition of irreparable harm. The Supreme Court has recognized that although "the loss of money is not typically considered irreparable harm," the analysis changes where the funds "cannot be recouped" and are therefore "irrevocably expended." *Nat'l Institutes of Health v. American Public Health Ass'n*, 145 S. Ct. 2658 (2025) (quoting *Philip Morris USA Inc. v. Scott*,

---

[2] *Available at* https://www.thedailybeast.com/e-jean-carroll-reveals-why-shell-give-away-her-80m-from-trump-to-p-him-off/.

[3] *Available at* https://www.newsweek.com/e-jean-carroll-comedy-gold-trump-trial-how-shell-spend-83m-2087074.

[4] *Available at* https://www.theguardian.com/us-news/2024/jan/29/e-jean-carroll-trial-money-trump-defamation.

[5] *Available at* https://abcnews.com/GMA/Culture/jean-carroll-plans-83-million-donald-trump-hates/story?id=106751516.

[6] *Available at* https://www.independent.co.uk/tv/news/donald-trump-defamation-e-jean-carroll-b2486858.html.

561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers)). Courts routinely recognize irreparable harm when a party faces unrecoverable financial loss. *See, e.g., NFIB v. OSHA*, 595 U.S. 109, 120 (2022) (per curiam) (granting stay where applicant faced threat of billions of dollars in unrecoverable costs); *Railway Labor Executives' Ass'n v. Gibbons*, 448 U.S. 1301, 1305 (1980) (Stevens, J., in chambers) (noting that a preliminary injunction avoids "irreparable damage" by preventing "a chain of events that would lead to substantial payments that would be . . . unrecoverable"); *In re NTE Connecticut, LLC*, 26 F.4th 980, 991 (D.C. Cir. 2022) (stay pending rehearing prevented FERC from imposing "unrecoverable losses of millions of dollars"); *GEICO v. Tolmasov*, 602 F. Supp. 3d 380, 390 (E.D.N.Y. 2022) (finding irreparable harm where there were "imminent and non-speculative risks" of "potentially unrecoverable" expenditures). Such irreparable harm is precisely the risk here.

*Third*, a proper stay will not materially harm Plaintiff. Her money judgment remains fully secured. The funds remain in CRIS. Her own proposed order seeks disbursement not only of the judgment's principal, but also interest. If the Supreme Court denies rehearing, which it should not do, Plaintiff can be paid then with any interest to which she is entitled. Delay compensable by interest is not irreparable harm—particularly because the security in place here is more than sufficient. As of June 29, 2026, the CRIS balance was $6,367,384.33, well above the $5,779,040.39 Plaintiff asserts was owed as of that date. Maintaining the funds in CRIS until the Supreme Court fully decides the petition for rehearing therefore completely protects Plaintiff, while avoiding irreparable harm to President Trump. Plaintiff loses nothing that cannot be compensated by interest; President Trump faces the real risk of losing funds that will likely never be recovered.

13

*Fourth*, the public interest favors preserving the status quo until Supreme Court rehearing proceedings conclude. If the funds are disbursed now, and the Supreme Court later grants rehearing or otherwise alters the posture of the case, as it should, the result would undermine public confidence in an orderly judicial process. *See Rossworm v. Pittsburgh Corning Corp.*, 468 F. Supp. 168, 170 (N.D.N.Y. 1979) (recognizing "the public interest and faith in our legal system"). The public interest is best served by keeping the funds secure in the Court's registry for the time necessary for the Supreme Court to resolve the pending rehearing petition. That is all the more true in this case, where concerns about politically motivated weaponization of the legal system have been voiced not only by President Trump's supporters, but also by frequent critics like Michael Cohen, who have characterized such efforts as part of a "larger war" against President Trump. *See* Michael Cohen, *The Price of Proximity* (June 14, 2026).[7] Against that backdrop, public confidence in the orderly administration of justice is best served by allowing the full process authorized by the Supreme Court's Rules to run its course before the funds are released.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion should be denied. In the alternative, the Court should hold the motion in abeyance, and maintain the funds in CRIS pending the Supreme Court's disposition of President Trump's timely petition for rehearing.

If the Court does grant Plaintiff's motion, President Trump respectfully requests that the Court enter a stay pending appeal.

---

[7] *Available at* https://therealmichaelcohen.substack.com/p/the-price-of-proximity.

Dated: July 7, 2026
New York, New York

Respectfully submitted,

Josh Halpern*
JH LEGAL PLLC
1100 H Street NW
Suite 840
Washington, DC 20005
(610) 405-5531
jhalpern@jhlegalpllc.com
*Pro hac vice application forthcoming

/s/ Michael T. Madaio
Michael T. Madaio
MADAIO, EYET & ASSOCIATES LLP
1430 US Highway 206
Suite 240
Bedminster, New Jersey 07921
T:  (908) 869-1188
F:  (980) 450-1881
mmadaio@me-firm.com

*Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 7, 2026, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

/s/ Michael T. Madaio